IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KEITH WELLIN, | ) | |
| | ) | No. 2:13-cv-1831-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| PETER J. WELLIN, *et. al.,* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on plaintiff Keith Wellin's motion for preliminary injunction, ECF No. 5. For the reasons stated below, the motion is denied.

## I. BACKGROUND

### A. Factual Background

Plaintiff Keith Wellin ("Keith") is an eighty-seven year-old man who, over his life, has amassed a fortune worth hundreds of millions of dollars.[1] Keith is married to his fourth wife, Wendy Wellin ("Wendy"), and has three adult children from his first marriage. Keith's children, all of whom are defendants in this case, are Peter J. Wellin ("Peter"), Cynthia W. Plum ("Ceth"), and Marjorie W. King ("Mari"). The lion's share of Keith's fortune is 896 Berkshire Hathaway Class A common shares ("the Berkshire Hathaway Shares" or "the Shares") worth more than $150 million.

---

[1] According to Keith's counsel, he "is a former president of E.F. Hutton and Reynolds Securities, he was the vice president of Dean Witter Reynolds, chairman of Moorco International, Inc., trustee of Hamilton College, director of Morgan Joseph Company, Inc. He was a governor and member of the executive committee of the Association for Stock Exchange Firms, a member of the governing counsel of the Securities Industries Association. He acquired his bachelor [degree] from Hamilton College, his MBA from [Harvard Business] School." Hr'g Tr. 5, Nov. 18, 2013.

Defendant Friendship Management, LLC is a Delaware limited liability company formed on December 8, 2003. Compl. ¶ 27. The members of Friendship Management are The 2003 KSW Family Trust[2] (40%), Peter (20%), Mari (20%), and Ceth (20%). Id. ¶28. Ceth is the sole manager of Friendship Management.

Defendant Friendship Partners, LP is a Delaware limited partnership formed on December 12, 2003. Compl. ¶ 30. At the time it was formed, Keith was the limited partner of Friendship Partners and owned 98.9% of the partnership. Friendship Management was the general partner of Friendship Partners and owned 1.1% of the partnership. As general partner, Friendship Management controlled Friendship Partners, even though Keith owned most of the partnership interest in Friendship Partners. Upon the partnership's formation, Keith transferred the Berkshire Hathaway Shares to Friendship Partners. Compl. ¶ 31.

In 2006, Keith's "health began to deteriorate." Compl. ¶ 34. As a result, Keith named Peter as his attorney-in-fact and granted Peter durable power of attorney in the five different states in which Keith lived and/or conducted business: Florida, Georgia, South Carolina, New York, and Maine. Compl. ¶ 35-36. At the same time, Keith named Ceth as his successor attorney-in-fact. Id.

In 2008, Keith underwent treatment for tongue cancer. Compl. ¶ 37. "In and throughout 2009," Keith "experienced numerous other adverse health problems which required him to take various medications and, at times, rendered him mentally and physically incapacitated." Pl.'s Mot. for Preliminary Injunction 4; see also Compl. ¶ 40.

---

[2] Keith is the Settlor of the 2003 KSW Family Trust; co-trustees were originally Keith's long-time estate attorney Thomas Farace, and family friend Richard Ketler. Wellin Defs.' Mot. for J. on Pleadings, Ex. G at 1. Keith's children and grandchildren are the beneficiaries of the 2003 KSW Family Trust. Id.

On November 30, 2009, Keith sold his 98.9% interest in Friendship Partners to the Wellin Family 2009 Irrevocable Trust ("the November 2009 Transaction"). Compl. ¶¶ 50-59. Peter, Ceth, Mari, and South Dakota Trust Company ("SD Trust") are co-trustees of the Wellin Family 2009 Irrevocable Trust ("the Wellin Family Trust"). Id. ¶ 56. At the time of the November 2009 transaction, Keith's shares were valued at roughly $90 million. Id. ¶ 59. In exchange for his interest in Friendship Partners, Keith received a note in the amount of $49,802,115.00 from the Wellin Family Trust ("the Note"). Id. ¶ 60. The Note does not come due until 2021 and cannot be called before it comes due. Id. ¶ 62.

