IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KEITH WELLIN, | ) | |
| | ) | No. 2:13-cv-1831-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| PETER J. WELLIN, *et. al.,* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendants' motion to compel a mental examination, ECF No. 28. For the reasons stated below, the motion is granted.

## I.  BACKGROUND

The court dispenses with a recitation of the facts of this case because they are well known to both parties. On July 3, 2013, plaintiff Keith Wellin ("Keith") filed the instant complaint against his adult children Peter J. Wellin ("Peter"), Cynthia Wellin Plum ("Ceth"), and Marjorie Wellin King ("Mari"); South Dakota Trust Company ("SD Trust"), the corporate trustee of the Wellin Family 2009 Irrevocable Trust ("the Wellin Family Trust"); Friendship Partners, LP, a partnership that controls 896 Berkshire Hathaway Class A Shares that Keith purchased some forty-odd years ago; and Friendship Management, LLC, which controls Friendship Partners. The complaint asserts fifteen causes of action against Peter, Ceth, Mari, Friendship Partners, Friendship Management, and SD Trust.

On August 1, 2013, Peter, Ceth, Mari, Friendship Partners, and Friendship Management (collectively, "the Wellin Defendants") filed a motion to compel Keith to

submit to a physical and mental examination. Keith opposed the motion on August 26, 2013, and the Wellin Defendants filed their reply on September 3, 2013. On November 18, 2013, the court heard witness testimony and oral argument on the motion. This matter has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

Rule 35 of the Federal Rules of Civil Procedure allows a district court to order a party to submit to a mental or physical examination when that party's mental or physical condition is in controversy and the moving party has shown good cause. Fed. R. Civ. P. 35; Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964). The decision to order such an examination rests "soundly within the court's discretion." Hodges v. Keane, 145 F.R.D. 332, 334 (S.D.N.Y. 1993).

## III.  DISCUSSION

The Wellin Defendants move to compel Keith to submit to a mental examination conducted by Larry Evans Tune, M.D., a geriatric neurologist and psychiatrist based at Emory University Hospital.[1] The Wellin Defendants also seek to have Dr. Lori Culp, a psychologist affiliated with Dr. Tune perform a neuropsychological exam on Keith in conjunction with Dr. Tune's examination. The Wellin Defendants argue that Keith has

---

[1] Though the Wellin Defendants' motion seeks an order compelling Keith "to submit to a physical and mental examination," Mot. to Compel Mental Examination 1, at the hearing, counsel for the Wellin Defendants stated:

> I don't believe that Dr. Tune is proposing to do a physical examination. . . . He wants to do a neuropsychological exam to be performed by one of his colleagues, Dr. [C]ulp, and that's a question and answer examination . . . where she focuses on his cognitive abilities. Then it would be followed by a neuropsychiatric exam by Dr. Tune. . . . And he said the only physical interaction he'd have with [Keith] would be testing reflexes and things like that . . . .
>
> He did say that he may need to have Mr. Wellin do an MRI and possibly a PET scan, if he deemed it necessary after his exam. But that's all he's proposing.

Hr'g Tr. 197-98, Nov. 18, 2013.

placed his mental capacity squarely at issue in this case by alleging that his infirmities caused him to misunderstand the financial transactions that are the root of this lawsuit. They also argue that, because Keith's mental health is a key issue in this case, there is good cause to compel him to undergo a mental exam.

> Rule 35(a) of the Federal Rules of Civil Procedure states:
>
> **(1)** In general.  The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. . . .
>
> **(2)** Motion and Notice; Contents of the Order.  The order:
>
> **(A)** may be made only on motion for good cause and on notice to all parties and the person to be examined . . . .

Fed. R. Civ. P. 35(a)(1)-(2)(A).  The "in controversy" and "good cause" requirements of Rule 35

> are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.  Obviously, what may be good cause for one type of examination may not be so for another.  The ability of the movant to obtain the desired information by other means is also relevant.

Holder, 379 U.S. at 118.  Moreover, "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." Id.

