IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

KEITH WELLIN,                          )
                                       )        No. 2:13-cv-1831-DCN
                Plaintiff,             )
                                       )
        vs.                            )
                                       )              **ORDER**
PETER J. WELLIN, *et. al.,*             )
                                       )
                                       )
                Defendants.            )
_____        )

This matter is before the court on three motions:  (i) a motion for judgment on the pleadings and for summary judgment filed by defendants Friendship Management, LLC, Friendship Partners, LP, Peter J. Wellin, Marjorie Wellin King, and Cynthia Wellin Plum (collectively, "the Wellin Defendants"), ECF No. 41; (ii) a motion for judgment on the pleadings filed by defendant South Dakota Trust Company ("SD Trust"), ECF No. 59; and (iii) a motion for voluntary dismissal filed by plaintiff Keith Wellin, ECF No. 81. For the reasons stated below, the court grants in part and denies in part the Wellin Defendants' motion for judgment on the pleadings and grants Keith's motion for voluntary dismissal.  Because the court grants Keith's motion and dismisses SD Trust from this case, SD Trust's motion for judgment on the pleadings is rendered moot.

## I.  BACKGROUND

Because the facts of this case are well known, the court dispenses with a recitation of them.  On July 3, 2013, plaintiff Keith Wellin filed the instant complaint against the Wellin Defendants and SD Trust.  The complaint asserts fifteen causes of action against

1

the defendants.  Keith also seeks to revoke the November 2009 sale of his interest in Friendship Partners to the Wellin Family 2009 Irrevocable Trust ("the Trust") and rescind the $10 million gifts he made to each of his children – Peter, Cynthia, and Marjorie – in January 2013.  The complaint asserts the following fifteen causes of action:

(i)      Breach of fiduciary duty (as to Peter);

(ii)     Breach of fiduciary duty (as to Cynthia);

(iii)     Aiding and abetting breach of fiduciary duty (as to Marjorie);

(iv)     Fraud (as to Peter);

(v)      Negligent misrepresentation (as to Peter);

(vi)     Breach of contract (as to Peter);

(vii)    Breach of contract accompanied by fraudulent act (as to Peter);

(viii)   Violation of the South Carolina Uniform Securities Act, S.C. Code § 35-1-101, et. seq. (as to Peter, individually and as co-trustee of the Wellin Family 2009 Irrevocable Trust);

(ix)     Constructive fraud (as to Peter);

(x)      Rescission of 2013 gifts based on mistake of fact (as to Peter, Cynthia, and Marjorie);

(xi)     Unjust enrichment (as to all defendants);

(xii)    Constructive trust (as to all defendants);

(xiii)   Appointment of receiver (as to Peter, Cynthia, Marjorie, and SD Trust, as co-trustees of the Wellin Family 2009 Irrevocable Trust);

(xiv)    Appointment of receiver (as to Friendship Management, LLC and Friendship Partners, LP); and

(xv)     Reformation of the promissory note (as to Peter, Cynthia, Marjorie, and SD Trust, as co-trustees of the Wellin Family Trust).

2

On August 27, 2013, the Wellin Defendants filed their pending motion for judgment on the pleadings, or, in the alternative, for summary judgment.  On October 22, 2013, SD Trust filed its own motion for judgment on the pleadings.  On November 27, 2013, Keith filed a motion requesting that SD Trust be dismissed from the case without prejudice on the basis that SD Trust was no longer the corporate trustee for the Trust.  All these matters have been fully briefed and are ripe for the court's review.

## II.  STANDARDS

### A.  Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  Courts follow "a fairly restrictive standard" in ruling on 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense."  5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2011).  Ultimately, "a defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff."  BET Plant Servs., Inc. v. W.D. Robinson Elec. Co., 941 F. Supp. 54, 55 (D.S.C. 1996).

"[A] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)."  Deutsche Bank Nat'l Trust Co. v. I.R.S., 361 F. App'x 527, 529 (4th Cir. 2010); see Burbach Broad. Co. v. Elkins Radio, 278 F.3d 401, 405 (4th Cir. 2002).  Thus, in order to survive a motion for judgment on

3

the pleadings, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

### B. Voluntary Dismissal

Federal Rule of Civil Procedure 41(a)(2), which governs Keith's present motion, states: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2). "The decision to grant a voluntary dismissal under Rule 41(a)(2) is a matter for the discretion of the district court, and its order will ordinarily not be reversed except for an abuse of discretion." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987) (citations omitted); see also Bridge Oil, Ltd. v. Green Pac. A/S, 321 F. App'x 244, 245 (4th Cir. 2008). "A plaintiff's motion to voluntarily dismiss a claim should not be denied absent plain legal prejudice to the defendant." Ellett Bros., Inc. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001) (citing Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986)).

