**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| WENDY WELLIN, as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011, | ) ) ) ) ) | **C.A. NO. 2:13-CV-1831-DCN** |
| | ) | **SPECIAL MASTER'S** |
| PLAINTIFF, | ) ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) ) | |
| | ) | |
| PETER J. WELLIN, et al., | ) ) | |
| DEFENDANTS, | ) ) | |
| _____ | ) | |
| LARRY S. MCDEVITT, as Trustee of the Wellin Family 2009 Irrevocable Trust, | ) ) | **C.A. NO. 2:13-CV-3595-DCN** |
| | ) | |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | |
| PETER J. WELLIN, et. al., | ) ) | |
| DEFENDANTS, | ) ) | |
| | ) | |
| _____ | | |
| PETER J. WELLIN, et. al., | ) ) | |
| PLAINTIFF, | ) ) | |
| | ) | **C.A. NO. 2:14-CV-4067-DCN** |
| vs. | ) ) | |
| | ) | |
| WENDY WELLIN, individually and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011, | ) ) ) ) ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

1

The above-captioned matters are before the undersigned, sitting as Special Master, pursuant to the Order of the United States District Court for the District of South Carolina, Charleston Division, Hon. David C. Norton presiding, dated February 17, 2015.  See ECF Nos. 270, 258, and 35.[1]  The following non-dispositive discovery motions were heard on April 21, 2015:

1) Motion to Compel - Schwartz v. Wellin, et. al. (Schwartz) – 2:13-cv3595-DCN, ECF No. 83;

2) Motion to Compel – Schwartz[2] – ECF No. 183;

3) Motion to Compel – Wellin v. Wellin, et. al. (Wellin I) – 2:13-cv-1831-DCN, ECF No. 234 and Schwartz, ECF No. 201;

4)  Motion to Quash –Schwartz, ECF No. 223;

5) Motion to Quash– Wellin I, ECF No. 250, 277

6) Motion for Protective Order- Wellin I, ECF No. 276

## HISTORY OF THE CASE

These lawsuits involve multiple issues surrounding the handling and disposition of the assets, trusts, and estate of Keith S. Wellin (Keith).  Prior to 2003, Keith Wellin amassed a sizable fortune, which included a large investment in the stock of Berkshire Hathaway, Inc. (BRK).  In 2003, with the help of his estate planning attorney, Thomas Farace of the firm Nixon Peabody, Keith formed Friendship Partners, LP, and transferred 896 shares of BRK stock into the partnership in return for a 98.9% ownership interest.  At the same time, Keith formed

---

[1] These cases have been consolidated for pre-trial purposes.

Friendship Management, LLC, naming his daughter, Cynthia W. Plum, as its Manager, and made Friendship Management LLC the general partner of Friendship Partners, LP. Between 2003 and 2009, Keith's Will and Revocable Trust provided that Keith's full interest in Friendship Partners, LP as well as a majority of the rest of his estate, would pass to his three children, Peter J. Wellin, Cynthia W. Plum and Marjorie W. King, at his death.

Keith modified his estate plan in 2009, again using Thomas Farace, by creating the Wellin Family 2009 Irrevocable Trust, which is at the center of this litigation. In this trust, the situs of which was designated as South Dakota, Keith named his three children, Peter S. Wellin, Cynthia W. Plum and Marjorie W. King, as the only named beneficiaries, and designated them as the only individual trustees. Keith named the South Dakota Trust Company, LLC as the sole corporate Trustee, and Thomas Farace was designated as the Trust Protector. The trust provided that the three Wellin children could not be removed as trustees by the Trust Protector, and also designated them as members of the trust's distribution committee. To fund the trust, Keith sold his 98.9% interest in Friendship Partners, LP to the trust in return for a promissory note having a face value of approximately Fifty Million Dollars ($50,000,000).[3] The trust was drawn to be an "intentionally defective grantor trust," as a result of which any income generated by the trust would be taxable to Keith, as the grantor, rather than to the trust.

Keith Wellin filed suit against his children on July 3rd, 2013. (Civil Action No. 2:13-cv-01831-DCN)(Wellin I), seeking a return of all assets in the Trust and Friendship Partners, LP,

---

[2]  This suit was initiated by Lester S. Schwartz, as Trust Protector of the Wellin Family 2009 Irrevocable Trust. Thereafter, Larry S. McDevitt, as Trustee of the Wellin Family 2009 Irrevocable Trust was substituted for Schwartz as Plaintiff pursuant to Fed. R. Civ. P. 17(a)(3).
[3]  According to the parties, at that time, the BRK stock was worth substantially more than the Fifty Million Dollar value of Keith's Friendship Partners, LP interest because Keith had divested himself of control over the Partnership by forming Friendship Management, LLC, naming it as the general partner of Friendship partners, LP, and vesting

and asserting that the Defendant Wellin children had defrauded him into entering into the 2009

transactions.    Initially, Keith sought and received a Temporary Restraining Order ("TRO"),

prohibiting the Wellin children from selling any of Friendship Partners, LP or distributing any

assets from the Trust.  However, on November 18, 2013, the Court held a hearing to determine

whether or not to extend the TRO or enter a preliminary injunction.  At the hearing, the Court

indicated it was inclined to dissolve the TRO.  Two days later, on November 20, 2013, Keith

executed various documents, including those which effectuated the removal of Thomas Farace as

the designated Trust Protector and substituted Lester Schwartz in his stead.   Schwartz then

removed the designated corporate Trustee, South Dakota Trust Company, LLC, named Brown

Brothers Harriman Trust Company of Delaware, N.A. as the corporate Trustee, and executed

documents purporting to effect the following changes to the Trust:

1)  Changing the situs of  the Trust from South Dakota to Delaware;

2)  Limiting the beneficiaries' right to appoint trust distributions;

3)  Restricting the right of the Wellin children as trustees to change the Trust Protector;

4)  Deleting the Trust provision that granted the corporate Trustee the contingent power
    to add beneficiaries;

5)  Requiring that certain actions taken by the Trustee be taken by unanimous vote of
    the Trustees in office; and

6)  Granting the Trust Protector the authority to settle litigation brought against or on
    behalf of the Trust.

In addition, Keith executed documents intended to reacquire some of the Trust assets by

substituting the Note owed to him by the Trust, having a value of $50,211,466.55, for a 58%

interest in Friendship Partners, LP, pursuant to Article IX(A) of the Trust.  The newly executed

---

control of Friendship Management, LLC in the Wellin children.  Thus, Keith's partnership interest was discounted

documents made further changes designed to end the "grantor status" of the Trust, including releasing the power of trust asset substitution, the effect of which would be to shift the tax burden for payment of the Note to the Trust.

The Defendant Wellin children claim that the newly executed documents purported to include modifications to the Trust providing Schwartz with authority to settle any litigation pending against the Trust. Defendants assert that Schwartz and his attorneys were paid by Keith Wellin during his lifetime, are now paid by his Widow, Wendy C. H. Wellin, and that Schwartz remains aligned with their position. Consequently, they maintain that Schwartz could have immediately "settled" the Wellin I litigation following the events of November 20, 2013 by transferring the assets of the Trust to Keith, which they assert would have been in derogation of his fiduciary responsibilities to the Trust beneficiaries. They further assert that the changes made regarding the Trust by Keith and Lester Schwartz on November 20, 2013, were ineffective, invalid and/or incomplete.

The Defendants in Wellin I requested and received an emergency hearing the following day, but finding no showing of irreparable harm, the Court concluded neither side had established a basis for entering or sustaining a temporary restraining order. The Court dissolved the existing TRO, and declined to grant one to the Defendants. Within a few days following the hearing, on or about December 1, 2013, the Defendant Wellin children took the steps they claim were necessary to sell the BRK stock, and ultimately distribute approximately $32 million to each of the them, leaving approximately $50 million in the Trust to satisfy the Note to Keith. They maintain that this was necessary to protect the trust and its assets, and that no money has been spent other than for the expenses of this litigation.

---

in value based upon this lack of control.

Following this action by the Defendant Wellin children, on December 27, 2013, Lester Schwartz, as the newly designated Trust Protector, brought suit against Keith, the Defendant Wellin children, individually, and as Co-Trustees and Beneficiaries of the Wellin Family 2009 Irrevocable Trust, Friendship Partners, LP, Friendship Management, LLC, and Cynthia W. Plum, as Manager of Friendship Management, LLC., seeking return of the distributed assets, as well as other damages caused by the sale of the BRK stock.  That suit was filed in the Probate Court for Charleston County, South Carolina, but the Defendant Wellin children removed the action to this Court, and it is currently pending as Civil Action 2:13-cv-3595-DCN.     Schwartz dismissed his claims against Keith and Friendship Partners on January 3, 2014.  On January 17, 2014, the Defendants answered the complaint and asserted counterclaims against both Schwartz and Keith.

Defendants challenged Schwartz's standing to bring the suit as Trust Protector, and the Court ruled he did not have standing on April 17, 2014.  Thereafter, Larry S. McDevitt agreed to serve as Trustee, and was so appointed by Lester Schwartz in his capacity as Trust Protector on May 2, 2014.  Larry S. McDevitt, as Trustee, was then substituted as Plaintiff for Schwartz pursuant to Fed.R.Civ.P. 17(a)(3); Order of Judge Norton filed October 9, 2014, 2:13-cv-03595-DCN, ECF No. 173.

Keith Wellin died during the litigation in November, 2014, and his widow, Wendy Wellin, was substituted in Wellin I as Plaintiff in her capacity as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001.

The factual allegations and procedural histories of these cases are extensively outlined in the Order of Judge Norton issued in Wellin I, ECF No. 158, on June 28, 2014.  For purposes of these motions, factual allegations are considered in a light most favorable to the non-moving

party where appropriate.  Facts relevant to a particular motion are discussed in connection with the issue to which they appertain.

Having considered the arguments of counsel, and after reviewing the pleadings, memoranda and exhibits submitted by the parties, I make the following report and recommendations for disposition of the motions under consideration.

## I.   MOTION TO COMPEL
### Schwartz v. Wellin, et. al. (Schwartz/McDevitt) – 2:13-cv-03595-DCN, ECF No. 83

On March 10, 2014, Plaintiff served his First Set of Interrogatories, First Set of Requests for Production of Documents and Tangible Things, and First Set of Requests for Admissions upon the Defendants.  All three documents were directed to the Defendants Peter J. Wellin, Cynthia W. Plum, and Marjorie W. King, individually and as Co-Trustees and Beneficiaries of the Wellin Family 2009 Irrevocable Trust.  The documents were also directed to Friendship Management, LLC and Cynthia W. Plum as Manager of Friendship Management, LLC.  Each of the named Defendants was collectively referred to as "Defendants" within the discovery requests.

Responses to this discovery were due on April 9, 2014.  However, Plaintiff's counsel consented to a one week extension thereby rendering April 16, 2014 the responsive deadline.  On April 16, 2014, the Plaintiff was served with Responses to the Interrogatories (INT), Requests for Production (RFP) and Requests for Admissions (RFA).  Each of these responses indicated it was made on behalf of Peter J. Wellin, Cynthia W. Plum and Marjorie W. King in their individual capacities.

On May 2, 2014, Plaintiff's counsel sent a letter to Defendants' counsel pointing out the alleged deficiencies in the responses, including notification that no responses had been received

7

on behalf of Peter J. Wellin, Cynthia W. Plum and Marjorie W. King in their capacities as Co-Trustees of the Wellin Family 2009 Irrevocable Trust.  Similarly, Plaintiff's counsel noted that no responses had been received by Friendship Management, LLC or Cynthia W. Plum, as Manager of Friendship Management, LLC.  Four days later, on May 6, 2014, Defendants served upon Plaintiff amended responses on behalf of all Defendants, purporting to include responses on behalf of Peter J. Wellin, Cynthia W. Plum and Marjorie W. King in their capacities as Co-Trustees, together with Friendship Management, LLC and Cynthia W. Plum, in her capacity as manager of Friendship Management, LLC.  There were no material changes to the responses. Accompanying the amended responses was a cover letter from defense counsel explaining that the failure to include these Defendants in the initial responses was caused by a clerical error. [4]

### A.  REQUESTS FOR ADMISSIONS

#### 1)  <u>Failure to Timely Respond</u>

Plaintiff McDevitt first argues that the Requests for Admissions should be deemed admitted because the Defendants, Wellin, Plum and King acting in their capacities as Co-Trustees of the Wellin Family 2009 Irrevocable Trust, Friendship Management, LLC and Cynthia W. Plum as Manager of Friendship Management, LLC did not respond to the Requests for Admission within 30 days as required by Fed. R. Civ. P. 36(a)(3).  Rule 36(a)(3) reads in pertinent part as follows:

> **Time to Respond; Effect of Not Responding.**  A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  A shorter

---

[4] Defendants explained that the Plaintiff, Keith Wellin, in "Wellin I," had previously served Interrogatories and Requests for Admissions upon Defendant Peter Wellin, Cynthia Plum and Marjorie W. King.  In their response to the discovery requests in "Schwartz", the Defendants used the Requests for Admissions and Interrogatories responses from "Wellin I" as a beginning template to draft and complete the responses in "Schwartz". Inadvertently, they failed to change the responses and preamble from "Peter Wellin, Cynthia Plum and Marjorie W. King" to the all-encompassing word "Defendants," thus excluding Wellin, Plum and King in their capacity as Co-Trustees, Friendship Management,  LLC and Cynthia Plum as Manager.

or longer time for responding may be stipulated to under Rule 29 or be
ordered by the court.

Fed. R. Civ. P. 36(a)(3).

