IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| WENDY WELLIN, as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011, | C.A. NO. 2:13-CV-1831-DCN <br><br> SPECIAL MASTER'S REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO COMPEL – ECF No. 299 IN 2:13-CV-1831-DCN; ECF No. 292 IN 2:13-CV-3595-DCN; ECF No. 61 IN 2:14-CV-04067-DCN |
| PLAINTIFF, | |
| vs. | |
| PETER J. WELLIN, et al., | |
| DEFENDANTS, | |
| LARRY S. MCDEVITT, as Trustee of the Wellin Family 2009 Irrevocable Trust, | C.A. NO. 2:13-CV-3595-DCN |
| PLAINTIFF, | |
| vs. | |
| PETER J. WELLIN, et. al., | |
| DEFENDANTS, | |
| PETER J. WELLIN, et. al., | |
| PLAINTIFF, | |
| vs. | C.A. NO. 2:14-CV-4067-DCN |

1

WENDY WELLIN, individually and as )
Trustee of the Keith S. Wellin Florida )
Revocable Living Trust u/a/d December )
11, 2011, )
                                                        )
                   DEFENDANT. )

The above-captioned matter is before the undersigned, sitting as Special Master, pursuant to the Order of the United States District Court for the District of South Carolina, Charleston Division, Hon. David C. Norton presiding, dated February 17, 2015. See ECF Nos. 270, 258, and 35.[1] The following non-dispositive discovery motion was heard on July 21, 2015:

1) Wellin Children's' Motion to Compel – ECF No. 299; Response – ECF No. 304; Reply – ECF No. 306 in Wellin v. Wellin, et. al. (Wellin I) – 2:13-cv-1831-DCN; ECF No. 292 in McDevitt v. Peter J. Wellin, Jr. et. Al. - 2:13-cv-3595-DCN; ECF No. 61 in Peter J. Wellin, et. Al. v. Lester S. Schwartz, Esq., et. al. – 2:14-cv-04067-DCN.

## FACTS/PROCEDURAL HISTORY

These lawsuits involve multiple issues surrounding the handling and disposition of the assets, trusts, and estate of Keith S. Wellin (Keith). The factual allegations and procedural histories of these cases are extensively outlined in the Order of Judge Norton issued in Wellin I, ECF No. 158, on June 28, 2014 and in the Amended Report and Recommendation of the Special Master, ECF No. 320, filed July 31, 2015.

Having considered the arguments of counsel, and after reviewing the pleadings, memoranda and exhibits submitted by the parties, I make the following report and recommendations for disposition of the motion under consideration.

On February 10, 2014, the Defendant Wellin children served a subpoena on Wendy C. H. Wellin requesting, inter alia, the following;

---

[1] These cases have been consolidated for pre-trial purposes.

2

> All emails, correspondence, text messages, or other documents evidencing or relating to communications between you and Edward Bennett or anyone with the firm of Evans, Carter, Kunes & Bennett, P.A., or any lawyer with the Hood Law Firm, during the past two years.

In response, Wendy objected to the subpoena on the grounds of attorney-client privilege.

Following a May 28, 2014 hearing on the Wellin children's Motion to Compel Wendy to comply with the subpoena, the Court ordered Wendy to produce all non-privileged documents and a privilege log for those considered by her to be privileged. ECF No. 158 at 13. Wendy thereafter produced a privilege log indicating various communications from the two law firms to the Plaintiff, Keith Wellin, included Wendy Wellin as a recipient, and were covered by the attorney-client privilege.

Counsel for the parties thereafter met in an attempt to resolve the issues, and at that conference Wendy Wellin's counsel continued to assert that the communications were protected by the attorney-client privilege because Wendy was serving as an agent for Keith Wellin during the relevant time period to assist him due to his deteriorating health and his age. In this regard, they also maintain Keith appointed Wendy as his attorney-in-fact in a general power of attorney in June of 2013. In subsequent correspondence between counsel on the subject, Wendy's attorney further opined that the Bennett and Hood engagement letters supported Wendy's assertions of privilege, notwithstanding the fact that Edward Bennett noted in separate correspondence that he does not and has not represented Wendy Wellin individually.

