# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| WENDY WELLIN, as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011, | C.A. NO. 2:13-CV-1831-DCN<br><br>**SPECIAL MASTER'S REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO COMPEL –**<br>ECF No. 311 IN 2:13-CV-1831-DCN;<br>ECF No. 318 IN 2:13-CV-3595-DCN;<br>ECF No. 80 IN 2:14-CV-04067-DCN |
| PLAINTIFF, | |
| vs. | |
| PETER J. WELLIN, et al., | |
| DEFENDANTS, | |
| LARRY S. MCDEVITT, as Trustee of the Wellin Family 2009 Irrevocable Trust, | C.A. NO. 2:13-CV-3595-DCN |
| PLAINTIFF, | |
| vs. | |
| PETER J. WELLIN, et. al., | |
| DEFENDANTS, | |
| PETER J. WELLIN, et. al., | |
| PLAINTIFF, | |
| vs. | C.A. NO. 2:14-CV-4067-DCN |

| | |
|---|---|
| WENDY WELLIN, individually and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011, | ) ) ) ) ) |
| DEFENDANT. | ) ) |

The above-captioned matter is before the undersigned, sitting as Special Master, pursuant to the Order of the United States District Court for the District of South Carolina, Charleston Division, Hon. David C. Norton presiding, dated February 17, 2015. See ECF Nos. 270, 258, and 35.[1]

## FACTS/PROCEDURAL HISTORY

These lawsuits involve multiple issues surrounding the handling and disposition of the assets, trusts, and estate of Keith S. Wellin (Keith). The factual allegations and procedural histories of these cases are extensively outlined in the Order of Judge Norton issued in *Wellin I*, ECF No. 158, filed on June 28, 2014, and in the Amended Report and Recommendation of the Special Master, ECF No. 320, filed on July 31, 2015.

Having considered the arguments of counsel, and after reviewing the pleadings, memoranda and exhibits submitted by the parties, I make the following report and recommendations for disposition of the motion under consideration.

On February 5, 2014, the Defendant Wellin Children issued their First Set of Requests for Production in this matter. Included in the documents requested and pertinent to the Motion now before the Court, were certain records from the files of Tom Farace, Keith's former estate-planning attorney. Specifically, Request No. 16 of the Wellin Children's First Requests for Production to Plaintiff seeks production of the following:

---

[1] The electronic case filing numbers refer to entries submitted in Case Nos. 2:13-cv-1831-DCN, 2:13-cv-3595-DCN, and 2:14-cv-4067-DCN respectively. These cases have been consolidated for pre-trial purposes. Hereinafter, unless

> 16. All documents, including letters and emails, evidencing or otherwise relating to correspondence between you and Tom Farace or anyone else at Nixon Peabody since January of 2003 regarding your estate planning, including, but not limited to, all such documents relating to the 2009 transaction, the 2013 gifts, the commencement of Wellin I or the Schwartz Action, or the actions purportedly taken by you or Schwartz after the Wellin I litigation commenced.

Initially, counsel for the Plaintiff withheld the production of all such files, asserting that any requested documents were protected by either the attorney-client or work-product privilege. On April 8, 2014, the Wellin Children filed a Motion to Compel seeking the production of said files, arguing that any applicable privilege had been waived. See ECF No. 126.[2]

On May 13, 2014, the Court conducted a hearing regarding these privilege issues. While the Court ordered Keith to produce non-privileged materials and to provide a privilege log identifying all documents being withheld, the Court declined to rule on the merits of the Motion, holding its decision in abeyance by providing the Wellin Children the right to re-file their Motion at a later date upon review of the privilege log. See ECF No. 158.

On September 9, 2014, Keith produced a 95-page privilege log that delineated all documents purported to be privileged into 15 separate categories. Keith's assertions of privilege included 1) the attorney-client privilege, 2) the work product privilege, and 3) the Confidential Estate Planning Document privilege. On September 14, 2014, Keith Wellin passed away, and his wife, Wendy C. H. Wellin (Wendy), was later substituted as the named Plaintiff in this matter.

