IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| WENDY WELLIN, as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011,<br><br>PLAINTIFF,<br><br>vs.<br><br>PETER J. WELLIN, et al.,<br><br>DEFENDANTS, | C.A. NO. 2:13-CV-1831-DCN<br><br>SPECIAL MASTER'S REPORT AND RECOMMENDATION RE: WENDY WELLIN'S MOTION FOR PROTECTIVE ORDER PERTAINING TO KEVIN KENNEDY INFORMATION, ECF 333 IN 2:13-CV-1831-DCN |
| LARRY S. MCDEVITT, as Trustee of the Wellin Family 2009 Irrevocable Trust,<br><br>PLAINTIFF,<br><br>vs.<br><br>PETER J. WELLIN, et. al.,<br><br>DEFENDANTS, | C.A. NO. 2:13-CV-3595-DCN |
| PETER J. WELLIN, et. al.,<br><br>PLAINTIFF,<br><br>vs. | C.A. NO. 2:14-CV-4067-DCN |

WENDY WELLIN, individually and as )
Trustee of the Keith S. Wellin Florida )
Revocable Living Trust u/a/d December )
11, 2011, )
)
                      DEFENDANT. )

The above-captioned matter is before the undersigned, sitting as Special Master, pursuant to the Order of the United States District Court for the District of South Carolina, Charleston Division, Hon. David C. Norton presiding, dated February 17, 2015. See ECF Nos. 270, 258, and 35.[1]

These lawsuits involve multiple issues surrounding the handling and disposition of the assets, trusts, and estate of Keith S. Wellin (Keith). The factual allegations and procedural histories of these cases are extensively outlined in the Order of Judge Norton issued in *Wellin I*, Case No. 2:13-cv-1831-DCN, ECF No. 158, filed on June 28, 2014, and in the Amended Report and Recommendation of the Special Master, ECF No. 320, filed on July 31, 2015.

Wendy C.H. Wellin, as the Special Administrator of the Estate of Keith Wellin, and as Trustee of the Keith Wellin Florida Revocable Trust u/a/d December 11, 2001 (Plaintiff), moves the Court, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Local Rule 30.04, for an Order preventing disclosure of certain information Plaintiff claims is privileged from discovery. During the deposition of non-party witness, Mr. Kevin Kennedy, he was instructed by Plaintiff's counsel not to answer or disclose the allegedly protected information on the basis of attorney-client privilege.

---

[1] The electronic case filing numbers refer to entries submitted in Case Nos. 2:13-cv-1831-DCN, 2:13-cv-3595-DCN, and 2:14-cv-4067-DCN respectively. These cases have been consolidated for pre-trial purposes.

### FACTS/PROCEDURAL HISTORY PERTINENT TO THE MOTION FOR PROTECTIVE ORDER

Hamilton College issued a subpoena *duces tecum* and a Notice of *De Bene Esse* deposition to witness Kevin Kennedy. On August 24, 2015, Mr. Kennedy produced documents and a privilege log. Mr. Kennedy's privilege log contains email correspondence between Mr. Kennedy and two attorneys, Basil Zirinis, of Sullivan and Cromwell LLP and Edward Bennett of Evans, Carter, Kune and Bennett.

Mr. Kennedy's deposition was held in New York on August 27, 2015. Mr. Kennedy testified that he was personally acquainted with Keith Wellin, and he provided testimony regarding his visit with Mr. Wellin in March of 2014. Mr. Kennedy also explained that he has served as a member of the Hamilton College's Board of Trustees. Mr. Kennedy testified initially that he was appearing on behalf of Hamilton College (Dep. Kevin Kennedy 55:20-22), but his role was then clarified by Hamilton College's attorney, John Beach. Mr. Beach explained that Mr. Kennedy was appearing as a named witness because he was a trustee of Hamilton College, but he was not testifying on behalf of the College (Dep. Kevin Kennedy 55:23-56:9). Mr. Kennedy thereafter testified as follows:

> *Q. My question to you is, do you know what Hamilton College's position is in this litigation as to whether Keith Wellin had capacity at any of those times at issue in the litigation?*
> *A. I do not know what Hamilton College's position is, sir.* (Dep. Kevin Kennedy 57:4-9).

