**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| WENDY WELLIN, as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011, | ) ) ) ) ) ) ) ) ) ) ) | **C.A. NO. 2:13-CV-1831-DCN** |
| | | **SPECIAL MASTER'S REPORT AND RECOMMENDATION RE: WELLIN GRANDCHILDREN'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER, ECF NO. 434 IN 2:13-CV-1831-DCN** |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | |
| PETER J. WELLIN, et al., | ) ) | |
| DEFENDANTS, | ) ) | |
| _____ | ) | |
| LARRY S. MCDEVITT, as Trustee of the Wellin Family 2009 Irrevocable Trust, | ) ) ) | **C.A. NO. 2:13-CV-3595-DCN** |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | |
| PETER J. WELLIN, et. al., | ) ) | |
| DEFENDANTS, | ) ) | |
| _____ | ) | |
| PETER J. WELLIN, et. al., | ) ) | |
| PLAINTIFF, | ) ) | **C.A. NO. 2:14-CV-4067-DCN** |
| vs. | ) ) ) ) | |

1

WENDY WELLIN, individually and as  )
Trustee of the Keith S. Wellin Florida  )
Revocable Living Trust u/a/d December  )
11, 2011,  )
   )
     DEFENDANT.  )

Currently before the undersigned in Civil Action No. 2:13-CV-3595-DCN is the motion of the Wellin Grandchildren, Gustav Wellin, Nathaniel Wellin, Nicholas Wellin, Abigail King, Claire King, Mackenzie King, Dr. Ann Plum, and Keith Plum**,** seeking to quash a supplemental subpoena and/or seeking a protective order.

The motion is before the undersigned, sitting as Special Master, pursuant to the February 17, 2015 Order of the United States District Court for the District of South Carolina, Charleston Division, Hon. David C. Norton presiding. See ECF Nos. 270, 258, and 35.

### FACTS/PROCEDURAL HISTORY PERTINENT TO THE MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER

Wendy C.H. Wellin, individually, served a subpoena *duces tecum* on each of the eight Wellin Grandchildren on March 27, 2015 in C.A. 2:14-CV-04067-DCN. At that time, none of the Grandchildren were parties to these actions. Thereafter, Keith Plum became a named party in C.A. No. 2:13-CV-3595-DCN on May 14, 2015. Mrs. Wellin served a Supplemental Subpoena on each of the Wellin Grandchildren on March 31, 2016. The Wellin Grandchildren filed this Motion to Quash the Supplemental Subpoena and/or For a Protective Order on April 13, 2016.

 The supplemental subpoena requested the following documents:

1. All telephone records from January 1, 2009 to September 14, 2014, including the records from the land lines of any houses owned by you, or the cell phone records of any cell phones owned by you; and

2. All emails, text messages, correspondence, or other documents referencing Wendy Wellin in a derogatory manner or by nickname or pseudonym, including but not limited to the following terms: Q, W, 4th wife, Quattro, dog walker, dogwalker, wicked witch, or witch.

The Grandchildren object to supplemental subpoena request No. 1 on the grounds that it is overbroad and neither relevant nor proportional to the needs of the case. The second category contains most of the same search terms used to compile and provide the ECS requested in the first subpoena which is not at issue in the instant Motion. As to this request, they argue it should be quashed due to Mrs. Wellin's failure to pay the expenses associated with the first subpoena production. According to the Grandchildren, the ECS search would have been a required step in the production of the newly requested information sought in supplemental subpoena request No. 2, and significant costs were incurred in the previous search which should be paid by Mrs. Wellin. Alternatively, they ask that the Court now require Wendy Wellin to pay this cost before further work is done.

## **DISCUSSION**

### I.  **Request No. 1 for Telephone Records**

Rule 26(c) of the Federal Rules of Civil Procedure provides that "for good cause [a court may] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). For a court to quash or modify a subpoena, the subpoena must "(iii) require[] disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subject[] a person to undue hardship.

The scope of discovery for subpoenas issued pursuant to Fed.R.Civ.P. 45 "is the same as the scope of discovery allowed under Rule 26." *HDSherer, LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013); *see Cook v. Howard*, 484 F.App'x 805, 2012 WL 3634451,

at 6 (4th Cir. 2012)("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed . . . those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.").  The burden of persuasion in a motion to quash a subpoena is on the movant.  *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F2d 1207, 1210 (Fed.Cir. 1987).

