IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| WENDY WELLIN, as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011, | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. NO. 2:13-CV-1831-DCN |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | |
| PETER J. WELLIN, et al., | ) ) | |
| DEFENDANTS, | ) ) | |
| LARRY S. MCDEVITT, as Trustee of the Wellin Family 2009 Irrevocable Trust, | ) ) ) | C.A. NO. 2:13-CV-3595-DCN |
| PLAINTIFF, | ) ) | SPECIAL MASTER'S REPORT AND RECOMMENDATION RE: PLAINTIFF LARRY MCDEVITT'S MOTION TO COMPEL UNREDACTED ENGAGEMENT LETTERS, ECF NOS. 501 & 506 IN 2:13-CV-3595-DCN |
| vs. | ) ) | |
| PETER J. WELLIN, et. al., | ) ) | |
| DEFENDANTS, | ) ) | |
| PETER J. WELLIN, et. al., | ) ) | |
| PLAINTIFF, | ) ) ) | |
| vs. | ) ) ) | C.A. NO. 2:14-CV-4067-DCN |

WENDY WELLIN, individually and as      )
Trustee of the Keith S. Wellin Florida      )
Revocable Living Trust u/a/d December      )
11, 2011,      )
      )
           DEFENDANT.      )

Before the undersigned in Civil Action No. 2:13-cv-03595-DCN[1] are two motions of Plaintiff Larry S. McDevitt ("McDevitt"), as Trustee of the Wellin Family 2009 Irrevocable Trust ("Trust"), and Counterclaim Defendant Lester S. Schwartz ("Schwartz"), seeking an order compelling the production of an unredacted version of the letter of representation between the Wellin Children and their counsel, Nelson Mullins Riley and Scarborough, LLP ("NMRS"), ECF No. 501, and the letter of representation between Keith Plum and his counsel, Duffy & Young, LLC ("D&Y"), ECF No. 506. The motions are before the undersigned, sitting as Special Master, pursuant to the February 17, 2015 Order of the United States District Court for the District of South Carolina, Charleston Division, Hon. David C. Norton presiding.[2]

Having considered the arguments of counsel, the pleadings, memoranda and exhibits submitted by the parties, and after *in camera* review of the unredacted engagement letters, I make the following report and recommendations for disposition of the motions under consideration.

### FACTS/PROCEDURAL HISTORY PERTINENT TO THE MOTIONS TO COMPEL

The factual allegations and the procedural histories of these cases are extensively outlined in the Order of Judge Norton issued in *Wellin I*, C.A. No. 2:13-cv-1831-DCN, filed on June 28,

---

[1] Unless otherwise noted, all ECF numbers refer to Case No. 2:13-cv-03595-DCN

2014,[3] and in the Amended Report and Recommendation of the Special Master in C.A. No. 2:13-cv-1831-DCN, filed on July 31, 2015,[4] adopted, as modified, by Order of Judge Norton, filed on September 30, 2015.[5]

### A. Applicable Law

Consistent with Judge Norton's extensive analysis and choice of law ruling in his most recent Order, ECF No. 503 in Civ. Action No. 2:13-cv-01831-DCN, the undersigned will apply the law of South Carolina in the analysis of the issues involved in these motions. In his Order, Judge Norton analyzed the choice of law issue in the context of the attorney-client and work product privilege asserted by Cynthia Plum, a New York resident and non-party Wellin Grandchild, regarding, *inter alia*, her communications with her South Carolina attorney. Ultimately, Judge Norton ruled: "[b]ecause South Carolina is both the forum state and the state with the most significant relationship to the communications, it is clear that South Carolina law applies . . . ." This ruling is equally applicable to the current motion to compel the unredacted version of the Keith Plum retainer letter, as he, too, is a Wellin Grandchild who, at the time of the retainer, was also an out-of-state resident and non-party to the proceedings.

As to the engagement letter between the Wellin Children and NMRS, the choice of law issue was first analyzed by the undersigned in deciding the identical issues in the Wellin Children's Motion to Compel the production of the unredacted versions of opposing counsel's engagement letters. *See* ECF No. 299 in 2:13-CV-01831-DCN; ECF No. 292 in 2:13-CV-03595-DCN; ECF No. 61 in 2:14-CV-04067-DCN. In that analysis, I noted the following:

---

[2] See ECF Nos. 270 in 2:13-cv-01831-DCN; ECF No. 258 in 2:13-cv-03595-DCN and ECF No. 35 in 2:14-cv-04067-DCN.
[3] See ECF No. 158
[4] See ECF No. 320
[5] See ECF No. 343

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with state law.

