IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Wendy C. H. Wellin, as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001, | ) ) ) ) | Civil Action No.  2:13-cv-01831-DCN |
| *Plaintiff,* | ) ) | |
| vs. | ) ) | **THE ESTATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE IDENTITY OF LIMITED PARTNERS OF FRIENDSHIP PARTNERS, LP** |
| Peter J. Wellin, Cynthia W. Plum and Marjorie W. King, individually and as co-Trustees and beneficiaries of the Wellin Family 2009 Irrevocable Trust u/a/d November 2, 2009,  and Friendship Management, LLC, | ) ) ) ) ) ) | |
| *Defendants.* | ) ) | |

Wendy C. H. Wellin, as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001 (the "Estate"), by and through her undersigned counsel, moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the issue of the identity of the Limited Partner(s) of Friendship Partners, LP.

The Estate contends that Keith Wellin was and remained a Limited Partner of Friendship Partners, LP throughout his life, and that the Defendants breached their fiduciary duties to him as a Limited Partner.  Defendants Peter J. Wellin, Cynthia W. Plum, Marjorie W. King (collectively, the "Wellin Children"), and Friendship Management, LLC contend that Keith Wellin was not a Limited Partner when they sold 904 shares of Berkshire Hathaway Class A stock, attempted to foist all capital gains tax liability onto him, and distributed the proceeds from the sale to themselves out of trust and in contravention of the Partnership Agreement.

The Partnership Agreement of Friendship Partners, LP outlines the process by which a Limited Partner may transfer his interest and also the process by which a new, or Substituted,

Limited Partner may be admitted to the partnership. Based on the plain language contained within the Partnership Agreement and the transfer documents, Keith Wellin transferred only his economic interest in the partnership and retained all other rights as a Limited Partner. The Defendants' post-hoc rationalization used to support their position and attempt avoid liability conflicts with the plain language and the requirements of the transfer documents and should be rejected.

## NATURE OF THE CASE

This matter was initiated by Keith S. Wellin in 2013 upon his discovery of various breaches of duty by his three adult children, Peter J. Wellin, Cynthia W. Plum and Marjorie W. King (collectively, the "Wellin Children") and certain estate planning entities that they controlled. Mere days after the filing of the original complaint in this matter, Keith Wellin also initiated a civil suit in the Delaware Chancery Court raising claims specifically under Delaware law relating to the Wellin Children's breaches of duty and breaches of partnership agreement (the "Delaware Action"). Eventually the claims raised in the Delaware Action were added to the present matter, resulting in all claims associated with the Wellin Children's breaches of duty and breaches of the partnership agreement with respect to Friendship Partners, LP being now consolidated in the present action. *See* Second Am. Compl., April 30, 2015, ECF No. 301.[1] One of the issues in the pending litigation involves the Wellin Children's breaches of their fiduciary duties to their father was through actions taken through their control of Friendship Management, LLC and Friendship Partners, LP, both Delaware entities.

At the heart of several of Keith Wellin and/or his Estate's claims rests two fundamental legal issues: (1) Keith Wellin's status as a Limited Partner of Friendship Partners, LP after his

---

[1] All references to electronic case filing numbers are to Civil Action No. 2:13-cv-01831-DCN, unless otherwise noted.

participation in certain transfers of partnership interests in 2007 and 2009 and (2) the Wellin Family 2009 Irrevocable Trust's resulting status as an assignee of an interest in Friendship Partners, LP. Specifically, these issues of Limited Partner status are a part of the Fourth, Eighth, Ninth, Tenth and Eleventh Causes of Action contained in the Second Amended Complaint (ECF No. 301). While other areas of this action may involve disputed facts, the question of Keith Wellin's status as a Limited Partner of Friendship Partners, LP after the 2007 and 2009 Transactions and the Wellin Family 2009 Irrevocable Trust's status as an assignee only, is ripe for summary judgment.

## **FACTS**

### *2003 Formation of Friendship Partners, LP*

Friendship Management, LLC (the "LLC") was formed in December 2003 by four Members: Cynthia W. Plum, Peter J. Wellin, Marjorie W. King and the 2003 KSW Family Trust. *See* Ex. 1, Certificate of Formation, *Friendship Management, LLC*, Dec. 8, 2003; Ex. 2, Operating Agreement, *Friendship Management, LLC*, Dec. 11, 2003. Plum was designated as the Manager of the LLC, and, upon information and belief, continues to serve in that capacity. *Id.*

Shortly after the LLC was established, Keith Wellin and the LLC formed Friendship Partners, LP (the "LP"). *See* Ex. 3, Agreement of Limited Partnership, *Friendship Partners, LP*, Dec. 12, 2003 ("Partnership Agreement"). Under the Partnership Agreement, the LLC was named as the General Partner of the LP and Keith Wellin and the LLC were named as Limited Partners of the LP. *Id.* At formation, Keith Wellin contributed 896 shares of Berkshire Hathaway Class A stock and $2,000.00 to the LP and received 988,963 of the LP's 1,000,000 limited partner units. *See* Ex. 4, Annex A to Partnership Agreement, *Friendship Partners, LP*, 2003. The LLC contributed 10 shares of Berkshire Hathaway Class A and received 10,000 general partner units

and 1,037 limited partner units of the LP.  *Id.*  The founding documents for both the LP and the

LLC were drafted by Tom Farace or colleagues working with him at the law firm Nixon Peabody.

Ex. 5, Farace Dep. Tr. 45:20–47:6, Jan. 26, 2016

> The Partnership Agreement defines "Limited Partner" as follows:
>
> "'<u>Limited Partner</u>' means each Person named as a limited partner on Annex A
> hereto and each person admitted as a Substituted Limited Partner or an Additional
> Limited Partner pursuant to the terms of this Agreement, and, with respect to those
> provisions of this Agreement concerning a Limited Partner's rights to receive a
> share of profits or other distributions or the return of a Limited Partner's
> contribution, any Transferee of a Limited Partner's Interest in the Partnership
> (except that a Transferee who is not admitted as a Limited Partner shall have only
> those rights specified by the Act and which are consistent with the terms of this
> Agreement)."

Ex. 3, Partnership Agreement § 2, at 3–4,  The Partnership Agreement further defines "Substituted

Limited Partner" as "any Person admitted to the Partnership as a substituted Limited Partner

pursuant to <u>Section 9.2(b)</u>."  *Id.* § 2, at 4.  Similarly, the Partnership Agreement defines "Additional

Limited Partner" as "any Limited Partner admitted to the Partnership as an additional Limited

Partner pursuant to <u>Section 7.4</u>" and defines "Transferee" as "any person to whom a Transfer is

effected."  *Id.* § 2, at 2, 4, and § 9.1, at 12.

Section 9.2 of the Partnership Agreement governs the transfer and/or assignment of a

Limited Partner's interest in the LP.  First, Section 9.2(a) outlines four general transfer

requirements.  <u>Ex. 3</u>, Partnership Agreement § 9.2(a), at 13.  Next, Section 9.2(b) provides a right

of first refusal to the General Partner upon a transfer by a Limited Partner.  *Id.* § 9.2(b), at 13.

