IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Wendy C.H. Wellin, as the Special Administrator of the Estate of Keith S. Wellin, and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001, | ) ) ) ) ) | Civil Action No.  2:13-cv-01831-DCN |
| | ) | **THE WELLIN CHILDREN'S RESPONSE** |
| | ) | **IN OPPOSITION TO THE ESTATE'S** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| Plaintiff, | ) | **JUDGMENT AS TO TAX STATUS OF** |
| vs. | ) | **THE WELLIN FAMILY 2009** |
| | ) | **IRREVOCABLE TRUST** |
| Peter J. Wellin, et al., | ) | |
| Defendants. | ) | |
| | ) | |

Peter J. Wellin, Cynthia W. Plum, Marjorie W. King, and Friendship Management, LLC (the "Wellin Children") hereby submit this response in opposition to the Motion for Partial Summary Judgment as to the Tax Status of the Wellin Family 2009 Irrevocable Trust (ECF No. 883) filed by Wendy Wellin as Special Administrator of the Estate and Trustee of the Revocable Trust (the "Estate").  For the reasons that follow, the Estate's motion should be denied.

**I.    The Estate's motion does not ask the Court to grant summary judgment on a claim or defense, or part of a claim or defense—rather, it seeks a ruling on the "tax status" of the Trust—and the motion is therefore not permissible under Rule 56.**

As a threshold matter, the Estate's motion is not permissible under Rule 56. Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Here, the Estate does not ask the Court to grant summary judgment on any claim or defense, or on any part of a claim or defense, in the above-captioned action. Rather, the Estate is apparently seeking a ruling from this Court that may somehow assist the Estate in a future dispute with the IRS regarding the Estate's tax liability.[1] Indeed, the Estate's motion is even captioned as a motion for

---

[1] Upon information and belief, the statute of limitations for the IRS to seek a deficiency from the

partial summary judgment "as to the tax status of the Wellin Family 2009 Irrevocable Trust." ECF No. 883. The Estate's motion relates to a dispute or potential dispute with the IRS—not the case before the Court. Thus, the Court need not, and should not, reach the merits of the Estate's motion; rather, the Court should deny the Estate's motion because it is not permissible under Rule 56.

Notably, when the Estate articulates the relief it is seeking through its motion, the Estate makes no mention of any cause of action:

> Specifically, the Estate requests that the Court enter partial summary judgment finding that (1) no power or circumstances other than the two express grantor trust powers contained in the 2009 Trust (the power to substitute and the power to add spouse beneficiaries) resulted in grantor trust status in November 2013 and (2) upon the removal of the two express grantor trust powers from the 2009 Trust on November 20, 2013, the 2009 Trust ceased to be a grantor trust for income tax purposes.

ECF No. 883 at 1. Later, the Estate cryptically asserts, with no explanation: "The 2009 Trust's status as a grantor trust is an issue fundamental to the resolution of the Estate's Fifth, Eighth, Ninth and Tenth Causes of Action." *Id.* at 2. But a review of the four causes of action identified by the Estate reveals that none of them requires the Estate to prove "that (1) no power or circumstances other than the two express grantor trust powers contained in the 2009 Trust (the power to substitute and the power to add spouse beneficiaries) resulted in grantor trust status in November 2013" or that "(2) upon the removal of the two express grantor trust powers from the 2009 Trust on November 20, 2013, the 2009 Trust ceased to be a grantor trust for income tax purposes." That is, none of the causes of action identified by the Estate (or any of the other

---

Estate in connection with any taxes the Estate failed to pay based on taxable gains experienced by the Trust prior to grantor status being turned off expired years ago. Thus, it is not clear how the Estate obtaining summary judgment on this issue will assist the Estate in any future dispute with the IRS. In any event, Keith having turned off grantor status is not even arguably an element of any of the Estate's claims in this action.

causes of action asserted by the Estate in its Amended Complaint) requires the Estate to prove, even as one element of the Estate's claim, either of the two "issues" on which the Estate seeks summary judgment. Again, the Estate is apparently seeking a ruling that could assist it in *separate* litigation with a separate party—namely, the IRS.

First, the Estate's Fifth Cause of Action is for breach of contract and alleges that the Wellin Children breached the Wellin Family 2009 Irrevocable Trust (the "Trust") by failing to comply with the swap transaction Keith purported to execute on November 20, 2013. ECF No. 301 at ¶¶ 119-24. But Keith did not purport to turn off grantor status until *after* the purported swap. Indeed, Keith purported to turn off grantor status by releasing his power to substitute assets. In any event, Keith having turned off grantor status after he purportedly executed the swap is not even arguably an element of Keith's breach of contract claim. Next, the Estate's Eighth, Ninth, and Tenth Causes of Action are for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and civil conspiracy, respectively. *See* ECF No. 301 at ¶¶ 136-56. Again, Keith having turned off grantor status is not even arguably an element of any of these claims.

Because Rule 56 only permits parties to seek—and only requires courts to decide— summary judgment as to claims or defenses, or parts of claims or defenses, the Court should deny the Estate's motion without reaching its merits.

## II. Genuine issues of material fact with respect to whether Keith had capacity and/or was subject to Wendy's undue influence on November 20, 2013, preclude summary judgment.

Even if the Court reaches the merits of the Estate's motion, the motion should be denied without reaching any of the complex legal arguments made in the Estate's motion because the

(obvious and extensive) genuine issues of material fact with respect to Keith's capacity and Wendy's undue influence preclude summary judgment.

In its motion, the Estate asks the Court to find as a matter of law that the two purported actions taken by Keith and Schwartz on November 20, 2013, in an attempt to turn off grantor trust status were valid as a matter of law. *See* ECF No. 883 at 13-15. Specifically, the Estate argues that the following two actions that occurred on November 20, 2013, were valid and effective and were sufficient to turn off grantor status: (1) Schwartz, whom Keith purportedly appointed as trust protector on November 20, 2013, purported to make an amendment to the Trust on the day he was appointed that deleted the provision of the Trust granting the corporate trustee the power to add spouses as beneficiaries; and (2) Keith purported to release his power to substitute assets pursuant to Article IX(C) of the Trust. *See* Estate's Motion, ECF No. 883 at 7-9; 13-15. According to the Estate, there is no genuine issue of material fact as to whether both of these actions were valid and effective.

