IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Wendy C. H. Wellin, as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001,<br>*Plaintiff*,<br><br>vs.<br><br>Peter J. Wellin, Cynthia W. Plum and Marjorie W. King, individually and as co-Trustees and beneficiaries of the Wellin Family 2009 Irrevocable Trust u/a/d November 2, 2009, and Friendship Management, LLC,<br>*Defendants*. | Civil Action No. 2:13-cv-01831-DCN<br><br><br><br>**THE ESTATE'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE VALIDITY OF KEITH S. WELLIN'S NOVEMBER 20, 2013 SUBSTITUTION OF ASSETS** |

Wendy C. H. Wellin, as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001 (the "Estate"), by and through her undersigned counsel, submits this Reply in Support of the Estate's Motion for Partial Summary Judgment as to the Validity of Keith S. Wellin's November 20, 2013 Substitution of Assets. Mot. Summ. J. as to Asset Substitution, April 16, 2019, ECF No. 881 (the "Estate's Motion").[1]  Peter Wellin, Cynthia Plum, Marjorie King, and Friendship Management, LLC (the "Wellin Children") submitted a Response in Opposition to this Motion on July 8, 2019. Resp. in Opp'n to Estate's Mot., July 8, 2019, ECF No. 928.

The Wellin Children also moved for summary judgment with respect to the validity of Keith Wellin's November 20, 2013 substitution of assets. Wellin Children's Mot. Summ. J. as to Asset Substitution, April 16, 2019, ECF No. 888 (the "Wellin Children's Motion"). The Estate submitted a Response in Opposition to the Wellin Children's Motion on July 1, 2018. Resp. in Opp'n to Wellin Children's Mot., July 1, 2018, ECF No. 916.

---

[1] All references to electronic case filing numbers are to Civil Action No. 2:13-cv-01831-DCN.

## ARGUMENT

In their Response to the Estate's Motion, the Wellin Children make a number of arguments that are neither persuasive nor legally sound. As an initial matter, the Wellin Children's implicit contention that the denial of the Estate's Motion somehow requires the Court to grant their own Motion is incorrect. When faced with cross-motions for summary judgment, the court must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. *Bacon v. City of Richmond*, 475 F.3d 633, 637–38 (4th Cir. 2007); *see also Ashmore v. Dodds*, 262 F. Supp. 3d 341, 346 (D.S.C. 2017).

**I.    The Court should reject the Wellin Children's claim that the Estate's Motion should be denied because it did not proactively address their substitution arguments.**

The Wellin Children first assert that the Estate's Motion should be denied because the Estate "does not address any of the Wellin Children's arguments set forth in the Wellin Children's motion", despite the exchange of discovery on the parties' positions regarding the asset substitution. *See* Resp. in Opp'n to Estate's Mot. at 1–2. The Wellin Children cite no law or other authority to support this contention. To the extent that the Wellin Children claim that the Estate's Motion, filed April 16, 2019, somehow was required to respond to the Wellin Children's Motion, also filed April 16, 2019, this assertion defies logic and should be rejected, particularly in light of the longstanding agreement in this case that all affirmative motions for summary judgment would be filed by the same deadline.

To the extent that the Wellin Children claim that their prior interrogatory responses, which provide some description of their position on the validity of the asset substitution but fall far short of complete legal memoranda, required the Estate to address the Wellin Children's positions affirmatively in the Estate's Motion, this assertion fails for a number of reasons. First, this argument is contrary to the law. Courts have consistently rejected the assertion that a party

