IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| WENDY C.H. WELLIN, *as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001*, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| PETER J. WELLIN, CYNTHIA W. PLUM AND MARJORIE W. KING, *individually and as co-Trustees and beneficiaries of the Wellin Family 2009 Irrevocable Trust, u/a/d November 2, 2009*, and FRIENDSHIP MANAGEMENT, LLC, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| LARRY S. MCDEVITT, *as Trust Protector of the Wellin Family 2009 Irrevocable Trust*, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| PETER J. WELLIN, CYNTHIA W. PLUM AND MARJORIE W. KING, *individually and as co-Trustees and beneficiaries of the Wellin Family 2009 Irrevocable Trust, u/a/d November 2, 2009*, FRIENDSHIP MANAGEMENT, LLC, and CYNTHIA W. PLUM *as manager of Friendship Management, LLC,* | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| PETER J. WELLIN, CYNTHIA W. PLUM AND MARJORIE W. KING, *individually and as co-Trustees and beneficiaries of the Wellin Family 2009 Irrevocable Trust* | ) ) ) ) ) |

No. 2:13–cv–01831–DCN

**ORDER**

No. 2:13–cv–03595–DCN

1

|  | ) |  |
| --- | --- | --- |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LARRY S. MCDEVITT, *as Trust Protector* | ) | |
| *of the Wellin Family 2009 Irrevocable Trust,* | ) | |
| LESTER SCHWARTZ *as Trust Protector* | ) | |
| *of the Wellin Family 2009 Irrevocable Trust,* | ) | |
| *u/a/d November 2, 2009*, and WENDY C.H. | ) | |
| WELLIN, *as Special Administrator of the* | ) | |
| *Estate of Keith S. Wellin,* | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |
| | ) | |
| PETER J. WELLIN, CYNTHIA W. PLUM | ) | No. 2:14-cv-4067-DCN |
| AND MARJORIE W. KING, *individually and* | ) | |
| *as co-Trustees and beneficiaries of the Wellin* | ) | |
| *Family 2009 Irrevocable Trust, u/a/d* | ) | |
| *November 2, 2009*, FRIENDSHIP | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WENDY WELLIN, *individually and as* | ) | |
| *Trustee of the Keith S. Wellin* | ) | |
| *Florida Revocable Living Trust u/a/d* | ) | |
| *December 11, 2001,* | ) | |
| | ) | |
| Defendant, | ) | |
| and Hamilton College, | ) | |
| | ) | |
| Defendant–Intervenor, | ) | |

This matter is before the court on a motion for summary judgment. Peter J. Wellin ("Peter"), Cynthia Wellin Plum ("Ceth"), Marjorie Wellin King ("Marjorie") — in their individual capacities, their capacities as co-Trustees, and their capacities as beneficiaries Wellin Family 2009 Irrevocable Trust ("2009 Irrevocable Trust") (collectively, the "Wellin children") have filed a motion for summary judgment as to the invalidity of five certain amendments to the Keith S. Wellin ("Keith") Florida Revocable Living Trust

2

u/a/d December 11, 2001 ("2001 Revocable Trust") purportedly executed between June 20, 2013 and June 27, 2014 ("2013–14 amendments").  ECF No. 472-1 at 2.[1]

For the reasons stated below, the court denies the Wellin Children's motion for summary judgment as to the invalidity of the 2013–14 amendments.

## I.  BACKGROUND

Because the nature of this case, the court will dispense with a recitation of facts and include only a procedural history of the matters at hand.

The motion for summary judgment as to the invalidity of the 2013–14 amendments was filed by the Wellin children on November 13, 2017.  ECF No. 472.  Wendy C.H. Wellin, as Trustee of the 2001 Revocable Trust ("trustee Wendy"), and individually ("Wendy", together with trustee Wendy, the "Estate") responded on December 14, 2017, ECF Nos. 491, 493, and Hamilton College filed a memorandum in opposition on December 20, 2017, ECF No. 492.  The Wellin children replied to the responses by the Estate and memorandum in opposition by Hamilton College on January 4, 2018, ECF No. 500.  Hamilton College filed an additional reply to the Wellin children's reply on February 20, 2018, ECF No. 518, and the Estate filed an additional reply to the Wellin children's reply on February 28, 2018, ECF No. 524.  The motion is now ripe for the court's review.