In January 2013, Keith made $10 million gifts to each of his children ("the 2013 Gifts"). Compl. ¶ 73. At the same time, Keith gifted $10 million to his wife, Wendy. Id. ¶ 75.

### B. Procedural History

On July 3, 2013, Keith filed the instant complaint against Peter, Ceth, Mari, SD Trust, Friendship Management, and Friendship Partners. Keith's complaint seeks to unwind both the November 2009 Transaction and the 2013 Gifts.[3] The complaint asserts the following fifteen causes of action:

(i)     Breach of fiduciary duty (as to Peter);

(ii)    Breach of fiduciary duty (as to Ceth);

(iii)   Aiding and abetting breach of fiduciary duty (as to Mari);

(iv)    Fraud (as to Peter);

(v)     Negligent misrepresentation (as to Peter);

(vi)    Breach of contract (as to Peter);

---

[3] Keith does not wish to rescind his $10 million gift to Wendy.

3

(vii) Breach of contract accompanied by fraudulent act (as to Peter);

(viii) Violation of the South Carolina Uniform Securities Act, S.C. Code § 35-1-101, et. seq. (as to Peter, individually and as co-trustee of the Wellin Family 2009 Irrevocable Trust);

(ix) Constructive fraud (as to Peter);

(x) Rescission of 2013 gifts based on mistake of fact (as to Peter, Ceth, and Mari);

(xi) Unjust enrichment (as to all defendants);

(xii) Constructive trust (as to all defendants);

(xiii) Appointment of receiver (as to Peter, Ceth, Mari, and SD Trust, as co-trustees of the Wellin Family 2009 Irrevocable Trust);

(xiv) Appointment of receiver (as to Friendship Management, LLC and Friendship Partners, LP); and

(xv) Reformation of the promissory note (as to Peter, Ceth, Mari, and SD Trust, as co-trustees of the Wellin Family Trust).

When he filed his complaint, Keith also filed a motion for a temporary restraining order ("TRO") that would prevent any of the defendants from selling, trading, negotiating, gifting, or otherwise disposing of any of the Berkshire Hathaway Shares. By the same motion, Keith also asked the court to issue a preliminary injunction barring disposal of the Berkshire shares. The court granted the TRO on the same day that it and the complaint were filed.

After receiving several deadline extensions, SD Trust opposed Keith's motion for preliminary injunction on August 27, 2013. Friendship Management, Friendship Partners, Peter, Cynthia, and Marjorie (collectively, "the Wellin Defendants") opposed Keith's motion on the same day. Keith replied to SD Trust's response on September 6, 2013. On November 18, 2013, the court heard witness testimony and oral argument on the motion. This matter has been fully briefed and is now ripe for the court's review.

## II.  STANDARDS

Federal Rule of Civil Procedure 65(a) grants discretion to the reviewing court in deciding whether to issue a preliminary injunction.  It provides that a court "may issue" a preliminary injunction only upon notice to the adverse party.  Fed. R. Civ. P. 65(a).  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); see Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (internal citation and quotation marks omitted) ("A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."); In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003) ("[P]reliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly."), abrogated on other grounds by eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006).  A party seeking a preliminary injunction must demonstrate that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest.  Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc., 722 F.3d 591, 595 (4th Cir. 2013) (citing Winter, 555 U.S. at 20).  "To obtain a preliminary injunction under the Winter test, a movant must make a 'clear showing' of [the] four requirements."  Alkebulanyahh v. Nettles, No. 10-2976, 2011 WL 2728453, at *3 (D.S.C. July 13, 2011); see also Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011) ("Winter thus requires that a party seeking a preliminary injunction . . . must clearly show that it is likely to succeed on the merits." (internal quotation omitted)).