Neither the Supreme Court nor the Fourth Circuit have precisely defined Rule 35's "in controversy" and "good cause" requirements.  Some district courts within the Fourth Circuit have used a five-factor test to determine whether a plaintiff's mental or physical health is in controversy:

3

> (1) the plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) the plaintiff has claimed unusually severe emotional distress; (3) the plaintiff has alleged a specific type of disorder or other psychiatric injury; (4) the plaintiff has offered her own expert testimony to supplement her claim of emotional distress; or (5) the plaintiff concedes that her medical condition is "in controversy" pursuant to Rule 35.

Machie v. Manger, No. 09-cv-02196, 2012 WL 2092814, at *6 (D. Md. June 7, 2012); see also Smith v. Bd. of Governors, No. 08-cv-0030D, 2008 WL 4877131, at *1 (E.D.N.C. Nov. 10, 2008) (citing E.E.O.C. v. Maha Prabhu, Inc., No. 07-cv-0111, 2008 WL 2559417, at *3 (W.D.N.C. June 23, 2008)).  However, other courts in this district appear to have simply determined for themselves whether a party's mental or physical health has been placed in controversy, without regard to any particular factors.  See, e.g., Bailey v. Corntassel, No. 10-cv-01573, 2012 WL 4753906, at *3 (D.S.C. Oct. 4, 2012) ("Mr. Bailey put his physical condition in controversy by alleging in his complaint that he was injured as a result of the automobile collision.  Moreover, Mr. Bailey's physical condition is in controversy because of the disagreement among medical care providers as to the extent of his alleged injuries and the need for further treatment.").  The Fourth Circuit has explained that "Under Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate."  Guilford Nat'l Bank of Greensboro v. S. Ry. Co., 297 F.2d 921, 924 (4th Cir. 1962); see also Whitaker v. United States, No. 08-cv-00202, 2009 WL 1905102, at *4 (W.D.N.C. June 30, 2009).

Keith has repeatedly alleged that his health has played a role in the events that form the basis of his claims:

> 40. Plaintiff's medical conditions and medications at times rendered him unable to manage the complexities of his financial affairs.

> 41. <u>Due to Plaintiff's age and temporary and permanent health problems,</u> he relied upon Defendant Peter Wellin's knowledge, expertise, personal integrity and relationship as his son and placed special trust and confidence in him regarding the care, welfare and administration of Plaintiff's property and assets.
>
> 42. <u>Due to Plaintiff's age and temporary and permanent health problems,</u> he relied upon Defendant Cynthia W. Plum's knowledge, expertise, personal integrity and relationship as his daughter and placed special trust and confidence in her regarding the care, welfare and administration of Plaintiff's property and assets.
>
> . . .
>
> 68. <u>Prior to Spring 2013, Plaintiff did not know or understand that he had lost all control over and access to his securities</u>, which are now solely in control of his children . . . .
>
> . . .
>
> 70. Defendants Peter Wellin and Cynthia W. Plum orchestrated the November 2009 Transaction <u>at a time when Plaintiff was vulnerable and unable to appreciate the complexities of the transaction</u>.
>
> . . .
>
> 74. <u>Plaintiff was in a compromised mental state at the time of the 2013 Gifts due to his health conditions and medications</u>. . . .
>
> . . .
>
> 88. Through the November 2009 transaction and the 2013 Gifts, Defendants Peter Wellin, Cynthia W. Plum and Marjorie W. King have <u>taken advantage of their vulnerable father</u> . . . .

Compl. ¶¶ 40-42, 68, 70, 74, 88 (emphasis added). Additionally, Keith's memorandum in support of his motion for a temporary restraining order and preliminary injunction repeatedly invoked his lack of mental capacity:

> In and throughout 2009, <u>the Plaintiff</u>, while living full time in Charleston County, South Carolina, <u>experienced numerous other adverse health problems which required him to take various medications and, at times, rendered him mentally and physically incapacitated</u>.
>
> . . .