4

### III.  DISCUSSION

The court first discusses merits of the Wellin Defendants' motion, and then

discusses Keith's motion for voluntary dismissal.

**A.  Wellin Defendants' Motion for Judgment on the Pleadings**

The Wellin Defendants seek judgment on the pleadings for all of the causes of

action found in Keith's complaint.

#### 1.  Statute of Limitations & Tolling

The Wellin Defendants first argue that all of Keith's legal claims (Counts 1

through 9) and three of his equitable claims (Counts 11, 12, and 15) are time-barred.

Keith responds that his claims are not time-barred because the statute of limitations is

both tolled by the discovery rule and equitably tolled.[1]

The South Carolina Uniform Securities Act of 2005 has a three-year statute of

limitations for most civil claims.  S.C. Code § 35-1-509(j)(1)-(2).  Under South Carolina

law, breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation,

conversion, reformation, and unjust enrichment claims are governed by a three-year

---

[1] Keith also argues, without citation to any authority, that his claims are not time-barred
because each annual re-financing of the Note was an ongoing violation of his children's fiduciary
duties.  The South Carolina courts do not appear to have reached this exact issue, though they
have refused to recognize a continuing tort theory within the contexts of legal and medical
malpractice claims.  Epstein v. Brown, 610 S.E. 2d 816 (S.C. 2005) (finding that the statute of
limitations began to toll on a plaintiff's legal malpractice claims on the date that he received an
adverse verdict due to his attorney's negligence, not the date that the his final appeal of the
adverse verdict was denied); Harrison v. Bevilaqua, 580 S.E. 2d 109, 114 (S.C. 2003) (finding
that a patient's malpractice claims accrue against a physician at the time the malpractice should
have been discovered, not at the time that the continuing malpractice ends).  Because the court
need not decide this issue to reach a result in this case, it leaves to South Carolina courts the
question of whether South Carolina law recognizes the sort of continuing tort theory advanced by
Keith.

statute of limitations.  Graham v. Welch, Roberts & Amburn, LLP, 743 S.E.2d 860, 862 (S.C. Ct. App. 2013); S.C. Code § 15-3-530(1) (Supp. 2012) (stating that the statute of limitations is three years for "an action upon a contract"); S.C. Code § 15-3-530(5) (stating that the statute of limitations is three years for "any injury to the person or rights of another, not arising on contract and not enumerated by law").  These statutes of limitations are modified by a doctrine known as the "discovery rule."  Under the discovery rule, "the statute of limitations [only] begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct."  True v. Monteith, 489 S.E.2d 615, 616 (S.C. 1997).  The South Carolina Supreme Court has "interpreted the 'exercise of reasonable diligence' to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist."  Dean v. Ruscon Corp., 468 S.E.2d 645, 647 (S.C. 1996).  The date on which a plaintiff should have discovered his cause or causes of action is an objective question.  Graham, 743 S.E.2d at 862.

> In other words, whether the particular plaintiff actually knew he had a claim is not the test.  Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.

Bayle v. S.C. Dep't of Transp., 542 S.E.2d 736, 740 (S.C. Ct. App. 2001) (internal citations omitted).  "[T]he fact that the injured party may not comprehend the full extent of the damage is immaterial."  Dorman v. Campbell, 500 S.E.2d 786, 789 (S.C. Ct. App.

6

1998) (citing <u>Dean</u>, 468 S.E.2d at 647).  However, "[i]f there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury."  <u>Manios v. Nelson, Mullins, Riley & Scarborough, LLP</u>, 697 S.E. 2d 644, 654 (S.C. Ct. App. 2010).