Plaintiff argues that a finding of admission is warranted because Wellin, Plum, and King
as Co-Trustees, Friendship Management, LLC, and Plum as Manager of Friendship
Management, LLC did not seek an extension of time in which to reply to the Request for
Admission, nor did they timely reply.  Furthermore, no formal motions to amend their answers
were made pursuant to Rule 36(b). [5]

Defendants do acknowledge that they failed to include Wellin, Plum and King in their
Co-Trustee capacity, Friendship Management, LLC and Cynthia Plum, as Manager of Friendship
Management, LLC as responding Defendants in the initial answers to Plaintiff's Requests for
Admission.  However, they argue that this was a simple oversight that was caused by a clerical
error.  They further point out that responses are the same for all Defendants, and were timely
made by Wellin, Plum and King, albeit in their individual capacities, and that the clerical mistake
was corrected within four days after being notified of the oversight, and within 20 days of the
date the original responses were served.  Finally, Defendants argue that Plaintiff has failed to
establish any prejudice caused by the clerical mistake, particularly in light of the fact that the
subsequent answers were virtually identical to those timely served.

Rule 36(a)(3) provides that the court may order additional time to respond to Requests for
Admission.  Rule 36(b) further provides that the court may, upon motion, "permit the admission
to be withdrawn or amended."  Fed. R. Civ. P. 36(b).  Under similar circumstances, courts have

---

[5] Federal Rules Civil Procedure 36(b) reads in pertinent part as follows: **Effect of an Admission; Withdrawing or Amending It**.  A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.  Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.  . . . .

recognized that a formal written motion to withdraw is not necessary. "A request to withdraw usually may be made orally or may be imputed from a party's action. Courts have even found that a late response to requests for admission is equivalent to a withdrawal of a deemed admission." 7 <u>Moore's Federal Practice</u> §36.13 (Matthew Bender 3d ed.); <u>Quasius v. Schwan Food Co.,</u> 596 F.3d 947, 952 (8th Cir. 2010); <u>see also</u>, <u>Szatanek v. McDonnell Douglas Corp.</u>, 109 F.R.D. 37 (1985)(permitting Defendant to file a late answer to Request for Admission although no motion to withdraw or amend had been made, and noting that courts have adopted the position that permitting a late filing is equivalent to permitting a party to withdraw or amend made under Rule 36(b)).

As stated in <u>Szatanek</u>, 109 F.R.D. at 39-40,

> Although the failure to take any action within the prescribed period results in admission of facts stated therein, a court enjoys the discretion to permit a party to file such requests subsequent to the expiration of the time period when the delay was not occasioned by lack of good faith, when such filing will facilitate a proper determination of the merits and when the untimely response will not unduly prejudice the requesting party. (internal citations omitted)(emphasis added).

The Wellin children in their individual capacities responded with an answer to the Requests for Admission in a timely fashion. Having answered these requests individually, there is no basis for claiming surprise by the adoption of the same answers in the subsequent responses amended solely to include the Defendant LLC, and the individual defendants in their capacity as Co-Trustees and as Manager. Plaintiff does not claim any such surprise, and none can be discerned under these circumstances.

Furthermore, the Plaintiff does not argue, nor has he identified, any prejudice resulting from the 20 day delay in responding to the Request for Admission.[6] As the <u>Szatanek</u> Court

---

[6] The fact that the plaintiff will now have to meet the burden of proving his case and convincing the fact finder of its truth does not constitute prejudice, even though it will be time consuming and cost additional money. <u>Brook</u>

found, in striking a balance between the diligence of litigation and the interests of justice, it is evident that the interests of justice will not be furthered by determining all issues as to liability in this lawsuit on the basis of this missed deadline where, as here, the late responses are the same as the timely responses, the deadline was missed by only a few days as a result of an inadvertent clerical mistake, and no prejudice to the Plaintiff has resulted. See Szatanek, 109 F.R.D. at 41.

For the foregoing reasons, I recommend that the Plaintiff's Motion to deem the Requests for Admission to be admitted by the Defendants Wellin, Plum and King in the capacities as Co-Trustees of the Trust; Friendship Management, LLC and Cynthia W. Plum, as Manager of Friendship Management, LLC be denied, and that the amended answers be accepted as responses to the Plaintiff's Request for Admissions.

## 2) Inadequate Reponses to Request for Admissions Nos. 2, 3, 4, 5, 6, 10, 12 and 25

Next, the Plaintiff asserts that the Defendants' responses to Requests for Admission Nos. 2, 3, 4, 5, 6, 10, 12 and 25 are inadequate and improper.  The responses to those requests claim that there is a lack of sufficient information with which to answer those requests; however, Plaintiff argues Defendants do not explain in what regard there is a lack of sufficient information, nor do they state that they have made a reasonable inquiry and that the information they know or can readily obtain is insufficient to enable them to admit or deny the requests.

Fed. R. Civ. P. 36(a)(4) states as follows:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify or answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest.

---

Village North Associates v. General Electric Co., 686 F.2d 66, 70 (1st Cir. 1982)(the prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth.  Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, and because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions).

> The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

The primary purpose of Rule 36 is to "facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Frontier–Kemper Constructors, Inc. v. Elkhorn Coal Co., Inc., 246 F.R.D. 522 (S.D.W.Va. 2007) (citing Fed. R. Civ. P. 36, Advisory Committees' Note (1970 amendment)); see also, 8A Charles Allen Right, Author R. Miller and Richard L. Marcus, Federal Practice and Procedure §2252 (2d ed. 1994).

Each of these requests identifies a specific document and asks the responding party to admit that [the signer] executed the respective document on a specific date. In response to the Requests for Admission, the Defendants answered that they admitted the document attached as an exhibit to the request "is a copy of a document the Defendants received" entitled [document name], but the Defendants "do not have sufficient information to admit or deny that [the signer] executed such document on [the date].

The Defendants argue that these requests seek an admission of authenticity of signatures appearing on the document to which they were not witnesses and thus, they can neither admit nor deny the requests. I conclude the Defendants have not complied with the requirements of Rule 36(a)(4), and should be required to further explain their response.

Each request asks the Defendants to admit that the document in question is "true, correct and authentic." There is no specific objection raised by the Defendants to these Requests for Admissions. It seems clear Plaintiff seeks to establish the authenticity of the documents in question, which accomplishes the purpose of the Rule to narrow the issues by identifying those

matters that can be eliminated as issues.  Under Rule 36(a)(4), it was incumbent upon he Defendants to state that they had made a reasonable inquiry and that the information the Defendants know or can readily obtain is insufficient to enable them to admit or deny the request.

In their responses, Defendants do not address whether the document identified in each request and attached as an exhibit is a true document, a correct document, or an authentic document.  They simply assert that they do not have sufficient information with which to admit or deny whether the person whose signature appears on the document executed the document on the date noted on the document.  This response is inadequate.

Rule 36(a)(4) requires that a denial fairly respond to the substance of the matter, which in this case includes whether or not the document is true, correct and authentic. Further, as noted in House v. Giant of Maryland, LLC, 232 F.R.D. 257, 262 (E.D.Va. 2005),  if the responding party finds the wording of a Request for Admission imprecise, he should set forth a qualified answer that fairly meets the substance of the request.  Thus, if, for example, Defendants' only reason for questioning the truth, correctness or authenticity of the document identified in the request is because they were not present when it was allegedly executed, and have no basis for verifying the accuracy of the date or the signature, they should so state that in their answer in order to fairly respond to the matter.  Such a construction of the Rule serves the purpose of narrowing the issues where possible, and identifying those issues which cannot be stipulated.  On the other hand, if Defendants have other grounds for questioning the truth, correctness and/or authenticity of a document, fairly responding to the substance of the matter requires that they identify those grounds.  Again, this accomplishes the purpose of the Rule.

Finally, to the extent Defendants neither admit nor deny, it is incumbent upon them to state in their answer that they have made reasonable inquiry and that the information they know or can readily obtain is insufficient to enable them to admit or deny.   What constitutes "reasonable inquiry" and what material is "readily obtainable" depends upon the facts of each case. T. Rowe Price Small-Cap Fund Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 42 (S.D.N.Y.1997).   Generally, a "reasonable inquiry" is limited to review and inquiry of those persons and documents that are within the responding party's control. Id.   Under certain circumstances, however, parties may be required to inquire of third parties to properly respond to requests for admission. Hanley v. ComoInn, Inc., 2003 WL 1989607 (N.D. Ill. 2003). Reasonable inquiry includes investigation and inquiry of any of [a party's] officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response. Oppenheimer., 174 F.R.D. at 42.

In this case, Plaintiff points out that, in responding as to documents bearing the alleged signature of Lester Schwartz in his capacity as Trust Protector, Defendants have interviewed and deposed Schwartz with regard to the documents in question.  Additionally, Keith Wellin, the alleged signer of some of the documents, is certainly no stranger to the Defendants, and the Court cannot presume that reasonable inquiry would fail to provide a reasonable basis for concluding his signature and date on a document is accurate, or conversely, is not accurate. Furthermore, Plaintiff argues that extensive discovery has already been conducted between the parties, including discussions with signatories to some of these documents, and therefore the Defendants have further information available to help them answer these requests.  However,

generally, it is recognized that there is no obligation to question unsworn third parties, or to accept the assertions of the opposing party. Hanley, Id. at 2.

Consequently, I conclude the Defendants should be required to supplement their answer to each of these above identified Requests for Admission within 15 Days in order to (a) address the question of whether or not the document is a true, correct and authentic copy of the document; and (b) comply with the requirements of Rule 36(a)(4) to state that the party has made a reasonable inquiry, to include a detailed description of what reasonably inquiry has been made to determine whether or not the documents are true, correct and authentic, as well as whether they were executed by the purported signer on the day as stated in each of the documents.

### 3)  Inadequate Response to Request For Admission No. 12

In Request For Admission No. 12, Plaintiff requests that the Defendants admit or deny "Keith S. Wellin (the Grantor) had not been declared by a court of competent jurisdiction to be incapacitated or incompetent and two licensed physicians familiar with Keith S. Wellin had not certified in writing that he was incapacitated or incompetent" when four documents identified within the request were executed by Keith S. Wellin, each document being attached as an exhibit to the request.  The Defendants responded that they did not have sufficient information to admit or deny the above request.  However, their response does not articulate that each answering Defendant has made reasonable inquiry and that the information the Defendant knows or can readily obtain is insufficient to enable the Defendant to admit or deny.

The Defendants have had access to Keith S. Wellin's medical records for a substantial period of time during the course of this litigation, as well as a mental health evaluation conducted pursuant to the order of the Court.  Under these circumstances, the response is inadequate for the same reasons articulated in the previous subsection.  The answer does not state

that the answering party made reasonable inquiry or that the information it knows or can readily obtain is insufficient to enable it to admit or deny.  As noted previously, a "reasonable inquiry" requires review and inquiry of those persons and documents that are within the responding party's control.  Oppenheimer., 174 F.R.D. at 42.  As in the previous request, if the Defendants find the wording of the Requests for Admission to be imprecise, then they should set forth a qualified answer that fairly meets the substance of the request.  House, 232 F.R.D. at 263; Kutner Buick, Inc. v. Chrome Foster Corp, 1995 WL 508175 at 1 (E.D. Pa. Aug. 24, 1995); Milgram Food Stores, Inc. v. United States, 558 F. Supp. 629, 636 (W.D. Mo. 1983).

Under these circumstances, I conclude the Defendants should be required to supplement their response to Plaintiff's Request For Admission No. 12 within 15 Days in order to comply with the requirements of Rule 36(a)(4) to state that they have made a reasonable inquiry, to include a detailed description of what reasonably inquiry has been made, to determine whether or not the information the Defendants know or can readily obtain is insufficient to enable them to admit or deny the Request.

### 4) Inadequate Response to Request For Admission No. 25

In Request to Admit No. 25, the Plaintiff asked the Defendants to admit that a document signed by Keith S. Wellin on November 20, 2013 released Mr. Wellin's power to substitute assets which was given in Article IX of the 2009 Wellin Family Irrevocable Trust and that he relinquished any right to re-acquire the Trust Corpus or any portion thereof effective at 11:59 p.m. on November 20, 2013.   The Defendants responded that they did not have sufficient information to admit or deny this request *because* Keith S. Wellin "may not have had the requisite mental capacity and/or may not have been acting voluntarily on November 20, 2013. Again, Rule 36(a)(4) requires that if a matter is not admitted, the answer must specifically deny it

16

or state *in detail* why the party cannot truthfully admit or deny it.  Furthermore, the response must state that the party has made a reasonable inquiry and that the information the party knows or can readily obtain is insufficient to enable the party to admit or deny.  For this reason, Defendants' response does not fully respond to the inquiry, and thus defeats the goal of Rule 36 to narrow the issues, where possible.

Defendants' response is ambiguous in that it gives two *possible* reasons as to why the Defendants cannot admit or deny the request, i.e., that at the time of the execution of the document, "Keith S. Wellin *may* not have had the requisite mental capacity and/or *may* not have been acting voluntarily on November 20, 2013." (emphasis added).  But the response does not indicate whether the Defendants are speculating in their assertion, or have information which leads them to believe such is the case.

This is especially problematic because, in their Answer to Plaintiff McDevitt's First Amended and Supplemental Complaint, 2:13-cv-03595-DCN, ECF No. 242, at ¶ 104, Defendants allege that Keith Wellin "lacked capacity on November 20, 2013" when he purportedly executed the documents.  Thus, a part of the defense asserted by the Defendants is that the documents are ineffective because Keith lacked capacity, and yet the response to the Request for Admission begs the question, without explaining the equivocation.  If, as they allege in their defense, Defendants contend the documents are ineffective, then their position calls for denial of the Request For Admission, fairly responding to the substance of the matter, as required by Rule 36(a)(4).  On the other hand, if they currently do not have sufficient information to admit or deny the Request, then their response must include the statement that they have made a reasonable inquiry, to include a detailed description of what reasonably inquiry has been made,

and that the information they know or can readily obtain is insufficient to enable them to admit or deny.