Defendant Wellin children then requested that Wendy's counsel produce any engagement letters or other documents they intended to rely upon to support Wendy's assertion of privilege. Wendy's counsel responded that "[a]s to your question regarding Mr. Bennett's engagement with Mrs. Wellin, while we are not in a position to produce the engagement letter, we can represent

that a portion of that letter between Mr. Wellin and Mr. Bennett's firm includes a request that Mr. Bennett communicate with Mrs. Wellin on certain matters where she speaks for Mr. Wellin."

Based upon the above history, the Wellin children now move for an order to compel production of the Bennett and Hood Law Firm engagement letters, asserting they may contain information relevant on the issue of waiver of Keith's attorney–client relationship with either or both firms by voluntary disclosure of the communications to a third party, namely, Wendy Wellin.

## DISCUSSION

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with state law.

In accordance with the second sentence of Rule 501, state law supplies the rule of decision to be applied in this diversity matter. Hatfill v. New York Times Co., 459 F. Supp. 2d 462, 465 (E.D. Va. 2006); Mordesovitch v. Westfield Ins. Co., 244 F. Supp.2d 636 (S.D.W.Va. 2003). According to Hatfill, this includes the resident state's conflict-of-laws rules. If Hatfill is a correct statement of the law, then under established principles of South Carolina law, South Carolina would apply the law as it is found in South Dakota where, as here, the Wellin Family 2009 Revocable Trust contains a choice of law provision specifying that South Dakota law applies.[2] Russell v. Wachovia Bank, N.A., 353 S.C. 208, 221, 578 S.E.2d 329, 336 (2003)("We hold that a settlor may designate the law governing his trust, and absent a strong public policy

reason, or lack of substantial relation to the trust, the choice of law provision will be honored."); Nucor Corp. v. Bell, 482 F.Supp2d 714, 728 ("Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law.")(citing Bazzle v. Green Tree Financial Corp., 351 S.C. 244, 569 S.E.2d 349, 358 (2002)("Generally, if the terms of a contract are clear and unambiguous, this court must enforce the contract according to its terms regardless of its wisdom or folly.").

However, this issue need not be resolved to rule upon this motion, because South Carolina and South Dakota law are in harmony on this specific subject, and therefore, under the rule of law in either state, the result is the same.

In 1979, South Dakota adopted the Uniform Rules of Evidence, now found in South Dakota Code of Laws 19-13-3. Section 19-13-3 states:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.
>
> > (1) Between himself or his representative and his lawyer or his lawyer's representative,
> >
> > (2) Between his lawyer and the lawyer's representative,
> >
> > (3) By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,
> >
> > (4) Between representatives of the client or between the client and a representative of the client, or
> >
> > (5) Among lawyers and their representatives representing the same client.

---

[2] ARTICLE III of the Trust provides: "Unless changed by the Trustee, the situs of this Trust is the State of South Dakota and its laws shall govern the interpretation and validity of the provisions of this instrument and all questions related to the management, administration and investment of the trusts hereby created."

"Minimum elements now necessary to invoke that privilege include: (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of five relationships enumerated in 19-13-3." State v. Catch the Bear, 352 N.W.2d 640, 645 (1984). Applying this South Dakota law to attorney billing statements containing the same type of information found in a retainer letter, i.e. "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed," the District Court for the District of South Dakota concluded these items of information are usually not protected from disclosure by the attorney-client privilege unless they reveal motive of the client in seeking representation, litigation strategy, or the specific nature of the services performed, such as researching particular areas of the law. Brennan v. Western National Mutual Insurance Company, 199 F.R.D. 660 (2001), citing Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992).