On March 3, 2015, Tom Farace was deposed as the 30(b)(6) designee of Nixon Peabody. The central purpose of this 30(b)(6) deposition was to ascertain information that might aid in the

---

otherwise indicated, all references to electronic filing numbers will be directed to filings in Case No. 2:13-cv-1831-DCN only.

[2] It appears that much of the same files were requested by way of subpoena to Nixon Peabody, Mr. Farace's law firm in New York. However, Nixon Peabody withheld responsive production until the privilege issues were resolved.

resolution of the privilege issues that were then, and continue to be, pending before this Court. Following this deposition, counsel for Wendy produced over 2,000 pages of documents and retracted 9 of the 15 categories.

On June 5, 2015, Wendy produced a 61-page amended privilege log which continued to assert privilege over the remaining 6 categories of documents.[3] These documents are withheld under assertions of privilege, and the Wellin Children filed the within Motion seeking the production of these materials on July 6, 2015. The Plaintiff, Keith Wellin, filed his Memorandum in Opposition on July 23, 2015, and the Wellin Children submitted their Reply on August 14, 2015.

The remaining categories of documents at issue are as follows:

"II.    IRA Beneficiary Designation Information and Other Confidential Estate Planning

X.    Correspondence and Draft Correspondence between Nixon Peabody and Keith Wellin

XI.    Internal Nixon Peabody Attorney Notes, Research, and Memoranda

XII.    Internal Nixon Peabody Correspondence

XIII.    Correspondence Between Nixon Peabody and Other Attorneys Acting on Keith Wellin's Behalf, including Martin Haines; the Hood Law Firm; and Evans, Carter, Kunes, & Bennett, P.A.

XIV.    Correspondence and Draft Correspondence between Nixon Peabody and Wendy Wellin and Documents Prepared for Wendy Wellin

## DISCUSSION

In a diversity action, federal courts apply state law to determine questions of privilege. In re New York Renu with Moistureloc Prod. Liab. Litig., MDL 1785, 2008 WL 2338552 (D.S.C.

---

[3] It should be noted that while the amended privilege log was provided to the Special Master, no documents were submitted for *in camera* review. Rather, at the hearing on August 5, 2015, the parties articulated their belief that all

May 8, 2008). When deciding which state's privilege law applies, federal courts typically look to which state has the greatest interest in the privilege, which often results in the court applying the law of the state where the purportedly privileged communication took place. Lego v. Stratos Lightwave, Inc., 224 F.R.D. 576, 578-79 (S.D.N.Y. 2004). It would appear that the majority, if not all, of the communications at issue in Defendant's Motion took place in either New York or South Carolina. Further, all parties appear to agree that the application of either New York or South Carolina law would be proper, and no party has identified any discernible distinction between either state's law concerning the privilege issues *sub judice*.

### Waiver Via Third Party Disclosure

First, the Wellin Children contend that all privileged communications being withheld by Wendy should be disclosed because any such privilege has been waived due to disclosure to third parties. Principally, the Wellin Children cite to a repeated pattern of conduct by Tom Farace of freely communicating with the Wellin Children on virtually every aspect of Keith's estate planning. Notably, they assert that Tom Farace did so at the direction of Keith himself and that Keith not only provided authorization for the sharing of such information, he encouraged his counsel to share more details with his children than with himself. These assertions are not directly disputed by Wendy; however, she argues that such conduct does not amount to a waiver of privilege because the Wellin Children were acting as agents and fiduciaries on behalf of Keith.

In State v. Doster, 276 S.C. 647, 652, 284 S.E.2d 218, 219 (1981), the South Carolina Supreme Court explained that "the [attorney-client] privilege must be tailored to protect only confidences disclosed within the [attorney-client] relationship." As the assertion of privilege is viewed as an obstacle to "the truth seeking mission" of the litigation process, the privilege must

---

documents share the same issues and *in camera* review of the individual documents was not necessary to resolve the privilege issues.

be narrowly construed and applied only where the exclusion of otherwise relevant evidence "has a public good transcending the normally predominant principle of utilizing all rational means for ascertain the truth." In Re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 338 (4th Cir. 2005). The Doster Court recognized the essential elements giving rise to the privilege, as stated by Wigmore, to be:

> "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

The party asserting privilege over the contested communications bears the burden of proving its applicability. State v. Love, 275 S.C. 55, 59, 271 S.E.2d 110, 112 (1980). Without question, any voluntary disclosure to a third person not covered by the privilege waives the privilege. Marshall v. Marshall, 282 S.C. 534, 538, 320 S.E.2d 44, 47 (Ct. App. 1984); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146 (D.S.C. 1975), U.S. v. Jones, 696 F.2d 1069 (4th Cir. 1982). As the South Carolina Court of Appeals noted in Marshall, such voluntary disclosure waives the privilege not only as to the specific communication disclosed but also to "all communications between the same attorney and the same client on the same subject." Marshall, 282 S.C. 534, 538, 320 S.E.2d 44, 44 (Ct. App. 1984).

In light of Tom Farace's deposition testimony, it is indisputable that otherwise privileged information was shared with the Wellin Children at the invitation and direction of Keith. It appears that this pattern of disclosure relates to nearly every facet of Keith's estate planning. Indeed, when questioned about each topic of information being withheld, Mr. Farace made no distinction with regard to what he was authorized to share. As such, any privilege surrounding Keith's communication with Farace regarding his estate planning must be viewed as having been

voluntary waived by Keith unless the Plaintiff can affirmatively demonstrate that such disclosure was made only to the Wellin Children in their capacity as agents of Keith.

To properly establish the existence of an agency relationship, the party attempting to make such a showing must demonstrate "a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Integrated Consulting Servs., Inc. v. LDDS Commc'ns, Inc. Ga., 176 F.3d 475 (4th Cir. 1999).

I conclude the record does not support the assertion that the attorney-client communications between Keith and Tom Farace were shared with Keith's children solely in their capacity as agents for Keith. Nor does the record support the conclusion that Keith's children were confined in their responsibilities to acting only for the benefit of Keith.

Plaintiff does not cite to any testimony from Farace or any document in the record which supports the position that the Wellin Children's receipt of otherwise confidential information was effectuated because they were acting as their father's agents. While each of the Wellin Children served in various legal capacities with respect to their father, either individually, as trustees or as a limited partner of Friendship Partners, LP, it would be merely a presumption to find that the Wellin Children were acting as their father's agents, through their respective roles, at all times in communicating with Farace.

To the contrary, there is ample evidence in the record that negates Plaintiff's position. Tom Farace testified that his disclosure of confidential information to Peter Wellin, Keith's power-of-attorney since 2006, pre-dated his appointment as power of attorney. Wendy does not assert the existence of any agency relationship prior to 2006. More importantly, Farace testified that he never understood Peter's access to confidential information to be contingent upon his role

as power of attorney. To the contrary, Farace testified that he never knew of any such role by Peter. While both Marjorie King and Cynthia Plum were members of Friendship Management, LLC, the general partner of Friendship Partners, L.P., of which Keith was a limited partner, Mr. Farace testified that Keith's authorization to communicate estate planning issues with his children was not limited to matters dealing only with the respective partnerships. Rather, Mr. Farace communicated with the Wellin Children as early as 2002 regarding a prenuptial agreement with Ms. Wellin.

The case law cited by Wendy does not counsel a contrary result as they are distinguishable from the instant Motion. For example, Wendy's reliance on Lama v. Preskill, 353 Ill. App.3d 300, 818 N.E.2d 443 (2004) is misplaced. In Lama, the Court's decision to extend the privilege to a client's husband was premised upon a record that conveyed the creation of an agency relationship. Specifically, while the client plaintiff was hospitalized, she requested that her husband physically take her medical records to her attorney and meet with him in furtherance of her case. Similarly, in Stroh v. Gen. Motors Corp., 213 A.D.2d 267, 623 N.Y.2d 873 (1995), the client's daughter was present for otherwise confidential communications because she was needed to assist the client's mother in transportation and general well-being. The record before the Court is substantially different. Plaintiff has offered no evidence which shows that the Wellin Children were provided with confidential information so as to affirmatively aid or advance Keith's estate planning. The disclosures simply were not relevant to the rendering of legal advice. As such, it does not appear that they can be properly characterized as agents.