Mr. Kennedy's privilege log contains an email he sent to attorneys Edward Bennett and Basil Zirinis. He was asked by counsel for the Defendant Wellin Children to testify about "when and why [Mr. Kennedy] emailed with [Mr. Bennett]. (Ex. 2- Dep. Of Kevin Kennedy 82:20-21) Mr. Kennedy replied, "Well, it really came through my counsels, so I assume that's privileged." (Ex. 2 82:22-23) Counsel for the Wellin Children asked about the email again, at which time both

Hamilton College's counsel and Plaintiff's counsel objected and instructed the witness not to answer the question on the basis of privilege.

The passage from the deposition is as follows:

> Q. *Have you ever e-mailed with Edward Bennett?*
> A. *I have.*
> Q. *Tell me about when and why you emailed him.*
> A. *Well, it really came through my counsels, so I assume that's privileged.*
> Q. *What were the e-mails about?*
> A. *He contacted Mr. Zirinis –*
>
> *[Counsel for Hamilton College]: I will object. I am going to object to the question and instruct the witness not to answer, based on privilege.*
> *And my understanding from what I've just heard from Mr. Kennedy is that he also has just asserted a privilege directly, his own privilege on this, on this line of questioning.*
>
> *[Counsel for Plaintiff]: On behalf of the estate, we also join in that instruction and we will file the appropriate motions with the court.*
> *(Ex. 2 – Dep. Of Kevin Kennedy 82:17-83:11).*

During the deposition, Mr. Kennedy stated that attorney Basil Zirinis had represented Mr. Kennedy for at least the past Fifteen years. (Dep. Of Kevin Kennedy 75:7-76:23). Mr. Kennedy testified that Mr. Zirinis was his "trust and estates lawyer and has been for years", and also represented him in general matters such as forming an LLC. (Dep. Of Kevin Kennedy 75:24 – 75: 13).

Keith Wellin retained Mr. Zirinis as his legal counsel to provide legal advice and assistance in connection with this litigation, signing a retainer letter with Sullivan and Cromwell LLP on September 25, 2013. (Ex. 1 – Decl. of Basil Zirinis ¶4 – 5). According to the engagement letter, Mr. Zirinis' representation included consulting with Mr. Wellin and his attorneys regarding strategic litigation advice.

On April 24, 2014, Mr. Wellin's attorney, Edward Bennett, emailed Mr. Zirinis regarding a specific matter at issue in the Wellin litigation. (Pl. Ex. 1 – Decl. Basil Zirinis, ¶7.) Plaintiff

asserts this email, provided to the undersigned for *in camera* review, contains strategic mental impressions and analysis regarding a specific legal issue about which Mr. Bennett sought counsel from Mr. Zirinis.

Mr. Zirinis forwarded the Bennett e-mail to Mr. Kennedy for reasons Plaintiff says are "self-evident" from review of the email exchange, and he confirms in his Declaration that he consulted with Mr. Kennedy and advised Mr. Kennedy regarding the matter discussed in Mr. Bennett's email. According to Mr. Zirinis, he then responded to Mr. Bennett's email and provided advice and counsel to Mr. Wellin (through Mr. Bennett) regarding the issue raised in Mr. Bennett's email.

Thereafter, Mr. Kennedy replied to the previous emails from counsel with the email referred to in the deposition to both Mr. Zirinis and Mr. Bennett on April 28, 2014, which Plaintiff describes as pertaining to the specific issue about which Mr. Zirinis had consulted with Mr. Bennett (acting on behalf of Mr. Wellin) and with Mr. Kennedy, in his role as legal counsel for Mr. Wellin and Mr. Kennedy.