Rule 26(b) provides, "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.[1]  To determine the proportional needs of a case, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The Wellin Grandchildren first assert Supplemental Subpoena request Number 1 is overbroad, irrelevant, and is not proportional to the needs of the case.  They argue the time period for which the telephone records are requested spans five and one half years, and the request is thereby overly broad.  They maintain production of records spanning this period of

---

[1] The Federal Rules of Civil Procedure were amended, effective December 1, 2015, to include the analysis of proportionality in determining the scope of discovery.  As of this date, there does not appear to be any District Court ruling from the District Courts for the State of South Carolina or from the Fourth Circuit Court of Appeals addressing the question of retroactive application of the amended provision.  However, the majority of cases that have discussed the retroactive applicability of the amendments have held that they can be applied retroactively.  *See e.g.: Nuvasive v. Madsen Medical*, 2016 WL 154116 (S.D.N.Y. Jan. 12, 2016); *Trowery v. O'Shea*, 2015 WL 9587608 (D.N.J. Dec. 30, 2015); *Matthew Enterprise, Inc. v. Chrysler Group LLC*, 2015 WL 8482256 (N.D. Cal. Sept. 10, 2015)(applying the proportionality standard in ruling on a motion to compel).  Furthermore, in the Supreme Court's April 2015 Order accompanying the transmittal of the amendments to Congress, the Court stated that the new rules "shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending."  Supreme Court of the United States, Order Regarding Amendments

time would create an undue burden and expense upon them, and amounts to a fishing expedition. Furthermore, they argue the bare record of calls to other numbers would not provide the substance of any conversations, and would likely yield minimum useful information, if any. This is especially so, they assert, because these non-party witnesses have already given their depositions in which questions as to their call history with their Grandfather, Keith Wellin, was explored by opposing counsel. Additionally, they assert production of these records would invade their privacy. Under these circumstances, they claim this request is disproportionate to the needs of the case, and the motion to quash should be granted.

These lawsuits involve multiple issues surrounding the handling and disposition of the assets, trusts, and estate of Keith S. Wellin (Keith). The factual allegations and the procedural histories of these cases are extensively outlined in the Order of Judge Norton issued in *Wellin I*, ECF No. 158, filed on June 28, 2014, and in the Amended Report and Recommendation of the Special Master, ECF No. 320, filed on July 31, 2015, adopted, as modified, by Order of Judge Norton, ECF No. 343, filed September 30, 2015.[2] The following summary of those factual allegations and procedural history, pertinent to this Motion, is taken from the recitation contained in those orders and the amended report and recommendation.

Prior to 2003, Keith Wellin amassed a sizable fortune, which included a large investment in the stock of Berkshire Hathaway, Inc. (BRKa). In 2003, Keith formed Friendship Partners, LP, and transferred 896 shares of Berkshire Hathaway stock (BRKa) into the partnership in return for a 98.9% ownership interest. At the same time, Keith formed Friendship Management, LLC, naming his daughter, Cynthia W. Plum, as its Manager, and made Friendship Management

---

to the Federal Rules of Civil Procedure (April 9, 2015), *available at* http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823pdf.
[2] To simplify review, all document ECF numbers refer to 2:13-cv-01831-DCN.

LLC the general partner of Friendship Partners, LP.  Between 2003 and 2009, Keith's Will and Revocable Trust provided that Keith's full interest in Friendship Partners, LP as well as a majority of the rest of his estate, would pass to his three children, Peter J. Wellin, Cynthia W. Plum and Marjorie W. King, as his primary beneficiaries  at his death.

Keith modified his estate plan in 2009, creating the Wellin Family 2009 Irrevocable Trust.  Keith named his three children, Peter S. Wellin, Cynthia W. Plum and Marjorie W. King, as the only named beneficiaries, and designated them as the only individual trustees.  The Wellin Grandchildren were included as contingent beneficiaries in the event a Wellin child or children died prior to distribution of the trust.  The Trust named a Trust Protector, provided that the three Wellin children could not be removed as trustees by the Trust Protector, and also designated them as members of the Trust's distribution committee.  To fund the Trust, Keith sold his 98.9% interest in Friendship Partners, LP to the Trust in return for a promissory note having a face value of approximately Fifty Million Dollars ($50,000,000).[3]  The Trust was drawn to be an "intentionally defective grantor trust," as a result of which any income generated by the Trust would be taxable to Keith, as the grantor, rather than to the Trust.

In January of 2013, Keith Wellin made a Ten Million Dollar ($10,000,000.00) cash gift to each of the Defendant Wellin children and to his wife, Wendy Wellin, and paid the gift taxes associated with each gift.

Keith Wellin filed suit against his children on July 3rd, 2013. (Civil Action No. 2:13-cv-01831-DCN)(Wellin I), seeking a return of all assets in the Trust and Friendship Partners, LP,

---

[3] According to the parties, at that time, the BRK stock was worth substantially more than the Fifty Million Dollar value of Keith's Friendship Partners, LP interest because Keith had divested himself of control over the Partnership by forming Friendship Management, LLC, naming it as the general partner of Friendship partners, LP, and vesting control of Friendship Management, LLC in the Wellin children.  Thus, Keith's partnership interest was discounted in value based upon this lack of control.

and asserting that the Defendant Wellin Children had defrauded him into entering into the 2009 transactions.  Additionally, Keith sought return of the Ten Million Dollar ($10,000,000.00) gifts made to the three Wellin Children.

On November 20, 2013, Keith executed various estate and trust related documents, by which he intended to reacquire some of the Trust assets, substituting the Note owed to him by the Trust, having a value of $50,211,466.55, for a 58% interest in Friendship Partners, LP.  The newly executed documents made further changes designed to end the "grantor status" of the Trust, including releasing the power of trust asset substitution, the effect of which would be to shift the tax burden for payment of the Note to the Trust.    The legality and enforceability of these documents is contested  in these proceedings.