In accordance with the second sentence of Rule 501, state law supplies the rule of decision to be applied in this diversity matter. Hatfill v. New York Times Co., 459 F. Supp. 2d 462, 465 (E.D. Va. 2006); Mordesovitch v. Westfield Ins. Co., 244 F. Supp.2d 636 (S.D.W.Va. 2003). According to Hatfill, this includes the resident state's conflict-of-laws rules. If Hatfill is a correct statement of the law, then under established principles of South Carolina law, South Carolina would apply the law as it is found in South Dakota where, as here, the Wellin Family 2009 Revocable Trust contains a choice of law provision specifying that South Dakota law applies.[6] Russell v. Wachovia Bank, N.A., 353 S.C. 208, 221, 578 S.E.2d 329, 336 (2003)("We hold that a settlor may designate the law governing his trust, and absent a strong public policy reason, or lack of substantial relation to the trust, the choice of law provision will be honored."); Nucor Corp. v. Bell, 482 F.Supp2d 714, 728 ("Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law.")(citing Bazzle v. Green Tree Financial Corp., 351 S.C. 244, 569 S.E.2d 349, 358 (2002)("Generally, if the terms of a contract are clear and unambiguous, this court must enforce the contract according to its terms regardless of its wisdom or folly.").

---

[6] **ARTICLE III** of the Trust provides: "Unless changed by the Trustee, the situs of this Trust is the State of South Dakota and its laws shall govern the interpretation and validity of the provisions of this instrument and all questions related to the management, administration and investment of the trusts hereby created."

However, this issue need not be resolved to rule upon this motion, because South Carolina and South Dakota law are in harmony on this specific subject, and therefore, under the rule of law in either state, the result is the same.

In 1979, South Dakota adopted the Uniform Rules of Evidence, now found in South Dakota Code of Laws 19-13-3. Section 19-13-3 states:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.
>
> (1) Between himself or his representative and his lawyer or his lawyer's representative,
>
> (2) Between his lawyer and the lawyer's representative,
>
> (3) By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,
>
> (4) Between representatives of the client or between the client and a representative of the client, or
>
> (5) Among lawyers and their representatives representing the same client.

"Minimum elements now necessary to invoke that privilege include: (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of five relationships enumerated in 19-13-3." State v. Catch the Bear, 352 N.W.2d 640, 645 (1984). Applying this South Dakota law to attorney billing statements containing the same type of information found in a retainer letter, i.e. "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed," the District Court for the District of South Dakota concluded these items of information are usually not protected from disclosure by the attorney-client privilege unless they reveal motive of the

client in seeking representation, litigation strategy, or the specific nature of the services performed, such as researching particular areas of the law. Brennan v. Western National Mutual Insurance Company, 199 F.R.D. 660 (2001), citing Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992).

Likewise, in South Carolina, the fee agreement between attorney and client is generally not protected by the attorney-client privilege. Strickland v. Capital City Mills, 74 S.C. 16, 7 L.R.A.N.S. 426 (1906). As the Strickland court explained:

> "The general rule excludes from evidence all confidential communications of a professional nature between attorney and client, unless the client, for whose benefit the rule is established, waives the privilege. This is based upon a wise public policy which considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to his professional adviser, under the pledge of the law that such confidence shall not be abused by permitting a disclosure of such communications. This rule, however, is subject to limitations, and should not be extended beyond its legitimate scope and purposes. We see no reason why the contract between the client and attorney as to the fee to be paid for professional services, and the assignment of an interest in a judgment recovered in payment of services rendered, should fall within the rule of privileged communications. This is knowledge which is not communicated by the client to the attorney, but is knowledge of the attorney derived from his own act in creating the fact sought to be disclosed, and not from a revelation of any secret of the client. The fee contract, whether regarded as made preliminary to the relation of attorney and client, or at the close of such relation in compensation for services rendered, or whether made during the existence of such relation, is really collateral to the professional relation, is not strictly a part of it, and has no bearing upon the merits of the latter, upon which the professional aid was invoked. As to such a contract the parties ordinarily stand in adversary relation.