Sections 9.2(d) and (e) address the admission of substituted limited partners and the rights of a

transferee not admitted as a substituted limited partner as follows:

> (d)     The Transferee of a Limited Partner's Interest in the Partnership may be
> admitted to the Partnership as a Substituted Limited Partner only upon the receipt
> of the prior written consent of all General Partners, which consent may be given or
> withheld in each Partner's sole discretion.  Unless a Transferee of a Limited

Partner's Interest in the Partnership is admitted as a Substituted Limited Partner under this <u>Section 9.2(d)</u>, it shall have none of the powers of a Limited Partner hereunder and shall only have such rights of an assignee under the Act as are consistent with the other terms and provisions of this Agreement. No Transferee of a Limited Partner's Interest shall become a Substituted Limited Partner unless such Transfer shall be made in compliance with <u>Section 9.2(a), (b) and (d)</u>.

(e)      Unless a Transferee of a Limited Partner's Interest becomes a Substituted Limited Partner, such Transferee shall have no right to obtain or require any information or account of Partnership transactions, or to inspect the Partnership's books, or to vote on Partnership matters. Such a Transfer shall merely entitle the Transferee to receive the share of distributions, income and losses to which the transferring Limited Partner otherwise would be entitled."

*Id.* § 9.2(d) and (e), at 14.

Section 9.5 of the Partnership Agreement governs the effect on a Limited Partner of a transfer of that partner's interest in the partnership. *Id.* § 9.5, at 14. Section 9.5 provides "[u]pon the Transfer of the entire Interest in the Partnership of a Partner and effective upon the admission of such Partner's Transferee(s) pursuant to either <u>Section 9.1</u>[2] or <u>Section 9.2</u>, the transferring Partner shall be deemed to have withdrawn from the Partnership as a Partner." *Id.*

<u>*2007 Transfer of Partnership Interest*</u>

*2007 Transfer Documents*

The first transfer for which summary judgment is sought occurred in 2007 (the "2007 Transfer"). By a document dated December 19, 2007, Keith Wellin notified the general partner of his intent to transfer 988,963 limited partnership units of the LP to the Keith S. Wellin Florida Revocable Living Trust, u/a/d December 11, 2001 (the "Revocable Trust"), a trust for which he served as Trustee. <u>Ex. 6</u>, Notice of Proposed Transfer, *Friendship Partners, LP*, Dec. 19, 2007. The General Partner declined to exercise its right of first refusal pursuant to Section 9.2(b) of the

---

[2]  Section 9.1 of the Partnership Agreement addresses transfers of interests by a General Partner is not applicable to any of the transfers at issue in the present case.

Partnership Agreement.  Ex. 6, Response to Right of First Refusal, *Friendship Partners, LP*, Dec. 21, 2007.  The General Partner consented to the transfer to the Revocable Trust, so long as the Revocable Trust complied with Section 9.2(a), and also stated:

> "Pursuant to Section 9.2(d) and (e), the Transferee, after the proposed transfer, shall only have the rights of an assignee under the Delaware Revised Uniform Limited Partnership Act."

*Id.*

The Revocable Trust subsequently complied in writing with the requirements of Section 9.2(a) of the Partnership Agreement and stated that the transfer "[r]esults in rights only as an assignee under the Delaware Revised Uniform Limited Partnership Act."  Ex. 6, Transfer of Interest, *Friendship Partners, LP*, Dec. 26, 2007.

Two other documents relating to the 2007 Transfer were executed that December.  First, Keith Wellin executed a Notice of Assignment of Limited Partnership Interest, which stated:

> Pursuant to the Assignment and Assumption of Limited Partnership Interest by and between KEITH S. WELLIN. ("Assignor") and KEITH S. WELLIN, Trustee of the KEITH S. WELLIN FLORIDA REVOCABLE LIVING TRUST dated December 11, 2001 ("Assignee"), dated as of the same date hereon, the undersigned has assigned to assignee 988,963 limited partnership units (hereinafter referred to as the "Assigned Partnership Interest") and all rights (including the right to receive income, earnings, fees, distributions, profits and capital accounts) of Assignor with respect to the Assigned Partnership Interest under the FRIENDSHIP PARTNERS LP Partnership Agreement dated as of December 12, 2003, as amended or renewed and all substitutes thereto (the "Partnership Agreement").  . . .

Ex. 6, Notice of Assignment, *Friendship Partners, LP*, Dec. 26, 2007.  Additionally, Keith Wellin and the Revocable Trust executed an Assignment and Assumption of Limited Partnership Interest which stated in part:

> Assignor has agreed to assign to Assignee, and Assignee has agreed to assume from Assignor, said 988,963 units as a Limited Partner in the Partnership (the 'Assigned Partnership Interest'), and Assignee has agreed to act as a Limited Partner of the Partnership in accordance with this Assignment and the terms of the Partnership Agreement.

Ex. 6, Assignment & Assumption of Limited Partnership Interest, *Friendship Partners, LP*, Recital B, Dec. 26, 2007. Both documents refer to Keith Wellin throughout as "Assignor" and to his Revocable Trust as the "Assignee." *See* Ex. 6.

*2007 Amendment to Annex A of Partnership Agreement*

Annex A of the Partnership Agreement was amended replacing Keith S. Wellin with the Revocable Trust. Ex. 4, Annex A, Dec. 26, 2007. The Estate has identified no evidence that the amendment to Annex A was made prior to the 2007 Transfer. Rather, the document merely states "revised 12/26/07". *Id.*

The LLC takes the position that the amendment to Annex A of the Partnership Agreement constitutes the requisite "prior written consent" to admit a substitute limited partner pursuant to Section 9.2(d) of the Partnership Agreement. Ex. 7, LLC Dep. Tr. 57:21–58:22, Feb. 8, 2018. However, Cynthia Plum did not sign this document, and the LLC is not even aware of who prepared the document. *Id.* at 58:23–59:16. The LLC has identified no specific direction to or communication with Tom Farace, who drafted the 2007 Transfer documents, with respect to any revision or modification to Annex A of the Partnership Agreement. *Id.* at 61:9-23, 63:23–66:16 68:23–69:5. Despite the express language in the 2007 Transfer documents stating that an assignee interest was being transferred, the LLC maintains that it had the "intent" to admit a substitute limited partner. *Id.* at 60:23–61:6.

Tom Farace's billing records do not explicitly reference when Annex A to the Partnership Agreement with respect to the 2007 Transfer was prepared. *See* Ex. 8, Nixon Peabody Invoice, Dec. 20, 2007 *and* Ex. 9, Nixon Peabody Invoice, Mar. 20, 2008. Mr. Farace did bill for "Friendship Partnership documentation" on February 5, 2008. Ex. 9, Nixon Peabody Invoice, Mar. 20, 2008. Since no partnership transaction occurred for more than one year after February 5, 2008

and because the 2007 Transfer documents were already signed and executed prior to this date, this time entry may very well reflect the time associated with updating Annex A.

*Other testimony relating to the 2007 Transfer*

During her deposition, Cynthia Plum agreed that she, as the Manager of the LLC, would be the party who would be able to execute an admission of a substitute limited partner pursuant to the Partnership Agreement's terms.  Ex. 10, Plum Dep. Tr. 218:1-25, August 25, 2016.  Plum initially testified that she was not aware of the execution of such a document, though the "intent" was that a limited partner would be admitted.  *Id.* at 216:18–217:25, 219:1-5.  Plum later contradicted herself and testified that she believed the Annex A document, as revised in 2007, listed the Revocable Trust as a limited partner.  *Id.* at 219:8–221:9, 222:3–227:3.  Plum also testified that she thought "the transfer was complete" and relied on Tom Farace to provide the documents necessary to achieve the 2007 Transfer, but then was unable to take a position on whether these documents constituted prior written consent as required by the Partnership Agreement.  *Id.* at 222:3–227:3.  Neither Plum nor the LLC testified that they believed the Partnership Agreement or the documents effecting the 2007 Transfer to be ambiguous.  Significantly, the document Plum signed at the time of the transfer expressly stated that the Transferee (the Revocable Trust) would become only an assignee of the LP.  Ex. 6, Response to Right of First Refusal, *Friendship Partners, LP*, Dec. 21, 2007.