But the Wellin Children allege that both of the two above-referenced actions were invalid and ineffective because Keith lacked the requisite mental capacity to appoint Schwartz as trust protector  and to release his power to substitute assets. The Wellin Children also contend these actions were the product of Wendy's undue influence over Keith. Thus, the Court would only reach the issue of the validity of these actions with respect to turning off grantor trust status on November 20, 2013, if no genuine issues of material fact exist with respect to whether Keith lacked capacity or was subject to Wendy's undue influence on November 20, 2013.

Of course, whether Keith lacked capacity and/or was subject to Wendy's undue influence from the summer of 2013 through his death is the highly fact-intensive, hotly disputed issue at the heart of this litigation. Rather than repeating their arguments regarding the (obvious and

extensive) genuine issues of material fact that exist with respect to Keith's capacity and Wendy's undue influence, the Wellin Children incorporate herein by reference the relevant facts and arguments set forth in their other memoranda being filed contemporaneously herewith, including the Wellin Children's response to McDevitt's motion for summary judgment as to the Wellin Children's counterclaims; the Wellin Children's responses to the Estate's, Wendy Wellin's, and Hamilton College's motions for summary judgment with respect to undue influence; and the Factual Appendix supporting these memoranda. The notion that Keith's capacity and Wendy's undue influence can be decided at the summary judgment stage is, frankly, preposterous. For this additional reason, the Court should deny the Estate's motion for summary judgment.

**III.    Keith's appointment of Schwartz as trust protector and Schwartz's purported amendment to the Trust were invalid—or, at a minimum, genuine issues of material fact exist as to their validity—for the additional reasons set forth in the Wellin Children's memorandum in opposition to McDevitt's motion for summary judgment regarding the Wellin Children's counterclaims.**

In their memorandum in opposition to McDevitt's motion for summary judgment regarding the Wellin Children's counterclaims, which the Wellin Children are filing contemporaneously herewith, the Wellin Children explain why—even if Keith had not lacked capacity and Wendy had not exerted undue influence over him—genuine issues of material fact exist with respect to whether Keith's purported appointment of Schwartz as a trust protector was valid under the terms of the Trust. The Wellin Children also explain why Schwartz's purported amendment to the Trust deleting the provision granting the corporate trustee the power to add spouses as beneficiaries was invalid under the terms of the Trust. The Wellin Children incorporate these arguments herein by reference. For these additional reasons, the Court should deny the Estate's motion for summary judgment.

IV.   **The Estate's request that the Court decide whether any power other than the two powers of Article IX(C) caused the Trust to be a grantor trust is an improper request for an advisory opinion.**

In its motion, the Estate argues that the two purported actions taken by Keith and Schwartz on November 20, 2013 (Schwartz's amendment deleting Article IX(B) and Keith's release of his power to substitute assets) in an attempt to turn off grantor trust status were valid as a matter of law. *See* ECF No. 883 at 13-15. Apparently recognizing that the Court is likely to find that factual issues preclude summary judgment on this argument, the Estate states:

> Even if the Court determines that there is an issue of fact with respect to the actions taken by Mr. Wellin and Mr. Schwartz on November 20, 2013 to remove or release the two express grantor trust powers, the application of the grantor trust rules to the powers held by the Wellin Children involve no issue of material fact and may be resolved as a matter of law. Accordingly, summary judgment as to whether any provisions of the 2009 Trust, other than the two express powers addressed above in Section I.A, caused grantor trust status on November 20, 2013 remains proper.

ECF No. 883 at 15. That is, the Estate asks the Court to hold that, *under the hypothetical scenario* where the actions taken by Schwartz and Keith are determined to be valid, grantor trust status was turned off on November 20, 2013. The Estate then proceeds to make a lengthy argument as to why the Estate contends the Trust was a grantor trust based only on the two powers set forth in Article IX. *See generally* ECF No. 883 at 16-34.

As an initial matter, the Court should not reach the merits of this argument because, as explained above, this "issue" is not a claim or defense, or part of a claim or defense, and the Estate's request is therefore not permissible under Rule 56. But even if the Court were to decide that the Estate's motion is permissible under Rule 56—and if the Court then finds that factual issues prevent summary judgment with respect to the validity of the actions taken on November 20, 2013 (and they unquestionably do)— the Court should not issue what would be an advisory opinion with respect to whether the Trust contains other powers, besides those set forth in Article

IX, that cause it to be a grantor trust. The Estate is apparently asking the Court to wade into this highly esoteric issue in hopes that the Court's opinion will somehow prove useful in future litigation with the IRS.

The United States Supreme Court has made clear that district courts should not issue "an opinion advising what the law would be upon a hypothetical state of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (internal citations omitted). Such opinions are advisory and beyond the scope of the Court's power under Article III of the Constitution, which only authorizes district courts to decide actual cases or controversies. As explained by one district court:

> When parties are seeking an advisory opinion, no justiciable case or controversy exists. Under Article III, courts are required to "avoid issuing advisory opinions based upon hypothetical situations." That is, a court's judgment "must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts."

> Determining whether an opinion would be advisory is interrelated with the question of whether there exists a case or controversy: "The requirements of standing, ripeness, and mootness guard against the issuing of advisory opinions."

*Associated Gen. Contractors of Am., Cent. Ohio Div. v. City of Columbus*, 147 F. Supp. 2d 864, 871 (S.D. Ohio 2001) (internal citations omitted); *see also Nat'l Mfg. Co. v. Citizens Ins. Co. of Am.*, No. CIV.A. 13-0314 SRC, 2015 WL 1735423, at \*3 (D.N.J. Apr. 15, 2015) ("Here, the instant motion improperly seeks an advisory opinion from this Court. Plaintiff has in essence moved for a judgment setting forth what the parties' rights *would be* if Plaintiff and Janed indeed executed their provisional settlement.") (emphasis added); *Asher Assocs., L.L.C. v. Baker Hughes Oilfield Operations, Inc.*, No. CIV.A. 07-CV-01379WY, 2009 WL 1468709, at \*2 (D. Colo. May 20, 2009) ("Here, Defendant is essentially asking that I make an advisory opinion prohibiting the Plaintiffs from seeking certain damages on their contract claims at trial. This is a

hypothetical scenario. Should the Defendant prevail at trial on the issue of liability, it would be unnecessary for me to address the issue of damages."); *Orr v. Clyburn*, 277 S.C. 536, 542, 290 S.E.2d 804, 807 (1982) (holding that the plaintiff was improperly seeking "an advisory opinion to be put on ice by the plaintiff for use if the defendants or the applicant reach the occasion which might demand it," and holding that the plaintiff may not "fish in this judicial pond for legal advice").