moving for summary judgment must proactively address all anticipated counterarguments which may be raised in an opponent's response. *E.g.*, *Tesoriero v. Carnival Corp.*, C/A No. 16-21769-Civ, 2017 U.S. Dist. LEXIS 156460, at *9–10 (S.D. Fla. Sept. 22, 2017) (rejecting argument that Carnival should have addressed specific legal theory affirmatively and commenting "there is no authority that requires Carnival when seeking summary judgment to anticipate Plaintiff's defenses to Carnival's motion."); *see also Archdiocese of Milwaukee v. Appeal of Doe*, 743 F.3d 1101, 1109 n.5 (7th Cir. 2014); *Ind. Port Comm. v. Bethlehem Steel Corp.*, 702 F.2d 107, 110 (7th Cir. 1983); *Kelly v. Times/Review Newspapers Corp.*, C/A No. 14-CV-2995, 2018 U.S. Dist. LEXIS 26046, at *26 (E.D.N.Y. Feb. 15, 2018) ("Plaintiffs did not have an obligation to anticipate in their opening papers the specific arguments Defendant raised in its opposition; their response to those arguments was properly raised in their reply."); *AIG Commer. Ins. Co. of Can. v. CKE Rests., Inc.*, C/A No. CV 09-98-N-JEL, 2009 U.S. Dist. LEXIS 94742, at *3 (D. Idaho, Oct. 8, 2009) ("[I]t cannot be said that Plaintiff must include the 'kitchen sink' when arguing in support of its own attempt at summary judgment, let alone peremptorily anticipate Defendants' own arguments in response thereto; indeed, that is arguably the very purpose of allowing moving parties an opportunity to submit a reply brief.").

Second, this argument would require an interrogatory response to be construed as a preliminary opening brief in support of summary judgment and, consequently, an opening brief in support of a party's motion for summary judgment as the moving party's only opportunity to address the positions taken by the opposing party in the interrogatory response. Such a rule would turn the well-established briefing process for summary judgment motions on its head. *Cf. Indiana Port Comm.*, 702 F.2d at 110 (rejecting the concept that parties "use their main motions for summary judgment as a vehicle for responses to any arguments they anticipated their

opponents would make" and noting "[t]his would certainly be far from the procedure for summary judgment motions outlined in Rule 56 of the Federal Rules of Civil Procedure and would hardly be an efficient process for resolving complex legal and factual issues").[2]

Third, the discrepancies between these interrogatories and the arguments ultimately made by the Wellin Children's Motion and their Response to the Estate's Motion belie their contention. The Court should not be lulled into an erroneous belief that there is complete identity of arguments contained in the Wellin Children's interrogatory responses and the Wellin Children's arguments raised in their own Motion. The Wellin Children included at least one new argument in their Motion which was not included in their earlier interrogatory responses. Nor is there complete identity between their interrogatory responses and the counterarguments asserted in their Response to the Estate's Motion. For example, the Wellin Children argued for the first time in their Response that the Promissory Note carries a value other than that of its face value. It would be inequitable for the Court to adopt a rule requiring a party to proactively provide responses to positions taken in interrogatories, particularly where the arguments actually made by the opposing party differ in its actual responsive briefing.

---

[2] A party is not prohibited from making anticipatory arguments in an opening summary judgment brief. *E.g.*, *Curlee v. Lewis Bros. Bakeries Inc. of Tenn.*, C/A No. 3:17-cv-01347, 2019 U.S. Dist. LEXIS 57380, at *28–29 (M.D. Tenn. April 3, 2019); *Joyal v. Daviduk*, 2017 U.S. Dist. LEXIS 101789, at *9–10 (D.N.H. June 30, 2017). However, this risks an anticipated argument not ultimately being made in a responsive brief, which generally results in wasted space in the legal argument as well as the court disregarding the anticipatory argument altogether. *Arroyo v. City of New York*, C/A No. 14-CV-9953, 2016 U.S. Dist. LEXIS 89274, at *17 n.5 (S.D.N.Y. July 8, 2016); *Perri v. Cingular Wireless, LLC*, 397 F. Supp. 2d 1364, 1376 n.4 (N.D. Ga. 2005); *LifeTree Trading, PTE, LTD v. Washakie Renewable Energy, LLC*, C/A No. 14-CV-9075, 2015 U.S. Dist. LEXIS 84125, at *18 n.10 (S.D.N.Y. June 29, 2015); *Brunson v. Forest Pres Dist.*, C/A No. 08 C 2200, 2010 U.S. Dist. LEXIS 18949, at *29 (N.D. Ill. Mar. 3, 2010).