---

[1] All ECF numbers will be referencing Civil Action No. 2:14-cv-4067 ("Wellin II") unless otherwise stated.  Wellin II was consolidated for discovery purposes only with Civil Action No. 2:13-cv-1831 ("Wellin I") and Civil Action No. 2:13-cv-3595 ("McDevitt").  This motion for summary judgment has been spread across Wellin II, Wellin I, and McDevitt.  However, the validity of the 2013–14 amendments only relate to claims made in Wellin II.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non–moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

### A. Amendments to the 2001 Revocable Trust[2]

The Wellin children argue the court should grant summary judgment declaring the 2013–14 amendments invalid because the Estate failed to adhere to the terms of the 2001

---

[2] Unless otherwise stated, all references to the 2001 Revocable Trust will be as based on the 2001 Revocable Trust as amended on August 30th, 2011 ("Tenth Amended Trust"). The court shall perform its interpretation of the 2001 Revocable Trust based on the Tenth Amended Trust because that is last effective version of the 2001 Revocable Trust prior to any of the 2013–14 amendments.

Revocable Trust by not delivering the 2013–14 amendments to the successor Trustee until after the Keith's death.[3,4]  ECF No. 472-1 at 2.  The Estate and Hamilton College contend the court should deny summary judgment as to the invalidity of the 2013–14 amendments because delivery to the successor Trustee was not a requirement to make an amendment to the 2001 Revocable Trust effective.  ECF No. 491 at 13; ECF 492 at 2.  If the court finds that delivery to the successor Trustee is required for an amendment to be valid, the Estate argues that there is no time requirement for when such delivery must be made, and the court should deny summary judgment as to the invalidity of the 2013–14 amendments because delivery of the 2013–14 amendments was eventually made.  ECF No. 491 at 21.  The Estate and Hamilton College also reason the court should deny summary judgment as to the invalidity of the 2013–14 amendments because the 2001 Revocable Trust did not specifically define Peter as successor Trustee and since successor trustee is a term of art, delivery to Peter is irrelevant to determining the 2013–14 amendments' effectiveness.  ECF No. 518 at 2; ECF No. 524 at 2.

All parties agree that the 2013–14 amendments are governed by Florida law because of the 2001 Revocable Trust's governing law provision.  ECF No. 472-1 at 5; ECF No. 491 at 3; ECF No. 492 at 8.  "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's

---

[3] Terms that are capitalized and not defined within this Section III have the meaning ascribed to them as defined in the 2001 Revocable Trust.

[4] The Wellin children have also argued that the 2013–14 amendments are invalid based on Keiths' lack of capacity and undue influence, breaches of fiduciary duty, and intentional inference by Wendy.  ECF No 472-1 at 3.  However, the Wellin children have asked the court not to consider those arguments in this motion.  The court abides by their request.

choice-of-law rules." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599–600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938). Under South Carolina choice of law rules, "if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." Russell v. Wachovia Bank, N.A., 578 S.E.2d 329, 336 (S.C. 2003). Because the validity of the 2013–14 amendments must be determined by the court performing an interpretation of the 2001 Revocable Trust agreement and all parties agree such an interpretation falls within the scope of the 2001 Revocable Trust's governing law provision, the court shall perform its analysis under Florida law.

The interpretation of a trust is normally a matter of law that is determined by the court. See In re Standard Jury Instructions--Contract & Bus. Cases, 116 So. 3d 284, 315 (Fla. 2013) (citing Smith v. State Farm Mut. Auto. Ins. Co., 231 So.2d 193, 194 (Fla. 1970)) ("The interpretation of a contract is normally a matter of law that is determined by the court."); Fla. Stat. Ann. § 736.0201(4)(a) ("A judicial proceeding involving a trust may relate to the validity a trust, including [d]etermin[ing] the validity of all or part of a trust."). "Under certain circumstances, however, such as when the terms of a [trust] are ambiguous or susceptible to different interpretations, an issue of fact is presented which should be submitted to the jury." In re Standard Jury Instructions--Contract & Bus. Cases, 116 So. 3d 284 at 315; see also Harkless v. Laubhan, 219 So. 3d 900, 910 (Fla. Dist. Ct. App. 2016) ("Contract interpretation is for the court as a matter of law, rather than the trier of fact, only when the agreement is totally unambiguous, or when any ambiguity may be resolved by applying the rules of construction to situations in which the parol evidence of the parties' intentions is undisputed or non-existent.")