### III.   DISCUSSION

Keith asks the court to issue a preliminary injunction that imposes the same restrictions established by the present TRO.  Specifically, Keith seeks to prevent defendants

> from being able to sell, trade, negotiate, gift, or otherwise dispose of the [Berkshire Hathaway Shares] and/or the [98.90%] limited partnership interest [in Friendship Partners, LP] without the express, written, and notarized consent of the Plaintiff or the current holder of his durable power of attorney, until the final adjudication of this action.

Keith's Mot. for Preliminary Injunction 8.

A court considering whether to impose a preliminary injunction must separately consider each of the four Winter factors.  Pashby, 709 F.3d at 321.  Prohibitory preliminary injunctions "aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending."  Pashby, 709 F.3d at 319 (internal citations omitted).  Mandatory preliminary injunctions, which compel rather than prohibit action, "do not preserve the status quo."  Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).  Therefore, courts apply the exacting preliminary injunction standard in an "even more searching" manner than for the more common prohibitory preliminary injunctions.  Pashby, 709 F.3d at 319 (internal quotations omitted).  Indeed, "a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind."  In re Microsoft Antitrust Litig., 333 F.3d at 526.  A request for a mandatory preliminary injunction should only be granted "when the exigencies of the situation demand such relief."  Wetzel, 635 F.2d at 286.

The preliminary injunction that Keith seeks is mandatory, rather than prohibitory, in nature.  The relief Keith requests would require defendants to seek his approval for any transaction involving either the Shares or the 98.9% limited partnership interest in Friendship Partners.  However, Keith has not controlled the Shares since he transferred them to Friendship Partners' control in 2003.  See Hr'g Tr. 118-19, Nov. 18, 2013.  Likewise, the partnership agreement that governs Friendship Partners dictates that a "Transferee of a Limited Partner's Interest in the Partnership may be admitted to the Partnership as a Substituted Limited Partner only upon the receipt of the prior written consent of all General Partners, which consent may be given or withheld in each Partner's sole discretion."  Wellin Defs.' Mot. for J. on Pleadings, Ex. I at 18.  Granting the preliminary injunction that Keith seeks would profoundly alter the status quo by allowing Keith to exercise a veto that he has never before had.

Because the requested injunction is mandatory in nature, the court must now apply the Winter preliminary injunction standards in the "even more searching" manner noted by the Pashby court.

### A.  Likelihood of success on the merits

Keith contends – and the defendants do not appear to dispute – that, because he only seeks to enjoin the sale or transfer of the Berkshire Hathaway Shares and/or the 98.9% limited partnership interest in Friendship Partners, the court need only analyze the likelihood of his success on the merits for the causes of action that seek that form of relief.  Those causes of action are Counts 1, 2, and 3, for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, and Count 8, for violation of the South Carolina Uniform Securities Act.

"Although [the likelihood-of-success] inquiry requires plaintiffs . . . to make a clear showing that they are likely to succeed at trial, plaintiffs need not show a certainty of success." Pashby, 709 F.3d. at 321 (internal citations omitted).  However, it is not enough if a plaintiff only provides sufficient factual allegations to survive a Rule 12(b)(6) motion to dismiss.  Torres Adv. Enterp. Solutions LLC v. Mid-Atl. Professionals, Inc., No. 12-cv-03679, 2013 WL 531215, at *3 (D. Md. Feb. 8, 2013) (citing Allstate Ins. Co. v. Warns, No. 11-cv-01846, 2012 WL 681792, at *14 (D. Md. Feb. 29, 2012)). Importantly, a number of courts have declined to issue a preliminary injunction when there are significant factual disputes.  See, e.g., Chattery Int'l, Inc. v. JoLida, Inc., No. 10-cv-02236, 2011 WL 1230822, at *9 (D. Md. Mar. 28, 2011); Allegra Network LLC v. Reeder, No. 09-cv-00912, 2009 WL 3734288 (E.D. Va. Nov. 4, 2009).