5

> Defendants convinced the Plaintiff to enter into these transactions at a time when his mental capacity was severely diminished such that Plaintiff could not comprehend the present or future ramifications of the November 2009 Transaction . . . .
>
> . . .
>
> Defendant Peter Wellin had a fiduciary duty to the Plaintiff to ensure that Plaintiff only enter into business transactions that were in Plaintiff's best interest, especially at a time when Plaintiff's mental capacity to understand and comprehend complicated financial transactions and their future ramifications was compromised.

Pl.'s Mem. in Support of Mot. for TRO 4, 7, 13-14 (emphasis added).

> Keith now argues that
>
> Plaintiff's Complaint has alleged that he was, at various times, unable to oversee the complexities of his financial affairs. Plaintiff does not allege that this inability was the result of mental incapacity or any psychiatric disorder or injury. Rather, Plaintiff's allegations center upon his failing health and the confidence he reposed in his children to assist him with his affairs.

Pl.'s Opp'n to Mot. to Compel Mental Exam 4-5. This is a distinction without much of a difference. Keith has alleged that he was in a "compromised mental state" when he gifted $10 million to each of his children in 2013 and that he was "vulnerable and unable to appreciate the complexities" of the November 2009 transaction that ceded his ownership interest in Friendship Partners to the Wellin Family Trust. Compl. ¶¶ 70, 74. Keith's repeated invocation of his diminished mental capacity has put his mental health squarely at issue in this case. He cannot simultaneously use his mental capacity as a sword and as a shield. Moreover, Keith has presented no fewer than seven health care professionals who have testified regarding his present and/or prior mental capacity. To the extent that "one of the purposes of Rule 35 is to provide a level playing field between the parties in their respective efforts to appraise the plaintiff's condition," Holland v.

United States, 182 F.R.D. 493, 495 (D.S.C. 1998) (internal quotations omitted), it is appropriate to allow defendants' physicians to examine Keith.

For all these reasons, the Wellin Defendants have satisfied Rule 35's "good cause" and "in controversy" requirements. See Corntassel, 2012 WL 4753906, at *3. As a result, the court grants the Wellin Defendants' motion to compel a mental examination. The mental examinations in question must, however, be tailored to accommodate Keith's somewhat fragile health. As his physicians and attorneys have repeatedly explained, Keith is an elderly stroke and cancer survivor who lacks the stamina to undergo hours of medical testing without any ability to rest. As a result, the court imposes the following restrictions.

Dr. Tune may conduct a neuropsychiatric exam of Keith; Dr. Culp, or another neuropsychologist identified by the Wellin Defendants, may conduct a neuropsychological exam of Keith in conjunction with Dr. Tune's examination. These two examinations must take place in Charleston, South Carolina, at a time and place to be agreed upon by the parties. If the parties cannot agree upon a location for these examinations, a location will be selected by the court. These examinations must take place sometime before January 15, 2014 and they may occur either on the same day or on two different days, as determined by Drs. Tune and Culp in consultation with Keith's treating physicians. Throughout, Drs. Tune and Culp should use their professional judgment to assess Keith's stamina and should conduct their examinations accordingly. Likewise, Keith should feel free to request a break in the examinations if he feels tired or would like to rest. No third party may be present for the neuropsychiatric and neuropsychological examinations unless authorized by Drs. Tune and Culp for the

purposes of facilitating the examinations. See Holland, 182 F.R.D. at 495 ("The majority of federal courts have rejected the notion that a third party should be allowed, even indirectly through a recording device, to observe a Rule 35 examination.") (collecting cases). If, upon proper authorization, a third party attends a portion of either the neuropsychiatric or neuropsychological examination, he or she must nevertheless leave the examination area if and when requested by Drs. Tune or Culp. Keith will not be required to submit to an MRI, PET scan, or any other radiological exam unless such an exam is requested by defendants and ordered by the court.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the Wellin Defendants' motion to compel a mental examination, ECF No. 28.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 12, 2013**
**Charleston, South Carolina**