In this case, Counts 1-9, 11, 12, and 15 of Keith's complaint are all based on both the November 2009 Transaction and the 2013 Gifts.  To the extent that these claims are based on the November 2009 Transaction, they would be time-barred unless the three-year statute of limitations were tolled.  The discovery rule, however, does not provide Keith the relief that he seeks.  Even if, as Keith contends, he did not fully understand the details of the November 2009 Transaction when it occurred, his subjective state of mind does not trump what a reasonable person would have understood.  The documents that effectuated the November 2009 Transaction clearly state that Keith was selling his 98.9% interest in Friendship Partners in exchange for a promissory note valued at $49.8 million.  Wellin Defs.' Mot. for J. on the Pleadings, Exs. L & O.  Under South Carolina law, "[a] person who signs a contract or other written document is responsible for reading the document and making sure of its contents. . . .  One who signs a written instrument has the duty to exercise reasonable care to protect himself."  <u>Wachovia Bank v. Blackburn</u>, 716 S.E.2d 454, 458 (S.C. Ct. App. 2011) (internal citations omitted).  Moreover, Keith signed the documents on the advice of his estate attorney, who crafted the November 2009 Transaction.  South Carolina courts impute knowledge to a principal when his or her attorney understands the contents of a document.  <u>Dorman</u>, 500 S.E.2d at 789 (citing <u>Faulkner v. Millar</u>, 460 S.E. 2d 378, 381 (S.C. 1995); <u>Crystal Ice Co. of Columbia, Inc. v.</u>

First Colonial Corp., 257 S.E.2d 496, 497 (S.C. 1979)).  Keith's complaint makes no claims against his former estate attorney, and there appears to be no reason why that attorney's knowledge of the transaction should not be imputed to Keith.  In short, the discovery rule does not toll the statute of limitations on Keith's claims to the extent that they are based on the November 2009 Transaction.[2]

Keith next asserts that the statute of limitations should be equitably tolled because of his children's alleged misdeeds.[3]  This argument meets with more success, at least for the time being.  In South Carolina, equitable tolling "is a doctrine that should be used sparingly and only when the interests of justice compel its use."  Hooper v. Ebenezer Senior Servs. & Rehab. Ctr., 687 S.E.2d 29, 33 (S.C. 2009).  It is generally applied only where the defendant's actions hinder the plaintiff's discovery of or ability to pursue the claim.  Id. at 33-34; see also Magnolia N. Prop. Owners Ass'n v. Heritage Cmtys., Inc.,

_____

[2] Keith has also failed to plead that he was insane or mentally ill within the meaning of S.C. Code § 15-3-40 at the time of the November 2009 Transaction.  Section 15-3-40 tolls any statute of limitations for up to five years if a plaintiff is insane at the time the cause of action accrued.  The South Carolina Supreme Court has explained that a plaintiff's insanity will only toll the statute of limitations when the plaintiff's mental condition "precludes understanding the nature or effects of one's acts, an incapacity to manage one's affairs, an inability to understand or protect one's rights, because of an over-all inability to function in society, or the mental condition is such as to require care in a hospital."  Wiggins v. Edwards, 442 S.E.2d 169, 170 (S.C. 1994) (adopting the definition provided in 54 C.J.S. Limitations of Actions § 117); see also Rosenberg v. S. Carolina, No. 06-cv-3203, 2008 WL 8648434, at *6 (D.S.C. Jan. 28, 2008).

[3] Keith briefly argues that the statute of limitations for these claims should be equitably tolled under both Delaware law and South Carolina law, contending that "Delaware law will apply to the 2009 transaction as Defendants were Delaware fiduciaries under the pertinent corporate documents."  Keith's Opp'n to Wellin Defs.' Mot. for J. on the Pleadings 8.  This argument is unavailing.  It is true that the November 2009 Transaction invokes Delaware law in its choice of law provision.  However, none of the powers of attorney that Peter and Cynthia executed are Delaware documents.  Additionally, Keith has not alleged that Peter, Cynthia, or Marjorie owed him fiduciary duties under the Friendship Partners or Friendship Management operating agreements, which are subject to Delaware law.

8

725 S.E.2d 112 (S.C. Ct. App. 2012) (tolling the statute of limitations for a homeowners association to file claims against the developer for the time that the developer controlled the homeowners association). "Equitable tolling does not[, however,] require a showing that the defendant has made a misrepresentation to the plaintiff." <u>Magnolia North</u>, 725 S.E.2d at 125.