### 5) <u>Inadequate Reponses to Requests for Admission Nos. 40, 41, 42, 43, 44 and 45</u>

In Requests for Admission Nos. 40, 41 and 42, the Plaintiff requested that the Defendants admit Peter J. Wellin, Cynthia W. Plum and Marjorie W. King did not need the distribution or disbursement of Thirty-One Million, Eight Hundred Seventy Six Thousand, Seven Hundred Fourteen and 15/100 dollars ($31,876,714.15) out of the Wellin Family 2009 Irrevocable Trust for their health, education, support or maintenance in their accustomed manner of living.  The Defendants denied each request and further explained that the distribution was necessary to preserve the corpus of the trust in the face of attacks by adverse parties and was for their support and maintenance in connection with the expenses of "this litigation" and the damages alleged against each of them.

In Requests for Admission Nos. 43, 44 and 45, the Plaintiff requested that the Defendants admit that the distribution or disbursement of Thirty-One Million, Eight Hundred Seventy Six Thousand, Seven Hundred Fourteen and 15/100 dollars ($31,876,714.15) from the Wellin Family 2009 Irrevocable Trust to the particular Wellin child identified in each of the three Requests to Admit was not made on the basis of that child's need for such distribution or disbursement for that child's health, education, support or maintenance within the meaning of the ascertainable standards set forth in Articles IV, XIII and XVI; Internal Revenue Code §§2041 and 2514 (and related Federal Regulations); or South Dakota Codified Laws §55-4-38.  To each of these three Requests for Admission, the Defendants responded with a denial, referring back to the explanation contained in their answers to Requests for Admission Nos. 40, 41 and 42. Additionally, the Defendants stated that the request mischaracterized the language of the trust

and referenced distribution standards that are inapplicable to the subject distribution to the Wellin child identified within each of the three Requests for Admission.

In this Motion, Plaintiff argues that these responses do not fairly answer the matters requested therein and are thereby deficient. Plaintiff argues the Defendants' responses are evasive. Plaintiff asserts the Defendants' explanation that the distributions were necessary for litigation fees and costs could not be true because they were made prior to the commencement of the Schwartz litigation. For these reasons, Plaintiff asks the Court to order that Requests for Admission 40, 41, 42, 43, 44 and 45 be deemed admitted or that the Defendants be required to provide proper responses.

Defendants contend that each of their responses gives a detailed answer, specifically denies each of the Requests for Admission, and fairly responds to the substance of the matter. Defendants acknowledge the distributions preceded the filing of the Schwartz litigation, but point out that the suit brought by Keith J. Wellin against the Wellin children was filed and served over four months before the distributions were made. Although Plaintiff may not like the responses, Defendants argue the responses are complete and proper.

Request Nos. 40, 41 and 42 asks the Defendants to admit the recipient did not need the distributions for the health, education, support or maintenance of the Wellin child identified in each Request. The response clearly denies that assertion, and fully explains from the Defendants' point of view that the distribution was necessary in order to preserve the corpse of the trust in the face of attacks by adverse parties and was needed for the support and maintenance of the particular Wellin child identified in the Request for Admission in connection with the expenses of this litigation and the damages alleged against the recipient.

The allegations of the Plaintiff in this suit and in the "Wellin I" litigation assert that the distribution by each of the Wellin children was in violation of their fiduciary duties to the remaining beneficiaries and to Keith S. Wellin.   In connection with that, the litigation further alleges that each of the three Wellin children participated in the distribution of over Ninety Million dollars ($90,000,000.00) following the improper sale of the Berkshire Hathaway stock at a price of approximately One Hundred Fifty Million dollars ($150,000,000.00).   Plaintiff McDevitt's First Amended and Supplemental Complaint seeks actual and punitive damages, including lost profits, based upon Plaintiff's assertion the stock has appreciated in value following the allegedly improper sale.   Keith Wellin, and now Wendy Wellin as Special Administrator of the Estate of Keith S. Wellin, is also pursuing actual and punitive damages for various breaches of fiduciary duties which arose pursuant to five powers of attorney, partnership relationships, and as trustees.   Based upon the allegations in those complaints, there is a significant, readily identifiable, liability exposure for each of the Defendant Wellin children.

As the parties have outlined in this litigation, there are multiple suites pending in this Court, and additional litigation in the other states.  The Wellin Family 2009 Irrevocable Trust assets at issue had a value in excess of One Hundred Fifty Million dollars ($150,000,000.00), and a potential tax liability to the litigants in excess of Forty Million dollars ($40,000,000.00).  Thus, the stakes are high under any view, and legal fees and costs are a material consideration, in the light most favorable to the Defendants.

The Plaintiff argues that the South Dakota Statutes, Internal Revenue Service Regulations and Code, and the trust documents require clearly defined objective criteria to meet the ascertainable standards identified within the trust as a legitimate basis for distribution.  The Trust provides that the Trustee may make payments of Trust income and/or principal "as the Trustee in

its sole discretion shall deem necessary or advisable for [a beneficiary's] health, support, maintenance, or education (including a college education and professional or post-graduate study), *or any other reasonable purpose*." (emphasis added).  Articles XIII and XVI provide that a Trustee's general discretionary powers are limited "so that (i) no Trustee shall participate in any decision regarding a discretionary distribution to that Trustee personally, except to the extent governed by and made pursuant to a standard under this instrument which constitutes an ascertainable standard within the meaning of Section 2041 and 2514 of the Code; . . ."

Plaintiff argues the Defendants responses are evasive because they deny that the distributions were not needed for their support or maintenance, but they then provide a basis for the distribution that is not within the meaning of the ascertainable standards that the South Dakota Statutes, Internal Revenue Service Regulations and Code, and the trust documents require.  However, Defendants articulate in their response that they do not share the same interpretation of the Trust requirements for distribution as the Plaintiff, stating that the requests mischaracterized the language of the trust and referenced distribution standards that are inapplicable to the subject distribution.  Thus, the Defendants responses deny the Requests and fairly respond to the substance of the matter.

For the above reason, it is recommended that the Plaintiff's Motion to Compel with regard to Requests for Admission Nos. 40, 41,42,43,44 and 45 be denied.

### ECF No. 83 – MOTION TO COMPEL REGARDING  SCHWARTZ REQUEST FOR PRODUCTION NOS. 3, 14, 15, 20, 37, and 40

### Failure to Provide Privilege Log

Plaintiff Schwartz asserts that the Defendants' responses to Requests for Production Nos. 3, 14, 15, 20, 37 and 40 indicate that the Defendants have withheld documents based upon the

assertion of privilege.  The Plaintiff argues that at the time the responses were given, there was no privilege log identifying which documents were withheld.  Plaintiff states they did not receive a privilege log "timely" after the Defendant was notified that no privilege log had been provided.  Accordingly, Plaintiff contends Defendants' assertions of privilege have been waived.

Defendants deny they were late in providing a privilege log.  Defendants assert that at the time they responded to the Requests for Production at the beginning of May 2014, they began an expansive electronic information search.

In their response to Request for Production No. 3, the Defendants stated: "In light of the common interest agreement between Defendants and South Dakota Trust Company, Defendants need to complete a privilege review of these documents and will produce any non-privileged documents after such review is complete."  With regard to Request for Production No. 14, after asserting an objection based upon attorney-client privilege and work-product doctrine, Defendants explained "[T]o the extent any non privileged documents responsive to this request exist, they will be produced after Defendants have completed their review of their electronic stored information."  In their response to Request for Production No. 15, Defendants asserted the same privileges and the same explanation.  With regard to Request for Production No. 37, Defendants objected on the basis of attorney-client privilege and the work-production doctrine.  Defendants asserted the same privilege with regard to the documents requested in Requests for Production No. 40.

According to Defendants, in order to fully respond, they conducted a very extensive electronic information search which took approximately three months to complete.  Defendants provided to Plaintiff Schwartz a privilege log in August 2014.  Thereafter, Defendants supplemented the privilege log in November of 2014.

Plaintiff bases his argument that the privilege has been waived upon the fact that it was not provided contemporaneously with the responses to Request for Production.

Fed. R. Civ. P. 26 (b)(5)(A) reads as follows:

> *Information withheld.*  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Rule 26 is silent with regard to the time within which the information must be provided. However, courts have generally found that the failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege.  AVX Corp. v. Horry Land Co., Inc., 2010 WL 4884903 (D.S.C. Nov. 24, 2010); Herbal Life Int.'l, Inc. v. St. Paul Fire and Marine Is. Co., 2006 WL 2715164 at 4 (N.D.W.Va. September 22, 2006)("Failure to timely produce a privilege log or the production of inadequate privilege log may constitute waiver of any asserted privileges."); Ruran v. El Temple of W. Hartford, Inc., 226 F.R.D. 165, 168-69 (D. Conn. 2005) (finding attorney-client privilege waived because Defendant failed to provide a privilege log and consequently failed to perfect privilege claim); Banks v. The Office of Senate Sergeant-At-Arms, 222 F.R.D. 7, 20-21 (D.D.C. 2004) (question of withholding of such a privilege log may . . . be viewed by the court as a waiver of any privilege or protection).

As the court noted in Smith v. James C. Hormel School of Virginia Inst. of Autism, 2010 WL 3702528 (W.D.Va). September 14, 2010):

> "…the advisory committee contemplated waiver as a sanction for failure to comply with the rule, stating in its comments and pertinent part, '[t]o withhold materials without such notice is contrary to the rule… and may be viewed as a waiver of the privilege or protection.'(citing White v. Graceland Coll. Ctr. for Prof. Develop. & Lifelong Learning, Inc., 586 F.Supp.2d 1250, 1266 (D.Kan. 2008); First Savs. Bank v. First Bank

<u>Sys., Inc.</u>, 902 F.Supp. 1356, 1361 (D.Kan.1995), *aff'd by* 902 F.Supp. 1366 (D.Kan.1995), *rev'd on other grounds*, 101 F.3d 645 (10th Cir. 1996) (noting in dicta that the district court committed no reversible error with respect to its orders relating to the discovery dispute).

But waiver is not automatic. <u>First Savs. Bank</u>, 902 F. Supp. at 1361; <u>see also</u>, <u>In Re Dep't of Justice Subpoenas to ABC</u>, 263 F.R.D. 66, 70 (D.Mass. 2009) (rejecting per se waiver requirement); <u>Carlson v. Freightliner, LLC</u> 226 F.R.D. 343, 363 (D.Neb. 2004) (holding based on the advisory committee comments to Rule 26(b)(5) that a court may-but need not consider a privilege waived when a party fails to timely raise the objection, *aff'd by*, 226 F.R.D. 385 (D.Neb. 2004).  Waiver of the privilege is an 'exceedingly harsh sanction,'  <u>Rambus, Inc. v. Infineon Tech. AG</u>, 220 F.R.D. 264, 274, (E.D.Va. 2004) *continued consideration provided in* 222 F.R.D. 280 (E.D.Va. 2004), that must be determined on a case-by-case basis after consideration of all of its circumstances. <u>Eureka Fin. Corp. v. Hartford Accident & Idem. Co.</u>, 136 F.R.D. 179, 183–84 (E.D.Cal. 1991); <u>Ritacca v. Abbott Lab.</u>, 203 F.R.D. 332, 335 (N.D.Ill. 2001) ("In the end, the determination of waiver must be made on a case-by-case basis."); <u>see also</u>, <u>Smith v. Café Asia</u>, 256 F.R.D. 247, 250–51 (D.D.C.2009) (noting court has the discretion to determine that a party has waived privilege when that party fails to produce a privilege log)."

Again, as the <u>Smith</u> court noted,

Given the sanctity of the attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith.  <u>First Savs. Bank</u>, 902 F. Supp. at 1361; <u>Dept. of Justice Subpoenas to ABC</u> 263 F.R.D. at 71 (stating waivers are appropriate when conduct evinces a 'deliberate pattern of delay' and is 'egregious'); <u>Welch v. Eli Lilly Co.</u>, 2009 WL 700199 at 14 (S.D.Ind. March 16, 2009) (noting waiver is a serious sanction and declining to find the privilege waived despite Defendants inadequate privilege log and failure to meet their burden of proving the documents were indeed privileged); <u>White</u> 586 F. Supp. 2d. at 1266 (D.Kan. 2008) ("Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery.").

In this case, there is no evidence of bad faith or unjustifiable delay on the part of the

Defendants in connection with the preparation of the privilege log or its supplementation.

Although approximately three months lapsed from the time the Requests for Production were initially answered and the privilege log was produced, the Court notes that this production has been made in connection with multiple cases and significant discovery requests by multiple parties. Indeed, the written discovery is ongoing, the issues are complex, the stakes are high, and because of the nature of the issues, multiple questions have arisen regarding attorney-client privilege, work product immunity, and common interest doctrine. In view of the substantial number of documents that are subject to review in response to the identified Requests for Production, the absence of evidence of any bad faith or unjustifiable delay on the part of the Defendants in the preparation of the privilege log and its supplementation, and the absence of any showing of prejudice by the Plaintiff, it does not appear a waiver of the attorney-client privilege, work product privilege or application of the common interest doctrine is justified at this time. For that reason, it is recommended that the Plaintiff Schwartz/McDevitt's motion be denied.

**ECF No. 83-MOTION TO COMPEL ANSWERS REGARDING  SCHWARTZ INTERROGATORY NO. 3**

Plaintiff Schwartz's Interrogatory No. 3 reads as follows:

> Please describe and identify the date of all contact, including in-person visits, telephone calls and electronic or written communications regarding the facts allegations or subject matters at issue in Wellin 1 and/or Wellin 2 between any of the Defendants, including their attorneys, attorneys-in-fact, or agents, and (i) any of the other Defendants, and their attorneys, attorneys-in-fact, or agents; (ii) any children or grandchildren of [Defendants Wellin, Plum and King] and any of their attorneys, attorneys-in-fact, employees or agents; (iii) Keith Wellin, Wendy Wellin, and any of their attorneys, attorneys-in-fact, employees, or agents; (iv) Edward G. R. Bennett and any of his attorneys, attorneys-in-fact, employees, or agents; (v) [Nixon Peabody, LLP] and any of their attorneys, attorneys-in-fact, employees, or agents; (vi) [Cooper Smith, Smith and Vogel, P.C.] and any of their attorneys, attorneys-in-fact, employees, or agents; (vii) [UBS Financial Services, Inc.] and any of their attorneys, attorneys-in-fact, employees, or agents;

> (viii) [South Dakota Trust Company, LLC] and any of their attorneys, attorneys-in-fact, employees, or agents; and (ix) [Brown Brothers Harriman Trust Company of Delaware, N.A.] and any of their attorneys, attorneys-in-fact, employees, or agents.