Likewise, in South Carolina, the fee agreement between attorney and client is generally not protected by the attorney-client privilege. Strickland v. Capital City Mills, 74 S.C. 16, 7 L.R.A.N.S. 426 (1906). As the Strickland court explained:

> "The general rule excludes from evidence all confidential communications of a professional nature between attorney and client, unless the client, for whose benefit the rule is established, waives the privilege. This is based upon a wise public policy which considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to his professional adviser, under the pledge of the law that such confidence shall not be abused by permitting a disclosure of such communications. This rule, however, is subject to limitations, and should not be extended beyond its legitimate scope and purposes. We see no reason why the contract between the client and attorney as to the fee to be paid for professional services, and the assignment of an interest in a judgment recovered in payment of services rendered, should fall within the rule of privileged communications. This is knowledge which is not communicated by the client to the attorney, but is knowledge of the attorney derived from his own act in creating the fact sought to be disclosed, and not from a revelation of any secret of the client. The fee

6

contract, whether regarded as made preliminary to the relation of attorney and client, or at the close of such relation in compensation for services rendered, or whether made during the existence of such relation, is really collateral to the professional relation, is not strictly a part of it, and has no bearing upon the merits of the latter, upon which the professional aid was invoked. As to such a contract the parties ordinarily stand in adversary relation.

Strickland, 54 S.E. at 221-222.

In State v. Doster, 276 S.C. 647, 652, 284 S.E.2d 218, 219 (1981), the South Carolina Supreme Court explained that "the privilege must be tailored to protect only confidences disclosed within the [attorney-client] relationship." The Court recognized the essential elements giving rise to the privilege, as stated by Wigmore, to be:

"(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

In considering this issue, the Fourth Circuit Court of Appeals noted in N.L.R.B. v. Harvey, 349 F.2d 900, 904 (C.A. 4th Cir. 1965) that "[g]enerally, the identity of the attorney's client is not considered privileged matter." In so holding, the Court quoted from the case of United States v. Pape, 144 F.2d 778, 782 (2nd Cir. 1944), cert. denied 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944) as follows:

"The authorities are substantially uniform against any privilege as applied to the fact of retainer or identity of the client. The privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the – at that stage prospective – client."

Thus, as the Fourth Circuit has observed, "'[t]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege'". In re

7

Grand Jury subpoena, 204 F.3d 516, (4th Cir. 2000)(citing Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir. 1999).

In this case, the privilege log provided to the Wellin children indicates the communications between the attorneys and their client, Keith Wellin, were disclosed to Wendy Wellin. Any voluntary disclosure to a third person not covered by the privilege waives the privilege. Marshall v. Marshall, 282 S.C. 534, 538, 320 S.E.2d 44, 47 (Ct. App. 1984); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146 (D.S.C. 1975), U.S. v. Jones, 696 F.2d 1069 (4th Cir. 1082). Wendy Wellin's counsel resist disclosure of the communications at least in part upon the assertion that she was an agent of Keith Wellin. As they concede, there is language contained in both retainer agreements touching upon the disclosure of communications to Wendy. Thus, the retainer letters are clearly relevant under Fed. R. Civ. P. 26(3)(b)(1) as bearing upon the question of whether or not Wendy's relationship to the proceedings brings her under the umbrella of the attorney-client privilege which existed between Keith Wellin and his attorneys.

Having reviewed the retainer letters in camera, I conclude there is no information within either letter that is subject to the attorney-client privilege. As noted, there is language pertinent to the issue of disclosure to Wendy Wellin. The descriptions of work to be performed do not reveal any motive of the client in seeking representation, litigation strategy, or the specific nature of the services performed, such as researching particular areas of the law. In short, there is nothing in either retainer letter that rises to the level of protected attorney-client communications under the circumstances of this case.

Counsel for Wendy Wellin argues that the court should not disclose the retainer letters because the information Defendants seek can be obtained through depositions and other sources. However, having concluded the retainer letters are not protected by the attorney-client privilege,

there is no basis for the court to conclude the information that is sought can be gathered from some other source that is more convenient, less burdensome, or less expensive. See Fed. R. Civ. P. 26 (b)(2)(C)(i).

Based upon the above analysis, it is

**RECOMMENDED**, that the Defendant Wellin children's Motion to Compel production of the Hood Law Firm and the Evans Carter Kunes and Bennett retainer letters between those firms and Keith Wellin be granted.

Respectfully submitted this 25th day of August, 2015.

_____
William L. Howard, Special Referee

9