For the same rationale as set forth above, Wendy Wellin's communication with Tom Farace regarding Keith's estate planning should be produced. As asserted by Wendy in her Response filed with the Court, such purportedly privileged communications "were done in

furtherance of Mr. Wellin's estate planning and on Mr. Wellin's behalf." See ECF No. 315 at pg. 16.[4] Keith's undisputed desire to share his estate planning communications to and from Farace with his children warrants a finding of waiver of the attorney-client privilege in this instance. To the extent such communications were undertaken by Ms. Wellin on behalf of Keith and regarding his estate planning, they should be disclosed.[5]

Therefore, it is recommended that all documents in categories X, XI, XII, and XIV be produced on the basis of waiver of the attorney-client privilege as a result of third party disclosure.[6] For the same rational as set forth above, all internal Nixon Peabody documents regarding Keith's estate planning should be produced.[7]

### At Issue Waiver

The Wellin Children next raise the "at issue" waiver doctrine as grounds for production of the Farace files. The "at issue" waiver primarily arises in legal malpractice jurisprudence whereby a client places otherwise privileged information into the crux of the case by way of asserting a claim or raising a defense. See Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash 1975). At its essence, it is a judicially-created doctrine that finds an implied waiver of the attorney-client privilege under equitable considerations. It has been expanded to other areas of law by courts throughout the nation. See e.g., United States v. White, 944 F.Supp.2d 454 (D.S.C. 2013); Gardner v. Major Auto Companies, Inc., No. 11 CIV. 1664 FB VMS, 2014 WL 1330961

---

[4] Wendy's assertion that she was acting on behalf of Keith in furtherance of his estate planning does not affect the analysis herein because the existence of Wendy's agency relationship to Keith does not alter the question of whether a disclosure to the Wellin Children waives the privilege.

[5] Such recommendations are not made with regard to personal advice rendered and/or sought by Ms. Wellin on her own behalf as a client of Tom Farace.

[6] With regard to Category XIII, I conclude these documents must be reviewed *in camera* to determine whether or not they are subject to the waiver of attorney-client privilege or are protected from disclosure by the work product or other privilege. Upon review, the Special Master will issue a further Report & Recommendation.

[7] The Court need not make an initial determination as to whether these internal Nixon Peabody documents are in fact confidential under the attorney-client privilege because of the conclusion that the privilege has been waived.

(E.D.N.Y. Mar. 31, 2014); <u>Livingston v. North Belle Vernon Borough</u>, 91 F.3d 515, 537 (3rd Cir. 1996); <u>Green v. Beer</u>, 06 CIV. 4156 KMW/JCF, 2010 WL 3422723 (S.D.N.Y. Aug. 24, 2010).

Plaintiff, Wendy Wellin, takes the position that there has been no implied waiver under the circumstances presented. Primarily, she argues that while the attorney-client privilege may be lost when a litigant affirmatively asserts they received and acted upon improper legal advice, thereby placing that legal advice directly at issue, it is not lost where, as here, a litigant claims to have been defrauded by justifiably relying upon the representations of his adversary. Under those circumstances, the fact that legal advice provided to the litigant in connection with the transaction might shed light upon what knowledge the litigant had and potentially undermine the litigant's basis for relying upon his adversary, is not sufficient to justify voiding the attorney-client relationship. Put simply, Wendy contends that even to the extent such legal advice by Farace might be pertinent and could call into question the reasonableness of Keith's claim of reliance, cases concerning the implied "at issue" waiver require a specific affirmative assertion of the improper advice for waiver to attach. See <u>Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust", 43 A.D.3d 56, 64, 837 N.Y.S.2d 15, 23 (2007)</u>; <u>Aiossa v. Bank of Am., N.A.</u>, CV 10-01275 JS ETB, 2011 WL 4026902 (E.D.N.Y. Sept. 12, 2011); <u>Veras Inv. Partners, LLC v. Akin Gump Strauss Haur & Feld LLP</u>, 52 AD3d 370, 372, 860 N.Y.S.2d 78, 82 (2008).