Plaintiff asserts the email correspondence sent between attorney Zirinis, Mr. Kennedy and attorney Bennett are protected from disclosure by the attorney-client privilege under the "joint client" doctrine because they were acting pursuant to a joint client representation, whereby Mr. Zirinis jointly and concurrently served as legal counsel and advised both Keith Wellin (through Mr. Wellin's counsel, Mr. Bennett) and Mr. Kennedy on the matter discussed in the email communication. In her Reply brief, Plaintiff further asserts that the communications contain both fact and opinion work product of the attorneys for Keith Wellin, and are protected by the work product privilege.

## DISCUSSION

**I.) Attorney-client Privilege**

Plaintiff first asserts the communications are protected from disclosure by attorney-client privilege by virtue of the "joint-client" doctrine or common interest exception.

Because these cases are diversity cases, the availability of an evidentiary privilege is governed by the law of the forum state. Fed.R.Evid. 501; Hottle v. Beech Aircraft Corp., 47 F.3d 106, 107 n. 5 (4th Cir. 1995).

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with state law.

In accordance with the second sentence of Rule 501, state law supplies the rule of decision to be applied in this diversity matter. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938); Rules of Decision Act, 28 U.S.C. § 1652; Hatfill v. New York Times Co., 459 F. Supp. 2d 462, 465 (E.D. Va. 2006); Mordesovitch v. Westfield Ins. Co., 244 F. Supp.2d 636 (S.D.W.Va. 2003). This includes the resident state's conflict-of-laws rules. Hatfill, 459 F.Supp.2d at 465.

South Carolina is both the forum of the pending actions and the Motion for Protective Order. Therefore, a Federal Court applies the choice of law rules prevailing in South Carolina. See Legos v. Stratos Lightwave, Inc., 224 F.R.D. 576, n. 7 (S.D.N.Y. 2004), and cases cited therein.

As to issues related to the Wellin Family 2009 Irrevocable Trust, South Carolina applies the law as it is found in South Dakota because the Trust contains a choice of law provision specifying that South Dakota law applies.[2] Russell v. Wachovia Bank, N.A., 353 S.C. 208, 221, 578 S.E.2d 329, 336 (2003)("We hold that a settlor may designate the law governing his trust, and absent a strong public policy reason, or lack of substantial relation to the trust, the choice of law provision will be honored."); Nucor Corp. v. Bell, 482 F.Supp2d 714, 728 ("Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law.")(citing Bazzle v. Green Tree Financial Corp., 351 S.C. 244, 569 S.E.2d 349, 358 (2002)("Generally, if the terms of a contract are clear and unambiguous, this court must enforce the contract according to its terms regardless of its wisdom or folly.").

Section 19-19-502(b) of the South Dakota Codified Laws defines the attorney-client privilege and reads as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.
>
> (1) Between himself or his representative and his lawyer or his lawyer's representative,
>
> (2) Between his lawyer and the lawyer's representative,
>
> (3) By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,
>
> (4) Between representatives of the client or between the client and a representative of the client, or
>
> (5) Among lawyers and their representatives representing the same client.

---

[2] **ARTICLE III** of the Trust provides: "Unless changed by the Trustee, the situs of this Trust is the State of South Dakota and its laws shall govern the interpretation and validity of the provisions of this instrument and all questions

"Minimum elements now necessary to invoke that privilege include: (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of five relationships enumerated in 19-13-3 [now SDCL 19-19-502(b)]." State v. Catch the Bear, 352 N.W.2d 640, 645 (S.D. 1984). The applicable provision is found in subsection (4), providing protection for client communications by a client "or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein."