The Defendant Wellin Children claim the November 2013 documents also purported to include modifications to the Trust providing a newly appointed Trust Protector, Lester Schwartz, with authority to settle any litigation pending against the Trust.  Defendants assert that Schwartz and his attorneys were paid by Keith Wellin during his lifetime, are now paid by his Widow, Wendy C. H. Wellin, and that Schwartz remains aligned with their position.  Consequently, they maintain that Schwartz could have immediately "settled" the Wellin I litigation following the events of November 20, 2013 by transferring the assets of the Trust to Keith, which they assert would have been in derogation of his fiduciary responsibilities to the Trust beneficiaries.  They further assert that the changes made regarding the Trust by Keith and Lester Schwartz on November 20, 2013, were ineffective, invalid and/or incomplete.

Central to these claims regarding Keith's attempted changes to his estate plan, disinheriting his children and their lineal descendants, is the assertion that he was controlled by

the undue influence of Wendy Wellin and that he did not have the mental capacity to make these decisions.

Within a few days of these events, the Defendant Wellin Children took the steps they claim were necessary to protect the estate plan as embodied in the 2009 Wellin Family Irrevocable Trust. They did so by selling the BRKa stock, and ultimately distributing approximately Ninety-Six Million Dollars ($96,000,000.00) to themselves in equal shares, leaving approximately Fifty Million Dollars ($50,000,000.00) to satisfy the Note to Keith. They maintain that this was necessary to protect the trust and its assets, and that no money has been spent other than for the expenses of this litigation.

Following this action by the Defendant Wellin Children, on December 27, 2013, Lester Schwartz, as the newly designated Trust Protector, brought suit against Keith, the Defendant Wellin Children, individually and as Co-Trustees and Beneficiaries of the Wellin Family 2009 Irrevocable Trust, Friendship Partners, LP, Friendship Management, LLC, and Cynthia W. Plum as Manager of Friendship Management, LLC., C/A No. 2:13-cv-03595-DCN, seeking return of the distributed assets, as well as other damages caused by the sale of the BRKa stock.[4]   The Defendants answered the complaint and asserted counterclaims against both Schwartz and Keith.

In September, 2014, each of the Wellin Grandchildren executed an Affidavit and a Release of any and all claims they might have against the Wellin Children, Cynthia W. Plum, Peter J.

---

[4] The Wellin Children challenged Schwartz's standing to bring the suit as Trust Protector, and the Court ruled he did not have standing on April 17, 2014.  Thereafter, Larry S. McDevitt agreed to serve as Trustee, and was so appointed by Lester Schwartz in his capacity as Trust Protector on May 2, 2014.  Larry S. McDevitt, as Trustee, was then substituted as Plaintiff for Schwartz pursuant to Fed.R.Civ.P. 17(a)(3); Order of Judge Norton filed October 9, 2014, 2:13-cv-03595-DCN, ECF No. 173.

Wellin, and Marjorie King, for their actions taken to date as members of Friendship Management, LLC, and as Trustees and Distribution Committee members of the Irrevocable Trust. The Affidavits state, in part, as follows:

> 6. I fully support the actions taken by the Distribution Committee and Trustees of the Irrevocable Trust to allow the FLP to distribute the proceeds of the sale of the BRKa stock directly to Peter Wellin, Plum and King under the circumstances now existing and to prepay the promissory note. I view the actions of the purported Trust Protector, Lester Schwartz, as breaches of his duties to the Irrevocable Trust and as being unauthorized and inappropriate. The purported Trust Protector appears to be taking actions that are either self-interested or in the interests of parties other than the Irrevocable Trust and its beneficiaries, and his actions, including the filing of an action in South Carolina Probate Court, are not in my best interests.

> 7. I hereby release any and all claims that I may have against Peter Wellin, Plum and King for their actions taken to date as members of Friendship Management, LLC, and as Trustees and Distribution Committee members of the Irrevocable Trust. I specifically reserve all rights to pursue claims against the purported Trust Protector and all others working in concert with him to undermine the intent of the Irrevocable Trust and to harm my interests as a beneficiary.

Thereafter, on May 28, 2015, the Wellin Children filed the Affidavit and Release as attachments to their Response in Opposition to Plaintiff McDevitt's motion to compel production of their communications with their litigation attorneys in Civil Action No.: 2:13-cv-03595-DCN, ECF No. 306.[5]

The Wellin Grandchildren assert the first category of information requested in the Supplemental Subpoena is overbroad and neither relevant nor proportional to the needs of the case. As to the second category (containing most of the same search terms used to compile and

---

[5] In the Motion to Compel, Plaintiff McDevitt, as Trustee under the 2009 Irrevocable Trust, argued entitlement to the Wellin children's' attorney-client communications on the grounds that the "co-trustee exception" to the attorney-client privilege allowed him access to these privileged communications to fulfill his fiduciary duties to the beneficiaries, including the Wellin Grandchildren. The Wellin Children's Response in Opposition to the Motion to Compel attached

provide the ECS requested in the first subpoena), they argue Mrs. Wellin's supplemental subpoena request should be quashed due to her "blatant" failure to pay expenses associated with production of the ECS requested in the first subpoena. According to the Grandchildren, the ECS search would have been a required step in the production of the newly requested information sought in request No. 2 in the Supplemental Subpoena.