Strickland, 54 S.E. at 221-222.

In State v. Doster, 276 S.C. 647, 652, 284 S.E.2d 218, 219 (1981), the South Carolina Supreme Court explained that "the privilege must be tailored to protect only confidences disclosed within the [attorney-client] relationship." The Court recognized the essential elements giving rise to the privilege, as stated by Wigmore, to be:

> "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

In considering this issue, the Fourth Circuit Court of Appeals noted in <u>N.L.R.B. v. Harvey</u>, 349 F.2d 900, 904 (C.A. 4th Cir. 1965) that "[g]enerally, the identity of the attorney's client is not considered privileged matter." In so holding, the Court quoted from the case of <u>United States v. Pape</u>, 144 F.2d 778, 782 (2nd Cir. 1944), cert. denied 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944) as follows:

> "The authorities are substantially uniform against any privilege as applied to the fact of retainer or identity of the client. The privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the – at that stage prospective – client."

Thus, as the Fourth Circuit has observed, "'[t]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege'". <u>In re Grand Jury subpoena</u>, 204 F.3d 516, (4th Cir. 2000)(citing <u>Chaudhry v. Gallerizzo</u>, 174 F.3d 394, 402 (4th Cir. 1999).

Under the work product rule, codified in Fed. R. Civ. P. 26(b)(3), "an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation." <u>In re Doe</u>, 662 F.2d 1073, 1077 (4th Cir.1981), <u>cert. denied</u>, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Fact work product is discoverable only "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." <u>In re Grand Jury Proceedings</u>, 33 F.3d 342, 348 (4th Cir. 1994). Opinion work product is even more

carefully protected, since it represents the thoughts and impressions of the attorney. See Id. at 348. As the Court explained in In re Doe, " '[a]n attorney's thoughts are inviolate, ... and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client.'" 662 F.2d at 1080. As a result, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." In re Grand Jury Proceedings, 33 F.3d at 348; see also, In re Doe, 662 F.2d at 1079, 1080.

With the above principles in mind, I reach the following conclusions with regard to the engagement letters presented in these motions.

## B. Engagement Letter between Wellin Children and NMRS

In response to discovery requests propounded by McDevitt and Schwartz, on June 3, 2016, the Wellin Children supplemented their previous production by providing their March 27, 2012 engagement letter with NMRS. Three segments of the letter, comprising approximately two-thirds of the first five pages, were redacted on the basis of the assertion of attorney-client privilege and/or work product. The three redactions are generally described by counsel for the Wellin Children as involving the following information: 1) the scope of work NMRS was hired or intended to perform; 2) legal advice regarding issues arising from joint representation; and 3) mental impressions of counsel regarding initial strategy in preparing for potential litigation.

With regard to the first redaction, the Wellin Children argue the information is protected from disclosure because it lists five specific items NMRS recommended as comprising the initial scope of work to be accomplished. With regard to the itemized list, they point out that following the itemized list counsel noted in the letter that they "believe these are the initial steps necessary

for us to achieve your goals, as expressed." They assert the redacted list is protected under the attorney-client privilege because it goes beyond a general description of the work to be performed, expressing the specific nature of the services to be performed.

I conclude to the contrary. The first paragraph of the engagement letter, which is not redacted, provides the following general description of the work to be provided:

> It is our understanding that you have retained our law firm to represent you in potential litigation against your father's wife, Wendy Wellin, regarding her handling of the trust, estate, and assets of your father, Keith Wellin. No litigation is pending at this time, but you are retaining us to undertake the work necessary to take immediate actions to protect your father and/or his assets, should the need arise.

The list of items comprising the initial scope of the work to be performed provides nothing more than a general description of generic tasks which do not reveal any further motive of the clients or the substance of any confidential communications. Nor do they reveal any opinion, advice of counsel, or litigation strategy. As such, I conclude the information contained in the first redaction is not privileged, and should be revealed. See In re Securities Litigation, 89 F.R.D. 595, 603 (N.D.Tex. 1981)("The attorney-client privilege does not encompass such nonconfidential matters as the terms and conditions of an attorney's employment, the purpose for which an attorney has been engaged, the steps which an attorney took or intended to take in discharging his obligation, or any of the other external trappings of the relationship between the parties.")(citing Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 603 (8th Cir. 1978); Cohen v. Uniroyal, Inc., 80 F.R.D. 480, 483 E.D.Pa. 1978); In re Chevron Corp., 2010 WL 9545704 at 1 (D.N.M. Sept. 13, 2010).