Tom Farace, the attorney responsible for drafting the 2007 Transfer documents, agreed that the Partnership Agreement required compliance with Section 9.2(d) for the admission of a substitute limited partner ("prior written consent" by the general partner) but testified that he did not recall the LLC executing a document that provided prior written consent to admit the Revocable Trust as a substitute limited partner.  Ex 5, Farace Dep. Tr. 68:20–69:19, 427:25–

428:25, 436:3-10, Jan. 26 & 27, 2016.  Farace also testified that the 2007 Transfer documents achieved only a transfer of an assignee interest to the Revocable Trust, though the intent may have been to transfer Keith Wellin's entire interest in the LP.  *Id.* at 69:20–70:18, 163:21–164:6, 429:16–436:23, 462:5-19.  Despite any purported "intent" which Farace may have identified, he agreed that the General Partner's failure to admit the Revocable Trust as a substitute limited partner resulted in the Revocable Trust receiving an assignee interest only.  *Id.* at 429:16–436:23.  Farace did not testify that he believed the Partnership Agreement or the documents effecting the 2007 Transfer to be ambiguous.

<u>*2009 Transfer of Partnership Interest*</u>

*2009 Transfer Documents*

The second transfer for which summary judgment is sought occurred in 2009 (the "2009 Transfer").  By a document dated November 25, 2009, the Revocable Trust notified the General Partner of its intent to transfer 988,963 limited partnership units of the LP to the Wellin Family 2009 Irrevocable Trust (the "2009 Trust").[3]  <u>Ex. 12</u>, Notice of Proposed Transfer, *Friendship Partners, LP*, Nov. 25, 2009.

The General Partner also declined to exercise its right of first refusal in 2009.[4]  <u>Ex. 12</u>, Response to Right of First Refusal, *Friendship Partners, LP*, Nov. 27, 2009.  In its document declining to exercise the right of first refusal, the General Partner stated permission to move

---

[3] The 2009 Trust was established earlier in November 2009 by Keith Wellin, naming the Wellin Children and South Dakota Trust Company as Trustees and naming the Wellin Children as the sole members of the 2009 Trust's Investment and Distribution Committees.  <u>Ex. 11</u>, 2009 Trust, Nov. 2, 2009.

[4] By referencing or discussing this document, the Estate does not concede that the General Partner held a right of first refusal with respect to the 2009 Transfer, as the rights afforded under Section 9.2(b) of the Partnership Agreement are specific to transfers of the interest of a Limited Partner, as opposed to an Assignee.

forward with the transfer to the Transferee (the 2009 Trust) so long as the transferee complied with the requirements of Section 9.2(a) of the Partnership Agreement. *Id.*

The 2009 Trust subsequently complied in writing with the requirements of Section 9.2(a) of the Partnership Agreement and stated that the transfer "[r]esults in rights only as an assignee under the Delaware Revised Uniform Limited Partnership Act." Ex. 12, Transfer of Interest, *Friendship Partners, LP*, Nov. 30, 2009.

Similar to the 2007 Transfer, two other documents were executed in relation to the transfer of partnership interest in 2009. First, the Revocable Trust executed a Notice of Assignment of Limited Partnership Interest, which stated:

> Pursuant to the Assignment and Assumption of Limited Partnership Interest by and between KEITH S. WELLIN, TRUSTEE OF THE KEITH S. WELLIN FLORIDA REVOCABLE LIVING TRUST U/A/D DECEMBER 11, 2001, AS AMENDED AND RESTATED (hereinafter referred to as "Assignor"), and PETER J. WELLIN, CYNTHIA W. PLUM, MARJORIE W. KING, and SOUTH DAKOTA TRUST COMPANY LLC, AS TRUSTEES OF THE WELLIN FAMILY 2009 IRREVOCABLE TRUST U/A/D NOVEMBER 2, 2009 (hereinafter referred to as "Assignee"), dated as of the same date hereon, the undersigned has assigned to Assignee a share of Assignor's 98.8963% Interest as a Limited Partner (hereinafter referred to as the "Assigned Partnership Interest") and all rights (including the right to receive income, earnings, fees, distributions, profits and capital accounts) of Assignor with respect to the Assigned Partnership Interest under the FRIENDSHIP PARTNERS LP Partnership Agreement dated as of December 12, 2003, as amended or renewed and all substitutes thereto (the "Partnership Agreement"). . . .

Ex. 12, Notice of Assignment of Limited Partnership Interest, *Friendship Partners, LP*, Nov. 30, 2009. Additionally, the Revocable Trust and the 2009 Trust executed an Assignment and Assumption of Limited Partnership Interest, which outlined the terms of the transfer. *See* Ex. 12, Assignment and Assumption of Limited Partnership Interest, *Friendship Partners, LP*, Nov. 30, 2009. This document referred to the Revocable Trust throughout as the "Assignor" and to the 2009 Trust, through its trustees as the "Assignee." *Id.* This document also stated:

> Assignor has agreed to assign to Assignee, and Assignee has agreed to assume from Assignor, said 98.8963% units as a Limited Partner in the Partnership (the 'Assigned Partnership Interest'), and Assignee has agreed to act as a Substituted Limited Partner of the Partnership in accordance with this Assignment and the terms of the Partnership Agreement.  . . .

*Id.* at Recital B.

*2009 Amendment to Annex A of Partnership Agreement*

Annex A of the Partnership Agreement was revised to remove the Revocable Trust and add the 2009 Trust.  Ex. 4, Annex A, Nov. 30, 2009.  However, the Estate has identified no evidence indicating that Annex A was revised prior to the transfer.[5]  The documents merely state "Revised 11/30/09".  *Id.*  Moreover, Tom Farace billed Keith Wellin for "Revise Annex A of LP Agreement", among other items, in an entry dated December 23, 2009 – nearly a month after the transfer occurred.  Ex. 14, Nixon Peabody Invoice, Mar. 19, 2010.

The LLC, through its Rule 30(b)(6) designee, also takes the position that the 2009 amendment to Annex A of the Partnership Agreement constitutes "prior written consent" to admit a substitute limited partner.  Ex. 7, LLC Dep. Tr. 98:8–99:14.  However, when asked to explain the statement that the 2009 Transfer "[r]esults in rights only as an assignee under the Delaware Revised Uniform Limited Partnership Act", the LLC was unable to explain what was meant by this language.  Ex. 12, Transfer of Interest, Nov. 30, 2009; Ex. 7, LLC Dep. Tr. 103:21 – 106:8.  Despite the language in the 2009 Transfer documents themselves, the LLC maintains that it had the "intent" to admit the 2009 Trust as a substitute limited partner.  Ex. 7, LLC Dep. Tr. 97:15-18.

---

[5] There is no reference to Farace revising Annex A at any time in November 2009.  *See* Ex. 13, Nixon Peabody Invoice, Dec. 10, 2009.