Here, the Estate is asking the Court to decide whether the Trust remained a grantor trust during the period of November 20, 2013, through September 14, 2014, *under the hypothetical scenario* where there is a determination that the actions purportedly taken by Keith and Schwartz on November 20, 2013, were valid. The Court should refuse to issue an advisory opinion on this hypothetical scenario, particularly where this issue is not a claim or defense or part of a claim or defense.[2]

### V. If the Court does reach the question of whether the Trust would remain a grantor trust under the scenario where Schwartz's and Keith's actions on November 20, 2013 were valid, the Court should find that the Trust remained a grantor trust until Keith's death on September 14, 2014.

Even assuming *arguendo* that Schwartz validly amended the Trust on November 20, 2013, to delete the power of the corporate trustee to add spouses as beneficiaries, and also assuming that Keith validly released his power of asset substitution on the same date, the Trust nevertheless remained a grantor trust after November 20, 2013, based on its other terms.[3] All or a certain portion of a trust will be treated as a grantor trust if the grantor or certain persons hold

---

[2] The Estate's request that the Court issue an opinion regarding the grantor status of the Trust under a hypothetical scenario is doubly improper. It seeks an opinion on a hypothetical scenario, *and* it does not seek to resolve a claim or defense or part of a claim or defense.

[3] For purposes of this analysis only, we are assuming that the actions taken by Schwartz with respect to removing the ability to add beneficiaries and Keith with respect to releasing his power to substitute assets were valid as of November 20, 2013. For the reasons explained above, these purported actions were not, in fact, valid.

certain powers or rights as described in I.R.C. §§ 673-677 with respect to all or any portion of the trust. I.R.C. § 671. The statute that is relevant in this case is I.R.C. § 674.

I.R.C. § 674(a) provides that "[t]he grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party."

I.R.C. § 674(b)-(d) contains exceptions to the general rule contained in I.R.C. § 674(a). I.R.C. § 674(b) contains several exceptions; however, the exception that is at issue in this case is contained in I.R.C. § 674(b)(5). I.R.C. § 674(b)(5)(A) provides that I.R.C. § 674(a) shall not apply to "[a] power to distribute corpus . . . to or for a beneficiary or beneficiaries or to or for a class of beneficiaries . . . provided that the power is limited by a reasonably definite standard which is set forth in the trust instrument." I.R.C. § 674(c) provides that I.R.C. § 674(a) "shall not apply to [certain powers] solely exercisable (without the approval or consent of any other person) by a trustee or trustees, none of whom is the grantor, and no more than half of whom are related or subordinate parties who are subservient to the wishes of the grantor."

I.R.C. § 674(d) provides that I.R.C. § 674(a) "shall not apply to a power solely exercisable (without the approval or consent of any other person) by a trustee or trustees, none of which is the grantor or spouse living with the grantor, to distribute, apportion, or accumulate income to or for a beneficiary or beneficiaries, . . . if such power is limited by a reasonably definite external standard which is set forth in the trust instrument."

### A.  Application of the General Rule Under I.R.C. § 674(a)

Paragraph A of Article VII of the Trust provides that the provisions of Article VII supersede or modify the general powers of the Trustee as set forth in other Articles of the Trust

9

Agreement during any period in which a Distribution Committee is acting.[4] Pursuant to Paragraph B of Article VII of the Trust, the Wellin Children were named as the members of the Distribution Committee and have served in that capacity since the effective date of the Trust. Paragraph B.1 of Article VII of the Trust provides that the Distribution Committee shall direct the Trustee with regard to all discretionary distributions of trust property to the beneficiaries of the Trust. Thus, as long as a Distribution Committee is acting, it is the Distribution Committee that has authority to exercise discretion over distributions from the Trust and not any Trustee. Accordingly, the Wellin Children, in their capacity as members of the Distribution Committee, have a power of disposition over beneficial enjoyment of the Trust's assets and income as described in I.R.C. § 674(a).

### 1.  I.R.C. § 674(a) must be applied to the Separate Trusts.

In analyzing the application of I.R.C. § 674(a) to the Trust, the Court must perform the analysis independently to each of the separate shares created under the Trust. Paragraph B.1. of Article IV of the Trust provides that, at the time of the making of the first discretionary distribution from the Exempt Trust,[5] the Trustee is directed to divide the Exempt Trust into as many equal shares as shall be necessary to provide one such equal share as a separate trust with respect to each of the Wellin Children who is then living. Since the first discretionary distribution triggers the division into separate shares, it is not possible for the Distribution

---

[4] The Irrevocable Trust has been filed with the Court in this action on several instances, including at ECF No. 41-12.

[5] Paragraph A of Article IV of the Trust provides for dividing of the Trust into the Exempt Trust and the Non-Exempt Trust pursuant to a formula. It appears that all of the Trust's assets have funded the Exempt Trust leaving the Non-Exempt Trust unfunded. Accordingly, for purposes of this memorandum, the Wellin Children focus on the provisions of the Exempt Trust. However, since the distribution provisions of the Non-Exempt Trust are identical to the distribution provisions of the Exempt Trust, the same analysis and ultimate determination with respect to this issue should apply to both the Exempt Trust and the Non-Exempt Trust.

Committee to direct a distribution (i.e., exercise its power of disposition) without having separate shares. Thus, for purposes of this analysis, I.R.C. § 674(a) must be applied separately to each of the separate shares (a "Separate Trust") created for each of the Wellin Children under the Trust.