**II.     The Wellin Children mischaracterize the Estate's Complaint and the Estate's Motion for Partial Summary Judgment as to the Asset Substitution.**

The Wellin Children continue to misconstrue the allegations of the Estate's Second Amended Complaint as to a conclusion of value of the substituted assets, rather than a description of the calculation Keith Wellin conducted when exercising his unilateral power of substitution on November 20, 2013.[3]  *See* Resp. in Opp'n to Estate's Mot. at 2, 4–6, ECF No. 928.  The Wellin Children use this mischaracterization as the basis for arguing that the Estate is attempting to amend its pleading and, consequently, arguing that the Estate's Motion should be denied.  This is incorrect.  The Estate is not attempting to amend its Complaint but rather is pursuing the enforcement of Keith Wellin's rights as the grantor of the Wellin Family 2009 Irrevocable Trust (the "2009 Trust").

Moreover, the Estate does not aver in the Second Amended Complaint that the initial calculation conducted in conjunction with the substitution is binding or determinative of the question of the valuation of the Limited Partner Units ("LP Units") transferred in the November 20, 2013 substitution.  *See* 2d Am. Compl. ¶¶ 55, 62, 122, ECF No. 301, *see also supra* n. 3

---

[3] The three paragraphs of the Second Amended Complaint identified by the Wellin Children are quoted below in their entirety:

"55.     The Decedent determined the percentage of Friendship Partners, LP acquired in the substitution to be a 58.15548645% interest by applying the valuation methodology previously adopted by the Defendants.  See Ex. 11, Exercise of Right of Substitution, Nov. 20, 2013."

"62.     As a result of his substitution of assets on November 20, 2013, upon the distribution of the assets of Friendship Partners, LP, Decedent was entitled to receive a portion of the net proceeds from the sale of the stock, an amount in excess of $91,000,000.00 based on the 58.15548645% interest calculated by the Decedent to have been acquired in the substitution."

"122.     Peter J. Wellin, Cynthia Plum and Marjorie King knew that the valuation utilized in the substitution of assets was based upon the same formula that they had used on at least five occasions."

2d Am. Compl. ¶¶ 55, 62, 122, ECF No. 301.

(quoting same). Since 2013, three parties have disclosed experts on the question of the valuation of LP Units in Friendship Partners, LP (the "LP") as of November 20, 2013. As the Estate noted in its Response in Opposition to the Wellin Children's Motion for Summary Judgment as to the Substitution of Assets, these differing opinions involve different conclusions of value – a quintessential question of fact that is properly left to the fact finder. The Wellin Children should not be permitted to misconstrue the Second Amended Complaint in an effort to overcome the Estate's Motion for Partial Summary Judgment.

**III.    The Wellin Children's analysis of the plain language of the substitution clause and applicable law remains flawed.**

The Estate addressed the language of the substitution clause contained in the 2009 Trust and the proper application of S.D. Code § 55-2-22 in its affirmative Motion and in its Response to the Wellin Children's Motion regarding the substitution. *See* Estate's Mot. at 16–18, ECF No. 881; Estate's Resp. in Opp'n to Wellin Children's Mot. at 15–20, ECF No. 914. Further, the Estate addressed the application of *Benson v. Rosenthal*, C/A No. 15-782, 2016 U.S. Dist. LEXIS 64148 (E.D. La. May 16, 2016), and *Manatt v. Manatt*, C/A No. 4:17-CV-00378, 2018 U.S. Dist. LEXIS 111372 (S.D. Iowa, May 2, 2018), in the same filings. *See* Estate's Mot. at 18–24, ECF No. 881; Estate's Resp. in Opp'n to Wellin Children's Mot. at 15–20, ECF No. 914. The Estate incorporates these arguments by reference to again respond to the Wellin Children.

**IV.    The Wellin Children's arguments against the use of the widely-accepted "fair market value" standard when valuing the substituted assets are uncompelling and unpersuasive.**

With respect to the Estate's request for partial summary judgment as to the appropriate standard of value to be applied in assessing whether the substituted assets were for "equivalent value", none of the Wellin Children's scatter-shot arguments are compelling. The Court should

employ the widely-utilized "fair market value" standard of value[4] to determine the value of the substituted asset – the LP Units – and the jury, presented with evidence of the fair market value of the LP Units, should be permitted to make a final determination of fact as to precisely how many LP Units are equal to the outstanding balance of the Promissory Note.