6

Under Florida law, "the polestar of trust interpretation is the settlor['s] intent." Vigliani v. Bank of Am., N.A., 189 So. 3d 214, 219 (Fla. Dist. Ct. App. 2016) (citing Roberts v. Sarros, 920 So.2d 193, 195 (Fla. Dist. Ct. App. 2006)). A court determines "the settlor's intent from the plain and ordinary meaning of the terms set forth in the Trust instrument." Horgan v. Cosden, 249 So. 3d 683, 686 (Fla. Dist. Ct. App. 2018), reh'g denied (June 29, 2018), review denied, 2018 WL 3650268 (Fla. July 30, 2018) (citing Nelson v. Nelson, 206 So.3d 818, 819 (Fla. Fla. Dist. Ct. App. 2016)). "If the language in the trust is unambiguous, the settlor's intent as expressed therein controls and the court cannot rely on extrinsic evidence." Vigliani v. Bank of Am., N.A., 189 So. 3d 214 at 219. To determine the settlor's intent, "the court should construe 'the instrument as a whole, taking into account the general dispositional scheme." Id. (quoting Pounds v. Pounds, 703 So.2d 487, 488 (Fla. Dist. Ct. App. 1997)). The determination of the settlor's intent based on the terms of the trust "should not 'resort to isolated words and phrases.'" Id. (quoting Pounds, 703 So.2d at 488). "This is true whether the court is interpreting the entire trust or only a specific clause." Id.

1. **Validity of the 2013–14 Amendments**

According to Florida law, "the settlor may revoke or amend a revocable trust . . . by substantial compliance with a method provided in the terms of the trust." Fla. Stat. Ann. § 736.0602(3)(a). All parties concede that the 2001 Revocable Trust has a provision that provides the method for making an amendment to it ("Amendment provision") and that the Amendment provision is not ambiguous. ECF No. 491 at 12; ECF No. 492 at 10, ECF 500 at 5. The court agrees that the Amendment provision is

unambiguous, and therefore, the interpretation of the Amendment provision is a matter of law to be resolved by the court. The Amendment provision is as follows:

> XVI. AMENDMENT AND REVOCATION. I reserve the right at any time to amend or revoke this Agreement by an instrument in writing, duly acknowledged and delivered to the then acting Trustee and the successor Trustee. The duties and liabilities of Trustee shall under no circumstance be substantially increased or its compensation decreased except with its written consent. Any amendment shall be effective immediately upon my delivery or mailing thereof to Trustee, my attorney or other agent for delivery to Trustee, if thereafter delivered to Trustee, and if accepted or consented to by Trustee, if such acceptance or consent is required for effective amendment.

ECF No. 472-4 at 18. The Wellin children argue that the settlor's intent based on the plain language of the first sentence of the Amendment provision shows that each requirement listed within that first sentence must be complied with in order to have a valid amendment. ECF No. 472-1 at 5. The Estate and Hamilton College counter that argument by asserting that the plain and clear language of the third sentence of the Amendment provision shows it is the settlor's intent to make an amendment effective upon compliance with the methods contained within that third sentence and the first sentence of the Amendment provision is merely the procedure for providing notice of an effective amendment. ECF No. 491 at 12; ECF No. 492 at 8–9. According to Florida law, the court must determine the settlor's intent not by "resort[ing] to isolated words and phrases" but instead by "taking into account the general dispositional scheme" of the trust. Vigliani, 189 So. 3d at 219. Therefore, the court cannot deduce the settlor's intent by focusing on the parties' arguments alone and will make its determination of the settlor's intent in context of the entire 2001 Revocable Trust.

Throughout the 2001 Revocable Trust, the method for what must be done to execute the purpose of provision is drafted in the beginning of the provision followed by

8

what must be done after execution for it to be effective. ECF 472-4 at 5–8, 10–12, 17. In the 2001 Revocable Trust, the following provisions — the provision that gifts paintings to Hamilton College, the provision that gifts items described in a written list, the provision that distributes money to the grandchildren, and the provision that describes how a Trustee may resign ("Resignation provision") — each state what must be done to execute the purpose of the provision at the beginning of the provision followed by what must be done after execution of it to be effective. Id. In other words, the act in the 2001 Revocable Trust must be executed before it becomes effective. Because the court finds that the general dispositional scheme of the 2001 Revocable Trust is to provide the method for what must be done to execute the purpose of provision and then provides the method for what must be done after execution of the act for it to be effective, the court finds that an action in the 2001 Revocable Trust must be executed before it becomes effective.

The Resignation provision is particularly informative to the court in its determination of the settlor's intent because this provision, like the Amendment provision, describes a process by which a change to the 2001 Revocable Trust may be made. The Resignation provision is as follows:

> C. <u>Resignation of Trustee</u>. Any Trustee serving hereunder may resign by giving written notice of such resignation to me, if I am then living, or if I am not then living to the then adult income beneficiary of a following trust hereunder or a majority of adult income beneficiaries if more than one. Such resignation shall take effect upon the date specified in such notice, but not less than thirty (30) days after such mailing or delivery. Upon the date specified, all duties of Trustee shall cease except the duty to account.