The success or failure of Keith's breach of fiduciary duty and Uniform Securities Act claims depends upon a number of facts that the parties hotly dispute.  Keith argues that his children, particularly Peter, coerced him into making the November 2009 Transaction and the 2013 Gifts.  Defendants disagree, asserting that the November 2009 Transaction was part of an estate strategy planned by Keith and his attorney and that the 2013 Gifts were conceived entirely by Keith.  Keith similarly contends that the November 2009 Transaction and the 2013 Gifts were not in his best interests, while defendants assert that they were fair transactions that accomplished Keith's goals of transferring his wealth to his children and grandchildren.  The resolution of these factual disputes will be critical to the resolution of this case.

With these significant factual disputes impossible to resolve at this time, the court finds that Keith has not clearly shown that he is likely to succeed on the merits of his case.

### B. Irreparable harm

Keith next argues that he has shown that he will be irreparably harmed if the court does not grant injunctive relief. Specifically, Keith contends that he "has lost control and use of" the Berkshire Hathaway Shares, which "is causing [him] immediate financial harm as he is not able to use these assets." Keith's Mot. 16. Keith also argues that his "injury is irreparable because he believes that his children will in fact sell the [Berkshire Hathaway Shares] and/or the 98.90% limited partnership interest in Friendship Partners." Id. Keith argues that sale of either of these assets would trigger a $40 million tax liability that would bankrupt him. At the hearing, a phalanx of physicians testified that such a bankruptcy would negatively impact Keith's health.

> The Supreme Court has instructed that
>
> > The key word in this consideration is <u>irreparable</u>. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1974) (emphasis in original). The Fourth Circuit has also explained that "a preliminary injunction is not normally available where the harm at issue can be remedied by money damages." Bethesda Softworks, LLC v. Interplay Entm't Corp., 452 F. App'x 351, 353 (4th Cir. 2011) (citing Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 693-94 (4th Cir. 1994)). However, there are exceptions to this rule under extraordinary circumstances. Id. For

example, irreparable harm may exist where the moving party's business cannot survive absent a preliminary injunction, or where damages may ultimately become unobtainable because the defendant may become insolvent before a final judgment can be entered. Hughes, 17 F.3d at 694.

As noted above, Keith has lacked control of the Berkshire Hathaway Shares since he transferred them to Friendship Partners in 2003. Keith's children, through Friendship Management, have controlled the Shares since that time. Any harm that Keith suffers from his inability to control the Shares is not, therefore, "immediate." Moreover, Keith does not challenge the validity of the 2003 transaction in which he ceded control of the Shares to Peter, Ceth, and Mari. Even if the court were to unwind the November 2009 Transaction, Keith would still not be able to "use those assets" because Friendship Management would still control Friendship Partners. For these reasons, Keith's inability to control the Shares does not constitute an irreparable harm for which preliminary injunctive relief is appropriate.

In a letter to the court dated November 19, 2013, counsel for Keith argued – for the first time – that Peter, Ceth, and Mari "do not have sufficient resources to cover" the amount of money that they may owe if Keith ultimately prevails in this case. Counsel has marshaled no facts in support of this statement, and the court has no information on defendants' finances. Keith's bare allegations are not sufficient to show that defendants are likely to become insolvent absent the entry of a preliminary injunction.[4]

---

[4] Counsel explained that

> If we start with $150 million, and give $43 million to the government [in taxes triggered by sale of the Shares], the total assets in the system (Keith and his children) are then only $107 million. If the Plaintiff prevails and the 2009

Additionally, the likelihood that Keith would be physically and emotionally stressed does not rise to the level of "extraordinary" circumstances contemplated by the Fourth Circuit. While the court does not take lightly the opinions of Keith's physicians, the court cannot grant injunctive relief on the basis that Keith may otherwise suffer severe stress. If the court were to make such a ruling, any elderly or infirm person – and perhaps any person at all – would be able to demonstrate irreparable harm by showing that he or she would suffer stress if a preliminary injunction is not entered in his or her favor.