Keith's complaint alleges that his children continually misled him about the nature of the November 2009 Transaction. The Wellin Defendants respond that they committed no wrongdoing, and that the November 2009 Transaction was carried out at Keith's direction by his own estate planning team. If Keith's factual narrative prevails, he may somehow be able to show that equitable tolling applies in this case. If the Wellin Defendants' representations are accurate, then equitable tolling surely will not apply. Taking all of Keith's allegations as true and construing all inferences in the light most favorable to him, the court finds that Keith has sufficiently alleged that the relevant statute of limitations was equitably tolled by his children's alleged bad acts. As a result, the court cannot, at this early juncture, find that Keith's claims are time-barred.

Having dispensed with the arguments that Keith's claims are time-barred, the court now analyzes whether any of those claims survive scrutiny under Rule 12(c).

### 2. Counts 1 &2 – Breach of Fiduciary Duty as to Peter & Cynthia

The Wellin Defendants argue that Counts 1 and 2 – breach of fiduciary causes of action alleged against Peter and Cynthia – must fail in their entirety because neither Peter nor Cynthia acted against Keith's interests while they owed him a fiduciary duty.

9

"To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately resulting from the wrongful conduct of the defendant." Turpin v. Lowther, 745 S.E.2d 397, 401 (S.C. Ct. App. 2013). "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." O'Shea v. Lesser, 416 S.E.2d 629, 631 (S.C. 1992). In particular, whenever a principal designates another as his attorney in fact by a written power of attorney, "[t]he attorney in fact has a fiduciary relationship with the principal and is accountable and responsible as a fiduciary." S.C. Code § 62-5-501. As for the fiduciary duties owed by trustees, a trustee's broad and general duty to follow the terms and purposes of the trust in good faith does not arise unless and until the trusteeship is accepted. S.C. Code § 62-7-801, cmnt. (2005).

Defendants point out that while Peter and Cynthia were appointed as successor trustee and back-up successor trustee to the Keith S. Wellin Florida Revocable Living Trust, neither actually became trustee of that trust. Similarly, Cynthia, who had been named back-up power of attorney for her father, never actually became Keith's attorney-in-fact. The Wellin Defendants also contend that Peter did not act pursuant to his powers of attorney in connection to either the November 2009 Transaction or the 2013 Gifts.

### a. Count 2 - Cynthia

Keith's complaint alleges that Cynthia "was appointed Successor Power of Attorney" and "was a backup successor trustee of the Keith S. Wellin Florida Revocable

Living Trust." Compl. ¶¶ 104, 105. However, the complaint does not allege that Cynthia ever assumed the roles of Keith's attorney-in-fact or of trustee for the Keith S. Wellin Florida Revocable Living Trust. Though Keith now argues that Cynthia owed a fiduciary duty to Keith through her role as the manager of Friendship Management LLC, he makes no such allegation in his complaint.

Because the complaint does not allege that Cynthia ever acted as her father's attorney-in-fact or as the trustee of his living trust, Keith has failed to allege that Cynthia owed a fiduciary duty to him. If Cynthia did not owe a fiduciary duty to Keith, she could not have breached such a duty. As a result, the court grants judgment on the pleadings in favor of defendants with respect to Count 2, the breach of fiduciary duty claim against Cynthia.

### b.   Count 1 - Peter

Like Cynthia, Peter never became the trustee for Keith's living trust. Unlike Cynthia, Peter held power of attorney for Keith for several years, including during the time period relevant to the November 2009 Transaction and the 2013 Gifts. Because Peter was Keith's attorney-in-fact during the relevant time periods, and because the complaint alleges that Peter misled his father, retained his father's funds for this own benefit, and violated his duties as attorney-in-fact, Keith has sufficiently pleaded his breach of fiduciary duty claim against Peter.

As a result, the court denies judgment on the pleadings with respect to Count 1, the breach of fiduciary duty claim against Peter.

### 3. Count 3 – Aiding and Abetting Breach of Fiduciary Duty as to Marjorie

Count 3 of the complaint alleges that Marjorie aided and abetted her siblings' alleged breaches of fiduciary duty.  "The elements for the cause of action of aiding and abetting a breach of fiduciary duty are:  (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages." Vortex Sports & Entm't, Inc. v. Ware, 662 S.E. 2d 444, 448 (S.C. 2008).