Defendants responded to this Interrogatory with an objection on the basis that the Interrogatory is overly broad and unduly burdensome and calls for information protected by the attorney-client and work product privilege. Defendants stated that:

> "the facts, allegations, and subject matters at issue in Wellin I and/or Wellin II relate to at least a ten year period of time during which Mr. Keith Wellin made various decisions about his estate planning. While Defendants are producing all non privileged documents responsive to Plaintiff's discovery requests, Defendants are not required to identify every visit, telephone call, and/or mail that relates in any way to this litigation."

Plaintiff Schwartz objects to this response to the Interrogatory, claiming the Interrogatory is not unduly burdensome or overbroad. Plaintiff also argues that the Defendants have the burden of demonstrating that the requests subject them to an undue burden, citing Hodgdon v. Nw. Univ., 245 F.R.D. 337, 341 (N.D.Ill 2007); Ohio Valley Envtl. Coal, Inc. v. U.S. Army Core Engineers, 2012 WL 112325 at 2 (N.D.W.Va. 2012); Kursner v. Clemens, 2005 WL 1214330 at 2 (S.D.N.Y. 2005); In re County of Orange, 2008 B.R. 117, 121 (Bankr. S.D.N.Y. 1987).

Plaintiff is correct in asserting that generally the parties seeking to oppose production have the burden of demonstrating that the request subjects them to an undue burden. As such, mere objections to discovery requests on the grounds that the requests are unduly burdensome or overbroad, without more, are insufficient. However, such is not the case when a discovery request is overly broad on its face. See, e.g., Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658 (D.Kan. 2004) ("Unless an interrogatory is overly broad on its face, the party resisting discovery has the burden to support its objection."); Hammon v. Lowe's Home Ctrs, Inc. 216 F.R.D. 666, 672 (D. Kan. 2003); McCOO v. Denny's, Inc., 192 F.R.D. 675, 686 (D.Kan. 2000).

Interrogatory No. 3 is clearly overbroad on its face for the following reasons. First, there is no temporal limitation to the requested information. Under the allegations of the Amended Wellin I Complaint, the relevant time period spans from 2003 through the initiation of the litigation on July 3, 2013, a period of 10 years. Second, the interrogatory seeks a description of all contact, including in-person visits, telephone calls, and electronic or written communications by and between any defendant, which includes the three Wellin children, Friendship Partners LP and Friendship Management, LLC, their attorneys, attorneys-in-fact, or agents and:

>  (1) any other Defendant, their attorneys, attorneys-in-fact or agents;

>  (2) any children of the individual Defendants and any of their attorneys, attorneys-in-fact, employees or agents;

>  (3) grandchildren or the grandchildren's attorneys, attorneys-in-fact, employees or agents;

>  (4) Edward G. R. Bennett or any of his attorneys-in-fact, employees or agents;

>  (5) Nixon Peabody and any of their attorneys, attorneys-in-fact, employees or agents;

>  (6) Cooper Smith, Smith and Vogel, PC and any of their attorneys, attorneys-in-fact, employees or agents;

>  (7) UBS Financial Services, Inc. and any of their attorneys, attorneys-in-fact, employees or agents;

>  (8) South Dakota Trust Company, Inc. and any attorneys, attorneys-in-fact, employees or agents; and

>  (9) Brown Brothers and any of their attorneys, attorney-in-fact, employees or agents.

The interrogatory employs the omnibus term "regarding," such that to be identified and included in the answer to this Interrogatory, the contact or communication need only be "regarding the facts, allegations or subject matters at issue in Wellin I and/or Wellin II."

Encompassed within the Wellin I Second Amended Complaint, comprising thirty-one pages, one hundred and sixty eight paragraphs, and eleven causes of action, are facts, allegations and subject matters relating to the transactions and estate planning of Keith Wellin during this ten year time period, as well as his mental and physical health.   The relationships of the Defendant Wellin children with Keith Wellin and with Wendy Wellin, as well as the relationship of Wendy Wellin with Keith Wellin, are also at issue.  The scope of the interrogatory would further include any communication regarding any matter pertaining to the operation of Friendship Partners, LP and/or Friendship Management, LLC.  Essentially, any communication between any of the Defendants, their attorneys, attorneys-in-fact, employees or agents, and any other named individual, law firm or company, and/or their attorneys, attorneys-in-fact, employees or agents, which could be construed to touch upon any claim or defense in either Wellin I or Wellin II, would presumably be within the scope of this interrogatory.

As the above demonstrates, Plaintiff Interrogatory No. 3 employs language that is so broad it is virtually impossible to determine what documents or communications should be identified and included in a response.  It is virtually boundless as to time and subject matter, and is so overbroad as to be unduly burdensome.  As the court noted in Dauska v. Green Bay Packing Inc., 291 F.R.D. 251 at 261 (E.D.Wisc. 2013),

> Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.

Id.; see also, Krause v. Nevada Mut. Ins. Co., 2014 WL 496936 at 6 (D.Nev. Feb. 6, 2014)(declining to require Defendant to further respond to discovery request, as compliance would be unreasonably time consuming, burdensome and unfair where discovery request would

require that the reviewing party scour the voluminous records contained within the general category identified for any and all documents that might be relevant to any and all claims or defenses, and compliance would operate "like a giant broom," requiring the defendants to engage in the mental gymnastics and time-consuming process identified in Dauska).

For the above reasons, it is recommended that Plaintiff Schwartz/McDevitt's Motion to Compel further answer to Interrogatory No. 3 be denied, and that no further answer be required by the Defendants.

**ECF No. 83-MOTION TO COMPEL ANSWERS AND RESPONSES REGARDING SCHWARTZ INTERROGATORIES NOS. 4, 5, AND 7/ REQUESTS FOR PRODUCTION NOS. 11, 13, 24, 25, 27, 29, 34, 35**

The above referenced interrogatories and requests for production seek information regarding the decision to sell the Berkshire Hathaway stock held by Friendship Partners, LP, and the subsequent distribution of the sale proceeds through the Wellin Family 2009 Irrevocable Trust to the Defendant Wellin children. As a part of the inquiry, Plaintiff requested that the Defendants identify anyone who advised them with regard to these decisions and the transaction, and to produce all pertinent communications regarding the sale, the transaction, and the distributions.

In response, Defendants answered that they were advised by attorney Farace of Nixon Peabody, and by their current legal counsel, Nelson Mullins Riley and Scarborough, LLP. Defendants denied production of communications with current legal counsel at Nelson Mullins on the basis of attorney/client privilege.

Plaintiff's Interrogatories Nos. 4, 5 and 7 are as follows:

    4. Please explain in detail the basis and reasons for the decisions to liquidate or dissolve Friendship Partners, LP and to distribute the assets to the partners; when and why the decisions were made to liquidate or

dissolve and distribute assets to the partners; the identities and role of all persons who participated in or voted on the decision or advised the Defendants regarding the decisions; and the identity and location of all documents, electronic communications, and records memorializing these decisions or relating to these transactions.

5.  Please explain in detail the basis and reasons for the decisions to sell the Berkshire Hathaway stock or shares and to disburse or distribute the stock sale proceeds; when and why the decisions were made to sell the stock and disburse the stock sale proceeds; the identities and role of all persons who participated in or voted on the decisions or advised the Defendants regarding the decisions; and the identity and location of all documents, electronic communications, and records memorializing these decisions or relating to these transactions.

.     .     .

7.  Please explain whether the Defendants assert or contend that any distributions or disbursements of income or principal were made from the [Trust] to [Defendants Wellin, Plum or King] on the basis of their need of such distributions or disbursements for their health, education, support or maintenance in accordance with the ascertainable standard set forth in Internal Revenue Code (IRC) §§ 2041 and 2514 (or accompanying federal regulations) and/or S.D. CODIFIED LAWS § 55-4-38.  If the answer is in the affirmative, please identify the information and materials submitted to or considered by the Defendants in making such distributions or disbursements of income or principal, any trustee minutes or other records memorializing the Trustee's consideration of this information or material, and any documents, electronic communications, or records demonstrating the Defendants' need of the distributions or disbursements.

Request for Production Nos. 11, 13, 24, 25, 27, 29, 34 and 35 also seek production of specific documents regarding the Defendants' decisions to liquidate or dissolve Friendship Partners, LP and to distribute the assets to the partners, to sell the Berkshire Hathaway stock or shares, to disburse or distribute the stock sale proceeds, and to make distributions from the Trust to Defendants Wellin, Plum and King.  Those requests seek the following documents:

11.  Any documents memorializing or relating to any decision to make, authorize, or approve any discretionary invasions or distributions of income or principal (corpus) involving the [Trust].

13.    Any documents setting forth or memorializing any formula, standard, methodology, or other criteria governing any trustee approval or authorization of any distributions or disbursements of income or principal from the [Trust] to any beneficiary.

24.    All emails, text messages, correspondence or other documents memorializing or relating to the sale of the Berkshire Hathaway stock or shares and the disbursement or distribution of the stock sale proceeds.

25.    All emails, text messages, correspondence or other documents memorializing or relating to the sale of the Berkshire Hathaway stock or shares and the disbursement or distribution of the stock sale proceeds.

27.    All emails, text messages, correspondence or other documents demonstrating or documenting [Defendants Wellin's, Plum's and King's] need of any distributions or disbursements of income or principal from the [Trust] or showing that any such distributions or disbursements were made on the basis of the Defendants' need of such distributions or disbursements for their health, education, support, or maintenance in accordance with the ascertainable standard set forth in Internal Revenue Code (IRC) §§ 2041 and 2514 (or accompanying federal regulations) and/or S.D. CODIFIED LAWS § 55-4-38.

29.    All trustee minutes, committee minutes, resolutions, emails, text messages, correspondence, or other documents evidencing or otherwise relating to any votes, approvals, or authorizations taken or given by [Defendants Wellin, Plum and King] involving or relating to the decisions to liquidate or dissolve Friendship Partners, LP, to distribute the assets to the partners, to sell the Berkshire Hathaway stock or shares, to disburse or distribute the stock sale proceeds, and/or to distribute income or principal from the [Trust].

34.    Any and all files and records of Friendship Partners, LP involving or relating to the decisions to liquidate or dissolve Friendship Partners, LP, to distribute the assets to the partners, to sell the Berkshire Hathaway stock or shares, and to disburse or distribute the stock sale proceeds.

35.    Any and all files and records of Friendship Management, LLC involving or relating to the decisions to liquidate or dissolve Friendship Partners, LP, to distribute the assets to the partners, to sell the Berkshire Hathaway stock or shares, and to disburse or distribute the stock sale proceeds.

Interrogatory No. 4 seeks an explanation as to the basis and reasons for the decisions to liquidate or dissolve Friendship Partners, LP and distribute the assets to the partners, including

the identities and roles of the persons who participated in the decisions.  The Defendants' answer to this Interrogatory included the following statements:

> "This approach was most consistent with the long standing goals of Mr. Wellin with respect to his estate planning and was most consistent with the advice provided to Mr. Wellin and Defendants by Mr. Farace around the time the Wellin Family 2009 Irrevocable Trust was created by Mr. Wellin."

> And

> "Defendant Cynthia W. Plum, as Manager of Friendship Management, LLC., the General Partner of Friendship Partners, LP, resolved to dissolve and liquidate the partnership.  In addition to the advice provided by Tom Farace several years ago, she was advised regarding these decisions by current counsel."

Plaintiff's Interrogatory No. 5 sought, in essence, an explanation as to the basis and reasons for the decision to sell the Berkshire Hathaway stock and distribute stock sale proceeds. In answer to this Interrogatory, Defendants referred the Plaintiff to their answer to Interrogatory No. 4.

In Interrogatory No. 7, the Plaintiff sought an explanation as to whether the Defendants assert or contend that the distributions that were made to them of income or principal from the Wellin Family 2009 Irrevocable Trust were made on the basis of their need for such distributions or disbursements for their health, education, support, or maintenance in accordance with the ascertainable standard set forth in Internal Revenue Code (IRC) §§ 2041 and 2514 (or accompanying federal regulations) and/or S.D. CODIFIED LAWS § 55-4-38.  If the answer was in the affirmative, the Interrogatory requested the identity of the information and materials submitted to or considered by the Defendants in making those distributions.

In answer to this Interrogatory, in part, the Defendants stated as follows: "[I]n making the distributions Defendants considered documentation related to the litigation and advice of current counsel."

By identifying current counsel at Nelson Mullins Riley & Scarborough, LLP, as legal advisors from whom Defendants received advice regarding the sale and distribution, Plaintiffs argue Defendants have impliedly inserted "advice of counsel" as a defense in this case. In doing so, Plaintiff argues Defendants have opened the door to the discovery of the advice Defendants allegedly received from their attorneys, and have thereby waived any attorney/client privilege.

Because this case, as well as Wellin I and Wellin II, are diversity cases, the availability of an evidentiary privilege is governed by the law of the forum state. Fed.R.Evid. 501; Hottle v. Beech Aircraft Corp., 47 F.3d 106, 107 n. 5 (4th Cir. 1995).