However, what differentiates this case from the cases cited by Plaintiff is the fact that the transactions in this case are not between the Plaintiff and the Defendants. They were transactions accomplished by Keith Wellin to establish an estate plan with the aid of his attorney, Tom Farace. The Defendants were the beneficiaries of that estate plan. Therefore, the advice

---

presumed that to be the case and negates the need for that threshold analysis. To the extent these documents pertain to Keith's estate planning matters, any such privilege has been waived.

received by Keith Wellin from his attorney is not simply relevant, but is vital to the defense of the Wellin children.

In analyzing whether the attorney-client privilege has been waived under the "at issue" waiver doctrine, courts examine whether (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through his affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Hearn v. Rhay, 68 F.R.D. 574, 581 E.D. Wash. 1975); see also Goldberg v. Hirschberg, 10 Misc. 3d 292, 296, 806 N.Y.S.2d 333, 336 (Sup. Ct. 2005)(citing Hearn and the three factors).

As Plaintiff points out, where a party merely claims "it relied on information provided by its adversary," the adversary is not permitted "to gain access to privileged communications in an effort to show that the party claiming reliance received advice from its attorney which affected its course of conduct." Weizmann Inst. Of Sci. v. Neschis, 00 CIV.7850 (RMB), 2004 WL 540480 (S.D.N.Y. Mar. 17, 2004).

In support of her position, Plaintiff advances the case of Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc., 111 F.R.D. 76 (S.D.N.Y. 1986). In that case, the Plaintiff sued the Defendant for breach of a guarantee contract, and for fraudulent inducement. Id. at 78. Defendant counterclaimed, alleging, *inter alia*, that the Plaintiff had breached an oral agreement to forebear collection, and alleged fraud by Plaintiff inducing Defendant to purchase the stock of the borrower and to guarantee the debt to Plaintiff. Id. at 79. Based upon these allegations, Plaintiff argued the Defendant was claiming that it justifiably relied upon alleged oral representations of the Plaintiff, and by doing so, interjected reliance as an issue, thus opening the

door to the advice received by counsel, thereby waiving the attorney-client privilege.[8] The Court rejected this argument, concluding that what was relevant on the issue of reliance was not what counsel said to Ayala or what Ayala said to counsel, but what the Defendant knew or should reasonably have been expected to know, regardless of the source of the factual information. Id. 82. As the Court noted, voiding the attorney-client privilege under these circumstances would eviscerate the privilege, rendering it penetrable in almost every commercial litigation in which fraud or reliance is an issue. Id. at 85. See also Arkwright Mut. Ins. Co. v. National Mutual Fire Ins. Co. of Pittsburgh, Pa., 90 CIV. 7811 (AGS), 1994 WL 510043 (S.D.N.Y. Sept. 16, 1994); Allen v. West-Point Pepperell Inc., 848 F. Supp. 423, 431 (S.D.N.Y. 1994). In such circumstances, invasion of the attorney-client privilege is not necessary; rather, the discovering party should simply inquire directly of the other party as to its knowledge of relevant facts, which must be disclosed. Standard Charter Bank, 111 F.R.D. at 81; Allen, 848 F.Supp. at 431.

In contrast, as the court noted in Arkwright, "[i]nvasion of the privilege may, however, be warranted where the specific content of the legal advice received must be shown to prove a claim or defense." Arkwright at *12. Thus, construing Hearn narrowly, some courts restrict the "in issue" doctrine to create an implied waiver of the attorney-client privilege only when a party puts "in issue" the contents of an attorney-client communication. Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 415 (S.Del. 1992); North River Ins. Co. v. Philadelphia Reinsurance Corp., 797 F.Supp. 363, 370-371 (D.N.J. 1992).

Here, the Plaintiff initiated suit, and the assertion of the privilege is a result of that affirmative act. Thus, the first element identified in Hearn is satisfied.

---

[8] It appears the genesis of Plaintiff's position was, at least in part, the production during discovery of the Defendant's internal memo in which it rejected its attorneys' advice not to rely upon the oral representations of Plaintiff, but to instead require a "bullet-proof" agreement..

The key assertions underpinning Keith Wellin's claim against the Defendants regarding the 2009 transaction are that he did not understand the nature and effect of the transaction he entered into, that his children misled him into believing the 2009 transaction was "tax-advantaged", was in his best interest, and that he had sufficient liquidity to cover the 2013 gifts made to his wife and the three Defendant Wellin children. In his deposition, Keith testified that he was never told about the tax consequences of the 2009 Wellin Family Irrevocable Trust by his son, Peter; that he hadn't heard from his attorney, Tom Farace, in years, and that he "just heard everything through [his son] Peter." Deposition Keith Wellin, P. 49-50.