Under South Dakota law, "[t]he burden of showing entitlement to assert the [attorney-client] privilege rests with its claimant." Id. at 645. This is consistent with South Carolina law and logic. Under South Carolina law, the burden of proof falls to the party asserting the privilege. City of Myrtle Beach v. United Nat'l Ins. Co., No, 4:08-1183-TLW-SVH, 2010 WL 3420044 at 5 (D.S.C. Aug. 27, 2010)(applying South Carolina law); Tobaccoville USA, Inc. v. McMaster, 387 S.C. 287, 692 S.E.2d 526, 529 (2010). As Judge Hemphill articulated in Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1148, 1160 (D.S.C. 1974)(citing 8 Wigmore Evidence § 2292 (McNaughton rev. 1961)), "[t]here can be little doubt in the case of *in camera* review of documents that the burden of proof should be upon the party asserting the claim of privilege. The adverse party, by virtue of the obvious fact that it has not seen the documents, cannot be expected to bear the burden of establishing a lack of privilege." Duplan Corp., 397 F.Supp. at 1160. Furthermore, as Judge Hemphill observed, "[t]he mere existence of an attorney-client relationship does not raise a presumption of confidentiality." Id.

The communications at issue pertain to the litigation involving the Wellin Family 2009 Irrevocable Trust, which specifically includes the administration, management and investment of

---

related to the management, administration and investment of the trusts hereby created."

the Trust. For that reason, the issues are governed by the Trust's South Dakota choice of law provision.

The first email contains the main communication, and it was prepared by Keith Wellin's counsel, Edward Bennett. The subject of the communication is directly related to the ongoing litigation in which the administration of the Trust is contested, and it contains Attorney Bennett's advice, opinions, and observations regarding certain litigation matters. The recipient of this email communication is Mr. Zirinis, also retained as one of Mr. Wellin's attorneys to aid in providing advice and consult regarding the same litigation matters.

The second communication is a forward of the Bennett email by Mr. Zirinis to Mr. Kennedy, who had used Mr. Zirinis as his counsel for the past fifteen years. Again, I conclude from a review of the communication, that it directly pertains to the same litigation matter.

Finally, the third communication is Mr. Kennedy's reply to the above described email, sent to Mr. Zirinis and Mr. Bennett, responding to the question regarding the litigation matter contained within the Bennett email. Thus, all three communications frame the same email regarding the litigation matter, all of which contain the mental impressions, conclusions and opinions of counsel.

Defendants argue witness Kennedy may have been a client of Mr. Zirinis for other matters, but had no relation to the litigation or any litigation matter involving Mr. Wellin. They support this argument with Mr. Kennedy's testimony in the deposition, in which he stated that he had no knowledge of the Wellin litigation, and he had no knowledge of Hampton College's position with regard to it. Furthermore, Defendants assert that even if Mr. Kennedy is considered a joint-client, to be sufficient to protect the attorney-client privilege, the joint-client common interest

shared by the clients must be an identical legal interest, as opposed to a personal or business interest.

The undersigned has found no South Dakota cases delineating or defining the threshold requirements of a common interest sufficient to afford the client protection under SDCL 19-19-502(b). Nevertheless, I conclude the common interest identified within the documents would meet the most stringent "identical" legal interest requirement first articulated in Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1148, 1160 (D.S.C. 1974).

Consequently, the inquiry is narrowed down to answering the question as to whether or not witness Kennedy may be considered a "client" under the circumstances here presented, such that he falls within the joint-client exception preventing waiver of the attorney-client privilege as asserted by Plaintiff. This question is answered in the affirmative under the clear statutory definition found in SDCL §19-19-502, lawyer-client privilege, which reads in applicable part as follows:

> **(a) Definitions.** As used in this section:
>
> > (1) A "client" is a person, public officer, or corporation, limited liability company, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, **or who consults a lawyer with a view to obtaining professional legal services from him**; (emphasis added).

As stated previously, the email communications provide the witness with information concerning the impressions, advice and opinions of counsel, provided to him in connection with the purpose of the email in order to allow him to respond to the question asked of him. As such, it is in the nature of a consultation, and in view of the subject of the inquiry, is within the definition of a "client" as a person who consults a lawyer with a view to obtaining professional services from him. Consequently, I conclude the communications are protected by the attorney-client privilege under the joint-client doctrine.