### A) Relevance

Discovery is limited to only relevant information. Unless otherwise limited by court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" as long as it is "proportional to the needs of the case . . . ." Rule 26(b), Fed.R.Civ.P. Information within the scope of discovery need not be admissible in evidence to be discoverable. *Id*.

One theme easily harvested from the above summary of allegations and events which is central to the claims and defenses of the Wellin Children is that throughout his life, Keith Wellin intended to leave the bulk of his estate to his children and their lineal descendants. But once he became physically and mentally compromised by his failing health, they assert Wendy Wellin unduly influenced him and manipulated him into changing his estate plan to benefit Wendy to the exclusion of the Wellin Children and their descendants. The Wellin Children maintain Wendy successfully exerted undue influence over Keith by insulating him from his children and grandchildren, in part, by denying them telephone access to Keith Wellin.

At least six of the grandchildren have been deposed, and the extent of their communications with their grandfather was explored by opposing counsel. As counsel for Wendy Wellin argues in their Response to the Motion to Quash, excerpts from these depositions

---

and filed the Affidavit and Release of each Wellin Grandchild in support of their position that there

indicate the information the deponents were able to provide on this subject was general and non-specific.  Access to the telephone records of these witnesses may very well provide objective evidence to support or undermine the assertion that they were prevented access to Keith Wellin in the latter stages of his life.

Contrary to the position of the Grandchildren, Wendy C.H. Wellin contends the Wellin Children and Grandchildren did not maintain regular contact with Keith Wellin during his latter years.  She argues the telephone records may be an important source of information because of what they don't show, *i.e.*, regular calls from the Grandchildren to their Grandfather.  It is true, as the Grandchildren point out, that these records will not provide the content of any communications.  Nevertheless, the number of calls attempted by each Grandchild over the relevant time period may provide pertinent information, such as a pattern or trend, that may make the assertions of denied access more or less likely.  Furthermore, the information these records may reveal is not otherwise fully available to Wendy Wellin.  Wendy argues that calls made to Keith's residence from the Grandchildren's phones would be noted on their records, even if they went unanswered, but would not be reflected on Wendy and Keith Wellin's telephone records if they were not answered.

For all of the above reasons, the undersigned cannot conclude that the information sought is irrelevant.

### B)  Overbreadth/Overburden

The Wellin Grandchildren next argue that the five and one-half year time frame for the requested records is overbroad.  To the contrary, I conclude this time frame has been recognized in this litigation as the relevant time for similar discovery requests.  *See Order of Hon. David C.*

---

were no duties to be performed by Mr. McDevitt on behalf of the Wellin Grandchildren.

*Norton*, entered September 30, 2015, ECF No. 343, C/A 2:13-cv-01831-DCN (ordering production of financial records from January 1, 2009 through Keith Wellin's date of death, September 14, 2014 and financial records for the Wellin Family 2009 Irrevocable Trust from January 1, 2009 through the date of trial). This spans the period during which Keith Wellin developed and executed the Irrevocable Trust naming the Wellin Children as beneficiaries through the time of his death, and thus limits the inquiry to the time frame most likely to reveal relevant information.

The Wellin Grandchildren further assert the request is overbroad because it encompasses all telephone call information, and is not limited to specific telephone numbers or calls of interest. As such, they argue the request would invade their privacy by including calls unrelated to the issues or the litigation. In response to this opposition, Wendy argues that she requested all records with the intention of ferreting through them to find calls to the pertinent telephone numbers at her time and expense, in order to avoid overburdening the grandchildren or their counsel. She further posits that she agrees not to call any numbers on the records, and will instead, refer questions of the identity of any unknown numbers back to the grandchildren.

I conclude the request is overbroad because it does not limit the requested records to telephone numbers pertinent to the issues. Wendy's agreement not to call unidentified numbers does not remedy this problem because it still gives her access to call information regarding communications having no relevance to the issues in these cases. However, I further conclude this problem is easily cured by requiring Wendy Wellin to identify each number and/or call of interest for which she requests the telephone record information, thereby allowing the Grandchildren to redact other call information. By so limiting the request, I conclude production will not be over-burdensome on the Wellin Grandchildren.

### C) **Proportionality**

In addition to being relevant, the request for information must be proportional to the needs of the case in order for it to be discoverable. Factors identified in Rule 26(b)(1) in evaluating the needs of the case include consideration of the importance of the issues at stake in the action, the amount in controversy, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

The issues involved in this litigation are personal in nature, and they are not of public importance. However, what defines these cases is the amount in controversy, which is in excess of One Hundred Fifty Million Dollars ($150,000,000.00). In Civil Action No. 2:13-cv-03595-DCN, the Trustee claims actual damages against the Wellin Children in excess of Two Hundred Million Dollars ($200,000,000.00). The litigation will also determine who is responsible for the existing tax liability, which allegedly exceeds Forty Million Dollars ($40,000,000.00). Thus, the amount in controversy supports the need for thorough discovery.