The second redaction is generally described by NMRS as encompassing "legal advice regarding issues arising from joint representation." However, a review of the communication leads to the contrary conclusion. The information contained in this redaction provides a general

description of the law regarding conflict issues which may result from joint representation. There is no discussion of these generic issues in the context of case specific facts, circumstances or confidential information provided by the clients. While the discussion may describe the legal principles involved in handling potential conflicts arising from joint representation, there is no advice provided regarding these potential issues.

Based upon the above, the redacted material is merely a general itemization of potential issues that can arise as an external trapping of the attorney-client relationship, and does not reveal the substance of any confidential information or client motive. Nor does it reveal any opinion, advice, or impressions of counsel. As such, I conclude it is not protected by the attorney-client privilege and should be produced.

The third redaction is described by the Wellin Children's counsel as "mental impressions of counsel regarding initial strategy in preparing for potential litigation." I agree with this description, and conclude the communication is protected from disclosure under both the attorney-client privilege as advice to the client, as well as under the work product rule as the mental impression and opinion of counsel.

### C. Engagement Letter Between Keith Plum and D&Y

Keith Plum is one of eight grandchildren of Keith Wellin. On May 14, 2015, on Keith Plum's motion, he was joined as a counterclaim-Plaintiff to the action. See ECF No. 295 in 2:13-cv-03595-DCN. Following his joinder, Keith Plum asserted counterclaims seeking to remove Schwartz as trust protector, remove McDevitt as trustee, seeking to prevent Schwartz and McDevitt from prosecuting their action against the Defendants to recover the Trust assets and to hold the Defendants accountable for their alleged breaches of fiduciary duties.

On May 24, 2016, McDevitt served his Second Set of Requests for Production seeking production of the engagement letter with D&Y. On June 13, 2016, Plum produced the engagement letter with three redactions. The first redaction is defended on the basis that it contains information as to the specific nature of services to be performed by D&Y and is protected by the attorney-client privilege and work product doctrine. Hampered by the fact that they have not seen the redacted information and have no knowledge of its content, Plaintiffs argue that generally letters of engagement do not contain specific work to be performed by the attorney, and Keith Plum has failed in his burden of establishing the basis for the privilege and protection asserted.

After review of the first redaction, I conclude that the information is privileged as containing a description of the specific nature of work to be performed by D&Y, and goes beyond the general nature of the representation. Unlike the general description of work to be performed in the Wellin Children's engagement letter with NMRS, this communication describes specific action, which, in turn, implicates the mental impressions and opinions of counsel. For this reason, I conclude the redaction is proper and should not be revealed.

The second redaction involves a discussion of conflicts in the context of joint representation, in view of the fact that D&Y also represent the remaining seven Wellin grandchildren. As to this redaction, Plum asserts the same protections apply because the information addresses "motive of the client in seeking representations, litigation strategy, or the specific nature of the services performed." However, I conclude the communication is analogous to the second redaction contained in the NMRS engagement letter, and for the same reasons, is not protected by the attorney-client privilege or work product rule, and should be produced.

The third and final redaction involves specific legal advice to the client. This is generally protected under the attorney-client privilege, provided that it must relate to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding. Marshall v. Marshall, 282 S.C. 534, 538, 320 S.E.2d 44, 47 (Ct. App. 1984); Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). I conclude the redacted communication meets this test, and is protected from disclosure by the attorney-client privilege.

For the foregoing reasons, I make the following Recommendations to this Honorable Court:

1) As to the Wellin Children's engagement letter with NMRS, I recommend that the Motion to Compel be granted in part and denied in part as follows:

   a) That the motion be granted to compel production of the first and second redacted communications

   b) That the motion to compel be denied as to the third redacted communication;

2) As to the Keith Plum engagement letter with D&Y, I recommend that the Motion to Compel be granted in part and denied in part as follows:
   a) That the motion to compel be denied as to the first and third redacted communications;

   b) That the motion be granted to compel production of the second redacted communication;

Respectfully Submitted this 14th day of October, 2016.

_William L. Howard_
William L. Howard, Special Master