*Other testimony relating to the 2009 Transfer*

Tom Farace was also responsible for drafting the documents relating to the 2009 Transfer. Farace testified that if the Revocable Trust was never admitted as a substituted limited partner in 2007 – i.e., if the Revocable Trust only held an assignee interest in the LP – it would only be able to transfer what interest it held to the 2009 Trust.  Ex. 5, Farace Dep. Tr. 76:13–77:19, 435:2–436:2.  Though Farace may have identified an "intent" to admit the 2009 Trust as a substitute limited partner, he agreed that the 2009 Transfer documents reflect only a transfer of an assignee's interest under the Delaware Revised Uniform Limited Partnership Act.  *Id.* at 81:8-21, 174:12–178:23.  Farace did not testify that he believed the Partnership Agreement or the documents effecting the 2009 Transfer to be ambiguous.

Cynthia Plum, a Member of and the Manager of Friendship Management, LLC, testified that she is not aware of any document that provided prior written consent to admit a substitute limited partner with respect to the 2009 Transfer.  Ex. 10, Plum Dep. Tr. 226:25–229:9, August 25, 2016.

Neither Plum nor the LLC, through its Rule 30(b)(6) designee, testified that they believed the Partnership Agreement or the documents effecting the 2009 Transfer to be ambiguous.

*Expert testimony relating to 2007 and 2009 Transfers*

The Estate's Delaware limited partnership expert, Lawrence Hamermesh, and the Wellin Children's Delaware limited partnership expert, Myron Steele, both agree that the Partnership Agreement is not ambiguous.  Ex. 15, Hamermesh Dep. Tr. 20:19–22:9, July 25, 2018; Ex. 16, Steele Dep. Tr. 12:2-23, Dec. 12, 2018.  Mr. Hamermesh and Mr. Steele also agree that the 2007 and 2009 Transfer documents are not ambiguous.  Ex. 15, Hamermesh Dep. Tr. 131:24–132:6, July 25, 2018; Ex. 16, Steele Dep. Tr. 14:13-19, Dec. 12, 2018.  However, Mr. Hamermesh and

Mr. Steele disagree on whether the General Partner, the LLC, provided "prior written consent" to the admission of a substitute limited partner with respect to either the 2007 or 2009 Transfers, as is required by Section 9.2(d) of the Partnership Agreement.[6]

Mr. Hamermesh has not identified any document which provided "prior written consent" to admit a substitute limited partner in either 2007 or 2009. Mr. Hamermesh testified that Annex A to the Partnership Agreement, as revised in either 2007 or 2009, is sufficient to satisfy Section 9.2(d) for several reasons. Ex. 15, Hamermesh Dep. Tr. 140:12–141:1, 163:3–164:5, July 25, 2018. First, Annex A was not signed by the LLC or its Manager, Cynthia Plum, and the Annex A documents do not contain a manifestation of the LLC's consent to admit a substitute limited partner. Id. at 159:23–160:10. Second, the Annex A documents were meant to achieve an identification of the economic interests in partnership distributions, rather than limited partner status. Id. at 140:12–141:1, 143:14–145:25, 158:12-17. This opinion is based on the definition of "Limited Partner" contained within the Partnership Agreement, quoted above, which encompasses transferees or assignees who are not admitted as limited partners pursuant to Section 9.2(d) of the Partnership Agreement. Id. at 143:14–145:25.[7] Transferees who are not admitted as Limited Partners, but who nevertheless hold an economic interest in the LP, are entitled to a distribution

---

[6] Interestingly, one of Mr. Steele's colleagues, who assisted him in the preparation of his report in this matter, appeared to actually agree with Mr. Hamermesh on this issue. See Ex. 18, Steele Dep. Tr. 209:7–215:18, 274:11–287:25, 292:21–298:2, April 3, 2019.

[7] Mr. Hamermesh addressed this issue succinctly in his Rule 26(a)(2) expert disclosure: "Inclusion of a person on Annex A to the limited partnership agreement may identify that person as a "Limited Partner" as defined in [the Partnership Agreement], but in order to clarify how the agreement's provisions governing the right to receive a share of profits or other distributions, that definition also includes a transferee of a limited partnership interest "who is not admitted as a Limited Partner.' In short, inclusion of a person on Annex A does not establish that such person is a limited partner; under the accepted standards of the partnership industry such a document merely establishes that such person has a limited partnership interest." Ex. 17, Hamermesh Rule 26(a)(2) Disclosure at 8, n.12, May 31, 2018.

proportionate to the same when a distribution is made. Thus, Mr. Hamermesh testified that an assignee or transferee may be included on Annex A to the Partnership Agreement to identify its economic interest in the partnership, particularly its share of profits and distributions; however, such inclusion does not necessarily satisfy the Section 9.2(d) requirement that the General Partner admit a substitute limited partner by "prior written consent."

Mr. Steele agrees that Section 9.2 of the Partnership Agreement provides for the transfer of all or a portion of a limited partner's interest in the LP, and depending on the circumstances, there could be a division between the economic interest and the legal interest of a limited partner. Ex. 16, Steele Dep. Tr. 19:5–20:10, Dec. 12, 2018. Mr. Steele further opined that the Annex A documents constitute "prior written consent" to admit a Substituted Limited Partner. *Id.* at 38:5-7, 48:6-12. However, Mr. Steele did not know who prepared the Annex A document or whether the General Partner of the LP instructed anyone to prepare the same. *Id.* at 22:13-21, 48:13–49:16.

Mr. Steele also testified that he is not offering any opinion that Mr. Wellin withdrew as a Limited Partner, pursuant to Article X of the LP Agreement. Ex. 18, Steele Dep. Tr. 273:3–274:10, April 3, 2019.

## **ARGUMENT**

**I.**    **The Court should enter summary judgment in favor of the Estate, finding that Keith Wellin remained a Limited Partner in Friendship Partners, LP after both the 2007 and 2009 Transfers and that the 2009 Trust was not a Limited Partner in Friendship Partners, LP.**

Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Further, a party may move for summary judgment with respect to any claim or defense or any part of any claim or defense. *Id.* Though all reasonable inferences are to be drawn in favor of the nonmoving party, in order to defeat summary judgment, the nonmoving party must identify an

error of law or a genuine issue of disputed material fact. *Canopius US Ins. v. Middleton*, 202 F. Supp. 3d 540, 545 (D.S.C. 2016). If the nonmoving party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered regardless of any proof or evidentiary requirements imposed by the substantive law. *S.C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959, 963 (D.S.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

    **A.    There is no genuine dispute as to any material fact related to the 2007 or 2009 Transfers of partnership interest, Keith Wellin's continuing status as a limited partner in Friendship Partners, LP, or the 2009 Trust's status as an assignee of an interest in Friendship Partners, LP only.**

With respect to the first requirement for summary judgment, the threshold inquiry is the determination of whether there is a need for a trial – in other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250. The Fourth Circuit has held that "facts are 'material' when they might affect the outcome of a case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. *S.C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d at 963. In other words, the nonmoving party may not rely merely on allegations or denials in his own pleading but must set out specific facts showing a genuine issue for trial. *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 408 (4th Cir. 2015). An opponent of summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts; he must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *see also FDIC v. Cashion*, 720 F.3d 169 (4th Cir. 2013).

While the parties may disagree about the application of the law to the facts associated with the 2007 Transfer or the 2009 Transfer, the facts themselves are undisputed.