In its motion, the Estate suggests that, if the first distribution is made unequally, it is possible that such unequal distribution could negatively impact the Separate Trust of the beneficiary who did not receive his or her share of the distribution. That is not the case. Paragraph B.1 of Article IV of the Trust instructs "the Trustee *at the time of the making* of the first discretionary distribution . . . to divide the trust property into as many equal shares." (emphasis added). The division of the Trust into shares occurs simultaneously with the first distribution from the Trust. Accordingly, as stated above, when making the initial distribution from the Trust, the Court must view the Trust as consisting of three separate shares. For example, if there are $300 of assets in the Trust prior to the first distribution and Mari and Ceth elect to make a distribution of $1 to Peter which constitutes the first distribution from the Trust, then, simultaneously with that distribution, the Trust would be divided into three shares with Peter's share having assets of $99 (after reduction of the $1 distributed to Peter) and the shares of Mari and Ceth each having assets of $100. Accordingly, an unequal distribution would not have a negative impact on the separate shares of those who did not receive their share of such distribution.

### 2. Each of the Wellin Children is a nonadverse party with respect to his or her sibling's Separate Trust.

For such power of disposition to trigger the application of the general rule in I.R.C. § 674(a) with respect to a Separate Trust, the Wellin Children must be able to exercise such power without the approval or consent of any adverse party. Paragraph B of Article VII of the Trust provides that any member of the Distribution Committee who is also a beneficiary shall be

precluded from participating in decisions involving discretionary distributions to that member personally, except to the extent governed by and made pursuant to a standard under the Trust which constitutes an ascertainable standard within the meaning of §§ 2041 and 2514 of the I.R.C. If the distribution standard under the Trust does not constitute an ascertainable standard within the meaning of §§ 2041 and 2514, then the member is precluded from participating in decisions involving discretionary distributions to himself or herself, and such decisions must be made by a majority of the other members of the Distribution Committee.

The distribution standard provided in Paragraph B of Article IV of the Trust with respect to distributions of income and principal from the Trust does not constitute an ascertainable standard within the meaning of §§ 2041 and 2514. Accordingly, none of the Wellin Children may participate in decisions regarding distributions to himself or herself from such person's Separate Trust, and those decisions must be made by the other members of the Distribution Committee. Thus, discretionary distributions of income and principal may be made from a person's Separate Trust without the consent of such person. For example, with respect to Peter's Separate Trust, Mari and Ceth in their capacities as members of the Distribution Committee may direct a distribution from Peter's Separate Trust to Peter and/or his issue without obtaining the consent of Peter. Thus, the relevant issue is whether Mari and Ceth are adverse or non-adverse parties with respect to Peter's Separate Trust.

An adverse party is "any person having a substantial beneficial interest in the trust that would be adversely affected by the exercise or nonexercise of the power that he possesses respecting the trust." I.R.C. § 672(a). A nonadverse party is any person who is not an adverse party. I.R.C. § 672(b). A person is not an adverse party with respect to a trust merely because that person serves as a trustee of that trust. Treas. Reg. § 1.672(a)-1.

According to I.R.C. § 672(a), in determining if Mari and Ceth are adverse parties with respect to Peter's Separate Trust, it must be determined if (i) they have beneficial interests in Peter's Separate Trust, (ii) such beneficial interests are significant (i.e., not insubstantial) and (iii) such beneficial interests would be adversely affected by the exercise or nonexercise of the power that she possesses as a member of the Distribution Committee. All three of these elements must exist for Mari and Ceth to be considered an adverse party with respect to Peter's Separate Trust.

Each of Mari and Ceth have beneficial interests in Peter's Separate Trust.  Pursuant to Paragraph B.1.c of Article IV of the Trust, if at any point in time Peter and all his issue are deceased, then the assets of Peter's Separate Trust are to be distributed to the Separate Trusts created for Mari and Ceth if such Separate Trusts continue to be in existence at such time. Thus, Mari and Ceth have contingent remainder interests in Peter's Separate Trust.  Next, the Court must determine if such contingent remainder beneficial interests are substantial.

A beneficial interest is a substantial interest if its value in relation to the total value of the property subject to the power is not insignificant.  *Id*. For either Mari or Ceth to ever be able to receive any distribution or benefit from Peter's Separate Trust, she would have to outlive Peter and all his issue. In other words, not only must their respective Separate Trusts continue to be in existence at such time, but Mari and Ceth must continue to be beneficiaries of their respective Separate Trusts at such time. When a beneficial interest is contingent on the death of another individual, courts have looked at the relative ages of the current and future beneficiaries to determine the likelihood that the contingent interest would vest in determining if the contingent interest is insignificant. *See*, *e.g.*, *Chase Nat'l Bank v. Comm'r*, 225 F.2d 621 (8th Cir. 1955); *Comm'r v. Katz*, 139 F.2d 107 (7th Cir. 1943); *Comm'r v. Caspersen*, 119 F2d 94 (3rd Cir.

13

1941); *Loeb v. Comm'r*, 113 F2d 664 (2nd Cir. 1940); *Fulham v. Comm'r*, 110 F2d 916 (1st Cir. 1940); *Holt v. United States*, 669 F.Supp 751 (W.D.V.A. 1987); *Joseloff v. Comm'r*, 8 T.C. 213 (1947); *Savage v. Comm'r*, 4 T.C. 286 (1944); *Crossett v. United States*, 30 F Supp 802, 24 AFTR 322 (Ct. Cl. 1940). For example, in *Joseloff*, a contingent remainder interest would only vest if the holder of such interest survived both of her daughters and their issue. The holder of the contingent interest was 44 years old and her daughters were 13 and 11. The court determined that the contingent remainder was too remote to have any substantial value.

Mari and Ceth are approximately 62 and 67 years old, respectively. Peter is approximately 63 years old, and his current living issue, his three children, are approximately 32, 30 and 27 years old. Consistent with *Joseloff*, and the other cases cited above, the actuarially likelihood that Mari and Ceth will outlive Peter and all his issue is too remote for Mari's and Ceth's contingent remainder interest in Peter's Separate Trust to be substantial. Stated another way, Mari's and Ceth's contingent remainder interests in Peter's Separate Trust are insignificant. For Mari and Ceth to be able to receive any benefit from Peter's Separate Trust, not only would Peter and all his children need to die before Mari and Ceth; in addition, either Peter's children must also have no children prior to dying, or their children must also predecease Mari and Ceth. As stated by the Tax Court in *Savage* when determining if the contingent remainder interest involved in that case was substantial: "The interest of the spouse is that of a contingent remainderman, and it will vest, if at all, only upon the termination of the trust under almost impossible circumstances. . . . To hold that such a remote possibility of receiving benefit constitutes a 'substantial adverse interest' would do violence to the meaning of the word 'substantial' and to the intent of Congress . . . ." 4 T.C. at 292.