Throughout their Response to the Estate's Motion, the Wellin Children again conflate the phrase "equivalent value" with the standard of value to be utilized for the valuation of assets exchanged in a substitution. The Estate has addressed this analytical deficiency at length in its prior submissions and incorporates these arguments by reference. *See* Estate's Mot. at 17, ECF No. 881; Estate's Resp. in Opp'n to Wellin Children's Mot. at 15–22, ECF No. 914.

### A. The issue of what standard of value to apply in assessing the substituted assets should not be ignored simply because the Wellin Children characterize it as contingent on the validity of the substitution.

The operative scheduling order required the submission of dispositive motions on April 16, 2019. *See* Order, April 10, 2019, ECF No. 878. The Estate raised this issue of law to the Court's attention, as the standard of value to be used when assessing the value of the substituted assets is a determination solely within the province of the Court. Even if the Court elects to hold this issue under advisement until such time as other foundational issues are resolved, the Estate should not be penalized for demonstrating that, as a matter of law, the widely-accepted "fair market value", as used in the context of IRS gift and estate tax matters, should apply to determine the value of the LP Units exchanged in the asset substitution.

---

[4] Fair Market Value is defined as the price at which the property would change hands between a hypothetical willing buyer and a hypothetical willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. Treas. Reg. § 20.2031-1(b). The willing buyer and willing seller are hypothetical, and therefore the personal characteristics of the parties are disregarded. *Estate of Gallagher v. Comm'r*, T.C. Mem. 2011-148 (June 28, 2011).

**B.    The Wellin Children's "fairness" arguments with respect to "equivalent value" ignore the impact of their own conduct after the substitution.**

The Wellin Children expend significant effort to argue that the Estate's position on the asset substitution is not "fair" to them. These arguments illustrate one simple and undeniable truth: the Wellin Children caused the conversion of LP Units into cash and created the situation they now believe to be unfair. After receiving notice of Mr. Wellin's November 20, 2013 asset substitution, the Wellin Children could have chosen (a) not to sell the Berkshire Hathaway shares held by the LP; (b) not to make distributions from the LP; and/or (c) not to dissolve the LP. These decisions were within the exclusive control of the General Partner of the LP – Friendship Management, LLC, of which Peter Wellin and Marjorie King were Members and of which Cynthia Plum was Manager. All of these parties were represented by counsel at the time of the substitution. The Wellin Children's entreaty that Mr. Wellin should not have been able to substitute "assets worth $90 million . . . in exchange for a $50 million Note" ignores the very fact that they alone held the power to convert LP Units into cash. The LP Units received on November 20, 2013 by Keith Wellin did not have a value of $90 million, and Keith Wellin did not have the power to *cause* those LP Units to become $90 million. Only the Wellin Children had that power, which they alone chose to exercise. Indeed, what the Wellin Children characterize as a "highly inequitable result" is a result they could have avoided entirely had they chosen not to alter the Partnership or its holdings. Equity should not bar the adoption of the proper standard of value for valuation of the LP Units simply because the Wellin Children did not think things through, and equitable relief is not appropriate.

Additionally, logic does not follow the Wellin Children's emphasis on the higher value of LP Units to themselves as opposed to another party. Their argument ignores Keith Wellin and the impact their proposed valuation method would have on him economically. For example, if

8

the Court agreed with the Wellin Children that the subjective valuation they propose is correct, Keith Wellin would be required to make a gift to the 2009 Trust any time he exercised his unilateral right to substitute assets of an *equivalent value* in the 2009 Trust. LP Units which are equivalent to the value of the Promissory Note *to the Wellin Children* would be worth far less to Keith Wellin, as he had none of the control rights over the LP that the Wellin Children possessed. That difference in value – the value of the LP Units to the Wellin Children versus the value of the LP Units to Keith Wellin – would have been considered a gift by Keith Wellin to the 2009 Trust when he exchanged the Promissory Note for the LP Units. Any argument that requires making a gift to receive assets of equivalent value defies logic, strains credibility and cannot be sustained. Rather, "fair market value" should determine the value of the LP Units exchanged in the substitution.