ECF No. 472-4 at 17. The first sentence of the Resignation provision clearly instructs what a Trustee must do to execute his or her resignation and the second sentence clearly

9

instructs how to make an executed resignation effective. The structure and scheme of the Resignation provision and the Amendment provision are nearly identical. Each provision begins with the method for what must be done to execute the act, resign as Trustee in the Resignation provision and amend the 2001 Revocable Trust in the Amendment provision. ECF No. 472-4 at 17–18. Each provision uses the verb of the act, "resign" in the Resignation provision and "amend" in 2001 Revocable Trust, followed by the word "by" meaning "the means of achieving something" in the first sentence. Id. The court finds this indicates the first sentence in the Amendment provision is the method for executing the act.

Each provision uses the noun for the act, "resignation" in the Resignation provision and "amendment" in 2001 Revocable Trust, in the sentence providing what must be done for the act to be effective. ECF No. 472-4 at 17–18. The court finds this indicates that the action has been executed before it can become effective. In addition to specifically aligning with the Resignation provision dispositional scheme, the Amendment provision structure aligns with the general dispositional scheme of executing the terms of 2001 Revocable Trust, which provides the method for what must be done to execute the purpose of provision and then provides the method for what must be done after execution of the act for it to be effective. Therefore, the court finds that it was the settlor's intent that an amendment to the 2001 Revocable Trust be executed according to the Amendment provision prior to an amendment being effective.

2. **Successor Trustee**

Having found that it was the settlor's intent that an amendment to the 2001 Revocable Trust be executed according to the Amendment provision prior to an

amendment being effective, the court must now determine if Keith substantially complied with the method for executing an amendment in the 2013–14 amendments. The Estate and Hamilton College argue that the 2001 Revocable Trust never actually defined Peter as the Successor Trustee, only that he should become the Trustee in the event Keith ceased being Trustee or upon Keith's death, and therefore was not entitled to delivery of the 2013–14 amendments. ECF No. 518 at 2; ECF No. 524 at 2. The Wellin children contend that Peter was the successor Trustee and therefore was entitled to the delivery of the 2013–14 amendments for the 2013–14 amendments to be executed. ECF No. 472-1 at 2.

The Florida Trust Code does not specifically define successor trustee; however, it does require that when filling a vacancy in a trusteeship of a noncharitable trust, first priority is given to the "person named or designated pursuant to the terms of the trust to act as a successor trustee." Fla. Stat. Ann. § 736.0704(3)(a). The Florida Trust Code also lists as one of the circumstances in which "a vacancy in a trusteeship occurs" is "if . . . [a] trustee is disqualified or removed." Fla. Stat. Ann. § 736.0704(1)(c). Article XV of the 2001 Revocable Trust is entitled "Successor Trustees" and each paragraph in Article XV taken together describes the person designated to replace Keith as Trustee upon his vacating that position. ECF No. 472-4 at 16–18. Paragraph A of Article XV of the 2001 Revocable Trust provides a specific situation and what must occur in that situation for the Trustee to "cease to serve as [Trustee]." Id. at 16. If the events occur as described in paragraph A of Article XV such that the Trustee ceases to serve in that role, the Trustee authorizes all individuals and entities to release and disclose any and all health information to "the Trustee named in 'B.' of this Article." Id. at 16–17. Paragraph B of

Article XV of the 2001 Revocable Trust names Peter as the person to serve as Trustee in Keith's place should Keith cease to serve as Trustee. Id. at 17. In other words, Article XV of the 2001 Revocable Trust describes both a specific circumstance in which Keith would be removed as Trustee and generally any situation in which Keith ceases to serve as Trustee and, in both instances, identifies Peter as the person who will succeed Keith as Trustee.

The Estate and Hamilton College's contention that the 2001 Revocable Trust's failure to specifically define Peter as the "Successor Trustee" and the 2001 Revocable Trust reference to Peter only as "nominated to serve as successor Trustee" should lead the court to interpret that it was the settlor's intent not to have a successor trustee is misguided. It is the court's responsibility under Florida law to interpret the trust based on "the plain and ordinary meaning of the terms set forth in the Trust instrument." Horgan v. Cosden, 249 So. 3d 683 at 686. It is clear to that court that the plain and ordinary meaning of Article XV of the 2001 Revocable Trust demonstrates that it was the settlor's intent was to name Peter the successor Trustee. For the court to accept the Estate and Hamilton College's argument, it would have to determine the settlor's intent by "resort[ing] to isolated words and phrases" which is in direct contrast with Florida law. Vigliani, 189 So. 3d 214 at 219. Therefore, the court finds that Peter was the successor Trustee under the 2001 Revocable Trust.