Keith's lawyers also argued that there was a threat that he would be financially unable to afford the quality of health care that he now enjoys. The specter of this loss is tempered by the fact that Keith portrays Wendy as a loving and caring spouse who is intimately involved in her husband's medical care. There is undisputed evidence that Keith has given Wendy millions and millions of dollars, the last gift of $10 million having been given in January of this year. Thus Wendy certainly has the resources to pay Keith's $200,000 annual health care costs.

Finally, the chance that Keith himself could face bankruptcy is not an extraordinary circumstance that warrants a finding of irreparable harm because such damages are remediable through a monetary award. If defendants sell either the Shares or the limited partnership interest in Friendship Partners, and if the court later determines that those assets properly belonged to Keith, then the court can remedy the damages by

---

transaction is void then Keith Wellin should get back the full $150 million, but the trust does not have it and the children do not have it.

Letter from R. Hood at 2, ECF No. 70. This calculation assumes that Peter, Ceth, and Mari have no assets other than their interest in the Shares. This assumption is flawed, as Keith has presented evidence that he has, over the years, given his children and grandchildren over $158 million. Hr'g Tr. 62.

awarding Keith an amount of money that would cover the value of the Shares, the value of the 98.9% partnership interest in Friendship Partners, and/or the value of the taxes Keith paid. For all these reasons, Keith has not made the requisite showing of irreparable harm.

### C.  Balance of the equities

Keith next argues that the balance of the equities tips in his favor because he has done no wrong, because the requested injunction will simply maintain the status quo, and because defendants have themselves acted wrongfully.

In considering the balance of the equities between the parties, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the relief requested." Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987)).

Keith's assertion that the requested injunction maintains the status quo is without merit. As discussed more fully above, granting the requested injunction would profoundly alter the status quo. Additionally, defendants fiercely dispute Keith's claims the he has been swindled out of his wealth by his children. Without more evidence of his children's unclean hands, Keith has failed to demonstrate that the balance of the equities tips in his favor.

More to the point, the potential harms that each party identifies are remediable through a monetary award. Keith argues that he will be harmed if an injunction is not entered because the sale of the Shares would trigger a $40 million tax liability that would ultimately bankrupt him. Hr'g Tr. 125. Defendants respond that they would be harmed by entry of the preliminary injunction because if the Shares are not sold before Keith's

death, defendants would lose $100 million in value of the partnership and "the estate would be in a gridlock at that point because nobody would have both ownership and control of [Friendship Partners and its assets]." Hr'g Tr. 137.

As a result, the court finds that the balance of the equities tips in neither party's favor.

### D. Public interest

Finally, Keith argues briefly that "the requested injunctive relief will pose absolutely no harm to the public interest." Keith's Mot. for Preliminary Injunction 19.

The Supreme Court has admonished that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of an injunction." Winter, 555 U.S. at 24. When other considerations do not weigh meaningfully on this factor, the court can find that the likelihood of success on the merits satisfies the public interest prong of the preliminary injunction test. Pashby, 709 F.3d at 330.

The court agrees with the parties that there appear to be few, if any, public consequences to the success or failure of Keith's preliminary injunction motion. See Hr'g Tr. 135 ("Your Honor, I don't believe that this is a public interest case. We have not pled it as such."). Posing no harm to the public interest is not the same thing as weighing in favor of it. Because the public interest does not weigh heavily in this case, and because Keith has not demonstrated a likelihood of success on the merits, the court finds that Keith has not demonstrated that the proposed injunction would be in the public interest.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiff Keith Wellin's motion for preliminary injunction, ECF No. 5, and **DISSOLVES** the temporary restraining order that was issued on July 3, 2013, ECF No. 6.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 22, 2013**
**Charleston, South Carolina**