To the extent Count 3 relates to alleged misconduct by Cynthia, this claim must fail because Keith has failed to properly allege a fiduciary claim against Cynthia. However, Count 3 is sufficiently pleaded to the extent that it relates to alleged breaches by Peter.  While not a model of detail, Keith's complaint sufficiently alleges all three elements of aiding and abetting breach of fiduciary duty as Marjorie's actions relate to her brother's alleged breaches.  See, e.g., Compl. ¶¶ 118-19 ("Defendant Marjorie W. King knowingly participated in the breach of fiduciary duty by participating in effectuating the November 2009 Transaction [and] . . . by supporting, receiving, and retaining the 2013 Gifts.").

As a result, the court grants judgment on the pleadings in favor of defendants only to the extent that Count 3 alleges aiding and abetting Cynthia's breaches of fiduciary duty.

### 4. Counts 4, 5, 8, and 9 – Fraud Claims and Negligent Misrepresentation as to Peter

The Wellin Defendants next argue that Keith has not sufficiently pleaded his fraud and negligent misrepresentation claims against Peter.

12

### a.    These claims meet the Rule 9(b) pleading standard.

Rule 9(b) of the Federal Rules of Civil Procedure states that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The Fourth Circuit has "elaborated that the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013) (internal quotations omitted).

Keith's complaint alleges that, sometime in November 2009, Peter visited Keith in Charleston and proposed that Keith execute the November 2009 Transaction, which was "tax-advantaged."  Compl. ¶¶ 50-51.  The complaint further states that Peter's statement that the transaction was "tax-advantaged" was false and that Peter obtained his father's consent to the November 2009 Transaction through this false statement.  Compl. ¶¶ 69, 124, 128.  These allegations are enough to survive the court's scrutiny under Rule 9(b).

### b.  These claims sufficiently allege reasonable reliance.

The Wellin Defendants next assert that the fraud and negligent misrepresentation counts fail because Keith cannot show that he reasonably relied on Peter's advice that the November 2009 Transaction and the 2013 Gifts were tax-advantaged and in Keith's best interest.  The Wellin Defendants essentially argue that it would be entirely unreasonable for Keith to rely on his son's casual statements rather than on the advice of his team of financial, accounting, and estate-planning professionals.

This argument fails at this early phase of the litigation. While Peter Wellin is not an attorney or accountant, he is a real estate developer and, as such, is presumably a sophisticated business man.[4] He was also his father's attorney-in-fact at the time that he allegedly induced his father to make the November 2009 Transaction and the 2013 Gifts. If Keith did, as alleged, rely on the advice of his son when making November 2009 Transaction and the 2013 Gifts, it would not necessarily have been unreasonable for him to do so.

For these reasons, the court denies the Wellin Defendants' motion for judgment on the pleadings as to the fraud and negligent misrepresentation claims, Counts 4, 5, 8, and 9.

### 4. Counts 6 and 7 – Breach of Contract and Breach of Contract Accompanied by Fraudulent Act as to Peter[5]

Next, the Wellin Defendants argue that they are entitled to judgment on the pleadings for Keith's breach of contract claims because the complaint fails to allege any breach of a contractual provision.

"To recover for a breach of contract, the plaintiff must prove: (1) a binding contract; (2) a breach of contract; and (3) damages proximately resulting from the breach." Hennes v. Shaw, 725 S.E. 2d 501, 506 (S.C. Ct. App. 2012). "To establish a claim for breach of contract accompanied by a fraudulent act, a party must show: (1) a

---

[4] In an affidavit, Peter explains that he "practiced for about 5 years as an emergency room physician before being drawn into commercial real estate." Peter Wellin Aff. ¶ 2.

[5] Count 7 of the complaint does not, in its caption, specify that it only applies to Peter. However, Peter is the only defendant mentioned in Count 7. As a result, the court presumes that Keith asserts this claim only against Peter.

breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." <u>D.R. Horton, Inc. v. Westcott Land Co.</u>, 730 S.E.2d 340, 354 (S.C. Ct. App. 2012). Execution of a durable power of attorney is analogous to execution of a contract. <u>See</u> <u>In re Thames</u>, 544 S.E.2d 854, 857 (S.C. Ct. App. 2001).