The attorney/client privilege protects against disclosure of confidential communications by a client to his attorney. State v. Owens, 309 S.C. 402, 424 S.E.2d 473, 476 (1992)(citing State v. Love, 275 S.C. 55, 271 S.E.2d 110 (1991)). The privilege is to be construed strictly, State v. Doster, 276 S.C. 647, 284 S.E.2d 218, 219 (1981), and balanced against the public interest in the proper administration of justice. Id. at 220 (citing NLRB v. Harvey, 349 F.2d 900 (4th Cir. 1965)); Sepler v. State, 191 So.2d 588 (Fla.Dist.Ct.App. 1966). To be privileged, the communication must relate to a fact of which the attorney was informed by her client, outside the presence of strangers, for the purpose of securing primarily an opinion on law, legal services, or assistance in some legal proceeding. Marshall v. Marshall, 282 S.C. 534, 320 S.E.2d 44, 47 (Ct. App. 1984).

Under South Carolina law, the burden of proof falls to the party asserting the privilege to establish lack of waiver. City of Myrtle Beach v. United Nat'l Ins. Co., No, 4:08-1183-TLW-SVH, 2010 WL 3420044 at 5 (D.S.C. Aug. 27, 2010)(applying South Carolina law); Tobaccoville USA, Inc. v. McMaster, 387 S.C. 287, 692 S.E.2d 526, 529 (2010).

In <u>Floyd v. Floyd</u>, 365 S.C. 56, 615 S.E.2d 465 (Ct. App, 2005), the South Carolina Court of Appeals found a waiver of attorney/client privilege when the party asserting the privilege repeatedly testified that he had relied upon the advise of various counsel in formulating his position as trustee on the payment and allocation of various expenses incurred in connection with trust assets. By so testifying, the court found he impliedly relied upon an "advice of counsel" defense, and thereby opened the door to the admission into evidence of letters from his attorney that contradicted his position regarding the allocation of the expenses.

In the later case of <u>City of Myrtle Beach</u>, the District Court, applying South Carolina law, similarly found a waiver of the attorney-client privilege by the implied invocation of the "advice of counsel' defense. <u>Id.</u> at 4 (noting that "[u]nder South Carolina law, the waiver may be explicit or a waiver may be implied by making communications with counsel an issue.").

In <u>City of Myrtle Beach</u>, the named insurer defended against claims of a bad faith refusal to pay first party benefits. Reviewing the underlying facts in a light most favorable to the Plaintiff, the Court found the Plaintiff had presented a prima facie case of bad faith. Thus, the burden fell to the Defendant insurer to establish the applicability of the privilege.

Concluding under South Carolina law an insurer and its insured have a "special" relationship, the Court noted an insurer's thoughts and knowledge are at the center of a claim for bad faith. Finding the analysis first espoused in <u>Hearn v. Rhay</u>, 68 F.R.D. 574 (E.D.Wash. 1975) for balancing the two competing policies of attorney-client privilege and the administration of justice to be consistent with South Carolina law, the Court ruled:

> The undersigned finds there is no per se waiver of the attorney-client privilege simply by a plaintiff making allegations of bad faith. However, if a defendant voluntarily injects an issue in the case, whether legal or factual, the insurer voluntarily waives, explicitly or impliedly, the attorney-client privilege.

City of Myrtle Beach, at 5 (citing Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095 (7th Cir. 1987)).

The Court reviewed the insurer's Answer to the Complaint, which included the defense that the insurer and its representatives "have acted reasonably and in good faith at all times herein and therefore Plaintiffs are barred from any recovery in this action." Based upon this and other defenses, the Court concluded the insurer had interjected issues of law and fact contained in the documents for which it sought protection, and had therefore failed to meet its burden as to the applicability of the privilege. Id. at 7; see also, State Farm Mutual Auto. Ins. Co. v. Lee, 199 Ariz. 52, 60, 13 P.3d 1169, 1177 (Ariz. 2000)("When a litigant seeks to establish a mental state by asserting that it acted after investigating the law and reaching a well-founded belief that the law permitted the action it took, then the extent of its investigation and the basis for its subjective evaluation are called into question. Thus, the advice received from counsel as part of its investigation and evaluation is not only relevant but, on an issue such as this, inextricably intertwined with the court's truth-seeking function.").

In each of these cases, the party asserting the attorney-client privilege voluntarily interjected the litigant's mental state by asserting that the litigant acted in good faith after investigating the law, and reached a well-founded belief that the law permitted the action, thus rendering the communications with counsel relevant. In Floyd, the litigant testified repeatedly at trial that he sought and received advice from various counsel that his position on the payment of expenses was legally correct, and acted on the basis of that advice. In City of Myrtle Beach, the insurer pled as a defense that the actions of the litigant and its representatives were reasonable and in good faith, based in part upon the information and advice received from legal counsel, whose communications it sought to protect from disclosure on the basis of the privilege. In Lee,

the insurer defended on the basis that the positions taken by its claims managers were both objectively and subjectively reasonable and in good faith because of what its policies, the statute and the case law actually said. Although State Farm denied its agents based their belief of the law on what the lawyers said the case law said, the agents were informed by counsel as a part of their evaluation.

Unlike these cases, the Defendants in this case merely responded to direct questions propounded by the Plaintiff in his Interrogatories and Requests for Production, as required under Fed.R.Civ.P. 33(b), 34(b)(2), and 37. They have not affirmatively injected an issue which implicates privileged communications. Furthermore, a review of the Defendants' Amended Answer to the Amended Complaint reveals that the Defendants did not interject their state of mind as a defense to their actions in selling the Berkshire Hathaway stock or in the later distribution of the proceeds of sale through the trust. In contrast to the above cases, the Defendants in this case do not claim as a defense that their actions were legally protected because they were in good faith or that their actions, if legally improper, were protected because they relied upon advice of counsel.

As Justice Martone noted in his cogent dissent in <u>Lee</u>, the Restatement (Third) *The Law Governing Lawyers* § 80 (2000) and <u>Hearn v. Rhay</u>, 68 F.R.D. (E.D.Wash. 1975) both require the privilege holder, not the other party to the litigation, to affirmatively inject an issue which implicates privileged communications. 199 Ariz. at 67, 13 P.3d at 1184.

But Plaintiff argues the Wellin Family 2009 Irrevocable Trust is a South Dakota Trust governed by South Dakota Law. South Dakota Codified Laws § 55-1-43(3) provides that a court may review a trustee's distributions if the trustee acts dishonestly or acts with an improper motive. Consequently, Plaintiff argues the Defendants' motives are at issue in the case, thus

implicating the reasonableness of their actions.  As in a bad faith case, Plaintiff essentially posits that the state of mind of the Defendants is placed at issue, making the advice of counsel relevant and discoverable.

South Dakota Codified Laws § 55-1-43(3) provides in applicable part as follows:

The following provisions apply only to discretionary interests:

. . .

(3) A court may review a trustee's distribution discretion only if the trustee:

(a) Acts dishonestly;

(b) Acts with an improper motive; or

(c) Fails, if under a duty to do so, to act.

A reasonableness standard may not be applied to the exercise of discretion by the trustee with regard to a discretionary interest.  Other than for the three circumstances listed in this subdivision, a court has no jurisdiction to review the trustee's discretion or to force a distribution.

Absent express language to the contrary, in the event that the distribution language in a discretionary interest permits unequal distributions between beneficiaries or distributions to the exclusion of the other beneficiaries, the trustee may distribute all of the accumulated, accrued, or undistributed income or principal to one beneficiary in the trustee's discretion.

South Dakota Codified Laws § 55-4-38 provides as follows:

Limitations on trustee's power to make distributions to his or her benefit

Unless the terms of the trust refer to this section and provide otherwise, a power, including the power to make a distribution to another trust under § 55-2-15, that is exercisable by or to a person, other than the settlor, in such person's capacity as a trustee to make discretionary distribution of either principal or income:

(1) To or for the benefit of himself or herself is exercisable by the person only for the person's health, education, maintenance, and support in the person's accustomed manner of living;  . . .

Article IV of the Wellin Family 2009 Irrevocable Trust provides for discretionary distributions of principal and income for health, support, maintenance or education (including a college education and professional or post-graduate study), *or for any other reasonable purpose.* (emphasis added).  The Defendants maintain in their answers to interrogatories that the distributions they made from the trust were for other reasonable purposes, but were also made for maintenance and support purposes.  In a light most favorable to Plaintiffs, this may place at issue whether or not the distributions were proper under SDCL § 55-4-38, and if not, whether they were made with an improper motive in violation of SDCL § 55-1-43 (3).  However, notwithstanding this analysis, the fact remains that Defendants have not asserted that they are legally protected because they acted in good faith.  Nor have they interjected an "advice of counsel" defense: i.e., that even if improper under South Dakota or other law, they are legally protected because they relied upon the advice of counsel.

Based upon this analysis, I conclude the Defendants have established the applicability of the attorney-client privilege regarding communications with their current counsel, Nelson Mullins Riley & Scarborough, LLP related to these interrogatories and requests for production. Therefore, it is recommended that the Plaintiff's Motion to Compel regarding these documents be denied.  It should be noted the Plaintiff, McDevitt, also seeks production of these communications on the grounds that he is a co-trustee, and a fiduciary exception to the attorney-client privilege allows him access to the communications between his co-trustees and their current counsel under this exception.  The parties have provided the Special Master with supplemental briefing regarding this issue, and the matter has been scheduled for further argument on August 5, 2015.

**PLAINTIFF SCHWARTZ/McDEVITT MOTION TO COMPEL – ECF No. 183 IN 2:13-cv-03595-DCN; PLAINTIFF WELLIN MOTION TO COMPEL – ECF No. 234 IN 2:13-cv-01831-DCN**

### 1) <u>Wellin Children Summaries and Notes from 2011 forward</u>

Next, in the Motion to Compel dated November 7, 2014, the Plaintiff, McDevitt, seeks disclosure of documents withheld from production by Defendants on the grounds of privilege. Plaintiff further seeks an order from the Court requiring Defendants to provide the documents in question to the Court for in camera inspection to determine if there is any non-privileged information that should be divulged.

The first items sought by Plaintiff are summaries and notes prepared by the Defendant Wellin children listed on their privilege log as protected by the work product privilege. Plaintiff Wendy C.H. Wellin also seeks production of the summaries, notes and emails in her Motion to Compel dated November 26, 2014.

According to the affidavits submitted by the Defendant Wellin children, they began making and exchanging contemporaneously prepared notes and summaries of relevant occurrences after a series of events that led them to believe their father's wife, Wendy Wellin, was isolating their father from them and attempting to assert control over his substantial assets (in excess of One Hundred Fifty Million Dollars [$150,000,000.00]). According to their affidavits, throughout their father's life, his chosen estate plan had always been to leave the bulk of his estate to his lineal descendants at his death, with a much smaller, although sizable, portion to his fourth wife, Wendy Wellin. They maintain his estate plan through this time period, prepared at his direction by his long-time estate planning attorney, Thomas Farace, accomplished this goal.

According to the Defendants, in 2008 their father was diagnosed with cancer, and his physical health began to decline.  At that time, they aver that Wendy Wellin took steps to prevent or limit visits between them and their father.  They state Wendy Wellin also expressed unhappiness with Mr. Wellin's designation of Defendant, Peter Wellin, as his attorney-in-fact and his power of attorney.

On April 21, 2011, Mr. Wellin suffered a stroke, causing his health to decline more rapidly.  Thereafter, the Defendants state they observed Wendy Wellin increase her efforts to isolate them from their father and to obtain control over his finances.  This, in turn, led them to believe litigation relating to access to their father and/or his assets was "likely to occur."

Based upon this apprehension, they state Defendant, Peter Wellin, met with attorney Jonathan Harris on behalf of all three Wellin children for advice because of their belief that litigation was likely to occur.  Attorney Harris corroborates in his affidavit that he met with Peter Wellin starting in July of 2011 to advise him "regarding the possibility of litigation relating to the protection of their rights of access to their father and protection of their father's estate from interference."  Further, he "advised Peter Wellin regarding steps that he and his sisters should take in anticipation of litigation."

According to the Wellin children's affidavits, after Peter Wellin received advice from Mr. Harris, they began drafting summaries and notes regarding events that might be relevant for future litigation involving their father and his estate.  They also identified additional events which reinforced their belief that litigation was likely to occur.  This included further attempts by Wendy Wellin to isolate their father and attempts to replace Tom Farace as their father's counsel.

Based upon this history, the Defendants maintain their notes and summaries are protected by the work product privilege, and the exchange of these documents between the three of them

did not waive the privilege because of the common interest doctrine.  Needless to say, Plaintiff McDevitt disagrees with these assertions, arguing the summaries and notes are not protected by the work-product privilege, and are discoverable.

Federal law applies to determine whether or not the summaries and notes are protected by the work-product privilege.  This is so because  the privilege is a creature of Federal Rule of Civil Procedure 26(b)(3), which codified the privilege as first recognized by the Supreme Court in Hickman v. Taylor, 329 U.S. 496 (1947).  See, Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc, 967 F.2d 980, 983-984 (4th Cir. 1992); Doe v. United States (In re Doe), 662 F.2d 1073, 1078 (4th Cir.1981) cert. denied, 455 U.S.1000, 102 S. Ct. 1632, 71 L.Ed.2d 867 (1982); First S. Bank v. Fifth Third Bank, N.A., Civ. No. 10-2097, 2013 WL 1840089 at 4 (D.S.C. May 1, 2013); United Coal Cos. V. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988); PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002). The party asserting the privilege bears the burden of establishing the documents the party seeks to protect were prepared in anticipation of litigation. In re Grand Jury Proceedings, Thursday Special Grand Jury, Sept. Term, 1991, 33 F.3d 342, 352 (4th Cir. 1994); see also, Carnes v. Crete Carrier Corp., 244 F.R.D. 694, 697 (N.D.Ga. 2007); United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006).  "Thus, in resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial. . .  ." National Union Fire Ins. Co.., 967 F.2d at 984.