Unlike the assertions in <u>Standard Charter Bank PLC</u>, I conclude these allegations do put "in issue" the contents of the attorney-client communications with Tom Farace. In <u>Standard Charter Bank PLC</u>, the relationship forming the duty of honest and fair dealing was the contract between Plaintiff and Defendant, and the communications between Plaintiff and Defendant provided the factual basis for deciding the issue of breach based upon allegations of fraud and misrepresentation. The advice of counsel might have been pertinent to the conclusions the Defendant drew from the representations it alleged were made by Plaintiff, but no more so than in any commercial setting. Thus, voiding the attorney-client relationship in that context would have eviscerated the privilege in any commercial case involving allegations of fraud and misrepresentation.

By contrast, in this case the harm Plaintiff claims results from the legal affect of the documents forming his estate plan and later, his gifts to his children. The 2009 Wellin Family Irrevocable Trust and other documents related to the transaction were prepared under the direction of Plaintiff's attorney, Tom Farace. Keith's attorney had a primary duty to inform him as to the legal affect of his actions and the legally binding documents he executed. In other

words, Plaintiff's causes of action against Defendants are based upon Keith's reliance upon alleged misrepresentations by Defendants as to the legal effect of the documents he procured directly from his attorney and then executed. But it is uncontroverted that the Defendants are not attorneys, and had no attorney-client relationship with Keith. Rather, they are his children, and as such, were his chosen beneficiaries under the 2009 (and previous) estate plan. Keith's causes of action are based upon Plaintiff's assertion that the Defendants were acting as his agents and as his fiduciaries. In this regard, Keith claims the communications from Tom Farace were transmitted to him through his son, Peter, who was supposed to be acting in Keith's best interests, acting as his agent and fiduciary. Assuming, without deciding, that Peter was so acting, then the attorney-client communications are placed directly in issue by Keith's allegations. Consequently, I conclude that through Keith's deposition testimony, averments in his pleadings, and his September 13, 2013 affidavit, Keith Wellin placed Tom Farace's communications with him regarding the 2009 transaction and 2013 gifts into the crux of this case.

> As the Court noted in Standard Charter Bank PLC:
>
> "What appears common among [the cases] relied upon by SCB finding waiver of the privilege is (1) the very subject of the privileged communications was critically relevant to the issue to be litigated, (2) there was a good faith basis for believing such essential privileged communications existed, and (3) there was no other source of direct proof on the issue."

Under the circumstances in this case, the attorney-client communications between Keith and Tom Farace meet each of these qualifications. As such, I conclude they are directly in issue, and the attorney-client communications between Keith Wellin and Tom Farace are waived.

For the reasons stated above, I further conclude that an analysis of whether or not the Plaintiff has asserted an "advice of counsel" defense, thereby waiving the attorney-client privilege, is unnecessary.

Based upon the above analysis, it is:

**Recommended** that the Court find that the attorney-client privilege has been waived as to the Nixon Peabody documents listed on the Plaintiff's privilege log and not previously produced, comprising those documents listed in Plaintiff's categories II., X., XI., XII., and XIV., and that the Court grant the Defendant's Motion to Compel production of the said documents. It is further;

**Recommended** that the Nixon Peabody documents listed in Plaintiff's category XIII be provided to the undersigned or to the Court for *in camera* inspection to determine if they are protected from disclosure by work-product or other privilege.[9]

Respectfully submitted this 23rd day of September, 2015.

_____
William L. Howard, Special Master

---

[9] The Wellin Children also argue that the above-referenced Farace files should be produced in accordance with the "testamentary exception" to the attorney client privilege. Because of the above analysis, this issue need not be reached. However, despite South Carolina's lack of acknowledgement of this doctrine, I conclude that South Carolina courts would likely adopt this exception to the attorney-client privilege. Nonetheless, the scope and nature of any such adoption need not be fully examined based on the recommendations reached.