### 2) Work Product Privilege

Federal law applies to determine whether or not the communications are protected by the work-product privilege. This is so because the privilege is a creature of Federal Rule of Civil Procedure 26(b)(3), which codified the privilege as first recognized by the Supreme Court in Hickman v. Taylor, 329 U.S. 496 (1947). See, Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc, 967 F.2d 980, 983-984 (4th Cir. 1992); Doe v. United States (In re Doe), 662 F.2d 1073, 1078 (4th Cir.1981) cert. denied, 455 U.S.1000, 102 S. Ct. 1632, 71 L.Ed.2d 867 (1982); First S. Bank v. Fifth Third Bank, N.A., Civ. No. 10-2097, 2013 WL 1840089 at 4 (D.S.C. May 1, 2013); United Coal Cos. V. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988); PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002). The party asserting the privilege bears the burden of establishing the documents the party seeks to protect were prepared in anticipation of litigation. In re Grand Jury Proceedings, Thursday Special Grand Jury, Sept. Term, 1991, 33 F.3d 342, 352 (4th Cir. 1994); see also, Carnes v. Crete Carrier Corp., 244 F.R.D. 694, 697 (N.D.Ga. 2007); United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006). "Thus, in resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial. . . ." National Union Fire Ins. Co.., 967 F.2d at 984.

This threshold question was determined in the affirmative in connection with the analysis of the applicability of the joint-client doctrine protecting the disclosure from waiver of the attorney-client privilege. All three communications frame the same communication regarding the litigation matter, which contains the mental impressions, conclusions and opinions of counsel.

I further conclude the transmittal of the communication to witness Kennedy did not cause a waiver of the work product privilege. Unlike the intentional disclosure of communications or material in the context of the attorney-client relationship, disclosure of work product does not result in waiver of the privilege unless the disclosure is to the adversary or materially increases the likelihood of disclosure to an adversary. As the Fourth Circuit Court of Appeals explained in In re Doe, 662 F.2d 1073 (4th Cir. 1981):

> Recent decisions considering [the question of waiver of work product privilege] have focused on a concern inherent in the work product rule: that since an attorney's work is for his client's advantage, opposing counsel or adverse parties should not gain the use of that work through discovery. The attorney and client can forfeit this advantage, but their actions effecting the forfeiture or waiver must be consistent with conscious disregard of the advantage that is otherwise protected by the work product rule.

Here, the disclosure was made to a person who has testified he was a close friend to the Plaintiff, Keith Wellin, and was a trustee of Hamilton College. Hamilton College named him as a witness in the litigation, albeit in his individual capacity. Hamilton College is a beneficiary under Mr. Wellin's last will and related estate planning documents directly involved in this litigation, and is in that sense aligned with the Plaintiff, opposing the efforts of the Defendants to have Keith Wellin's last will and related documents declared void on the grounds of undue influence and incapacity. Furthermore, Mr. Kennedy is and has been a client of Mr. Zirinis, one of Keith Wellin's attorneys retained in the course of this litigation, for over fifteen years.

Under these circumstances, I conclude there was no waiver of the work product privilege for these communications, and they are entitled to protection from disclosure.

For the foregoing reasons, it is

**Recommended** that the Court grant the Plaintiff's Motion for Protective Order pursuant to Rule 26(c), of the Federal Rules of Civil Procedure and Local Civil Rule 30.04, preventing

disclosure of privileged information raised in the deposition of Kevin Kennedy, consisting of the email designated as Kennedy Priv 4-5, and including the two related emails[3] and any questions related thereto.

Signed this 7th day of January, 2016.

_____
William L. Howard, Special Master

---

[3] Only the third email in the chain, Kennedy Priv 4-5 was referred to in the deposition. Consequently, only that email was included in the Motion for Protective Order. However, the parties agree that the same criteria apply to the other two emails in the chain, and their arguments encompass these emails in the subsequent memoranda. They request that the Court's ruling apply to all three.