Wendy C.H. Wellin and each Wellin child was provided a tax free gift of Ten Million Dollars ($10,000,000.00) by Keith Wellin prior to his death. Based upon the discussion in Section (D)(2)(ii) of this Report and Recommendation, it would appear both Wendy Wellin and the grandchildren have ample resources with which to fund discovery costs.

The specific information sought in this discovery dispute may prove to be material in determining the degree of relationship each Wellin Grandchild maintained with their Grandfather during the relevant time period. As their affidavits and releases indicate, the Grandchildren are aligned with their parents, the Wellin Children. The litigation commenced by Keith Wellin before his death to revoke the 2009 Wellin Family Irrevocable Trust and to modify his estate

plan evidences a total shift in the objects of his affection.  The relationship which the parties had

with each other and with Keith Wellin during the relevant time period may be important in

determining the testator's intent.  Objective evidence, such as telephone records, may be material

in helping the fact finder decide Keith Wellin's true intent. Given the possible significance of the

issues and the possible materiality of the requested information, I can not conclude that the

burden or expense outweighs the likely benefit.

Considering each of the above factors, I conclude the requested information is not out of

proportion to the needs of the case.[6]

### D)  Cost-shifting

#### 1)  Telephone records

Limiting the required production of telephone records to the time period from January 1,

2009 to Keith Wellin's death on September 14, 2014 and to designated telephone numbers and

calls of interest relevant to the case protects the Wellin Grandchildren from an intrusion into

their privacy, but it also opens the door to another issue, namely, payment of associated costs.

Rule 45, Fed.R.Civ.P. addresses this issue.  Rule 45(d)(1) provides that "[a] party or attorney

---

[6] Wendy Wellin also argues the telephone records are relevant and  important to determine where
each call was placed from and was received to determine certain discovery choice of law issues.
The Wellin Grandchildren have claimed attorney client privilege in their depositions in these
proceedings based upon the common interest and joint-client exception to waiver of the attorney-
client privilege.  Rulings on this issue in the prior *Report and Recommendation of the Special
Master re: Dr. Ann Plum's Motion For Protective Order*, ECF No. 370 in 2:13-cv-01831-DCN,
included an analysis of applicable law based upon choice of law principles.  A part of that analysis
entailed consideration of the place where the communications between the Wellin Children and
Grandchildren took place in the context of assessing the contacts the state of the forum have with
the parties and the transaction involved. *See* Restatement (Second) of Conflict of Laws § 139,
Comment d (1971).  Though I agree the place of the calls is relevant, the need to subpoena the
telephone records for this purpose is more tenuous.  Nevertheless, because I conclude the request for
production of the records is not out of proportion to the needs of the case based upon the issues
involved in the claims and defenses, it is unnecessary to determine whether the request for the

14

responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45 (d)(2)(B) states as follows

> (B)     A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises-or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
> . . .
>
> (ii)     These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

The supplemental subpoena was sent to the Wellin Grandchildren by the attorneys for Wendy Wellin on March 31, 2016. The Grandchildren's objection to the subpoena request was made and the Motion to Quash and/or For Protective Order was filed 13 days later, on April 13, 2016. Thus, it is timely under Rule 45(d)(2)(B).

Although the Grandchildren assert the request for production of the telephone records is overly burdensome, they have not contacted the telephone service providers to determine the degree of difficulty or associated cost they will incur in complying with the request. Consequently, there is no foundation upon which the undersigned could conclude that the undertaking would be overly burdensome based upon its cost.

As to the cost of compliance, there is no estimate available at this time that would allow the undersigned to evaluate the significance of this expense. Certainly, it would be most

---

purpose of determining the place of each relevant call between the Wellin Grandchildren and the Wellin Children is proportional to the needs of the case.

reasonable to expect that the review of the telephone records to identify calls that are discoverable and the subsequent redaction of undiscoverable information is a clerical task which can be accomplished without the necessity of significant legal oversight.  Nevertheless, any cost-shifting analysis at this stage would be premature.

However, certain legal principles provide guidance to the parties.  Courts recognize that "requiring litigation of discovery disputes would conflict with the purpose of Rule 45, which is to 'avoid imposing undue burden or expense on a person subject to a subpoena,' and a sounder policy is to encourage parties to meet and confer and come to an agreed resolution of discovery disputes."  *Spears v. First American* Eappraiseit,, 2014 WL 6901808 (N.D.Cal. December 8, 2014).  Courts further recognize that "[a] non-party can be required to bear some or all of its expenses where the equities of the particular case demand it." *In re Honeywell Intern., Inc Sec. Litig.,* 230 F.R.D. 293, 302-03 (S.D.N.Y.2003); *Behrend v. Comcast Corporation*, 248 F.R.D. 84, 86 (D.Mass.2008); *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.C.1992); *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (2009).