In 2003, Keith and the LLC formed the LP, and Keith was admitted as a Limited Partner. See Ex. 3, Partnership Agreement. In 2007, a series of documents were executed in which Keith Wellin transferred his economic interest in the LP to his Revocable Trust. *See* Ex. 6. The representations made by the Transferee (the Revocable Trust) and by the LP (by and through Plum, as Manager of the LLC, the General Partner) consistently state that the Revocable Trust is to be treated as an assignee only, having only the rights of an assignee under the Delaware Revised Uniform Limited Partnership Act (the "DRULPA"). *See* Ex. 6. There is no document executed by the LLC, nor its Manager, Plum, manifesting an intent to admit the Revocable Trust as a substituted limited partner pursuant to Section 9.2(d) of the Partnership Agreement. The only document executed by the LLC, the General Partner of the LP, expressly stated that the Revocable Trust is to be treated only as an assignee. Ex. 6, Response to Right of First Refusal, Dec. 21, 2007.

In 2009, a series of documents were executed in which the Revocable Trust transferred its economic interest in the LP to the 2009 Trust. Ex. 12. The only representations relating to the partnership status of the 2009 Trust in these documents which were made to or by the partnership were that the transferee – the 2009 Trust – was to have only the rights of an assignee under the DRULPA. Ex. 12. In fact, this representation is most clearly made by the 2009 Trust itself. Ex. 12, Transfer of Interest, Nov. 30, 2009. There is no document executed by the LLC, through its Manager, manifesting an intent to admit the 2009 Trust as a substitute limited partner of the LP.

No party has asserted that there are material facts in dispute in relation to the 2007 or 2009 transfers of partnership interest. No party has asserted that these documents are ambiguous, and the experts of both parties agree there is no ambiguity. However, despite the express language of the Partnership Agreement, the 2007 Transfer documents, and the 2009 Transfer documents, the LLC and Cynthia Plum claim that the "intent" of both transfers was to admit a substitute limited partner. If neither the Revocable Trust (in 2007) nor the 2009 Trust (in 2009) were admitted as Limited Partners, then the Partnership Agreement plainly states that Keith Wellin remained a Limited Partner.

The Court should determine that there are no genuine issues of material fact associated with either the 2007 Transfer or the 2009 Transfer of partnership interest, such that summary judgment is proper and warranted.

> **B.    The Estate is entitled to judgment as a matter of law on Keith Wellin's continuing status as a limited partner in Friendship Partners, LP.**

If no genuine issue of material fact exists, the Court must determine that the moving party is entitled to judgment as a matter of law on the issue(s) presented for summary judgment. Fed. R. Civ. P. 56(a). In South Carolina, the laws of the state under which a foreign limited partnership, such as the LP, is organized govern its internal affairs. *See* S.C. Code § 33-42-1610(a) (2019); *cf. Babb v. Lee County Landfill, LLC*, 852 F. Supp. 2d 682, 685 (D.S.C. 2012) (applying Delaware law to internal dispute where defendant LLC was incorporated in Delaware). One such internal affair is the admission of, or status of, limited partners within a limited partnership. Further, choice of law clauses are generally honored in South Carolina. *See Outpost Capital Mgmt., LLC v. Prioleau*, C/A No. 2:16-RMG, 2017 U.S. Dist. LEXIS 189497, at *10 (D.S.C. Nov. 16, 2017) (citing *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011)). The Partnership Agreement provides: "This Agreement and the rights of the parties hereunder shall be governed

by and interpreted in accordance with the law of the State of Delaware." Ex. 3, Partnership Agreement § 12.3, at 19.

The DRULPA provides that it is the policy of the Act "to give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements." 6 Del. Code § 17-1101(c) (2019). The DRULPA embodies the policy of freedom of contract and maximum flexibility. *Twin Bridges LP v. Draper*, C/A No. 2351-VCP, 2007 Del. Ch. LEXIS 136, at *27 (Del. Ch. Sept. 14, 2007), attached as Exhibit 19. Delaware thus applies rules of contract interpretation to limited partnership agreements. *Norton v. K-Sea Transp. Partners, L.P.*, 67 A.3d 354, 360 (Del. 2013); *see also Cantera v. Marriott Senior Living Servs., Inc.*, 1999 Del. Ch. C.A. No. 16498, 1999 Del. Ch. LEXIS 26, at *9–10 (Del. Ch. Feb. 18, 1999), attached as Exhibit 20. Limited partnership agreements are construed in accordance with their literal terms, with the limited partnership agreement being the operative document and the DRULPA providing "fall-back" or default provisions where the partnership agreement is silent. Ex. 19, *Twin Bridges LP*, 2007 Del. Ch. LEXIS 136, at *44. The Supreme Court of Delaware further holds, "[w]e construe limited partnership agreements as a whole and give effect to every provision if it is reasonably possible to do so." *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 104 (Del. 2013).

Delaware courts will interpret clear and unambiguous terms according to their ordinary meaning.[8] *GMG Capital Invs., LLC v. Athenian Venture Partners, I, L.P.*, 36 A.3d 776, 780 (Del. 2012). Contract terms themselves will be controlling when they establish the parties' meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language. *Id*. When interpreting a contract, Delaware courts will give priority

---

[8] It has sometimes been said that Delaware adheres to the "objective" theory of contracts, meaning that a contract's construction should be that which would be understood by an objective reasonably third party. *E.g.*, Ex. 20, *Cantera*, 1999 Del. Ch. LEXIS 26, at *12.

to the parties' intentions as reflected in the four corners of the agreement. *Id.* at 779. In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein. *Id.* Delaware courts give terms their plain meaning unless it appears that the parties intended a special meaning. *Norton*, 67 A.3d at 360. However, "[t]he meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan." *GMG Capital Invs., LLC*, 36 A.3d at 779. Further, "Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *Norton*, 67 A.3d at 365 (internal citations and quotations omitted).

Delaware courts only look to extrinsic evidence if a contract or partnership agreement is ambiguous. *Norton*, 67 A.3d at 360. Contract language is not rendered ambiguous simply because the parties in litigation differ concerning its meaning. *Id.*; *see also* Ex. 20, *Cantera*, 1999 Del. Ch. LEXIS 26, at *11–12. Nor is contract language rendered ambiguous simply because the parties do not agree upon its proper construction. *Norton*, 67 A.3d at 360; Ex. 20, *Cantera*, 1999 Del. Ch. LEXIS 26, at *11–12. Rather, contracts are ambiguous only where the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more meanings. Ex. 20, *Cantera*, 1999 Del. Ch. LEXIS 26, at *11–12. "If parties introduce conflicting interpretations of a term, but one interpretation better comports with the remaining contents of the document or gives effect to all the words in dispute, the court may, as a matter of law and without resorting to extrinsic evidence, resolve the meaning of the disputed term in favor of the superior interpretation." *Bond Purchase, L.L.C. v. Patriot Tax Credit Props., L.P.*, 746 A.2d 842, 855 (Del. Ch. 1999) (Steele, V.C.) (quoting *Willis v. Morris, James, Hitchens & Williams*, C.A. No. 15297, 1998 Del. Ch. LEXIS 213, at *4 (Del. Ch. Nov. 6, 1998)), attached as Exhibit 21.

"Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court." *NAMA Holdings, LLC v. World Market Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007); *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 588 (Del. Ch. 2006) (stating that, as a general matter, courts "attempt to interpret each word or phrase in a contract to have an independent meaning so as to avoid rendering contractual language mere surplusage"); *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, C/A No. 2742-VCN, 2007 Del. Ch. LEXIS 154, at *48–49 (Del. Ch. Nov. 2, 2007) ("Delaware courts do prefer to interpret contracts to give effect to each term rather than to construe them in a way that renders some terms repetitive or mere surplusage.").