14

Because Mari's and Ceth's beneficial interests in Peter's Separate Trust are not substantial, the Court does not need to consider the third prong of the test for qualification as an adverse party (i.e., whether such beneficial interests would be adversely affected by the exercise or nonexercise of the power that she possesses as a member of the Distribution Committee).

Because Mari and Ceth are nonadverse parties with respect to Peter's Separate Trust, and because they have the ability in their capacity as members of the Distribution Committee to cause distributions from Peter's Separate Trust without having to obtain the consent of any adverse party, the general rule of I.R.C. § 674(a) is applicable to Peter's Separate Trust.[6]

In its motion, the Estate suggests if the Trust would permit the first distribution to be made unequally among the beneficiaries of the Trust, then such a distribution could reduce the amount available for distribution to the other beneficiaries, and as a result, the Wellin Children would be deemed to be adverse to one another (at least prior to the initial distribution). As explained above, however, an initial unequal distribution would not negatively impact the beneficiaries who did not receive their share of the distribution. Thus, the possibility of an initial unequal distribution would not cause the Wellin Children to be adverse to one another.

Because the general rule of I.R.C. § 674(a) applies in this case, the Court must next determine if any of the exceptions in I.R.C. § 674(b)-(d) are applicable.

---

[6] We have analyzed this issue with respect to Peter's Separate Trust, but the same analysis applies equally to the Separate Trusts for Mari and Ceth. Mari has living children of the ages of approximately 32, 30 and 27. Ceth has living children of the ages of approximately 34 and 31. Based on the ages of these individuals relative to their aunt(s) and uncle, we reach the same conclusion with respect to the Separate Trusts for Mari and Ceth: nonadverse parties have the ability to cause distributions from Mari's Separate Trust and Ceth's Separate Trust without the consent of any adverse party, and therefore, the general rule of Section 674(a) is also applicable to Mari's and Ceth's Separate Trusts.

### B.  The Exceptions Under I.R.C. § 674(b) and (d) Do Not Apply in this Case.

In its motion, the Estate contends that the exceptions under I.R.C. § 674(b)(5)(A) and (d) apply in this case, preventing the general rule under I.R.C. § 674(a) from causing the Trust to continue to be a grantor trust after November 20, 2013.

For the exceptions under I.R.C. § 674(b)(5)(A) and (d) to apply to the power of disposition held by the Wellin Children, such power must be limited by a reasonably definite standard. Section 1.674(b)-1(b)(5)(i) of the Treasury Regulations provides the following with respect to defining a reasonably definite standard and determining if a power is subject to a reasonably definite standard:

> "A clearly measurable standard under which the holder of a power is legally accountable is deemed a reasonably definite standard for this purpose.  For instance, a power to distribute corpus for the education, support, maintenance, or health of the beneficiary; for his reasonable support and comfort; or to enable him to maintain his accustomed standard of living; or to meet an emergency, would be limited by a reasonably definite standard. However, a power to distribute corpus for the pleasure, desire, or happiness of a beneficiary is not limited by a reasonably definite standard. The entire context of a provision of a trust instrument granting a power must be considered in determining whether the power is limited by a reasonably definite standard. For example, if a trust instrument provides that the determination of the trustee shall be conclusive with respect to the exercise or nonexercise of a power, the power is not limited by a reasonably definite standard."

Treas. Reg. § 1.674(b)-1(b)(5)(i). Section 1.674(d)-1 of the Treasury Regulations refers to Treas. Reg. § 1.674(a)-1(b)(5)(i) for purposes of determining what constitutes a reasonably definite standard for purposes of I.R.C. § 674(d).[7]

---

[7] In I.R.C. § 674(d), the test is whether the power is limited by a "reasonably definite external standard" and not a "reasonably definite standard" as provided in I.R.C. § 674(b)(5)(A). Section 1.674(d)-1 of the Treasury Regulations references the definition of "reasonably definite standard" contained in Treas. Reg. § 1.674(b)-1(b)(5), which suggests that the terms have the same meaning.

According to the Treasury Regulations, a power of disposition is limited by a reasonably definite standard when it is clearly measurable and legally enforceable. A power of disposition limited to education, support, maintenance, health, reasonable support and comfort, an accustomed standard of living, or an emergency is recognized as a clearly measurable standard. However, a power to make distributions for other reasons outside of those listed are, generally, not considered to be limited by a reasonably definite standard (i.e., they are not clearly measurable). The determination must be made in accordance with the applicable state law. *Morgan v. Comm'r*, 309 U.S. 78, 80 (1940). A limitation which fails to pass muster as a clearly measurable standard in any respect, fails as to the whole. For example, a power to distribute trust corpus for "comfortable support and maintenance and for any other reasonable requirement" was held not to be a measurable standard because of the existence of the words "any other reasonable requirement." *State Street Bank and Trust Company v. U.S.*, 313 F.2d 29 (5th Cir. 1963).

1. **The distribution standards contained in the Trust are not clearly measurable and, accordingly, do not constitute a reasonably definite standard.**

The distribution standards contained in Paragraph B.1 of Article IV of the Trust are not clearly measurable standards. In its motion, the Estate suggests that the existence of the word "needs" is sufficient to cause the Wellin Children's power of disposition to be limited by a reasonably definite standard. The Estate's argument is in error. In their memorandum in opposition to McDevitt's motion for summary judgment regarding McDevitt's affirmative claims, which the Wellin Children are filing contemporaneously herewith, the Wellin Children explain why the inclusion of the word "needs" is not sufficient to cause the Wellin Children's power of disposition to be limited by a reasonably definite standard. The Wellin Children incorporate those arguments herein by reference.

**2. The existence of the "conclusive and binding" language contained in the Trust with respect to the exercise of discretion to cause distributions prevents the distribution standard in the Trust from constituting a reasonably definite standard.**

Even assuming arguendo that the distribution standard of "health, support, maintenance or education (including a college education and professional or post-graduate study), or any other reasonable purpose" contained in the Trust is clearly measurable, the distribution standard does not constitute a reasonably definite standard because the Trust provides that the determination of the power holder with respect to the exercise or nonexercise of his or her power shall be conclusive and binding upon all parties interested in the trust.