    **C.**    **Many of the Wellin Children's arguments are directed at the propriety of valuation discounts, rather than the adoption or rejection of "fair market value".**

The Wellin Children's Response at times appears more directed at the applicability and scope of discounts for lack of control and lack of marketability, rather than at the adoption of the "fair market value" standard requested by the Estate. As the Estate has already pointed out, there is a difference between the legal question of the standard of value to be employed – "fair market value" or something else – and the factual question of what the value of the LP Units is under the applicable standard of value and what discounts are appropriate under that standard.

    **1.**    **The Wellin Children's analysis of *In re Dino Rigoni* to support their "equivalent value" argument is flawed, and the prior conduct of the parties is relevant to the question of asset valuation in an asset substitution.**

Contrary to the Wellin Children's claim, *In re Dino Rigoni*, Op. No. 321589, 2015 Mich. App. LEXIS 1369 (Mich. Ct. App. 2015), is not the only case in the United States that discusses

the requirement that an asset substitution be for equivalent value. This requirement is widely included in trusts seeking to be classified as grantor trusts under the Internal Revenue Code (I.R.C.) and Revenue Ruling 2008-22 by virtue of the inclusion of a power of substitution. *E.g.*, *Benson v. Rosenthal*, C/A No. 15-782, 2016 U.S. Dist. LEXIS 64168, at *14–15 (E.D. La. May 16, 2016), available at ECF No. 881-68; *Manatt v. Manatt*, C/A No. 4:17-cv-00378, 2018 U.S. Dist. LEXIS 111372, at *9–10 (S.D. Iowa, May 2, 2018); *see also* Estate Mot. at 19 n.10 and 22 n.11 (noting that substitution clauses in *Benson* and *Manatt* included phrase permitting substitution of "other property of an equivalent value"). However, these authorities do not discuss the standard of value to be used in determining that the substituted assets were equivalent in value, and fair market value was utilized without discussion. The Wellin Children's assertion once again illustrates their confusion over the distinction between substitutions for equivalent value and the valuation of assets involved in the substitution.

Furthermore, *In re Dino Rigoni* does not actually support the conclusion that the Wellin Children desire. If anything, *In re Dino Rigoni* supports the use of the fair market value standard as proposed by the Estate as the *Rigoni* court rejected a grantor's attempt to substitute assets valued using discounts <u>when the prior transactions between the grantor and the trust had not used discounts</u>. *In re Dino Rigoni*, 2015 Mich. App. LEXIS 1369, at *19–20. In other words, the prior conduct of the parties prevented the grantor from changing the valuation methodology for the trust assets being substituted. So too, the Wellin Children should not be permitted to unilaterally impose a different valuation standard (one more beneficial to the Wellin Children) when the parties consistently used the widely accepted fair market value in all prior transfers.

In another sub-argument against the adoption of the "fair market value" standard for purposes of valuing the substituted LP Units, the Wellin Children argue that the prior conduct of

the parties in handling transfers of LP Units does not bear upon the November 20, 2013 substitution.[5] This assertion is in direct conflict with *In re Dino Rigoni*. However, the Wellin Children do not attempt to reconcile or even acknowledge this discrepancy in their argument. Certainly, *In re Dino Rigoni* involved a party "unwilling" to apply discounts, just as the Wellin Children are attempting to argue in this case (in contravention of the 2009 Trust's provision permitting substitutions by the grantor without the consent or approval of the Trustees, to which the Trustees agreed when they executed the Trust Agreement in 2009). However, the *Rigoni* court did account for prior conduct of the parties in determining the propriety of applying discounts. This case also supports the use of a valuation standard consistent with the parties' prior practice, which in this case is fair market value.