### 3. Delivery to Successor Trustee

The Wellin children argue that failure to deliver the 2013–14 amendments to Peter, as successor Trustee, until after the Keith's death, the 2013–14 amendments are not valid. ECF No. 472-1 at 7. The Estate and Hamilton College argue that there is no time

requirement for when such delivery must be made, and that because delivery was eventually made, the 2013-14 amendments were in "substantial compliance" with the Amendment provision. ECF No. 491 at 15; ECF No. 492 at 14 n.5. The Wellin children concede that Florida law has not addressed whether delivery after the death of the sole settlor can be in "substantial compliance" with an amendment provision of a trust. ECF No. 472-1 at 7. "Substantial compliance is 'that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the [party] the [benefit].'" Ortiz v. PNC Bank, Nat. Ass'n, 188 So. 3d 923, 925 (Fla. Dist. Ct. App. 2016) (quoting Casa Linda Tile & Marble Installers, Inc. v. Highlands Place 1981, Ltd., 642 So.2d 766, 768 (Fla. Dist. Ct. App. 1994)).

In its research, the court found that Florida law has only made a determination about the substantial compliance with the method for effecting an amendment to a trust after the settlor's death in the context of multiple settlors. See generally Littell v. Law Firm of Trinkle, 2009 WL 10706315 (M.D. Fla. Feb. 13, 2009), aff'd sub nom. Littell v. Law Firm of Trinkle, Moody, Swanson, Byrd & Colton, 345 F. App'x 415 (11th Cir. 2009); Roberts v. Sarros, 920 So.2d 193; L'Argent v. Barnett Bank. N.A., 730 So.2d 395 (Fla. Dist. Ct. App. 1999). Those cases are not analogous because the 2001 Revocable Trust has only one settlor. Furthermore, these cases are not useful precedents for the court in this instance because those cases do not address the substantial compliance with the method for effecting an amendment to a trust after the death of the sole settler when delivery to a third party was the only outstanding obligation remaining to be in substantial compliance with the terms of the trust's amendment provision. Therefore, the court must again look to determine if it was the settlor's intent for there to be a temporal

13

limitation on the delivery of an amendment in order to be in "substantial compliance" with the Amendment provision. The court will again make this determination based on "the plain and ordinary meaning of the terms set forth in the Trust instrument" and "taking into account the general dispositional scheme" of the 2001 Revocable Trust. Horgan v. Cosden, 249 So. 3d at 686; Vigliani, 189 So. 3d at 219.

Throughout the 2001 Revocable Trust, there are temporal limits placed on provisions. ECF 472-4 at 3, 7–8, 10–12, 17. In the 2001 Revocable Trust, the following provisions — the provision that instructs the Trustee to make payments to the 2001 Revocable Trust, the provision that gifts items described in a written list, the provision that requires purchase of the martial home in Vero Beach, the provision that distributes money to the grandchildren, and the Resignation provision — each state a temporal limit on when each action must be taken to be valid. Id. Furthermore, throughout the 2001 Revocable Trust there are actions that must occur during Keith's lifetime and other actions that must occur upon Keith's death. ECF 472-4 at 3–14, 16. Therefore, the court finds that the general dispositional scheme of the 2001 Revocable Trust is that when it was the settlor's intent for something to be done during Keith's lifetime, upon his death, or within a certain time frame, the 2001 Revocable Trust specifically enumerates such temporal limitations. The Amendment provision does not enumerate a temporal limit on when a delivery to the successor Trustee must be made for an amendment to be valid. Therefore, the court finds it was not the settler's intent to place a temporal limit on when a delivery to the successor Trustee must be made for an amendment to be valid.

Because Florida law is silent on the timing requirement for the delivery of an amendment to a trust for the amendment to be in substantial compliance with the method

for effecting an amendment, and since it was the settlor's intent in drafting the 2001 Revocable Trust to not place a temporal limit on the delivery of an amendment to a trust for the amendment to be valid, the court finds that the delivery of the 2013–14 amendments to the successor Trustee, Peter, is in substantial compliance with the Amendment provision.

Therefore, the court denies the Wellin Children's motion for summary judgment as to the invalidity of the 2013–14 amendments.

## IV.   CONCLUSION

For the reasons set forth above, the court denies the Wellin Children's motion for summary judgment as to the invalidity of the 2013–14.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**December 19, 2019**
**Charleston, South Carolina**