Keith has sufficiently alleged that Peter agreed to act as his father's power of attorney and that Peter breached the provisions of those agreements that required him to uphold his duties of loyalty and good faith. Keith has also sufficiently alleged that Peter acted fraudulently by telling Keith that the November 2009 Transaction and the 2013 Gifts would be financially beneficial to Keith, and that Keith suffered damages as a result. <u>See</u> Compl. ¶¶ 157-61.

For these reasons, the court denies the Wellin Defendants' motion for judgment on the pleadings as to Counts 6 and 7, breach of contract and breach of contract accompanied by fraudulent act.

### 5. Count 10 - Rescission of 2013 Gifts as to Peter, Cynthia, and Marjorie

The Wellin Defendants also argue that they are entitled to judgment on the pleadings with respect to Count 10, Keith's claim for rescission of the 2013 Gifts on the basis of mistake of fact.

As the South Carolina Court of Appeals has explained,

An <u>inter</u> <u>vivos</u> gift is a contract between the living which takes place by the mutual consent of the donor, who divests himself of the property given in order to transmit the title to it to the donee gratuitously, and the donee,

who accepts and acquires legal title thereto. It operates, if at all, in the donor's lifetime, <u>immediately and irrevocably</u>.

<u>Baptist Found. for Christian Educ. v. Baptist Coll. at Charleston</u>, 317 S.E.2d 453, 457 (S.C. 1984) (emphasis added); <u>see also</u> <u>Barnwell v. Barnwell</u>, 476 S.E.2d 492, 498-99 (S.C. Ct. App. 1996) (explaining that an inter vivos gift is irrevocable); 38 Am. Jur. 2nd <u>Gifts</u> § 66 ("An inter vivos gift, made without condition, becomes irrevocable upon acceptance."). There are three elements to an <u>inter vivos</u> gift: (1) a donative intent to transfer the property; (2) delivery by the donor; and (3) acceptance by the donee. <u>Worrell v. Lathan</u>, 478 S.E.2d 287, 288 (S.C. Ct. App. 1996). "If a donor intends to confer on another ownership of his property, and if he proceeds so far as to do it, then the gift is complete." <u>Baptist Found.</u>, 317 S.E.2d at 457 (citing <u>Meyerson v. Malinow</u>, 97 S.E.2d 88 (S.C. 1957)).

The 2013 Gifts qualify as irrevocable <u>inter vivos</u> gifts. Keith had a donative intent when he gave $10 million each to Wendy, Peter, Cynthia, and Marjorie in January 2013. <u>See</u> Compl. ¶ 73 ("[Keith] liquidated enough shares of BRKa to make a gift of $10,000,000 each to [Peter, Cynthia, and Marjorie]"); <u>id.</u> ¶ 75 ("He also gifted $10 million to his wife, Wendy Wellin."). Keith delivered the gifts to his children and his wife, and they accepted them. <u>Id.</u> at ¶¶ 71-78. Even if Keith misunderstood his finances when he decided to give the 2013 Gifts, the gifts cannot be revoked. The out-of-state law upon which Keith relies is unhelpful in light of South Carolina cases that state that <u>inter vivos</u> gifts are irrevocable.

16

In light of the foregoing, the court grants judgment on the pleadings in favor of defendants as to Count 10 of Keith's complaint, which seeks rescission of the 2013 Gifts.

### 6.  Count 11 - Unjust Enrichment as to All Defendants

Next, the Wellin Defendants argue that they are entitled to judgment on the pleadings as to Keith's unjust enrichment claim because the subject matter of this claim is governed by express contract.

"An action for unjust enrichment cannot lie in the face of an express contract." Turner v. Rams Head Co., No. 05-cv-02893, 2007 WL 2579386, at *7 (D.S.C. Sept. 4, 2007) (quoting 66 Am. Jur. 2d Restitution & Implied Contracts § 24 (Thompson/West 2007)); Flagstar Bank, F.S.B. v. First Citizens Bank & Trust Co., No. 09-cv-00876, 2009 WL 1707941, at *6 (D.S.C. June 17, 2009) ("[T]here can be no claim for unjust enrichment . . . where the relationship is governed by an express contract."). While South Carolina law allows a party to pursue an unjust enrichment claim as an alternative to a breach of contract claim, the existence of an express contract is nevertheless a defense to an unjust enrichment claim.  Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co., 820 F. Supp. 2d 703, 707 (D.S.C. 2007).