The Plaintiff first argues these documents are not protected by the work-product privilege because they were not prepared in anticipation of litigation.  Plaintiff points out that the summaries and notes date back to 2011 and 2012, "years" before the 2013 litigation began.  At

most, he asserts, the Defendants have shown that litigation was a mere possibility at the time the documents were created.

In determining the applicability of the privilege, most courts look to whether or not the document was prepared because of the prospect of litigation. Tobbaccoville USA, Inc., 387 S.C. at 294 (citing Nat'l Union Fire Ins. Co., 967 F.2d at 984). As the Fourth Circuit noted in National Union Fire Ins. Co.., "[t]he document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Id., 967 F.2d at 984.

To highlight the distinction between a document created because of the prospect of litigation and one prepared with the general possibility of litigation in mind, the Court further explained:

> We take notice of the fact that members of society tend to document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes. And because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. "Yet [t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials" with work product immunity.

Id., 967 F.2d at 984 (citing Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983)). Consequently, "determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question." Id. Plaintiff first argues the summaries and notes are just such documents as those described above; that is, events documented with the general possibility of litigation in mind.

The Defendants base their claim of work-product privilege on the assertion that the notes and summaries were prepared after a series of events in which Wendy Wellin isolated their father from them and attempted to undermine their father's long established estate plan to leave the bulk of his estate to his lineal descendants.

The first suit between the Wellin family members was filed by Keith Wellin against the Wellin children on July 3, 2013.  The privilege log submitted by the Defendant Wellin children in this suit contains a list of fifty-nine documents created in 2011 and 2012, described as either:

"Factual summary created for counsel for use in anticipated litigation;"

"Factual summary created for use in the litigation;"[7]

"E-mail concerning factual summary created for counsel for use in anticipated litigation;"

"E-mail attachment of call preparation notes created at request of counsel for use in anticipated litigation;"

"E-mail discussing facts gathered at request of counsel in anticipation of litigation;"

"E-mail chain concerning factual summaries created for counsel for use in anticipated litigation;" or

"E-mail chain concerning legal advice of Robert Brunson, Esq. about anticipated litigation."

As the Plaintiffs point out, the vast majority of the summaries and notes were made in 2011 and 2012, approximately one year before the litigation commenced.  That fact, however, is not dispositive.  Id. (explaining that work-product privilege attaches to documents created because of the "prospect of litigation").  Nevertheless, in contrast to the Wellin children's description of Wendy Wellin's actions as attempts to undermine their relationship with their father in 2011 and 2012 and to unravel his estate plan, the court notes that in January of 2013 Keith Wellin made a Ten Million Dollar ($10,000,000.00) cash gift to each of the Defendant Wellin children and to his wife, Wendy Wellin, and paid the gift taxes associated with each gift.

---

[7] This description first appears in summaries prepared in July of 2013, after suit was filed.  The description is carried over into the next six documents on the following page, which were prepared in 2011 or 2012.  The court suspects those description entries should refer to "use in

These gifts provide an inference adverse to the Defendants' description, by demonstrating that Keith Wellin appeared to remain committed to providing for his children and his lineal descendants in the last years of his life.[8]

The affidavits supplied by the Defendants in support of their position are summary in fashion, and do not identify an actual event or series of events that reasonably could result in litigation. At most, they describe actions which could potentially lead to a future event or series of future events that reasonably could result in litigation. Essentially, they identify a basis for concluding litigation might be required at some time in the future. Thus, the summaries and notes prepared in 2011, 2012 and the beginning of 2013 fit squarely within the description articulated in National Union Fire Ins. Co., to wit: an attempt to "document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes, . . . with the general possibility of litigation in mind." As such, the Defendants have failed in their burden of establishing that the notes and summaries compiled during 2011, 2012 and the beginning of 2013 were "prepared because of the prospect of litigation when the preparer face[d] an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Id. For this reason, it is recommended that the motions to compel filed by Plaintiff Schwartz/McDevitt in ECF No. 183 in 2:13-cv-03595-DCN, and Plaintiff Wendy C.H. Wellin's motion to compel the summaries, notes and emails in ECF No. 234 in 2:13-cv-01831-DCN, listed in the Defendants' privilege logs as prepared in 2011, 2012 or

_____

anticipated litigation," as opposed to "use in *the* litigation," in view of the fact that there was no litigation pending during 2011 and 2012.

[8]To further complicate the issue, the inference noted above may be questioned because, prior to his death, Keith Wellin sought, and now Wendy Wellin, as his Special Administrator, seeks, return of those gifts, alleging in their Second Amended Complaint against the Wellin children that Keith Wellin was mentally incapacitated at the time he made those gifts due to his

prior to June, 2013, be granted, with the exception of CP_Priv_000064, dated April 10, 2012, described as an E-Mail chain concerning legal advice of Robert Brunson, Esq. about anticipated litigation. For the reasons that follow, in camera review of the Brunson E-mail chain is required to determine the applicability of the work-product privilege, and it is recommended that production of the summaries or notes and e-mails identified as being prepared following June 1, 2013, be denied.

### Right to Discovery Based Upon A Showing of Substantial Need

Plaintiff next asserts entitlement to the summaries, notes and emails even if they are work product, based upon a showing of substantial need.

Rule 26(b)(3), Fed.R.Civ.P., divides work product privilege into two parts, one of which is "absolutely" immune from discovery and the other only qualifiedly immune. Id., 967 F.2d at 982. "[T]he pure work product of an attorney insofar as it involves 'mental impressions, conclusions, opinions, or legal theories . . .concerning the litigation' is immune to the same extent as an attorney-client communication." Id. This is true whether the material was actually prepared by the attorney or by another "representative" of the party. Id. (citing Fed.R.Civ.P 26(b)(3)). Thus, even upon a showing of substantial need, a document fitting this description would be immune from discovery. Consequently, the April 10, 2012 email chain described as containing the advice of Robert Brunson regarding the litigation requires in camera inspection, and could be immune from discovery to the extent it contains his mental impressions, conclusions, opinions, or legal theories concerning the litigation.

All other documents prepared in anticipation of litigation or for trial may be discovered, but only on a showing of a "substantial need." Id. Therefore, having found the summaries, notes

_medical condition and the medication he was taking. The Wellin children admit the gifts were_

and emails prepared on or after June 1, 2013 were sufficiently close to or after the commencement of the litigation, and are therefore prepared in anticipation of litigation, the next inquiry is whether the Plaintiff, as the requesting party, has demonstrated a substantial need for them.

Courts considering this issue have recognized that statements taken shortly after the events in controversy "constitute 'unique catalysts in the search for truth' in the judicial process." Id. 967 F.2d at 985 (citing McDougall v. Dunn, 468 F.2d 468, 474 (4th Cir. 1972)). Thus, in McDougall, where the Plaintiff passenger suffered serious brain injury in a single car accident, statements taken from the occupants of the vehicle shortly after the accident were discoverable based upon the Plaintiff's showing of substantial need. The fact that Plaintiff suffered from amnesia as a result of his brain injury, spending almost an entire year in the hospital following the collision, and did not engage counsel to pursue recovery until almost two and one-half years after the accident, established that he was disabled from making his own investigation at the time. Furthermore, the only witnesses to the accident were Plaintiff, the defendant driver, and a third occupant of the vehicle.

As the Court noted in National Union Fire Ins. Co., "[o]n the other hand, statements taken later . . . are more likely to contain information otherwise available to [the requesting party] through its own efforts to obtain statements or to take depositions. Id.

Here, based upon the privilege log descriptions and the circumstances, the summaries, notes and emails pre-dating the litigation are discoverable as not being prepared in anticipation of litigation. Those documents are more akin to statements taken immediately following an accident, thus facilitating the "'search for the truth' in the judicial process." Id. Conversely, the

---

made, but deny those allegations in their Answer to the Second Amended Complaint.

documents prepared immediately prior to and after the initiation of the Wellin I litigation on July 3, 2013, do not have this same quality. They are more properly characterized as "statements taken later," and as such, discoverable information is available to Plaintiff through his own efforts or through taking of depositions. Id. Consequently, Plaintiff has not made a showing of substantial need as to those documents.

For this reason, it is recommended that the Court require Defendants to submit the April 10, 2012 email chain described as "concerning legal advice of Robert Brunson, Esq. about anticipated litigation" to the Court or to the undersigned for in camera inspection, and that the motion of the Plaintiff to compel production of the Defendants summaries, notes and emails contained in the privilege log and dated on or after June 1, 2013, be denied.

### 2) Defendants' communications with Nixon Peabody, LLP

According to the parties, this issue has been resolved and the communications have been provided by Defendants to Plaintiff Schwartz/McDevitt.

### 3) Spousal Communications

Plaintiffs seek discovery of eight emails listed on Defendants' privilege log as protected by the marital communication privilege. These emails have been provided to the special referee for in camera review, and will be provided to the Court for in camera review with this report.

Essentially, Plaintiff advances two arguments in support of his position that the Defendants have failed in their burden of showing that the communications are protected by the marital communication privilege. Plaintiff first asserts that the Defendants' August 28, 2014 privilege log does not identify the email address from which the communication was sent. To the extent the emails were sent from the sender's work computer, Plaintiff argues there may not be an objectively reasonable expectation of privacy, and therefore, the marital communication

privilege has been waived.  To identify the email address of the sender and determine whether or not the privilege has been waived by sending the email from a work computer, the Plaintiff requests in camera review by the Court.

Second, the Plaintiff argues there is no privilege that attaches to communications between spouses regarding ordinary business or financial matters, thus requiring in camera review by the Court to determine the nature of the communication within each email.

As previously addressed, the availability of an evidentiary privilege is governed by the law of the forum state. Fed.R.Evid. 501; Hottle v. Beech Aircraft Corp., 47 F.3d 106, 107 at n. 5 (4th Cir. 1995).  Under South Carolina law, spouses enjoy the marital communication privilege as adopted in S.C. Code Ann. § 19-11-30.  That section reads in pertinent part as follows:

> In any trial or inquiry in any suit, action, or proceeding in any court or before any person having, by law or consent of the parties, authority to examine witnesses or hear evidence, no husband or wife may be required to disclose any confidential communication made by one to the other during their marriage.

As the United States Supreme Court has noted, "[t]he basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." Wolfle v. U.S., 291 U.S. 7, 14, 54 S. Ct. 279, 78 L.Ed. 617 (1934) (citations omitted).  Communications between spouses, privately made, are "generally assumed to have been intended to be confidential," but if the communication "because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." Id. Communications made between a husband and wife, but in the presence of a third person, are usually not regarded as privileged.  Thus, where the husband used a stenographer to prepare his letter to his wife, the Court denied the applicability of the privilege, noting that normally a

husband and wife may conveniently communicate without the help of stenographic aid, and "the privilege of holding their confidences immune from proof in court may be reasonably enjoyed and preserved without embracing within it the testimony of third persons to whom such communications have been voluntarily revealed." Id., 291 U.S. at 16-17.

In U.S. v. Hamilton, 701 F.3d 404 (4th Cir. 2012),  the Fourth Circuit Court of Appeals addressed the expectation of privacy regarding emails between a husband and wife sent and received using the husband's office computer and his work email account.  After the emails were sent, but before the Defendant husband was indicted and tried, the husband's employer adopted a computer usage policy providing each employee with the information that the computer and its contents, including all information stored in the computer, was subject to inspection and monitoring at any time, and explicitly stating the employees have "no expectation of privacy in their use of the Computer System." Id. at 408.  Each employee, including the husband, was required by the computer program to acknowledge receipt of the monitoring information, thereby establishing notice to the husband.  Despite knowledge of this lack of privacy, the district court concluded the husband failed to take any steps to protect the emails in question, even after he was on notice of he employer's policy.  Therefore, the court concluded he had no objectively reasonable expectation of privacy, and had waived the marital communication privilege.  Finding ample evidence to support the district court's findings, the Court of Appeals found no abuse of discretion, and affirmed.

The Plaintiff asserts, under the authority of Hamilton, that the Defendant-sender of each email in this case has waived the marital communication privilege if the email was sent from a work computer.  However, in camera review of each email reveals that none of them were sent from an office or work computer, and each was sent using a personal email account.  Therefore,

the sender's expectation of privacy was not compromised, and there has been no waiver of the privilege.

Furthermore, in camera review of each email reveals that none of the redacted portions of the email chains involved a discussion of ordinary business or financial matters. Nor do they discuss or involve the Defendants' interests in Friendship Partners, LP, Friendship Management, LLC, or the Wellin Family 2009 Irrevocable Trust, or any transactions involving those entities. To the contrary, the redacted communications appear to be personal in nature.

Based upon these conclusions, it is recommended that the Plaintiffs' Motion to Compel production of the following eight emails, listed on Defendants' privilege log, be denied, to wit: Cynthia_Plum_ESI_00000010; Cynthia_Plum_ESI_00000239; Marjorie_King_ESI_00000140-00000141; Marjorie_King_ESI_00000068-00000069; Marjorie_King_ESI_00000070-00000071; Marjorie_King_ESI_00000079; Marjorie_King_ESI_00000081; Marjorie_King_ESI_00000082-00000083.

**PLAINTIFF WENDY WELLIN'S MOTIONS TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER – ECF Nos 250 and 277 IN 2:13-cv-01831-DCN;**

**PLAINTIFF, McDEVITT'S MOTION TO COMPEL RFP No. 25, 28, and 32, ECF No. 83 IN 2:13-cv-03595-DCN**

**DEFENDANT WELLIN CHILDREN'S MOTION FOR A PROTECTIVE ORDER – ECF No. 276 IN 2:13-cv-01831-DCN.**

<u>**DISCUSSION**</u>

On May 5, 2014, the Court issued its Order disposing of six discovery motions filed in Wellin I and in Schwartz, and one additional discovery motion filed only in Wellin I. Among

those motions was Defendants' Motion to Compel Wendy Wellin to Comply with Subpoena. The subpoena directed to Wendy by the Defendants included the following numbered requests:

1) All bank statements, credit card statements, credit card account history statements, debit card account history statements, brokerage account statements, and other bank or credit card records or any other documents relating to your finances or Keith Wellin's finances from January of 2003 to the present;

2) All documents evidencing or relating to gifts or charitable donations made by you or Keith Wellin or contemplated by you or Keith Wellin since January of 2003.