Furthermore, courts are reluctant to shift costs where the subpoenaed party has not provided the procuring party with sufficient notice of available cost information prior to incurring the expense to allow the procuring party an opportunity to re-evaluate its request and seek less costly alternatives. *See, e.g. Jeune v. Westport Axle Corp.*, 2016 WL 1430065 3 (W.D.Va.2016); *Bell Inc. v. G.E. Lighting, LLC*, 2014 WL 1630754 *14 (W.D. Va. April 23, 2014).

In determining what constitutes a significant cost that "must" be shifted to the procuring party under Rule 45(d)(2)(B)(ii), federal courts generally apply a three factor analysis to determine what costs should be shifted to the requesting party in order to protect the non-party

from significant costs.  These factors are: 1) whether the putative non-party actually has an interest in the outcome of the case; 2) whether to non-party can more readily bear its costs than the requesting party; and 3) whether the litigation is of public importance. *In re Exxon Valdez*, 142 F.R.D. at 383.

Bearing these principles in mind, the parties are encouraged to communicate with each other and attempt to resolve the issue of costs as it relates to the production of the telephone records.

### 2)     ECS information costs of $61,000 already incurred

With regard to Supplemental Subpoena request No. 2, the Wellin Grandchildren argue that it is a continuation of the first subpoena request for production.  They assert the request is more narrow than it reads, because the initial search of all of the Wellin Grandchildren's computers, phones and electronic devices was conducted  using agreed upon terms that included all of the terms requested in Supplemental Subpoena No. 2, with the exception of the terms "Q" and "W".  They now seek to preclude the Supplemental Subpoena request No. 2 on the grounds that Wendy C.H. Wellin has refused to pay for the costs of the first production.  They make this request even though they complied with the first request without objection and without filing a motion to shift the costs to Wendy Wellin.   In support of this argument, they cite the case of *Securities and Exchange Commission v. Arthur Young & Co.*, 584 F.2d 1018 (U.S. Ct. App.D.C. 1978), in which the Court noted that "[j]udicial power to condition subpoena-enforcement upon expense-absorption, by its very nature, extends to requiring step-by-step reimbursement concurrently with document-production at any stage that the producing party has already been put to substantially more  than his fair share of the costs of obedience." *Id.*, 584 F.2d at 1034.

As noted previously in this report, Rule 45 (d)(2)(B) states as follows

(B)      A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises-or to producing electronically stored information in the form or forms requested.  The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.  If an objection is made, the following rules apply:

. . .

(ii)      These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

In response to a subpoena directed to a non-party pursuant to Rule 45, the non-party may either file a motion to quash or modify the subpoena pursuant to Fed.R.Civ.P. 45(c)(3)(A), move for  protective order pursuant to Fed.R.Civ.P. 26(c), or oppose a motion to compel production of the subpoenaed documents pursuant to Fed.R.Civ.P. 45(c)(2)(B). *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451 (E.D.N.C.2005)(citing *United States v. Star Scientific, Inc.,* 205 F.Supp.2d 482, 484 (D.Md.2002).

Although the seven non-party Wellin Grandchildren filed a timely motion to quash and motion seeking a protective order regarding the supplemental subpoena requests, they did not do so with regard to the initial subpoena request in which the costs they now complain about were incurred.  Instead, they complied with the subpoena request from March through December, 2015.

However, as noted previously, courts recognize that requiring litigation of discovery disputes conflicts with the purpose of Rule 45 and a sounder policy is to encourage parties to meet and confer and come to an agreed resolution of discovery disputes." *Spears*, 2014 WL 6901808 2 (N.D.Cal. December 8, 2014).  Where a non-party seeks reimbursement without strictly complying with Rule 45, courts recognize that "it is reasonable to consider whether the

non-party and the party have reached some voluntary agreement regarding reimbursement." *Spears* at 3 (quoting *North American Rescue Products*, 2009 WL 4110889 *14; *Angell v. Kelly*, 234 F.R.D. 135, 139 (M.D.N.C.2006)(("In a situation where a non-party voluntarily complies with a subpoena, but does not strictly follow Rule 45, the Court will look to the words and actions of the party and non-party to see whether they have reached some voluntary agreement."), citing *Angell v. Shawmut Bank*, 153 F.R.D. 585, 590).

Conversely, courts are reluctant to shift costs where the subpoenaed party has not provided the procuring party with sufficient notice of available cost information prior to incurring the expense to allow the procuring party an opportunity to re-evaluate its request and seek less costly alternatives. *See, e.g. Jeune v. Westport Axle Corp.*, 2016 WL 1430065 *3 (W.D.Va.2016); *Bell Inc. v. G.E. Lighting, LLC*, 2014 WL 1630754 *14 (W.D. Va. April 23, 2014); *Sun Capital Partners, Inc. v. Twin City Fire Insurance Company*, 2016 WL 1658765 *6 (S.D.Fla. April 26, 2016)(noting the Non-Parties did not give periodic updates as to costs they were incurring, and denying fees of $108,850.50 and costs of $125.95); *Angell v. Kelly*, 234 F.R.D. at 139.