      1.     **<u>Under the plain and unambiguous terms of the Partnership Agreement and the 2007 Transfer documents, only an assignee interest was conveyed in the 2007 Transfer and Keith Wellin remained a Limited Partner in the LP.</u>**

An assignee of a partnership interest may become a limited partner pursuant to the provisions of a partnership agreement or, if the partnership agreement is silent, upon the vote or consent of all partners.  6 Del. Code § 17-704(a) (2019).  Delaware cases involving the admission or substitution of limited partners nearly always involve the interpretation of the particular partnership agreement's process for admission.  *See, e.g.*, *Policemen's Annuity & Benefit Fund of Chi. v. DV Realty Advisors LLC*, C/A No. 7204-VCN, 2013 Del. Ch. LEXIS 290 (Del. Ch. Nov. 27, 2013), attached as <u>Exhibit 22</u>; *Hillman v. Hillman*, 910 A.2d 262 (Del. Ch. 2006); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, C.A. No. 15754, 2000 Del. Ch. LEXIS 152 (Del. Ch. Oct. 20, 2000), attached as <u>Exhibit 23</u>; *In re Am. Tax Credit Props. Ltd. P'ships*, 714 A.2d 87 (Del. Ch. 1997); *Monterey Invs., Inc. v. Healthcare Props., L.P.*, C.A. No. 15519, 1997 Del. Ch. LEXIS 98 (June 20, 1997) (Steele, VC), attached as <u>Exhibit 24</u>.

For example, in *Monterey Investments*, the Delaware Court of Chancery determined that certain "unitholders" of a limited partnership (holders of an economic interest in the limited partnership) had not been admitted as substituted "Interest Holders" (limited partners with rights beyond simply receiving distributions and allocations of profits and losses). Ex. 24, 1997 Del. Ch. LEXIS 98, at *12–14.    The Court of Chancery[9] reached this conclusion because the General Partner of the limited partnership had never provided "written consent" to such an admission, despite the partnership agreement providing that "no assignee of the whole or any portion of an Interest Holder's interest shall have the right to become a substituted Interest Holder unless . . . the written consent of the General Partner to such substitution shall be obtained . . . ." *Id.* at *6, *12–14.    Conversely, where a partnership agreement required a general partner's consent to admit a substitute limited partner, and the agreement defined "consent" as either "prior written consent" or "the act of granting such consent, as the context may require", the Court of Chancery concluded that the actions of the general partner's agent were sufficient to manifest the general partner's consent to the admission because (1) the general partner had clearly delegated such responsibility to its agent and (2) the partnership agreement did not require written consent, in contrast to *Monterey*. *In re Am. Tax Credit Props. Limited P'hips*, 714 A.2d at 93–97.

Section 9.2 of the Partnership Agreement governs the admission of substitute limited partners to the LP.  In pertinent part, the Partnership Agreement states:

> (d)    The Transferee of a Limited Partner's Interest in the Partnership may be admitted to the Partnership as a Substituted Limited Partner ***only upon the receipt of the prior written consent of all General Partners***, which consent may be given or withheld in each Partner's sole discretion.  Unless a Transferee of a Limited Partner's Interest in the Partnership is admitted as a Substituted Limited Partner under this Section 9.2(d), it shall have none of the powers of a Limited Partner hereunder and shall only have such rights of an assignee under the Act as are

---

[9] Specifically, Myron Steele, who was then serving as a Vice Chancellor in the Court of Chancery and is now offering an opinion on the Wellin Children's behalf on this same issue.

consistent with the other terms and provisions of this Agreement. ***No Transferee of a Limited Partner's Interest shall become a Substituted Limited Partner unless such Transfer shall be made in compliance with <u>Section 9.2(a), (b) and (d)</u>.***

(e)     Unless a Transferee of a Limited Partner's Interest becomes a Substituted Limited Partner, such Transferee shall have no right to obtain or require any information or account of Partnership transactions, or to inspect the Partnership's books, or to vote on Partnership matters. Such a Transfer shall merely entitle the Transferee to receive the share of distributions, income and losses to which the transferring Limited Partner otherwise would be entitled."

<u>Ex. 3</u>, Partnership Agreement § 9.2(d) and (e), at 14 (emphasis added). Thus, the Partnership Agreement specifies the only mechanism by which a substitute limited partner may be admitted and the fall-back provision of the DRULPA is not available.

Section 9.2(d) of the Partnership Agreement expressly contemplates that a transferee receiving partnership units may become a Substituted Limited Partner or remain only an assignee. Moreover, the final sentence of Section 9.2(d) conditions any admission of a Substituted Limited Partner upon the General Partner's action – providing "prior written consent". *Id*. The inclusion of the word "prior" is further illuminated by the phrase, "No Transferee of a Limited Partner's Interest shall become a Substituted Limited Partner unless such Transfer shall be made in compliance with Section 9.2(a), (b) and (d)." *Id*. This passage demonstrates that "prior written consent" does not refer to written consent given before admission, but rather to written consent *prior to* the transfer. As noted above, no party maintains that this requirement of the Partnership Agreement is ambiguous.

With respect to the 2007 Transfer documents, these materials provide explicitly that the proposed Transferee – the Revocable Trust – would have the rights of an assignee only. *See* <u>Ex. 6</u>. This representation was made by Keith Wellin, the Transferor, the Revocable Trust, the Transferee, and (most significantly) by Cynthia Plum, as Manager of the LLC. <u>Ex. 6</u>. Throughout the 2007 Transfer documents, the Revocable Trust is referred to as an "assignee" and Keith Wellin

is referred to as the "assignor".  Ex. 6.  The General Partner, the LLC, did not execute a document manifesting consent to admit the Revocable Trust as a Substituted Limited Partner prior to the 2007 Transfer, as required by Section 9.2(d).

Under the plain and unambiguous terms of the Partnership Agreement and the 2007 Transfer documents, only an assignee interest was transferred in 2007.  *Cf.* Ex. 24, *Monterey Investments*, 1997 Del. Ch. LEXIS 98, at *12–14.  The LLC, the General Partner of the LP, never provided prior written consent to admit the Revocable Trust as a Substituted Limited Partner.

Further, Keith Wellin never withdrew from the LP in 2007 or at any time thereafter.  Section 17-603 of the DRULPA provides that a Limited Partner may withdraw from a limited partnership only at the time or upon the happening of events specified in the partnership agreement and in accordance with the partnership agreement.  6 Del. Code § 17-603 (2019).[10]  Section 9.5 of the Partnership Agreement states that a Limited Partner of the LP is deemed to withdraw as a partner from the LP upon the occurrence of two events – the transfer of all of the partner's interest in the partnership and the admission of the transferee of the partner as a Partner in the Partnership. Even if the first event occurred, the second event (admission of the transferee as a Partner) did not, as described above.  Since that second event never occurred, Keith Wellin never withdrew as a Limited Partner and remained a Limited Partner until the dissolution of the Partnership.  No party or expert in this matter has opined that any action of Mr. Wellin constituted a withdrawal from the

---

[10] "A limited partner may withdraw from a limited partnership only at the time or upon the happening of events specified in the partnership agreement and in accordance with the partnership agreement. Notwithstanding anything to the contrary under applicable law, unless a partnership agreement provides otherwise, a limited partner may not withdraw from a limited partnership prior to the dissolution and winding up of the limited partnership. Notwithstanding anything to the contrary under applicable law, a partnership agreement may provide that a partnership interest may not be assigned prior to the dissolution and winding up of the limited partnership." 6 Del. Code § 17-603 (2019).

partnership at any time.  *See, e.g.*, Ex. 18, Steele Dep. Tr. 84:16–85:23, April 3, 2019 (rough transcript) (agreeing that he is not offering any opinion that Mr. Wellin withdrew from the partnership).