Paragraph B.1.b. of Article IV of the Trust provides that "[t]he Trustee's decision as to whether any such principal shall be paid to the beneficiary or to his or her lineal descendants, and the amounts to be paid to each, shall be conclusive and binding upon all parties interested in the trust" (emphasis added). Pursuant to Treas. Reg. § 1.674(a)-1(b)(5)(i) the Trust's imposition of the conclusive and binding nature of principal distributions causes the power held by the Wellin Children as members of the Distribution Committee to not be limited by a reasonably definite standard for purposes of the exceptions under I.R.C. § 674(b)(5)(A) and (d).

The IRS has relied on the "conclusive language" in a trust agreement to find that a power over the distribution of trust principal was not limited by a reasonably definite standard. In PLR 9118017 (February 1, 1991), the trust in question appeared to limit the trustee's power over corpus distributions to a reasonably definite standard, allowing distributions for the beneficiaries' care, maintenance, support, and education. However, the trust agreement provided "that the trustee's determination with regard to the necessary for, and amount of, any payments to the beneficiaries is conclusive as to all persons." Citing this language, the IRS ruled that the

exception in I.R.C. § 674(b)(5)(A) did not apply, and thus the grantor was treated as the owner of the trust under I.R.C. § 674(a). [8]

In its motion, the Estate contends that the language contained in Paragraph B.1.b. of Article IV of the Trust which provides that decisions of the Trustee with respect to decisions are conclusive and binding upon all parties interested in the trust (the "conclusive and binding language") does not apply to the Wellin Children in their capacity as members of the Distribution Committee. The Estate's position is wrong for the reasons that follow.

Paragraph B.1 of Article VII of the Trust provides that the Distribution Committee shall direct the Trustee with regard to all discretionary distributions of trust property to the beneficiaries of the Trust. That same paragraph also provides that the Trustee is required to follow the written directions of the Distribution Committee with respect to distributions from the Trust. Thus, as long as the Distribution Committee is acting, the Trustee has no discretion to make distributions from the Trust but must follow the directions of the Distribution Committee. The consequence of this language is that the Distribution Committee effectively steps into the Trustee's shoes with respect to the function of making distributions from the Trust. The effect of the language that provides that the Distribution Committee may not direct the Trustee to make distributions from the Trust that would violate the provisions of the Trust Agreement is to cause the Distribution Committee to become subject to the same powers and restrictions that apply to the Trustee under the Trust with respect to distributions from the Trust. In other words, in

---

[8] S*ee also* PLR 9508007 (Nov. 18, 1994) (ruling that because the power of the trustee to distribute principal could be conclusively exercised by the trustee, the trustee's power over principal distributions was not limited by a reasonably definite standard and the exception to section 674(a) contained in section 675(b)(5)(A) was not applicable). Although private letter rulings are not binding precedent, courts have recognized that they may be cited to show the practice of the IRS. *See, e.g.*, *Dover Corp. v. Comm'r*, 122 T.C. 324 (2004).

analyzing the appropriateness of a direction from the Distribution Committee to the Trustee regarding a distribution from the Trust, one must perform such analysis by asking whether such distribution would be appropriate under the terms of the Trust Agreement if it were made by the Trustee in the Trustee's discretion. If the answer is "no," then such direction by the Distribution Committee will be inappropriate. If the answer is "yes," then such direction by the Distribution Committee would be appropriate. The effect of this language is to avoid creating one distribution standard for the Trustee and a different distribution standard for the Distribution Committee.

In determining what distribution decisions by a Trustee would be appropriate under the Trust Agreement, the Court must review paragraphs B.1.a. (distributions of income) and B.1.b. (distributions of principal) of the Trust. The provisions addressing distributions of income and distributions of principal both provide that the Trustee shall make distributions to the beneficiaries for their health, support, maintenance or education (including, a college education and professional or post-graduate study), or any other reasonable purpose. Furthermore, each provision provides that the Trustee's decision regarding distributions shall be conclusive and binding upon all parties interested in the trust. The Estate contends that, in analyzing the appropriateness of a direction from the Distribution Committee to the Trustee to make a distribution from the Trust, one must ignore the impact of the "conclusive and binding" language because it only applies to the Trustee and not the Distribution Committee. However, the Estate appears to be willing to apply the language limiting distributions to health, support, maintenance or education or any other reasonable purpose to the Distribution Committee even though that language also only references the Trustee. It is not clear why the language limiting distributions to health, support, etc. would be applicable but not the conclusive and binding language, because according to the parenthetical language, all provisions of the Trust Agreement must be

considered in determining the validity of a distribution, not just certain provisions of the Trust Agreement.

In furtherance of its position that the conclusive and binding language does not apply to the distribution directions by the Distribution Committee, the Estate contends that the directions of the Distribution Committee are subject to court review. In support of its position that the directions of the Distribution Committee are subject to court review, the Estate points out that the Distribution Committee is held to a fiduciary standard of conduct and is also subject to the jurisdiction of any courts in which jurisdiction and venue are proper to review the administration of the trust. It is true that, pursuant to the terms of the Trust Agreement, the rights and powers of the Distribution Committee shall be exercisable in a fiduciary capacity and also that each member of the Distribution Committee shall be deemed to have consented to submit to the jurisdiction of any courts in which jurisdiction and venue are proper to review the administration of the trust.

However, neither of these facts leads to the conclusion that the conclusive and binding language does not apply to distributions directions by the Distribution Committee. All Trustees are fiduciaries. If acting in a fiduciary capacity was sufficient to avoid the application of the conclusive and binding language contained in the Trust Agreement, then such language would never apply to a trustee, and the government could not reach the result described in Treas. Reg. § 1.674(b)-1(b)(5)(i). In addition, the fact that Distribution Committee is subject to the jurisdiction of the courts that have jurisdiction over the review of the administration of the trust does not prohibit the application of the conclusive and binding language to distribution directions by the Distribution Committee. The fact that the Distribution Committee is subject to court review is not inconsistent with the application of the conclusive and binding language to distribution

directions by the Distribution Committee. The conclusive and binding language applies specifically to distributions made to a beneficiary from the Trust pursuant to the distribution standard provided in the Trust Agreement. For such language to be effective it does not require that the power holder not be subject to court review with regard to any matter. There are numerous other matters where a court may have to review actions by the Distribution Committee. For example, if the Distribution Committee directed a distribution to an impermissible distributee or committed fraud such matters would clearly be subject to court review.