> **2.  The Wellin Children's reliance on *Morrow v. Martschink* to contend that valuation discounts are not proper is misplaced, unpersuasive, and misses the mark.**

In *Morrow v. Martschink*, a minority shareholder brought an action for judicial dissolution of Martschink Realty, a South Carolina corporation. 922 F. Supp. 1093, 1095 (D.S.C. 1995). Under South Carolina law, a minority shareholder's interest in a corporation undergoing judicial dissolution must be valued using the statutorily proscribed "fair value". *See* S.C. Code § 33-14-310(d) (2019); *Metromont Materials Corp. v. Pennell*, 270 S.C. 9, 239 S.E.2d 753 (1977). The Court determined the "fair value" of the interest of the shareholder seeking dissolution pursuant to South Carolina law. *See Morrow*, 922 F. Supp. at 1102–05 (applying S.C. Code § 33-14-310(d)). Though the Wellin Children quote the *Morrow* opinion at length, they fail to explain precisely why they believe the circumstances of this case are so analogous that they are an "appropriate context" to decline to apply valuation discounts (whether under the

---

[5] As the Estate explained in detail in its Motion, the LP Units were valued using discounts by all parties between 2009-2012 and valued using discounts by Keith Wellin in 2013. Estate's Mot. at 4–9, ECF No. 881.

"fair market value" standard or another standard). Unlike *Morrow*, "fair value" is not statutorily proscribed as the standard of value for Mr. Wellin's November 2013 substitution of assets.

While the Wellin Children have identified a single "fair value" opinion in which marketability and control discounts were not applied to determine the value of a minority business interest, they continue to ignore the wealth of authority which has recognized such discounts under the "fair market value" standard. *E.g.*, *S.C. Nat'l Bank v. McLeod*, 256 F. Supp. 913, 928 (D.S.C. 1966) (determining fair market value of shares of newspaper companies); *see also Estate of Gallagher v. Comm'r*, T.C. Mem. 2011-148 (T.C. June 28, 2011); *Peracchio v. Comm'r*, T.C. Mem. 2003-280 (T.C. Sept. 25, 2003); *Estate of Jones v. Comm'r*, 116 T.C. 121 (T.C. 2001). The Wellin Children's selective focus reinforces the need for resolution of the standard of value to be used in valuing the substituted LP Units before determining the scope of valuation discounts, as the Estate has requested.

### 3. Summary judgment should not be denied merely because the Wellin Children chose to gamble with Bajaj's atypical opinions.

The Wellin Children appear to argue that the Estate's Motion should be denied because granting the requested ruling would be tantamount to excluding the "expert" opinions of Mukesh Bajaj. During his deposition, Bajaj testified on numerous occasions that his opinion of value was not based on the hypothetical willing buyer-hypothetical willing seller definition of "fair market value" as used in gift and estate tax contexts. *E.g.*, Bajaj Dep. 91:19–92:10, Aug. 30, 2018, available at ECF No. 881-63; Bajaj Rebuttal Dep. 55:15-24, Nov. 13, 2018, available at ECF No. 881-65. The Wellin Children have disclosed no expert who will testify at trial with respect to the "fair market value" of LP Units. If the Court agrees with the Estate and requires evidence of the fair market value of the LP Units, using the widely accepted standard for which the Estate advocates, Bajaj's opinions will have no place at trial. To the extent that the Wellin Children are

attempting to avoid the consequences of their own expert inadequacies, such a result is not a compelling reason to deny summary judgment on the question of the standard of value.

Furthermore, the Wellin Children's procedural argument that the Estate's Motion should be denied because the Estate has not yet moved to exclude the Bajaj opinions is unpersuasive. Motions in Limine are not required to be filed until three weeks prior to trial, and Daubert motions are not required to be filed until five weeks prior to trial. *See* Order, April 10, 2019, ECF No. 878 (setting pre-trial motion deadlines). Summary Judgment as to the standard of value should not be denied simply because the Estate has not yet filed a motion that is not yet due.

### 4. **Matt Crow's valuation of LP Units was performed entirely within the "fair market value" paradigm.**

The Wellin Children place great emphasis on the valuation methodology used by the Estate's expert, Mr. Crow. They ignore, however, the fact that Mr. Crow's opinion based upon the widely-accepted "fair market value" standard of value. Mr. Crow's discussion of the importance of context, facts and circumstances surrounding the asset in question, and the "three pillars" of valuation are all in support of his opinion on the fair market value of LP Units as of November 20, 2013. These opinions are not, as the Wellin Children misconstrue, a discussion of why one standard of value should be used over another. The Wellin Children's argument again illustrates the necessity of the fundamental first step in a valuation analysis – determining whether to value the asset using fair market value, fair value, or something else such as Bajaj's novel approach – which is precisely what the Estate requested in this Motion. *See* Estate's Mot., ECF No. 881 at 24–32.