Count 11 of Keith's complaint states that Keith "suffered a financial loss as a direct and proximate result of Defendants' retention of Plaintiff's [Berkshire Hathaway Shares] transferred by the November 2009 Transaction and funds from the 2013 Gifts." Compl. ¶ 201.  An express written agreement governs the November 2009 Transaction. However, it appears that the 2013 Gifts were not governed by a contract.

Because an express contract undoubtedly governs the November 2009 Transaction and because a quasi-contract claim cannot exist alongside an express contract, the court grants the motion for judgment on the pleadings with respect to Count 11 to the extent that claim relates to the November 2009 Transaction.

### 7. Count 12 – Constructive Trust As to All Defendants

The Wellin Defendants also contend that Keith's constructive trust claim must fail because a constructive trust is a type of remedy, and cannot be sought through a separate claim for relief.

The Wellin Defendants rely on an opinion from the South Carolina Court of Appeals for the proposition that "[a]uthority exists to support the proposition that 'a claim for imposition of a constructive trust is not an independent cause of action.'" Hale v. Finn, 694 S.E.2d 51, 57 (S.C. Ct. App. 2010) (quoting Morrison v. Morrison, 663 S.E.2d 714, 717 (Ga. 2008)).  This reliance is misplaced, as South Carolina courts routinely analyze constructive trust claims on their merits and do not simply dismiss them as remedies that cannot be properly pleaded as claims.  See, e.g., Carolina Park Assocs., LLC v. Marino, 732 S.E.2d 876, 878-79 (S.C. 2012) (finding that a "constructive trust action" was properly dismissed because plaintiffs had failed to plead the proper elements of such a claim); McNair v. Rainsford, 499 S.E.2d 488, 501 (S.C. Ct. App. 1998) (analyzing the validity of plaintiff's "constructive trust cause of action"); Dye v. Gainey, 463 S.E.2d 97, 99 (S.C. Ct. App. 1995) ("[W]e hold appellant pled facts sufficient to state a cause of action for constructive trust . . . .").

18

As a result, the court denies judgment on the pleadings with respect to Count 12,

Keith's claim for constructive trust.

### 8.   Counts 13 & 14 – Appointment of Receivers

Finally, the Wellin Defendants argue that Counts 13 and 14 fail because Keith has

failed to demonstrate the necessity of an appointment of a receiver.

While the appointment of a receiver is within the judge's discretion, it is "a

drastic remedy, and should be granted only with reluctance and caution." Midlands Util.,

Inc. v. S.C. Dep't of Health & Envtl. Control, 391 S.E. 22d 535, 538 (S.C. 1990).  A

receiver may be appointed by a judge

> Before judgment, on the application of either party, when he establishes an
> apparent right to property which is the subject of the action and which is in
> the possession of an adverse party and the property, or its rents and profits,
> are in danger of being lost or materially injured or impaired . . . .

S.C. Code § 15-65-10.

Keith has not yet established that he is entitled to the appointment of a receiver in

this case.  However, it would be premature to strike his two claims for appointment of a

receiver.  As a result, the court denies defendants' motion for judgment on the pleadings

as to Counts 13 and 14.

In summary, the court grants the Wellin Defendants' motion for judgment on the

pleadings as to Counts 2 and 10; grants the motion in part as to Counts 3 and 11; and

denies the motion as to the remaining counts of Keith's complaint.

**B.  Keith's Motion to Dismiss SD Trust Without Prejudice**

Keith moves to voluntarily dismiss SD Trust pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  Keith argues that SD Trust should be dismissed without prejudice because it has been removed as the corporate trustee for the Trust and, therefore, is no longer a necessary party to this case.  SD Trust objects to dismissal without prejudice and argues that it should be dismissed from this case with prejudice for the reasons enumerated in its motion for judgment on the pleadings.[6]

The Fourth Circuit has expressed the general rule that "a plaintiff's motion for voluntary dismissal without prejudice under Rule 41(a)(2) should not be denied absent plain legal prejudice to the defendant."  Gross v. Spies, 133 F.3d 914, at *5 (4th Cir. Jan. 13, 1998) (table) (collecting cases).  The Fourth Circuit has explained that, "for purposes of Rule 41(a)(2), prejudice to the defendant does not result from the prospect of a second lawsuit.  Moreover, the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation will not serve to bar a second suit."  Davis, 819 F.2d at 1274-75 (internal citations omitted).  Similarly, "the mere filing of a motion for summary

_____

[6] SD Trust argues – in both its motion for judgment on the pleadings and its opposition to Keith's motion for voluntary dismissal – that all claims against it should be dismissed with prejudice because it is not a necessary party to this case.  Rule 19 of the Federal Rules of Civil Procedure governs the joinder of necessary party.  The rule states that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties . . . .

Fed. R. Civ. P. 19(a)(1).  The general rule is that "[a] trustee is a necessary party to any suit or proceeding involving a disposition of trust property or funds . . . ."  76 Am. Jur. 2d Trusts § 611. Because SD Trust was removed as corporate trustee in November 2013, the argument over whether SD Trust was a necessary party is now largely academic.  As it no longer controls the assets that figure into this lawsuit, SD Trust should no longer be a party to this case.

20

judgment is not, without more, a basis for refusing to dismiss without prejudice." Fid. Bank PLC v. N. Fox Shipping N.V., 242 F. App'x 84, 89 (4th Cir. 2007) (citing Andes, 788 F.2d at 1036 n.4).  When determining whether a party has suffered plain legal prejudice such that Rule 41(a)(2) dismissal is warranted, district courts should consider a number of factors, including "the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation."  Howard v. Inova Health Care Servs., 302 F. App'x 166, 178-79 (4th Cir. 2008) (internal quotations omitted); Spies, 133 F.3d 914, at *5.

Considering the foregoing factors, the court finds that Keith's voluntary motion to dismiss SD Trust without prejudice should be granted.  First, while SD Trust has incurred almost $200,000 in litigation costs, this case is nevertheless in its infancy.  The parties have conducted no discovery and the pending dispositive motion is one for judgment on the pleadings, not for summary judgment.[7]

Second, Keith has neither excessively delayed this case nor displayed a lack of diligence.  The parties jointly consented to extensions of time in this case through August 27, 2013.  Since that time, defendants have filed a number of substantive motions to which Keith has timely responded.

Third, Keith has ably explained why a voluntary dismissal without prejudice is appropriate at this time.  At the hearing held on November 18, 2013, Keith's counsel

---

[7] A motion for judgment on the pleadings is decided under the same standard as a Rule 12(b)(6) motion to dismiss, not a Rule 56 motion for summary judgment.  Deutsche Bank Nat'l Trust Co., 361 F. App'x at 529.

21

conceded that SD Trust had committed no wrongdoing, but asserted that it was a necessary party to the case because it was the corporate trustee for the Wellin Family 2009 Trust.  Keith only sought the voluntary dismissal of SD Trust after SD Trust had ceased to be the corporate trustee for the Wellin Family 2009 Irrevocable Trust.  Keith seeks voluntary dismissal without prejudice for two reasons: (i) SD Trust may again become a necessary party if it regains corporate trusteeship of the Trust; and (ii) Keith may re-allege claims against SD Trust if discovery uncovers wrongdoing by SD Trust. These reasons sufficiently explain why dismissal without prejudice would be appropriate.

Fourth, as noted above, this case is still in its preliminary stages.  The parties have not taken discovery and no scheduling order has been entered.  <u>Cf.</u> <u>Fid. Bank PLC</u>, 242 F. App'x at 89 (holding that the court would "not second guess the district court's assessment that the 'case [was] at an early stage'" when a joint pretrial order had been filed by the parties but no discovery had yet been taken).  While the parties have already spent a great deal of money litigating the case thus far, those expenses speak more to the high value of the assets at issue than to the case's procedural posture.

For all these reasons, the court grants Keith's motion for voluntary dismissal and dismisses SD Trust from this case without prejudice.  Because the court has found that SD Trust must be dismissed from this case, the court finds that SD Trust's motion for judgment on the pleadings is moot.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** the Wellin Defendants' motion for judgment on the pleadings, ECF No. 41;

**FINDS AS MOOT** defendant SD Trust's motion for judgment on the pleadings, ECF No. 59; and **GRANTS** plaintiff Keith Wellin's motion for voluntary dismissal, ECF No. 81. Defendant SD Trust is hereby **DISMISSED** from this case without prejudice.

   AND IT IS SO ORDERED.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 22, 2014**
**Charleston, South Carolina**

23