4) All documents evidencing or otherwise related to individual payments of more than $5,000 made by you to any third parties during the past five years.

9) All emails, correspondence, text messages, or other documents evidencing or relating to real property that you considered purchasing or did purchase during the past five years, including all documents relating to the purchase of the house on Sullivan's Island;

11) All videos or images from surveillance cameras in any house in which you or Keith have resided for the past five years;

16) All documents and invoices evidencing or otherwise relating to your living expenses during the past five years;

17) All documents evidencing or otherwise relating to payments made by you during the last five years to housekeepers, butlers, maids, assistants, therapists, physicians, or other medical providers.

28) Please produce your mobile phone for inspection at a mutually convenient time and place. Please see the anti-spoliation instructions included herein.

The Court concluded each of the above requests was not reasonably calculated to lead to the discovery of admissible evidence, and for that reason, ordered that Wendy was not required to respond to those subpoena requests. However, the Court did conclude the claims asserted in Wellin I and Schwartz, now McDevitt, place Keith Wellin's present and past financial status and competence squarely at issue. Furthermore, the Court recognized the claims and defenses place both the Defendant Wellin children's and Wendy Wellin's finances at issue because that information may bear upon the question of motive, which is relevant regarding the alleged

manipulation of Keith Wellin and his estate. Consequently, the Court ultimately required that both Wendy Wellin and the Defendant Wellin children provide information as to the names and account numbers of their financial institutions.

Armed with this information, both Plaintiff Wendy Wellin and Defendants proceeded to issue subpoenas to each other's various banking institutions for the financial and related documents. Defendants' subpoenas issued to the following financial institutions are challenged by Plaintiff Wendy Wellin's Motion to Quash or in the Alternative For a Protective Order filed in Wellin I, 2:13-cv-01831-DCN, ECF No. 250, on December 15, 2014, to wit: Damariscotta Bank and Trust, Bank of South Carolina Corporation, Stifel Investments, Northern Trust, and Cara Applegate. Subsequently, Defendants issued subpoenas to the following additional institutions, American Express, Fidelity Charitable, First National Bank of Damariscotta, Fairholme Funds, Inc. and National Philanthropic Trust, and again, Plaintiff moved to quash or for a protective order in Wellin I, ECF No. 277.

In addition, Plaintiff Schwartz, now McDevitt, served the following Requests for Production upon the Defendants concerning similar financial information in action 2:13-cv-03595-DCN:

> **RFP No. 25** – All emails, text messages, correspondence or other documents memorializing or relating to the sale of the Berkshire Hathaway stock or shares and the disbursement or distribution of the stock sale proceeds;

> **RFP No. 28** – All documents setting forth or documenting the income, resources, assets, and financial condition of [each Wellin Defendant child];

> **RFP No. 32** – All emails, text messages, correspondence, or other documents documenting the current location(s) of the proceeds received from the sale of the Berkshire Hathaway stock or shares and/or what the Defendants did or have done with the funds or assets distributed or disbursed to them or for their benefit from the Wellin Family 2009 Irrevocable Trust, including but not limited to any account records for any accounts in which the funds or assets were transferred,

deposited, or moved and showing the identities of the owners, holders, or custodian of such accounts.

Plaintiff Wendy Wellin subsequently issued subpoenas to a variety of non-party financial institutions at which the Defendants hold accounts. Specifically, on February 19, 2015, Plaintiff Wendy Wellin sent subpoenas to five financial institutions including UBS Financial Services, National Penn Bank, Bank of America, N.A., Barclays, and T.D. Bank. On March 4, 2015, Plaintiff sent additional subpoenas to American Express. On March 12, 2015, Defendants moved for a Protective Order with regard to any responsive production. (See ECF 276). The Plaintiff responded to this Motion on March 30, 2015. (See ECF No. 283)

Under Rule 45 of the Federal Rules of Civil Procedure, a "command in a subpoena to produce documents… requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). If the person commanded to produce documents makes a timely written objection, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(ii). Moreover,

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents… in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(e)(2)(A). A court may, on timely motion, quash or modify a subpoena that subjects a person to undue burden or requires disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(3)(A). "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26. HDSherer LLC v. Natural Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C. 2013).

Additionally, the court has authority upon motion of a party and for good cause shown to limit discovery when "the discovery sought is unreasonably cumulative or duplicative" or " the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii); Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004).

Plaintiff, Wendy C.H. Wellin, objects to Defendants' issuance of a variety of subpoenas to non-party financial institutions which seek, *inter alia*, production of documents related to both financial accounts held by Ms. Wellin individually and her late husband, Mr. Keith Wellin. Ms. Wellin has moved to quash or, in the alternative, for a protective order to prevent or limit discovery of these materials. (See ECF No. 250 & 277). Primarily, Plaintiff argues that the Court has already determined in its May 28, 2014 Order, ECF No. 158, that the requested documentation is not relevant under Rule 26's standards, the subpoenas are overly broad, and the information sought is confidential.

Undoubtedly, this Court has previously made clear that both parties' financial conditions are squarely at issue in this litigation. The Court has also found certain requests to be overreaching in specific circumstances. The Court is also keenly aware that both the Wellin Children and Ms. Wellin seek nearly identical information from one another, arguing its relevance to this litigation, while simultaneously objecting to providing that same information. To be sure, counsel for both the Plaintiff and Defendants has acknowledged that they are willing to provide or limit some responsive production to the extent such limitation or production is the same; however, no such stipulation has been reached at this time.

Ms. Wellin's use, access, and control over her late husband's accounts as well the spending and use of her own individual and joint accounts are reasonably related to a variety of

factual and legal issues presented in this litigation.  Indeed, such information tends to either

prove, disprove, or further clarify a multitude of issues that relate not only to the Wellin

Children's claims of undue influence but also to Ms. Wellin's own allegations of the potential for

financial hardship being imposed upon her late husband by the Wellin Children.  The timing,

amount, location, and pattern of her spending from 2009 forward meet the criterion for Rule 26's

relevancy standards.  Importantly, the Plaintiff herself has identified Barry Gumb, an accountant,

as a witness who seeks to testify as to the spending habits of Ms. Wellin and her husband during

the 2009 to 2013 timeframe.  In addition to the reasons cited above, the Court finds that

producing the subpoenaed documents is, at a minimum, relevant for effective cross-examination

of Mr. Gumb.

Although the Court previously ruled that the information regarding accounts held at

various institutions by Wendy and/or Keith Wellin was not likely to lead to the discovery of

admissible evidence, the ruling was in response to the request for essentially all records from

2003 to the present, a time period extending much farther into the past than the events

surrounding either the 2009 transaction, the alleged exertion of undue influence by Wendy

Wellin, or Keith Wellin's stroke and other health issues.  The ruling was not in the context of the

requests contained in the subpoenas at issue in these motions.  Nevertheless, the requests in the

subpoenas now under consideration are in some instances overly broad, and/or irrelevant as

defined within Rule 26.  *See* Rule 45(3)(A)(iii) and (iv), Fed.R.Civ.P.  In reaching this

determination, it is clear from the arguments of counsel that each side believes the financial

information of their opponent will provide relevant information of a specific nature, but also will

provide relevant information in the form of a pattern or patterns of spending.  Considering these

assertions, I conclude a proper limitation on the temporal scope of this discovery should be from

January 1, 2009, the approximate time of the Wellin Family 2009 Irrevocable Trust transaction, and December 31, 2013, which is the time by which the events regarding the Trust that took place in November and December, 2013 were concluded.[9]

Much like Ms. Wellin's financial records, the Wellin Children's financial condition is relevant to the claims and defenses in this case. Specifically, Plaintiffs' allegations and assertions have questioned the Defendants' motives in liquidating trust assets in 2013. The contention that such disbursement was improper and might plausibly be connected to their own financial status in the time period leading up to liquidation is relevant under Rule 26's standards. The validity of such allegations has no bearing on their discoverability. Just as the Wellin Children have questioned Ms. Wellin's motivation and intention to affect Mr. Wellin's finances, Ms. Wellin is equally entitled to obtain discovery regarding the potential motivation for the Defendants' actions in liquidating trust assets. (See ECF No. 158 at pg. 14).

Ms. Wellin is also seeking financial records related to the purchasing and spending of the Wellin Children for the last six years via subpoenas to American Express. This includes statements regarding transactions after the liquidation of the trust assets in December of 2013. Ms. Wellin argues that such documents are relevant to account for the Wellin Children's use and expenditure of the funds which were disbursed. While such records are relevant for the years 2009-2013 for the reasons set forth above, the Court believes that such production is also relevant for the years following 2013 despite Defendants' objections. In particular, such records will tend to establish or discredit any notion that Defendants' spending patterns were influenced or altered as a result of the liquidation of trust assets.

---

[9] One exception to this limitation of the end date of December 31, 2013 would be in relation to discovery regarding the subsequent handling by the Defendant Wellin children of the funds distributed from the Trust.

Furthermore, the information is pertinent to the Defendants' assertions that the use of such funds was for only the specific purpose of preventing the conversion of trust assets, payment of legal fees, and protection from liability and judgment, as well as the assertions that the distribution was appropriate under the terms of he Trust and South Dakota Codified Laws. As previously noted, Plaintiff McDevitt argues that the South Dakota Statutes, Internal Revenue Service Regulations and Code, and the trust documents require clearly defined objective criteria to meet the ascertainable standards identified within the trust as a legitimate basis for distribution. The Trust provides that the Trustee may make payments of Trust income and/or principal "as the Trustee in its sole discretion shall deem necessary or advisable for [a beneficiary's] health, support, maintenance, or education (including a college education and professional or post-graduate study), or any other reasonable purpose." Articles XIII and XVI provide that a Trustee's general discretionary powers are limited "so that (i) no Trustee shall participate in any decision regarding a discretionary distribution to that Trustee personally, except to the extent governed by and made pursuant to a standard under this instrument which constitutes an ascertainable standard within the meaning of Section 2041 and 2514 of the Code; . . ."

Plaintiff argues the Defendants' basis for making the distribution is not within the meaning of the ascertainable standards that the South Dakota Statutes, Internal Revenue Service Regulations and Code, and the trust documents require. Plaintiff further asserts that he is required to trace the funds following the distribution in order to establish his case at trial.

In addition, both Plaintiff Wellin and Plaintiff McDevitt seek actual and punitive damages against the Defendant Wellin children based, in part, upon their decision to liquidate the

BRK stock.   Any subsequent investment of the distributed funds to derive income or appreciation may have a bearing upon the measure of any claimed damages.

Based upon the above, I conclude the information sought in the subpoenas by the parties from third party institutions, as well as the information sought in Plaintiff McDevitt's Requests for Production Nos. 25, 28, and 32 seek  information relevant to the claims or defenses, and is reasonably calculated to lead to the discovery of admissible evidence.   Nevertheless, I conclude the requests are, in some instances, overly broad.   Therefore, I recommend: 1) that the Plaintiff Wellin's Motion to Quash be denied, and that the Motion for Protective Order be granted as follows; 2) that Plaintiff McDevitt's Motion to Compel Production of Requests 25, 28 and 32 be granted; and 3) that Defendants' Motion for Protective Order be granted as follows:

### PLAINTIFF, WENDY C.H. WELLIN'S MOTIONS TO QUASH OR FOR PROTECTIVE ORDER – ECF Nos. 250 and 277

**Defendants' subpoena *duces tecum* issued to Damariscotta Bank & Trust Company:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Damariscotta between January 1, 2008 and December 31, 2013 (the "relevant time period");

Request No. 2. & 3.  -  Overbroad.  Financial statements should allow Defendants to identify any extraordinary transactions, with subsequent discovery as needed.

**Defendants' subpoena *duces tecum* issued to Bank of South Carolina Corporation:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Bank of South Carolina Corporation between January 1, 2008 and December 31, 2013 (the "relevant time period");

Request No. 2. & 3.  -  Overbroad.  Financial statements should allow Defendants to identify any extraordinary transactions, with subsequent discovery as needed.

**Defendants' subpoena *duces tecum* issued to Stifel Investments:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Stifel between January 1, 2008 and December 31, 2013 (the "relevant time period");

**Defendants' subpoena *duces tecum* issued to Northern Trust:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Northern Trust between January 1, 2008 and December 31, 2013 (the "relevant time period");

Request No. 2. & 3. - Overbroad. Financial statements should allow Defendants to identify any extraordinary transactions, with subsequent discovery as needed.

**Defendants' subpoena *duces tecum* issued to Cara Applegate:**

Plaintiff asserts Cara Applegate was not involved in assisting the Wellins during the relevant time period. However, this is not a stipulated fact. If it is established that Cara Applegate was not involved in assisting the Wellins prior to 2014, then the subpoena should be quashed. If Cara Applegate did assist them prior to 2014, further information is needed as to her position and role to address the issues raised by Plaintiff regarding the subpoena.

**Defendants' subpoena *duces tecum* issued to National Philanthropic Trust:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by National Philanthropic Trust between January 1, 2008 and December 31, 2013 (the "relevant time period");

Request No. 2 – Overbroad, and should be limited to "communications between you and any third party regarding litigation to which Keith Wellin is a party."

**Defendants' subpoena *duces tecum* issued to Fairholme Funds:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Fairholme Funds between January 1, 2008 and December 31, 2013 (the "relevant time period");

Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which Keith Wellin is a party."