Mrs. Wellin's initial subpoena sought electronically stored information (ECS) from each grandchild. The transmittal letter served with the subpoena requested that the recipient inform Mrs. Wellin in the event the anticipated cost of compliance was expected to exceed One Hundred Dollars ($100). Counsel for the grandchildren responded by letter stating that the cost would exceed One Hundred Dollars ($100), without further clarification as to the extent of costs. Counsel then conferred and agreed upon search terms to govern the process for responding to the first subpoenas. The search terms included all of the identifying terms listed in paragraph 2 of the supplemental subpoena except for the terms "Q" and "W." The Grandchildren complied

with the first subpoena without filing a Motion to Quash or seeking an order shifting all or part of the costs of compliance to Mrs. Wellin.

During the collection of the requested materials between March and December of 2015, counsel for the grandchildren forewarned counsel for Mrs. Wellin not to expect much information, as the search was identifying little that was responsive. During the search, the Grandchildren received monthly bills from the service providers conducting the search, although no bill or cost information was provided to Mrs. Wellin until the production was completed in December of 2015. Following production of the ECS, counsel for the Grandchildren first notified Mrs. Wellin's counsel that the cost of production was Sixty-One Thousand Dollars ($61,000), and made demand for payment of those costs.

Although the parties disagree as to the extent to which Wendy Wellin was placed upon notice of the amount of costs being incurred, there clearly was no agreement reached regarding payment of costs. According to counsel for Mrs. Wellin, they received no information that reasonably could be considered sufficient to apprise them of costs anywhere near the amount the Grandchildren now claim. They assert the repeated statements by the Grandchildren throughout the search that it was not revealing much, and there would be little to be produced, also led them to believe costs would be minimal. They argue that as a result of the failure of the Grandchildren to provide the cost information available to them as it came in, Mrs. Wellin was deprived of the opportunity to consider other methods of discovery to reduce costs.

At the hearing, Counsel for the Grandchildren advised that there was more information available to support their assertion that the parties engaged in extensive discussions about costs, and that information would be included in a yet-to-be-filed motion seeking the award of those costs for the search pursuant to the first subpoena. However, in this motion, the Grandchildren

seek an award of those same costs.  Thus, it is necessary for the court to base its decision on the arguments and the information provided by the parties in connection with this motion.  Being so constrained, two things are clear: 1) there was no meeting of the minds as to reimbursement of all costs; and 2) the subpoenaed non-parties did not provide Wendy Wellin the available monthly bills from the service providers as they were received, but chose, instead, to wait until production was complete.  This deprived Mrs. Wellin of the opportunity to re-evaluate her request and consider alternate measures.

In determining what constitutes a significant cost that "must" be shifted to the procuring party under Rule 45(d)(2)(B)(ii), federal courts generally apply a three factor analysis to determine what costs should be shifted..  These factors are: 1) whether the putative non-party actually has an interest in the outcome of the case; 2) whether the non-party can more readily bear its costs than the requesting party; and 3) whether the litigation is of public importance. *In re Exxon Valdez*, 142 F.R.D. at 383; *Jeune v. Westport Axle Corp.*, 2016 WL 1430065 3 (W.D.Va.2016); *Bell Inc. v. G.E. Lighting, LLC*, 2014 WL 1630754 *14 (W.D. Va. April 23, 2014); *Sun Capital Partners, Inc. v. Twin City Fire Insurance Company*, 2016 WL 1658765 6 (S.D.Fla. April 26, 2016); *Behrend v. Comcast Corporation*, 248 F.R.D. 84, 86 (D.Mass.2008); *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (2009).

### (i)     Interest in the Outcome

Black's Law Dictionary defines an "interested party" as "[a] party who has a recognizable stake (and therefore standing) in a particular matter."  Black's Law Dictionary (9th ed. 2009).  "When the non-party producing materials has a potential interest in the underlying litigation, courts have weighed that interest against shifting the costs of production to the requesting party." *Bell, Inc. v. G.E. Lighting, LLC*, 2014 WL 1630754 at 13 (concluding non-

party was an interested party, weighing against an award of total costs, where counterclaim of defendant alleged patent held by Plaintiff was unenforceable, in part, because non-party sold it to Plaintiff after withholding material information about the use of prior unpatented art in developing the invention in the patent); *Behrend v. Comcast Corporation*, 248 F.R.D. at 85-87 (declining to award costs to non-party where non-party had participated in a transaction that helped spawn the underlying litigation; *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. at 206-7 (where non—party was controlled by some of the same officers at issue in the underlying action, had a financial interest in one of the transactions challenged, and was represented by the same law firm as some of the parties in the action, the non-party was not disinterested, which weighed against shifting costs of production).

In this case, the non-party Wellin Grandchildren were contingent beneficiaries under the Wellin Family 2009 Irrevocable Trust.  Their parents, who were the named beneficiaries and distribution committee members under the Trust, liquidated the Trust assets and ultimately distributed the funds in the amount of approximately One Hundred Fifty Million Dollars ($150,000,000.00) into their control, free of trust.  They dispersed Ninety Six Million Dollars ($96,000,000.00) of the Trust funds in equal shares into their personal investment accounts. They maintain this was necessary to prevent Wendy C.H. Wellin and the newly appointed Trust Protector from diverting those assets to the use of Wendy and her family through the exertion of undue influence over Keith Wellin.  They have represented to the Court that they do not intend to spend any of the funds pending the outcome of the litigation, except for the payment of the fees and expenses of the litigation.