Under Delaware law and the express terms of the Partnership Agreement, Keith Wellin remained a limited partner in Friendship Partners, LP and the Court should enter partial summary judgment finding the same.

> ### 2. Under the plain and unambiguous terms of the Partnership Agreement and the 2009 Transfer documents, only an assignee interest was conveyed in the 2009 Transfer and Keith Wellin remainder a Limited Partner in the LP.

Delaware law also applies to the analysis of the 2009 Transfer.  The Estate incorporates its above discussion and analysis of Delaware law without re-stating the same in this section.

As noted above, Section 9.2 of the Partnership Agreement governs the admission of substitute limited partners to the LP.   Section 9.2(d) of the Partnership Agreement specifies the exclusive mechanism by which a substitute limited partner may be admitted to the LP – only where the General Partner of the LP provides "prior written consent".  *See* Ex. 3, Partnership Agreement § 9.2(d), at 14.

With respect to the 2009 Transfer documents, these materials also provide explicitly that the proposed Transferee – the 2009 Trust – shall receive the rights of an assignee only.  The Revocable Trust represented its intent to transfer its assignee interest.  Ex. 12. The 2009 Trust, through its Trustees (Peter Wellin, Cynthia Plum, Marjorie King, and South Dakota Trust Co.), accepted what is expressly described as an assignee interest.  Ex. 12.  Significantly, Cynthia Plum, as Manager of the LLC, acting in her capacity as Co-Trustee of the 2009 Trust, agreed that the 2009 Transfer would convey only the rights of an assignee under the Delaware Revised Uniform Limited Partnership Act.  Ex. 12.  The General Partner, the LLC, did not execute a document

manifesting consent to admit the 2009 Trust as a Substituted Limited Partner prior to the 2009 Transfer, as required by Section 9.2(d).

Under the plain and unambiguous terms of the Partnership Agreement and the 2009 Transfer documents, only an assignee interest was transferred in 2009. The LLC, the General Partner of the LP, never provided prior written consent to admit the 2009 Trust as a Substituted Limited Partner.

Further, just as in 2007, in 2009 Keith Wellin never withdrew from the LP. Section 17-603 of the DRULPA provides that a Limited Partner may withdraw from a limited partnership only at the time or upon the happening of events specified in the partnership agreement and in accordance with the partnership agreement. 6 Del. Code § 17-603 (2019). Section 9.5 of the Partnership states that a Limited Partner of the LP is deemed to withdraw as a partner from the partnership upon the occurrence of two events – the transfer of all of the partner's interest in the partnership and the admission of the transferee of the partner as a Partner in the Partnership. Even if the first event occurred, the second event (admission of the transferee as a Partner) did not, as described above. Since that second event never occurred, Keith Wellin never withdrew as a Limited Partner and remained a Limited Partner until the dissolution of the Partnership.

Therefore, under Delaware law and the express terms of the Partnership Agreement, Keith Wellin remained a limited partner in Friendship Partners, LP and the 2009 Trust was never admitted as a Substituted Limited Partner to the LP. *Cf.* Ex. 24, *Monterey Investments*, 1997 Del. Ch. LEXIS 98, at *12–14. The Court should enter partial summary judgment finding the same.

Further, a person or entity may only convey the rights or interests that it possesses. This is a fundamental rule that has long been recognized by our courts in the doctrine of *nemo dat quod non habet*, which provides that one cannot give what one does not have. See *Mitchell v. Hawley*,

83 U.S. 544, 550, 21 L. Ed. 322 (1872).  An assignment of rights is invalid where the assignor

does not own those rights.  *Taylor Publ'g Co. v. CTP Innovations, LLC (In re CTP Innovations,*

*LLC)*, 2016 U.S. Dist. LEXIS 165684, *16, (D. Md. Nov. 30, 2016).

Here, the 2009 Trust could not have received Keith Wellin's right to participate in the LP

as a Limited Partner when its transferor, the Revocable Trust, did not possess these rights.  As the

holder of only economic interests, and those interests only, the Revocable Trust could not have

transferred anything greater than those economic interests and had no ability to transfer the rights

related to Limited Partner status that had been retained by Keith Wellin.

### 3.    The revisions to Annex A of the Partnership Agreement do not suffice to admit the 2009 Trust as substitute limited partner, as the Wellin Children contend.

The LLC and the Wellin Children assert that Annex A to the Partnership Agreement, as

amended, was sufficient to admit a Substituted Limited Partner to the LP.  This argument appears

to be based on the first portion the Partnership Agreement's definition of "Limited Partner", which

references Annex A.  *See* Ex. 3, Partnership Agreement § 2, at 3–4.  While the Wellin Children

and the LLC have not yet submitted a memorandum of law fully articulating this position, there

are several fundamental problems with this position which are addressed below.

### i.    Under the plain terms of the Partnership Agreement, Annex A is not sufficient to admit a Substituted Limited Partner.

First, Annex A on its face does not manifest any consent on the part of the General Partner,

the LLC.  *See* Ex. 4.  There are no documents identified through discovery which reflect an

adoption of, a discussion of, or even an acknowledgement of the existence of the 2007 or 2009

revisions to Annex A by the LLC or its Manager, Cynthia Plum.

Second, Annex A fails to evidence any written consent on the part of the General Partner,

the LLC.  *See* Ex. 4.  The 2007 and 2009 revisions are not signed or otherwise acknowledged by

the LLC or its Manager, Cynthia Plum. There are no documents which reflect the LLC, through its Manager, providing instruction to Farace or any of his colleagues regarding the revisions to Annex A. Neither the LLC nor its Manager, Cynthia Plum, could testify as to who amended Annex A or whether such an amendment was done with the knowledge or authority of the General Partner.

Third, even if the Court were to conclude that Annex A somehow evidences the General Partner's written consent to admit a Substituted Limited Partner, the 2007 and 2009 revisions to Annex A fail to evidence "prior written consent", as expressly required by Section 9.2(d) of the Partnership Agreement. *See* Ex. 4. The LLC and the Wellin Children have identified no evidence demonstrating that the Annex A revisions in 2007 or 2009 occurred prior to the respective 2007 and 2009 Transfers. While there appears to be little, if any evidence indicating the actual date upon which Annex A was revised in 2007, Tom Farace's billing records reflect that the Annex A document was actually revised in 2009, nearly one month after the 2009 Transfer. *See* Ex. 14 Nixon Peabody Invoice, Mar. 19, 2010. This is not "prior" to the 2009 Transfer at all.

Fourth, if an amendment to Annex A of the Partnership Agreement, particularly a retroactive amendment, were sufficient to admit a Substituted Limited Partner to the LP, this conclusion would eviscerate the requirements of Section 9.2(d) entirely and run afoul of the conclusions rendered in *Monterey Investments* and *In re American Tax Credit Properties Limited Partnerships*. The Court should not, and Delaware courts would not, settle on an interpretation of a limited partnership agreement which rewrites the contract between the parties. *See Allen*, 72 A.3d at 104 (noting "we construe limited partnership agreements as a whole and give effect to every provision if it is reasonably possible to do so.")