### 3. It is not necessary that the distribution standard in the Trust be determined to be an ascertainable standard to avoid inclusion of the Trust's assets in the gross estates of the Wellin Children.

The value of a decedent's gross estate includes the value of all property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942. I.R.C. § 2041(a)(2). A general power of appointment means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. I.R.C. § 2041(b)(1). Provided, however, that a power to consume, invade or appropriate property for the benefit of the decedent is limited by an ascertainable standard relating to health, education, support, or maintenance (an "ascertainable standard") of the decedent, it shall not be deemed a general power of appointment. I.R.C. § 2041(b)(1)(A). Accordingly, if a person is both a trustee and beneficiary of a trust and in his capacity as trustee (or any other capacity) has the power to cause distributions from the trust to himself and such power is not limited by a standard that constitutes an ascertainable standard under I.R.C. § 2041(b)(1)(A), such person may have a general power of appointment under I.R.C. § 2041.

Each of the Wellin Children is eligible to receive distributions from his or her Separate Trust and in his or her capacity as a member of the Distribution Committee has the power to direct distributions from his or her Separate Trust. In its motion, the Estate contends that the Trust Agreement should be construed in a manner to avoid the power of disposition held by the Wellin Children being a general power of appointment under I.R.C. § 2041, in order to avoid the assets of each Wellin Child's Separate Trust being includible in such Wellin Child's gross estate for federal estate tax purposes upon the death of such Wellin Child.

In order to avoid any of the Wellin Children from having a general power of appointment, the Trust provides that no member of the Distribution Committee who is also a beneficiary of the Separate Trust at issue may participate in decisions involving discretionary distributions to that member, except to the extent such discretion is made pursuant to a distribution standard under the Trust Agreement which constitutes an ascertainable standard within the meaning of I.R.C. §§ 2041 and 2514. The Trust further provides that if a member of the Distribution Committee is not qualified to vote on a particular decision (because the distribution standard under the Trust Agreement does not constitute an ascertainable standard), then the decision shall be made by a majority of the other members of the Distribution Committee. Thus, the Trust accomplishes the objective of avoiding a Wellin Child from having a general power of appointment over his or her Separate Trust by disallowing that Wellin Child from participating in decisions regarding discretionary distributions to himself or herself.

In its motion, the Estate contends that disallowing a Wellin Child from participating in decisions regarding discretionary distributions to himself or herself is not sufficient to avoid a Wellin Child from having a general power of appointment with respect to his or her Separate Trust because the application of the "reciprocal trust doctrine" would cause each Wellin Child to

be deemed to have a power to make distributions to himself or herself from his or her Separate Trust. The Estate contends that, accordingly, the only way to avoid the Wellin Children from having a general power of appointment with respect to his or her Separate Trust is to construe the distribution standard in the Trust as being an ascertainable standard.[9]

The Wellin Children disagree that the reciprocal trust doctrine has any application to the powers held by the Wellin Children as members of the Distribution Committee. In their memorandum in opposition to McDevitt's motion for summary judgment regarding McDevitt's affirmative claims, which the Wellin Children are filing contemporaneously herewith, the Wellin Children set forth their argument as to why the reciprocal trust doctrine does not apply to the power held by the Wellin Children as members of the Distribution Committee. Because the language of the Trust is sufficient to avoid the Wellin Children having a general power of appointment, there is no need for the Court to unduly strain itself to reach a conclusion that the distribution standard under the Trust is an ascertainable standard.

### C.  The Exception Under I.R.C. § 674(c) Does Not Apply in this Case.

In its motion, the Estate contends that the exception under I.R.C. § 674(c) applies in this case, preventing I.R.C. § 674(a) from causing the Trust to continue to be a grantor trust after November 20, 2013. The exception under I.R.C. § 674(c) is commonly referred to as the "independent trustee" exception as it applies to certain powers held by independent trustees.

For a power to qualify for the I.R.C. § 674(c) exception, it must be, among other things, a power "solely exercisable (without the approval or consent of any other person) by a trustee or trustees".  I.R.C. § 674(c). The power over beneficial enjoyment that is at issue in this case is the

---

[9] The term "ascertainable standard" under I.R.C. § 2041 is not synonymous with the term "reasonably definite standard" under I.R.C. § 674, but a standard that constitutes an ascertainable standard is generally understood to be a reasonably definite standard.

power held by the Wellin Children as members of the Distribution Committee. A literal reading of I.R.C. § 674(c) suggests that the exception cannot apply to the power held by the Wellin Children in their capacity as members of the Distribution Committee. The Wellin Children are also trustees of the Trust, but the language of the Trust makes it clear that, in their capacity as trustees, the Wellin Children do not have authority to exercise discretion to cause distributions from the Trust. That authority is granted solely to the Distribution Committee as long as a Distribution Committee is in place. Even if the Court were to conclude that the Wellin Children are "de facto" trustees for purposes of I.R.C. § 674(c) with respect to their powers as members of the Distribution Committee because such powers are held in a fiduciary capacity, the I.R.C. § 674(c) exception fails to apply for other reasons.

If the Wellin Children are considered "de facto" trustees, the following analysis leads to the conclusion that the I.R.C. § 674(c) exception still does not apply.  I.R.C. § 674(c) applies to the power "to distribute, apportion, or accumulate income to or for a beneficiary or beneficiaries, or to, for, or within a class of beneficiaries; or . . . to pay out corpus to a beneficiary or beneficiaries or to or for a class of beneficiaries (whether or not income beneficiaries)" (such powers hereinafter referred to as "674(c) powers"). The powers held by the Wellin Children as members of the Distribution Committee fall within this category of powers governed by I.R.C. § 674(c). For I.R.C. § 674(c) to apply to any of the Wellin Children's Separate Trusts, it must be established that no more than one-half of the persons holding 674(c) powers with respect to such Separate Trust are related or subordinate parties who are subservient to the wishes of Keith. For example, with respect to Peter's Separate Trust, Peter,[10] Mari, and Ceth all possess 674(c)

---

[10] Pursuant to the terms of the Trust, Peter may not participate in decisions regarding distributions to himself but may participate in decisions related to distributions from others from

powers. For the I.R.C. § 674(c) exception to apply to Peter's Separate Trust, it must be determined that at least two of those three persons are not related or subordinate parties subservient to the wishes of Keith Wellin.