**5.     The Wellin Children mischaracterize Tom Farace testimony as an opinion on valuation of the LP Units.**

The Wellin Children cite to one portion of Tom Farace's deposition testimony, in which Mr. Farace was discussing a January 6, 2010 letter and also answering general questions about discounts for lack of control and marketability, to cobble together another argument against discounts. Resp. in Opp'n to Estate's Mot. at 25, ECF No. 935. This testimony is not, as the Wellin Children insinuate, an opinion on the applicability of discounts for the substituted LP Units with respect to the November 20, 2013 asset substitution.

Farace's general discussion of discounts identified by the Wellin Children should not be permitted to masquerade as an expert opinion which will be offered in this case. To the extent the Wellin Children intended to present Mr. Farace's general discussion of valuation discounts as an expert opinion, they should have identified the same on June 1, 2018 – the deadline for affirmative expert disclosures under Rule 26(a)(2). Having not identified Mr. Farace as an "expert", his testimony cannot be construed as an opinion on the propriety of valuation discounts with respect to the substitution and is inadmissible. Fed. R. Civ. P. 56(c)(2).

**D.     There is no dispute of fact with respect to the valuation of Promissory Note.**

The Wellin Children, for the first time, argue that a valuation of the Promissory Note substituted is also needed to determine equivalent value for the substitution. However, the Wellin Children have not identified evidence that any party believed the Promissory Note to carry a value less than its stated face value. The original Promissory Note was issued in 2009 by the Trustees of the 2009 Trust in exchange for LP Units with an appraised value equal to the face value of the Promissory Note. *See* Promissory Note, Nov. 30, 2009, available at ECF No. 881-7. No discount was applied to the Promissory Note for its "maturity date, interest rate, [or] risk of default", the factors cited by the Wellin Children's "expert". Both parties to the Note treated it

as having a value equal to its stated value. Likewise, in 2012 when the Promissory Note was refinanced, the parties substituted the prior Promissory Note with the Promissory Note dated September 4, 2012.[6] Refinanced Promissory Note, Sept. 4, 2012, available at ECF No. 881-11. Again, no adjustment was made by the parties to the stated value of the Promissory Note and the parties treated the value of the Promissory Note as the stated value.

The Wellin Children's argument also mischaracterizes the testimony of the Estate's expert as well as the Wellin Children's own expert. Contrary to the Wellin Children's assertion, no expert has disclosed an opinion of value of the Promissory Note in their Rule 26(a)(2)(A) disclosures. *See* Crow Report, June 1, 2018, available at ECF No. 881-60; Bajaj Report, June 1, 2018, available at ECF No. 881-64. Indeed, the Wellin Children's "expert", Bajaj, made it clear that the valuation of the Promissory Note was not within the scope of his work in this case, testifying that he was "told to take that economic value of the note equals the face value in the scope of my assignment". Bajaj Dep. Tr. 67:17-20, Aug. 30. 2018, available at ECF No. 881-63.

## **CONCLUSION**

The Court should grant the Estate's Motion and find that (1) Keith Wellin's November 20, 2013 asset substitution was effective and (2) the LP Units substituted must be valued using the fair market value standard of the hypothetical willing buyer–hypothetical willing seller, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[6] For gift and estate tax purposes, a promissory note is presumed to have a fair market value of its stated principal plus interest. *See* Treas. Reg. §§ 20.2031-4, 25.2512-4.

Respectfully submitted,

          HOOD LAW FIRM, LLC
          172 Meeting Street/Post Office Box 1508
          Charleston, SC  29402
          Phone: (843) 577-4435/Fax: (843) 722-1630
          Email: Info@hoodlaw.com

          **s/ James B. Hood**
          Robert H. Hood (1939)
          Molly H. Craig (6671)
          James B. Hood (9130)
          Virginia Rogers Floyd (12212)

*Attorneys for Wendy C. H. Wellin, as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001*

**August 28, 2019**
Charleston, South Carolina

16