**Defendants' subpoena *duces tecum* issued to First National Bank of Damariscotta:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Fairholme Funds between January 1, 2008 and December 31, 2013 (the "relevant time period");

Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which Keith Wellin is a party."

**Defendants' subpoena *duces tecum* issued to American Express:**

Request No. 1 – Overbroad, and should be limited to all credit applications, monthly statements, credit reports, and financial statements maintained by American Express during the relevant time period;

Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which Keith Wellin is a party."

**Defendants' subpoena *duces tecum* issued to Fidelity Charitable:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Fidelity Charitable between January 1, 2008 and December 31, 2013 (the "relevant time period");

Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which Keith Wellin is a party."

# DEFENDANTS, THE WELLIN CHILDREN'S, MOTION FOR A PROTECTIVE ORDER- ECF NO. 276

**Plaintiff's subpoena *duces tecum* issued to Bank of America:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Bank of America between January 1, 2008 and December 31, 2013 (the "relevant time period");

**Plaintiff's subpoena *duces tecum* issued to Barclays:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Barclays between January 1, 2008 and December 31, 2013 (the "relevant time period");

**Plaintiff's subpoena *duces tecum* issued to National Penn Bank:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by National Penn Bank between January 1, 2008 and December 31, 2013 (the "relevant time period");

**Plaintiff's subpoena *duces tecum* issued to T.D. Bank:**

Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by T.D. Bank between January 1, 2008 and December 31, 2013 (the "relevant time period");

**Plaintiff's subpoena *duces tecum* issued to UBS Financial Services:**

Request No. 1., 2., and 3.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by UBS Financial Services between January 1, 2008 and December 31, 2013 (the "relevant time period");

**Plaintiff's subpoena *duces tecum* issued to American Express:**

Request No. 1 – Overbroad, and should be limited to all credit applications, monthly statements, credit reports, and financial statements maintained by American Express during the relevant time period;

Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and

any third party regarding litigation to which [the named Defendant Wellin child] is a party."

The Plaintiff, Wendy C.H. Wellin, argues the information sought in the above referenced subpoenas should be limited by redacting the specific identity and location of the vendors listed in the various account statements, most specifically, in any credit card statements. She asserts this information is unnecessary, and is so intrusive as to be oppressive.

Fed.R.Civ.P. Rule 26(c)(1) provides that the Court can, for good cause, issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense by forbidding or limiting the scope of disclosure or discovery. Rule 45(d)(3) provides on timely motion, requires the court to quash or modify a subpoena that requires disclosure of privileged or other protected matter. Thus, if protection were warranted under these circumstances, modification to the subpoenas seeking financial accounts could be considered.

However, such redaction is not practical where, as here, the information is sought from third party institutions. It would be overly burdensome to require them to redact this identifying information from each monthly or quarterly statement spanning a five year period. Furthermore, the individual entries are relevant, to include the nature of the expenditure (i.e. for clothing, groceries, dinner, furniture, etc.) as well as the date of the expenditure and general information as to the place of the expenditure, to include city and/or county, and state.

Notwithstanding these impediments, it is recommended that the Court entertain a consent order if the parties can agree upon a modified procedure to accommodate this perceived intrusion of privacy. For example, an agreement whereby the statements are provided by the subpoenaed

company to the party holding the account for redaction of the specific identity of the vendors prior to production, but still providing complete information as to the nature of the individual expenditure, the date of the expenditure, and the general location of the purchase or expenditure, would seem to accommodate both the privacy interests of the account holder and the discovery interests of the opposing party; provided, the redaction is subject to the right of the opposing party to seek the identity of the vendor and specific address upon a showing of a particularized need.

**FOR THE FOREGOING REASONS, THE FOLLOWING ACTION ON THESE PENDING MOTIONS IS RESPECTFULLY RECOMMENDED, TO WIT:**

**As to ECF No. 83 - Schwartz v. Wellin, et. al. (Schwartz/McDevitt) – 2:13-cv-03595-DCN**

a) that the Plaintiff's Motion to deem the Requests for Admission to be admitted by the Defendants Wellin, Plum and King in the capacities as Co-Trustees of the Trust; Friendship Management, LLC and Cynthia W. Plum, as Manager of Friendship Management, LLC for failure to timely respond *be denied*, and that the amended answers be accepted as responses to the Plaintiff's Request for Admissions;

b) that the Defendants be required to supplement their responses to Plaintiff's Requests for Admission Nos. 2, 3, 4, 5, 6, 10, 12 and 25 within 15 Days from the date of this Court's Order to (a) address the question of whether or not the document is a true, correct and authentic copy of the document; and (b) comply with the requirements of Rule 36(a)(4) to state that the party has made a reasonable inquiry, to include a detailed description of what reasonably inquiry has been made to determine whether or not the documents are true, correct and authentic, as well as whether they were executed by the purported signer on the day as stated in each of the documents;

c) that the Defendants be required to supplement their response to Plaintiff's Request For Admission No. 12 within 15 Days in order to comply with the requirements of Rule 36(a)(4) to state that they have made a reasonable inquiry, to include a detailed description of what reasonably inquiry has been made, to determine whether or not the information the Defendants know or can readily obtain is insufficient to enable them to admit or deny the Request;

d) that the Defendants be required to supplement their response to Request for Admission No. 25. If, as they allege in their defense, Defendants contend the documents are ineffective, then their position calls for denial of the Request For Admission, fairly responding to the substance of the matter, as required by Rule 36(a)(4).  On the other hand, if they currently do not have sufficient information to admit or deny the Request, then their response must include the statement that they have made a reasonable inquiry, to include a detailed description of what reasonably inquiry has been made, and that the information they know or can readily obtain is insufficient to enable them to admit or deny;

e) that the Plaintiff Schwartz/McDevitt's Motion to Compel with regard to Requests for Admission Nos. 40, 41,42,43,44 and 45 be denied;

f) that the Plaintiff Schwartz/McDevitt's Motion to Compel production of documents in response to Requests for Production Nos. 3, 14, 15, 20, 37 and 40 on the  grounds that Defendants have waived privilege by failing to timely provide a privilege log  be denied;

g) that Plaintiff Schwartz/McDevitt's Motion to Compel further answer to Interrogatory No. 3 be denied, and that no further answer be required by the Defendants.

h) that Plaintiff Schwartz/McDevitt's Motion to Compel answers and responses to Schwartz Interrogatories Nos. 4, 5, and 7/ Requests for Production Nos. 11, 13, 24, 25, 27, 29, 34, 35 be denied on the grounds the Defendants have established the applicability of the attorney-client privilege regarding communications with their current counsel, Nelson Mullins Riley & Scarborough, LLP related to these interrogatories and requests for production; subject, however, to further consideration and ruling on the issue of co-trustee entitlement to the communications between Defendants and current counsel based upon a fiduciary exception to the privilege in the context of co-trustees regarding matters of trust administration following the submission of a supplemental report and recommendation;

i) that Plaintiff McDevitt's Motion to Compel Production of documents in response to Requests for Production Nos. 25, 28 and 32 be granted, and Defendants be required to produce all non-privileged documents in addition to a privilege log outlining all documents over which they claim privilege.

**AS TO PLAINTIFF SCHWARTZ/McDEVITT MOTION TO COMPEL – ECF No. 183 IN 2:13-cv-03595-DCN; PLAINTIFF WELLIN MOTION TO COMPEL – ECF No. 234 IN 2:13-cv-01831-DCN:**

j)  that the motions to compel filed by Plaintiff Schwartz/McDevitt in ECF No. 183 in 2:13-cv-03595-DCN,  and Plaintiff Wendy C.H. Wellin's motion to compel the summaries , notes and emails in ECF No. 234 in 2:13-cv-01831-DCN, listed in the Defendants' privilege logs as prepared in 2011, 2012 or prior to June, 2013, be granted, with the exception of CP_Priv_000064, dated April 10, 2012, described as an

E-Mail chain concerning legal advice of Robert Brunson, Esq. about anticipated litigation;

k) that the Court require Defendants to submit the April 10, 2012 email chain described as "concerning legal advice of Robert Brunson, Esq. about anticipated litigation" to the Court or to the undersigned for in camera inspection, and that the motion of the Plaintiff to compel production of the Defendants summaries, notes and emails contained in the privilege log dated on or after June 1, 2013, be denied;

l) that the Plaintiffs' Motion to Compel production of the following eight emails, listed on Defendants' privilege log, be denied,

Cynthia_Plum_ESI_00000010;
Cynthia_Plum_ESI_00000239;
Marjorie_King_ESI_00000140-00000141;
Marjorie_King_ESI_00000068-00000069;
Marjorie_King_ESI_00000070-00000071;
Marjorie_King_ESI_00000079;
Marjorie_King_ESI_00000081; Marjorie_King_ESI_00000082-00000083;

**AS TO PLAINTIFF WENDY WELLIN'S MOTIONS TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER – ECF Nos 250 and 277 IN 2:13-cv-01831-DCN;**

m) Plaintiff's motion to quash or for protective order (ECF No. 250 and No. 277) should be granted in part and denied in part, as follows:

  a. **Defendants' subpoena *duces tecum* issued to Damariscotta Bank & Trust Company:**

    i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Damariscotta between January 1, 2008 and December 31, 2013 (the "relevant time period");

    ii. Request No. 2. & 3.  - Overbroad.  Financial statements should allow Defendants to identify any extraordinary transactions, with subsequent discovery as needed.

  b. **Defendants' subpoena *duces tecum* issued to Bank of South Carolina Corporation:**

    i. Request No. 1.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Bank of South Carolina Corporation between January 1, 2008 and December 31, 2013 (the "relevant time period");

      ii. Request No. 2. & 3.  -  Overbroad.  Financial statements should allow Defendants to identify any extraordinary transactions, with subsequent discovery as needed.

c. **Defendants' subpoena *duces tecum* issued to Stifel Investments:**

      i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Stifel between January 1, 2008 and December 31, 2013 (the "relevant time period");

d. **Defendants' subpoena *duces tecum* issued to Northern Trust:**

      i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Northern Trust between January 1, 2008 and December 31, 2013 (the "relevant time period");

      ii. Request No. 2. & 3.  -  Overbroad.  Financial statements should allow Defendants to identify any extraordinary transactions, with subsequent discovery as needed.

e. **Defendants' subpoena *duces tecum* issued to Cara Applegate:**

      i. Plaintiff asserts Cara Applegate was not involved in assisting the Wellins during the relevant time period.  However, this is not a stipulated fact.  If it is established that Cara Applegate was not involved in assisting the Wellins prior to 2014, then the subpoena should be quashed.  If Cara Applegate did assist them prior to 2014, further information is needed as to her position and role to address the issues raised by Plaintiff regarding the subpoena.

      ii.

f. **Defendants' subpoena *duces tecum* issued to National Philanthropic Trust:**

      i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by National Philanthropic Trust between January 1, 2008 and December 31, 2013 (the "relevant time period");

      ii. Request No. 2 – Overbroad, and should be limited to "communications between you and any third party regarding litigation to which Keith Wellin is a party."

g. **Defendants' subpoena *duces tecum* issued to Fairholme Funds:**

    i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Fairholme Funds between January 1, 2008 and December 31, 2013 (the "relevant time period");

    ii. Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which Keith Wellin is a party."

**h. Defendants' subpoena *duces tecum* issued to First National Bank of Damariscotta:**

    i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Fairholme Funds between January 1, 2008 and December 31, 2013 (the "relevant time period");

    ii. Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which Keith Wellin is a party."

**i. Defendants' subpoena *duces tecum* issued to American Express:**

    i. Request No. 1 – Overbroad, and should be limited to all credit applications, monthly statements, credit reports, and financial statements maintained by American Express during the relevant time period;

    ii. Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which Keith Wellin is a party."

    iii.

**j. Defendants' subpoena *duces tecum* issued to Fidelity Charitable:**

    i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Fidelity Charitable between January 1, 2008 and December 31, 2013 (the "relevant time period");

    ii. Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to

communications between you and any third party regarding litigation to which Keith Wellin is a party."

**AS TO DEFENDANTS, THE WELLIN CHILDREN'S, MOTION FOR A PROTECTIVE ORDER- ECF NO.    276 IN 2:13-cv-01831-DCN;**

Defendants' motion for a protective order (ECF No. 276) should be granted in part and denied in part as follows:

    k. **Plaintiff's subpoena *duces tecum* issued to Bank of America:**
    l.

        i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Bank of America between January 1, 2008 and December 31, 2013 (the "relevant time period");

    m. **Plaintiff's subpoena *duces tecum* issued to Barclays:**

        i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by Barclays between January 1, 2008 and December 31, 2013 (the "relevant time period");

    n. **Plaintiff's subpoena *duces tecum* issued to National Penn Bank:**

        i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by National Penn Bank between January 1, 2008 and December 31, 2013 (the "relevant time period");

    o. **Plaintiff's subpoena *duces tecum* issued to T.D. Bank:**

        i. Request No. 1.    - Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by T.D. Bank between January 1, 2008 and December 31, 2013 (the "relevant time period");

    p. **Plaintiff's subpoena *duces tecum* issued to UBS Financial Services:**

        i. Request No. 1., 2., and 3.- Overbroad, and should be limited to copies of all monthly and other periodic statements maintained by UBS Financial Services between January 1, 2008 and December 31, 2013 (the "relevant time period");

    q. **Plaintiff's subpoena *duces tecum* issued to American Express:**

        i. Request No. 1 – Overbroad, and should be limited to all credit applications, monthly statements, credit reports, and financial

statements maintained by American Express during the relevant time period;

ii. Request No. 2 – Overbroad, and should be limited to "all emails, correspondence, or other documents evidencing or relating to communications between you and any third party regarding litigation to which [the named Defendant Wellin child] is a party."

**THIS RECOMMENDATION AND REPORT IS RESPECTFULLY SUBMITTED THIS 2nd DAY OF JULY, 2015.**

William L. Howard, Special Master