The Wellin Grandchildren have clearly defined their position to be in alignment with their parents, the Wellin Children, through their affidavits and releases.  As non-party Grandchild

Dr. Ann Plum observed in her deposition, she trusted her parents, aunt and uncle to protect her interests, but did not trust the Trust Protector. Depos. Ann W. Plum, p. 216, l. 13 – 220, l. 2, ECF No. 380, Ex. E, 2:13-cv-01831-DCN.  They assert a common interest with their parents and each other as well as a joint-client relationship with each other, to shield their attorney-client communications from disclosure.

Based on the above, I conclude the non-party Wellin Grandchildren are not disinterested parties.  This factor weighs against shifting the costs of production as a prerequisite to enforcement of the supplemental subpoena request No. 2.

**(ii)     Ability of non-party to bear costs**

In her Response to the Motion to Quash and/or For Protective Order, Wendy Wellin asserts that the Wellin Children are funding the legal expenses of the Grandchildren. Interestingly, this assertion is not refuted in the Reply to Wendy's Response.  Instead, the Wellin Grandchildren argue that it is not properly before the court, and whether or not the parents have paid the costs is irrelevant.

The Wellin Grandchildren seek payment of Sixty-One Thousand Dollars ($61,000) they assert was incurred in production of the ECS information sought in the first subpoena.  No breakdown per party has been provided to the Court nor have the actual invoices been filed. There were eight Grandchildren who were required to respond to the subpoena, seven of whom are non-parties, and thus, the cost is roughly Seven Thousand, Six Hundred and Twenty-Five Dollars ($7,625.00) per party.

I disagree with the Grandchildren's assertion that consideration of the Wellin Children's available financial resources is either irrelevant or not properly before the Court. Courts must determine whether the costs of compliance by a non-party are significant. *U.S. v. McGraw-Hill*

23

*Companies, Inc.*, 302 F.R.D. 532, 536 C.D.Cal. 2014).  Courts should consider the ability of the producing non-party to bear  the costs of production." *Id.*.  "This consideration makes practical sense-an expense might be 'significant,' for instance, to a small family run business, while being 'insignificant' to a global financial institution." *Id*.

As noted above, the Wellin Children and the Wellin Grandchildren are in concert in the defense of these cases, and their interests are aligned.  This is not only demonstrated by the affidavits and releases signed by the Grandchildren, but is also manifested both in their assertion of common interest and in the facts leading up to the 2013 Ten Million Dollar ($10,000,000.00) tax free gifts made by Keith Wellin, asserted by the Wellin Children in support of their Motion for Judgment on the Pleadings and for Summary Judgment, ECF No. 41, 2:13-cv-01831. According to Peter Wellin, Keith Wellin notified Peter in 2013 of his intent to give each Wellin Child and Wendy Wellin a gift of Five Million Dollars ($5,000,000.00), and a gift of Two Million Dollars ($2,000,000.00) to each of his Grandchildren.  However, after receiving tax advice instructing him that the proposed gift directly to the grandchildren would create an additional "generation skipping" tax, Keith notified Peter he would instead give each Wellin Child a Ten Million Dollar ($10,000,000.00) gift in lieu of gifting to the Grandchildren directly. It is certainly fair to presume, based on the record before the Court, that this gift was effectuated with the Grandchildren in mind.

The individually incurred amount of approximately $7,625.00 could be significant in some circumstances.  However, under the circumstances outlined above, there is an adequate basis to conclude the Wellin Grandchildren have available financial resources which make them equally capable of bearing the costs.

(iii)    **Public Importance of the litigation**

The cases involved in this litigation do not appear to involve matters of public concern. Rather, they are of a purely private nature. This factor weighs against shifting costs to Wendy C. H. Wellin. *Bell, Inc. v. G.E. Lighting, LLC*, 2014 WL 1630754 at 14.

**For the foregoing reasons, I make the following Recommendations to this Honorable Court:**

1) **That the Motion of the Wellin Grandchildren to Quash request No. 1 of the Supplemental Subpoena issued by Wendy C.H. Wellin, Individually, be denied, but that the request for Telephone Records be limited to all information available regarding calls to telephone numbers and calls of interest identified by Wendy C.H. Wellin prior to the search, and that the order provide that the records may be redacted as a matter of choice by the Wellin Grandchildren prior to production so as to delete all call information regarding numbers not so identified by Wendy C.H. Wellin;**

2) **That the Order specify that the Wellin Grandchildren may seek reimbursement of costs associated with compliance with Supplemental Subpoena No. 1 by appropriate motion;**

3) **That the Motion of the Wellin Grandchildren to Quash and/or for a Protective Order with regard to Supplemental Subpoena Request No. 2 of Wendy C.H. Wellin be denied;**

4) **That the Motion of the Wellin Children seeking reimbursement of costs associated with compliance with the first Subpoena of Wendy C.H. Wellin be denied**

**Respectfully Recommended, this 1 day of July, 2016.**

*s/ William L. Howard*_____

William L. Howard, Special Master