To agree with the Wellin Children and the LLC that an amendment to Annex A suffices, the Court must disregard entirely the word "prior" from Section 9.2(d). This is improper under

Delaware law, as the policy of Delaware Courts in interpreting and construing limited partnership agreements is to give effect to all terms within the agreement. *See Allen*, 72 A.3d at 104. "Prior written consent" requires that written consent of the General Partner be issued prior to the contemplated transfer. Otherwise, the word "prior" would be given no meaning. The Estate's expert, Hamermesh, discussed this very point during his deposition:

> Q.    . . . [W]ould you agree that if there was a written consent by the general partner to admit the rev trust as a limited partner and that written consent was -- it was provided, you know, two days after the transfer of an assignee interest, would that have resulted in the admission of the rev trust as a limited partner?
>
> A.    If I understand your hypothetical correctly, no.
>
> Q.    Okay. And why not?
>
> A.    Because it leaves the word "prior" out of the partnership agreement.
>
> Q.    And so how do you interpret "prior written consent"?
>
> A.    Consent granted in writing before the operative time of the transfer.

Ex. 15, Hamermesh Dep. Tr. 84:4-19.

The LLC and the Wellin Children's expert, Steele, in discussing Annex A, gives effect to the words "written consent" but ignores the word "prior." If the word "prior" is given effect, it does not matter that "written consent" was given if such consent was given after the transfer. Such a construction would render the word "prior" surplusage, which is contrary to the contractual principles that govern partnership agreements.

Fifth and finally, even if the Court were to conclude that accepting an amendment to Annex A somehow constituted "prior written consent", as expressly required by Section 9.2(d) of the Partnership Agreement, the Annex A amendment is insufficient to evidence the intent of the General Partner to include the Revocable Trust (in 2007) or the 2009 Trust (in 2009) as Substitute

Limited Partners because of the definition of Substitute Limited Partner provided in the Partnership Agreement.

Because the definition of "Limited Partner" as provided in the Partnership Agreement includes "each Person named as a limited partner on Annex A hereto and each Person admitted as a Substituted Limited Partner or an Additional Limited Partner pursuant to the terms of this Agreement, and, *with respect to those provisions of this Agreement concerning a Limited Partner's rights to receive a share of profits or other distributions or the return of a Limited Partner's contribution, any Transferee of a Limited Partner's Interest in the Partnership* (except that a Transferee who is not admitted as a Limited Partner shall have only those rights specified in the Act and which are consistent with the terms of this Agreement)." Ex. 3, Partnership Agreement § 2, at 3–4 (emphasis added). Because a Transferee is considered a "Limited Partner" for the limited purposes of rights related to the allocation of profits and distributions and return of capital, and those are the only rights addressed on Annex A, inclusion of the Revocable Trust or the 2009 Trust on Annex A doesn't evidence an intent that those parties be treated as Limited Partners for other purposes under the Partnership Agreement.

### ii.    *Gotham Partners* does not apply and does not support the Wellin Children and the LLC's Annex A argument.

The LLC and the Wellin Children will likely rely on the 2000 case of *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.* to support their argument that Annex A admitted a Substituted Limited Partner to the LP in both 2007 and 2009. *See* Ex. 23, CA No. 15754, 2000 Del. Ch. LEXIS 152 (Oct. 20, 2000). In *Gotham Partners*, the Delaware Court of Chancery considered whether the inclusion of an assignee's name on a "unitholder list" during handling of an application to transfer limited partnership units was sufficient to admit the proposed transferee as a limited partner under Hallwood Realty's partnership agreement. *Id.* Unlike the Partnership

Agreement in this case, the partnership agreement involved in *Gotham* defined "limited partner" as "[a]ny person shown as a limited partner of the Partnership on the books and records of the Partnership" and also set up a nearly automatic practice by which entities could be admitted as a limited partner. *See id.* at *12, *16. The Court of Chancery, noting the nearly automatic process by which the partnership handled applications for unit transfers and listed transferees on the "unitholder list", and also noting that the "unitholder list" was the only list of limited partners maintained by the partnership, concluded that the inclusion of the Plaintiff on the "unitholder list" was sufficient to admit it as a limited partner to the partnership. *Id.* at *32–38.

*Gotham* is distinguishable from the instant case. As an initial point, the language of the partnership agreement at issue in *Gotham Partners* is distinctly different than the language of the Partnership Agreement in the present case. The agreements define the term "limited partner" differently. The agreements articulate different processes by which limited partners may be admitted to the partnership. In practice, the partnership in *Gotham* contemplated and appears to have experienced high volumes of partnership unit transfers on a monthly basis – indeed, the partnership agreement established a "Transfer Agent" for the purpose of overseeing these transfers and providing a monthly report to the General Partner summarizing the same. *Id.* at *15. Conversely, the LP's Partnership Agreement specifically references "each Person admitted as a 'Substituted Limited Partner'" within its definition of "Limited Partner" and specifies that a "Substitute Limited Partner" may only be admitted as such if the General Partner provides prior written consent to the admission. Ex. 3, Partnership Agreement § 9.2(d), at *14. The Wellin Children's own expert, Mr. Steele, acknowledged that the partnership agreement in *Gotham Partners* contained a statement providing that the partnership's books and records controlled

limited partner status, while the LP agreement at issue in this case contains no such provision.  Ex. 16, Steele Dep. Tr. 53:6-13, Dec. 12, 2018.

Rather than rely on *Gotham Partners*' holding, which would be misplaced, the Court should follow the opinion articulated by the Chancery Court in *Monterey Investments*.  *See* Ex. 24, 1997 Del. Ch. LEXIS 98.  The *Monterey Investments* opinion addresses a partnership agreement containing much more similar language to that of the Partnership Agreement here, and also addresses transfer documents bearing marked similarity to the 2007 and 2009 Transfer documents.  The *Monterey Investments* partnership agreement required a number of representations by the transferor and transferee, as well as the "written consent" of the general partner to the transfer.  *Id* at *6–7.  The transfer documents at issue did not contain at least one of the required representations.  *Id*. at *10–11.  Further, the transfer documents at issue did not contain "written consent" from the general partner sufficient to satisfy the partnership agreement.  *Id.* at *12–13.  The court noted that the documents which Monterey proffered as "written consent" did not contain any representation as to partnership status, but rather only provided confirmation that the general partner was aware of the transfer.  *Id.* at *12–14.  So too in this case, even if Annex A were considered as a writing of the General Partner, it lacks any language evidencing the General Partner's intent or understanding of the transferees' status.

## CONCLUSION

The facts surrounding the 2007 Transfer and the 2009 Transfer are undisputed and, under Delaware law, Keith Wellin remained a Limited Partner of Friendship Partners, LP after both transfers.  Further, the 2009 Trust was never admitted as a Limited Partner to the LP in 2009.  The Court should therefore award partial summary judgment on these issues pursuant to Rule 56 of the

Federal Rules of Civil Procedure, as partial summary judgment on the Estate's Fourth, Eighth, Ninth, Tenth and Eleventh Causes of Action (2nd Am. Compl., April 30, 2015, ECF 301).

Respectfully submitted,

HOOD LAW FIRM, LLC
172 Meeting Street/Post Office Box 1508
Charleston, SC  29402
Phone: (843) 577-4435/Facsimile: (843) 722-1630
Email: Info@hoodlaw.com


**s/ James B. Hood**
Robert H. Hood (1939)
Molly H. Craig (6671)
James B. Hood (9130)
Virginia Rogers Floyd (12212)

*Attorneys for Wendy C. H. Wellin, as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001*

**April 16, 2019**
Charleston, South Carolina