The definition of "related or subordinate party" includes any issue of the grantor who is a nonadverse party. I.R.C. § 672(c); Treas. Reg. § 1.672(c)-1. Accordingly, with respect to Peter's Separate Trust, he will not be a related or subordinate party because he is adverse with respect to his Separate Trust. Mari and Ceth, however, will be related or subordinate parties with respect to Peter's Separate Trust because of their relationship to Keith and the fact that they are nonadverse parties, as established above, with respect to Peter's Separate Trust. The next question to be answered in this analysis is whether Mari or Ceth are subservient to the wishes of Keith.

For purposes of I.R.C. § 674(c), a related or subordinate party is "presumed to be subservient to the grantor in respect of the exercise or nonexercise of the power conferred on him." I.R.C. § 672(c). *See also* Treas. Reg. § 1.672(c)-1. This presumption may be overcome by a preponderance of evidence. *Id*. This presumption is difficult to overcome. To overcome the presumption, it must be established that the trustee is not acting in "accordance with the grantor's wishes." Stephen R. Akers, Jonathan G. Blattmachr, & F. Ladson Boyle, *Creating Intentional Grantor Trusts*, 44 REAL PROP., TRUST, & EST. L.J. 208 (2009) (citing S. Rep. No. 622, 83d Cong., 2d Sess. 87 (1954)).

According to this presumption, Mari and Ceth will be presumed to be subservient to the wishes of Keith with respect to their 674(c) powers unless it can be established by a preponderance of evidence to the contrary. In its motion, the Estate contends that the existence of this litigation meets the burden to establish that none of the Wellin Children were subservient to

---

Peter's Separate Trust.

Keith Wellin as of November 20, 2013. The Estate is incorrect for several reasons. First, the test is not whether the Wellin Children are subservient to Keith *in all matters*; rather, the test is whether the Wellin Children are subservient to Keith *with respect to the exercise of their 674(c) powers*. Even if one were to assume that subservience is tested on Nov. 20, 2013, there is no evidence that, as of November 20, 2013, or any time preceding that date, that Keith requested the Wellin Children to exercise their 674(c) powers and the Wellin Children refused to comply with that request. Indeed, the Wellin Children and Keith never had any disagreements involving the Wellin Children's exercise of their 674(c) powers. Furthermore, even if Keith had made a request of the Wellin Children regarding the exercise of their 674(c) powers after the commencement of the litigation and on or prior to November 20, 2013, the fact that the Wellin Children hypothetically may not have complied with those requests is not evidence of their lack of subservience to Keith, as Keith lacked capacity and was subject to undue influence during that time. These facts lead to the conclusion that, based on the presumption contained in I.R.C. § 672(c) and the lack of sufficient evidence to overcome that presumption, Mari and Ceth are related and subordinate parties that are subservient to Keith with respect to Peter's Separate Trust and, thus, the I.R.C. § 674(c) exception does not apply to Peter's Separate Trust.[11]

    In any event, even if the Court does not find as a matter of law that Mari and Ceth are related and subordinate parties that are subservient to Keith with respect to Peter's Separate Trust, the Court should, at a minimum, find that genuine issues of material fact exist with respect to this issue and preclude summary judgment.

---

[11] This same analysis also applies to the Separate Trusts for Mari and Ceth and produces the same result.

In its motion, the Estate argues that subservience is not determined at the inception of the trust but, rather, is determined on a day-by-day basis, such that a trustee may be subservient one day but not subservient the next. Certainly, when the Trust was created, the Wellin Children would have been considered subservient to Keith. The Wellin Children are aware of no authority providing that trustees may be deemed to cease to be subservient to the grantor at some point after the creation of the trust, resulting in the application of the exception in I.R.C. § 674(c) and the trust ceasing to be a grantor trust. In other words, whether a trustee is subservient to the grantor should be determined when the trust is created, and that determination should be permanent. Determining subservience on a day-to-day basis would present practical problems. In support of its position that subservience can be tested at any time during the existence of the trust and not just at the inception of the trust, the Estate cites the case of *Eisenmann v. Comm'r*, 17 T.C. 1426 (1952) and I.R.S. Chief Counsel Advice 200923024 (June 5, 2009). The Estate's reliance on these authorities for its position is misplaced. The *Eisenmann* case did not involve a situation where the government alleged that a trustee became subservient to the grantor after the inception of the trust. Although the court in *Eisenmann* examined the trustee's actions after the inception of the trust to determine if the trustee was under the dominion and control of the grantor, such examination was for the purpose of analyzing the government's position that such dominion and control existed from the inception of the trust.

Likewise, the facts in CCA 200923024 do not involve analyzing a change in facts with respect to a trustee but rather involve a change in the trustee. In the CCA, the former trustee was not related or subordinate with respect to the grantor but was replaced by a trustee that was related or subordinate. This is completely different than the scenario where the same trustee continues to serve throughout a period where the trustee supposedly changed from being

subservient to not being subservient. The change that occurred in the CCA was easy to identify as to when it factually occurred and does not present the same practical issues that exist with trying to determine when a trustee who is subservient at the inception of the trust becomes not subservient at a later date and then potentially becomes subservient again.

Because the general rule of I.R.C. § 674(a) applies in this case, and because none of the exceptions to the general rule apply, the Trust remained a grantor trust after November 20, 2013, and until Keith's death on September 14, 2014, even if the actions purportedly taken by Schwartz and Keith on November 20, 2013, were valid.

## VI.    Conclusion

For all of the foregoing reasons, the Estate's motion for summary judgment as to the tax status of the Trust should be denied.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: s/PATRICK C. WOOTEN
  Robert H. Brunson
  Federal Bar No. 4971
  E-Mail: robert.brunson@nelsonmullins.com
  Merritt G. Abney
  Federal Bar No. 9413
  E-Mail: merritt.abney@nelsonmullins.com
  Patrick C. Wooten
  Federal Bar No. 10399
  E-Mail: patrick.wooten@nelsonmullins.com
  151 Meeting Street / Sixth Floor
  Post Office Box 1806 (29402-1806)
  Charleston, SC  29401-2239
  (843) 853-5200

  *Attorneys for the Wellin Children*

Charleston, South Carolina
July 8, 2019