# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| WENDY C.H. WELLIN, *as Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001,*<br><br>Plaintiff,<br><br>vs.<br><br>PETER J. WELLIN, CYNTHIA W. PLUM AND MARJORIE W. KING, *individually and as co-Trustees and beneficiaries of the Wellin Family 2009 Irrevocable Trust, u/a/d November 2, 2009*, and FRIENDSHIP MANAGEMENT, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:13-cv-01831-DCN<br><br>**ORDER** |

This matter is before the court on three motions for summary judgment. First, Wendy C.H. Wellin ("Wendy"), as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin ("Keith") Florida Revocable Living Trust u/a/d December 11, 2001 ("2001 Revocable Trust") (collectively, the "Estate") has filed a motion for partial summary judgment as to the validity of the substitution of assets transaction of November 20, 2013 ("2013 asset substitution"). ECF No. 881 at 1 ("Motion I" for the purposes of Background section only). Second, Peter J. Wellin ("Peter"), Cynthia Wellin Plum ("Ceth"), Marjorie Wellin King ("Marjorie")– in their individual capacities, their capacities as co-Trustees, and their capacities as beneficiaries Wellin Family 2009 Irrevocable Trust ("2009 Irrevocable Trust") – and Friendship Management, LLC (collectively, the "Wellin children") have filed a motion for summary

judgment as to the invalidity of the 2013 asset substitution. ECF No. 888 at 1 ("Motion II" for the purposes of Background section only). Third, the Estate has filed a motion for partial summary judgment on the issue of the identity of the Limited Partner(s) of Friendship Partners, LP. ECF No. 879 at 1 ("Motion III" for the purposes of Background section only).

For the reasons stated below, the court denies the Estate's motion for partial summary judgment as to the validity of the 2013 asset substitution; grants the Wellin Children's motion for summary judgment as to the invalidity of the 2013 asset substitution, and grants in part and denies in part the Estate's motion for partial summary judgment on the issue of the identity of the Limited Partner(s) of Friendship Partners, LP.

## I.  BACKGROUND

Because the nature of this case[1], the court will dispense with a recitation of facts and include only a procedural history of the matters at hand.

Motion I was filed by the Estate on April 16, 2019. ECF No. 881. The Wellin children responded to Motion I on July 8, 2019, ECF No. 928, to which the Estate replied on August 28, 2019, ECF No. 949. Motion II was filed by the Wellin children on April 16, 2019. ECF No. 888. The Estate responded to Motion II on July 1, 2019, ECF No.

---

[1] "This 'suit has, in course of time, become so complicated, that . . . no two . . . lawyers can talk about it for five minutes, without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause: innumerable young people have married into it;' and, sadly, the original part[y] 'have died out of it.' A 'long procession of judges has come in and gone out' during that time, and still the suit 'drags its weary length before the Court.' Those words were not written about this case, see C. Dickens, Bleak House, in 1 Works of Charles Dickens 4–5 (1891), but they could have been." Stern v. Marshall, 564 U.S. 462, 468 (2011). Truer words could not have been written about the Wellin cases.

914, to which the Wellin children replied on August 28, 2019, ECF No. 950.  Motion III

was filed by the Estate on April 16, 2019.  ECF No. 879.  The Wellin children responded

to Motion III on July 8, 2019, ECF No. 929, to which the Estate replied on August 28,

2019, ECF No. 948.  The motions are now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine dispute as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most

favorable to the non–moving party and draw all inferences in its favor.  Id. at 255.

# III. DISCUSSION

## A. Identity of Limited Partner in Friendship Partnership

The Estate argues the court should grant summary judgment as to Keith's status as a Limited Partner of Friendship Partners, LP ("Friendship Partnership") and to the 2009 Irrevocable Trust's status as having an assignee interest in Friendship Partnership because Friendship Partnership failed to properly admit a Substituted Limited Partner pursuant to Section 9.2(d) of the Friendship Partnership operating agreement ("Friendship Partnership agreement").[2]  ECF No. 879 at 17; ECF No. 879–3 at 14.  The Wellin children contend the court should deny summary judgment as to Keith's status as a Limited Partner of Friendship Partnership and to the 2009 Irrevocable Trust's status as having an assignee interest because the revisions to Annex A of the Friendship Partnership agreement ("Annex A") sufficiently admitted a Substituted Limited Partner pursuant to Section 9.2(d) of the Friendship Partnership agreement, and accordingly the 2001 Revocable Trust, and then subsequently, the 2009 Irrevocable Trust became a Substituted Limited Partner and Keith was no longer a Limited Partner.  ECF No. 888 at 20; ECF No. 879–3 at 14.

Both parties agree that Keith's status as a Limited Partner of Friendship Partnership is governed by Delaware law because of the governing law provision in the Friendship Partnership agreement.  ECF No. 879 at 17; ECF No. 879–3 at 23; <u>see generally</u> ECF No. 929 at 11, 13, 18 (arguing application of Delaware law).  "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state

---

[2] Terms that are capitalized and not defined within this Section III have the meaning ascribed to them as defined in the Friendship Partnership agreement.

in which it sits, including the state's choice-of-law rules." <u>Volvo Constr. Equip. N. Am.,</u> <u>Inc. v. CLM Equip. Co., Inc.</u>, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing <u>Erie R.R.</u> <u>Co. v. Tompkins</u>, 304 U.S. 64, 79 (1938). Under South Carolina choice of law rules, "if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." <u>Russell v. Wachovia Bank, N.A.</u>, 578 S.E.2d 329, 336 (S.C. 2003). Because Keith's status as a Limited Partner of the Friendship Partnership must be determined by the court performing a contract interpretation of the Friendship Partnership agreement, the court agrees with the parties and shall perform its analysis under Delaware law, pursuant to the governing law provision in the Friendship Partnership agreement. Prior to examining the merits of this motion, the court will first examine the affirmative defenses raised by the Wellin children. ECF No. 929 at 3.

## 1. Affirmative Defenses

The Wellin children argue that the Estate should be barred from making the argument that Keith remained a Limited Partner based on the affirmative defenses of equitable estoppel and acquiescence. ECF No. 929 at 3. The Wellin children contend that either equitable estoppel or acquiescence are appropriate in this instance, in part, because the Estate alleged that Keith was not a Limited Partner in prior complaints. ECF No. 929 at 12. The Estate, in response, argues the Wellin children's equitable estoppel should fail because they cannot meet their burden of proof, in part, because they are improperly relying on prior complaints as evidence, and because the Wellin children failed to plead acquiescence as an affirmative defense, the court should determine that the Wellin children have waived their right to argue the issue of acquiescence. ECF No. 948 at 3. "When a federal court sits in diversity jurisdiction, it applies federal procedural law

and state substantive law." Carolina Cargo Inc. of Rock Hill v. Countrywide Payroll & HR Solutions, Inc., 2018 WL 1443947, at *1 (D.S.C. Mar. 23, 2018); see Gasperini v. Center For Humanities, Inc., 518 U.S. 415, 427 (1996). Issues related to complaints and pleadings are governing by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 3, 8, 12, 15. Therefore, this court must apply Delaware substantive law when examining the Wellin children's affirmative defenses and Fourth Circuit procedural law when examining all issues related to complaints and pleadings. See generally Cantu v. John Hancock Mut. Life Ins. Co., 991 F.2d 787 (4th Cir. 1993) (holding that when "the district court's subject matter jurisdiction [i]s based on diversity of citizenship," procedural matters are governed by federal law and affirmative defenses are controlled by the same governing law as the underlying claim); see also Arismendez v. Nightingale Home Health Care, Inc., 493 F.3d 602, 610 (5th Cir. 2007) ("In a diversity action such as this, substantive state law determines what constitutes an affirmative defense . . . [and] the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs.).

### a. Equitable Estoppel

"The doctrine of equitable estoppel is invoked when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." Nevins v. Bryan, 885 A.2d 233, 249 (Del. Ch.), aff'd, 884 A.2d 512 (Del. 2005). The party claiming estoppel must demonstrate that:

> (i) they lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) they reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) they suffered a prejudicial change of position as a result of their reliance.

Id.  "Regardless of the form of the action, the burden of proof of estoppel rests upon the party asserting it."  Id. "Furthermore, equitable estoppel must be proven by clear and convincing evidence; an estoppel may not rest upon an inference that is merely one of several possible inferences."  Id.

First, the Wellin children argue that equitable estoppel is appropriate in this instance because of the Estate's prior complaints alleged Keith was not a Limited Partner. It is well settled federal law that an amended pleading supersedes the original pleading, renders the original pleading of no effect, and the original pleadings perform no function in deciding the amended pleading.  Brown v. Sikora and Associates, Inc., 311 F. App'x 568, 572 (4th Cir. 2008) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case.); Freckleton v. Target Corp., 81 F. Supp. 3d 473, 479–80 (D. Md. 2015) ("It is well settled that a timely-filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings may be denied as moot."); Davis v. Liberty Mut. Ins. Co., 2015 WL 6163243, at *3 (D.S.C. Oct. 19, 2015) (citing Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect.").  Therefore, the court finds that the statements made by Keith or the Estate in prior complaints have "no effect" and the court will not consider those statements when determining if the Wellin children have established equitable estoppel by clear and convincing evidence.

Next, the Wellin children argue that equitable estoppel is appropriate in this instance because Ceth did not have knowledge of the fact that Keith was not a Limited Partner because the books and records of the Friendship Partnership were withheld from

7

the Wellin children. ECF No. 929 at 12. Section 6.1 of the Friendship Partnership agreement states that "proper and complete records and books of account shall be kept by the General Partners" and "shall be maintained at the principal office of the Partnership." ECF No. 879–3 at 12. The principal office of Friendship Partnership is listed as 10 Waterman Ave, Philadelphia, Pennsylvania 19118. ECF No. 879–3 at 5. This address is the home of Ceth, who is the manager of Friendship Management LLC, the General Partner of the Friendship Partnership. ECF No. 879–4 at 2–5. The Wellin children provide no evidence that Ceth was in violation of Section 6.1 of the Friendship Partnership agreement. Therefore, the court finds that the Wellin children fail to prove that they did not at least have the means to obtain the knowledge of Keith's status as a Limited Partner by clear and convincing evidence, regardless of allegedly being denied the books and records of Friendship Partnership by the Estate. Additionally, the Wellin children argument of reasonable reliance is based on the Estate's statements made in the prior complaint. ECF No. 929 at 14. Because the prior complaint has "no effect", the court finds that the Wellin children failed to prove that they reasonably relied on the Estate by clear and convincing evidence.

Because the Wellin children failed to prove the elements of equitable estoppel by clear and convincing evidence, as is required by Delaware law, the court finds that equitable estoppel is not appropriate.

### b. Acquiescence

The Wellin children state that the affirmative defense of acquiescence is appropriate in this instance because the Estate's prior claims alleged that Keith was not a Limited Partner in prior complaints and because Ceth did not have knowledge of the fact

that Keith was not a Limited Partner and because books and records of the Friendship

Partnership were withheld from the Wellin children. ECF No. 929 at 14. The Estate

argues that the court should find that Wellin children's failure to plead acquiescence as an

affirmative defense waived their right to make that argument in their answer to a motion

for summary judgment. ECF No. 948 at 3. For the same reasons as stated above, the

court finds that the statements made by Keith or the Estate in prior complaints have "no

effect" and the court will not consider those statements when determining if the Wellin

children have established the affirmative defense of acquiescence.

### i. Waiver of Affirmative Defense

A defendant bears the burden of affirmatively pleading an affirmative defense.

See Fed. R. Civ. P. 8(c)(1); Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 (4th Cir.

2006). Generally, the "failure to plead an affirmative defense as required by Federal Rule

8(c) results in the waiver of that defense and its exclusion from the case . . . ." SunTrust

Mortgage, Inc. v. United Guar. Residential Ins. Co. of N.C., 508 F. App'x. 243, 252 (4th

Cir. 2013) (quoting 5 Charles Alan Wright and Arthur R. Miller, Fed. Prac. & Proc.

Civ. § 1278 (3d ed. 2012)). "Such waiver, however, should not be effective unless

the failure to plead resulted in unfair surprise or prejudice." S. Wallace Edwards & Sons,

Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 373 (4th Cir. 2003)

The Fourth Circuit and other Circuit Courts have found that affirmative defenses

raised for the first time in summary judgment motions can provide the required notice,

and therefore do not create an unfair surprise sufficient to apply waiver. Grunley Walsh

U.S., LLC v. Raap, 386 F. App'x 455, 459 (4th Cir. 2010); see, e.g., Brinkley, 180 F.3d at

612–13 (affirming the district court's order of summary judgment based on an affirmative

defense first raised in the defendant's summary judgment motion after noting the plaintiff had "ample opportunity to respond"); Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir.1993) (finding that the opposing party was put on notice of the affirmative defense of fraud when raised in response to a motion for summary judgment); Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1373–74 (3d Cir.1993) (holding that the plaintiff received sufficient notice of the affirmative defense because it was raised in the defendant's summary judgment motion).  While the court does not condone raising an affirmative defense for the first time at the summary judgment phase, the Estate cannot reasonably claim a lack of notice resulted from the Wellin children's failure to plead waiver in their answer because the Estate had ample time to respond to the Wellin children's defense at the summary judgment stage.  Therefore, the court finds that the Wellin children may assert the affirmative defense of acquiescence.

## ii.  Doctrine of Acquiescence

The Delaware Supreme Court has established a clear test which states that the doctrine of acquiescence applies where a claimant:

> has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved.

Klaassen v. Allegro Development Corp., 106 A.3d 1035, 1047 (Del.2014).[3]  Two Delaware Supreme Court cases, Lehman Brothers Holdings, Inc. v. Spanish Broadcasting

---

[3]  The Wellin children rely on the test set forth in Lehman Brothers Holdings, Inc. v. Spanish Broadcasting Systems, Inc., 2014 WL 718430 (Del. Ch. Feb. 25, 2014) aff'd,105 A.3d 989 (Del. 2014) to prove acquiescence.  Klaassen was decided one month after Lehman Brothers, and Vice Chancellor Glasscock, who wrote the Lehman Brothers opinion, subsequently acknowledged that the Supreme Court's decision in Klaassen

<u>Systems, Inc</u>., 2014 WL 718430 (Del. Ch. Feb. 25, 2014) aff'd,105 A.3d 989 (Del. 2014) and <u>Klaassen</u>,106 A.3d 1035, are particularly instructive on how to apply the test for when the doctrine of acquiescence applies as an affirmative defense.  "Based on the circumstances in both <u>Lehman Brothers</u> and <u>Klaassen</u>," acquiescence applies as an affirmative defense when "the plaintiff had the ability to challenge the breach <u>at the time of</u> the alleged wrongdoing, or as damages were incurred thereby, such that the plaintiff was adjudged complicit in the very breach for which it sought relief."  <u>Fotta v. Morgan</u>, 2016 WL 775032, at *9 (Del. Ch. Feb. 29, 2016) (emphasis in original) (citing <u>Lehman Brothers Holdings, Inc.</u>, 2014 WL 718430 at *9).

    In <u>Lehman Brothers</u>, the plaintiffs had the right to constrain the company from acquiring certain additional debt, the company's board publicly announced its intention to acquire that certain additional debt, and the plaintiffs remained silent instead of preventing the company from acquiring the additional debt for a year prior to filing a suit challenging those debt transactions.  2014 WL718430, at *12.  The court found that because the plaintiffs knew they had the right to contest the act which the plaintiffs later

---

"appears to have rendered some of these factors [set forth in <u>Lehman Brothers</u>] superfluous to an acquiescence analysis."  <u>Brevan Howard Credit Catalyst Master Fund Ltd. v. Spanish Broadcasting Systems, Inc.</u>, 2015 WL 2400712, at *3 n. 7 (Del.Ch. May 19, 2015).  Based on the Vice Chancellor Glasscock's acknowledgment and other Delaware courts use of the <u>Klaassen</u> test when performing an acquiescence analysis since <u>Klaassen</u> and <u>Lehman Brothers</u>, the court applies the <u>Klaassen</u> test in its acquiescence analysis and will not consider the Estate's intent or the Wellin children's detrimental reliance in connection with the acquiescence defense.  <u>See Weyerhaeuser Co. v. Domtar Corp.</u>, 204 F. Supp. 3d 731, 740 (D. Del. 2016), subsequently aff'd, 721 F. App'x 186 (3d Cir. 2018) (applying the <u>Klaassen</u> test and not considering "intent or "detrimental reliance" when performing an acquiescence analysis); <u>Fotta v. Morgan</u>, 2016 WL 775032, at *8 (Del. Ch. Feb. 29, 2016) (applying the <u>Klaassen</u> test and not considering "conscious intent" or "change of position or resulting prejudice" when performing an acquiescence analysis).

challenged in court prior to it occurring but instead remained silent about that act – in that case, acquiring debt – the doctrine of acquiescence applied as an affirmative defense because that behavior was sufficient to lead the defendant to believe the act had been approved.  Id.

In Klaassen, the defendant company's board of directors fired the plaintiff CEO/board member at a board meeting under circumstances of which the plaintiff CEO knew at the time of his dismissal gave rise to a claim to invalidate the procedure the board implemented to terminate him as CEO.  Klaassen, 106 A.3d at 1043.  For approximately seven months after his termination, plaintiff CEO willingly agreed to help transition his replacement into his role as CEO, negotiated a consulting agreement which acknowledged he reported to the new CEO, executed a written consent removing his replacement from the audit committee because the CEO could not serve on the audit committee under the company's by-laws, and accepted a new role on the compensation committee member although the CEO could not serve on the compensation committee under the company's by-laws.  Id. at 1048.  The court found that because the plaintiff knew he had the right to contest the act which the plaintiff later challenged in court once it occurred, but instead remained silent about that act and took affirmative action indicating the act had been approved – in that case, his firing – the doctrine of acquiescence applied as an affirmative defense because that behavior was sufficient to lead the defendant to believe the act has been approved.  Id.

The facts before the court are distinguishable from these cases.  Unlike in Lehman Brothers or Klaassen, where the plaintiffs had the right to stop the defendants from engaging in the complained of act so their silence or actions could make the defendants

believe the plaintiffs had affirmed those acts, Keith's status as a Limited Partner gave

him no ability to stop the Wellin children from removing him as a Limited Partner once

the 2007 Transfer or 2009 Transfer[4] were complete, nor should Keith's silence on his

status as a Limited Partner have led the Wellin children to believe that he approved the

act of removing him as a Limited Partner.  Section 7.1 of the Friendship Partnership

agreement states:

> Other than as set forth in this Agreement, the Limited Partners shall not
> participate in the management or control of the Partnership's business nor
> shall they transact any business for the Partnership, nor shall they have the
> power to act for or bind the Partnership, said powers being vested solely
> and exclusively in the General Partners.

ECF 879-3 at 13.

By the terms of the Friendship Partnership agreement, a Limited Partner has no

ability, authority, or right to: (1) complete a Transfer of an Interest in Friendship

Partnership, (2) admit a Substituted Limited Partner to Friendship Partnership, or (3)

prevent a removal from Friendship Partnership after a completed Transfer of an Interest

and admission of a Substituted Limited Partner to Friendship.  ECF No. 879-3 at 16–18.

The sole ability, authority, and right to take those acts listed about under the Friendship

Partnership agreement is Friendship Management LLC, as the General Partner of the

Friendship Partnership.  Id.  Because Keith had no right to participate in the management

or control of the Friendship Partnership nor did Keith have any right to participate in any

activity relating to removing him as a Limited Partner as a result of the 2007 Transfer or

2009 Transfer regardless of his status as a Limited Partner, it is unreasonable to believe

---

[4]  2007 Transfer and 2009 Transfer have the meaning ascribed to them each in Section
III.A.3 herein.

any inaction or action of Keith would lead the Wellin children to believe Keith approved of his removal as a Limited Partner. His inaction was mandated by the terms of the Friendship Partnership agreement and he had no ability stop his removal as a Limited Partner once the 2007 Transfer and 2009 Transfer were approved by the General Partner. Therefore, the court is not persuaded by the Wellin children's argument that the withholding of the books and records of the Friendship Partnership from the Wellin children by the Estate's counsel is behavior that would make the Wellin children believe Keith had affirmed his removal as a Limited Partner.[5]

The Wellin children provide no other arguments of any other inaction or action of Keith's that would make the Wellin children believe Keith had affirmed his removal as a Limited Partner. However, the Wellin children do argue that the language in the 2007 Transfer documents, the 2009 Transfer documents, and the Purchase Agreement that was part of the 2009 Transfer ("2009 Transfer purchase agreement") implies that the Transferee would become a Limited Partner. ECF 929 at 25. Out of an abundance of caution, the court will assume, arguendo, the Wellin children were to have argued that Keith acquiesced to being removed as a Limited Partner based on language in the executed 2007 Transfer documents and the executed 2009 Transfer documents. ECF No. 879-6 at 7; ECF No. 879-12 at 12; ECF No. 41-13 at 11. These arguments, however, would also fail.

The relevant portion of the 2007 Transfer documents states, "Assignee has agreed to act as a Limited Partner of the Partnership in accordance with this Assignment and the

---

[5] As noted above, the books and records of Friendship Partnership were under the care, custody, and control of Ceth.

14

terms of the Partnership Agreement." ECF No. 879-6 at 7. The relevant portion of the

2009 Transfer documents states, "Assignee has agreed to act as a Substituted Limited

Partner of the Partnership in accordance with this Assignment and the terms of the

Partnership Agreement." ECF No. 879-12 at 12. The relevant portion of the 2009

Transfer purchase agreement states:

> [The 2001 Revocable Trust] will promptly as possible take all action
> reasonably necessary to comply with Section 9.2 of the [Friendship]
> Partnership [a]greement . . . and will not take or fail to take any action that
> could reasonable be expected to result in the failure of the [2009
> Irrevocable Trust] to be admitted to the [Friendship] Partnership as a
> substituted partner.

ECF No. 41-13 at 11. These arguments fail for the same reasons stated above – only the

General Partner of Friendship Partnership could possibly admit the 2001 Revocable Trust

as a Limited Partner, the 2009 Irrevocable Trust as a Substituted Limited Partner, and

2009 Irrevocable Trust as a substituted partner[6] and there is no action or inaction taken by

Keith or the Estate that could have resulted in Keith's removal as a Limited Partner.

Acquiescence is only available as a defense when "the plaintiff must be adjudged

complicit in the very breach for which she seeks damages." Fotta, 2016 WL 775032, at

*8 (quoting Brevan Howard Credit Catalyst Master Fund Ltd. V. Spanish Broad. Sys.,

Inc., 2015 WL 2400712, at *2 (Del. Ch. May 19, 2015)). It is not available as a defense

when the plaintiff could not be complicit because only a sole perpetrator — in this

---

[6] The court need not determine if the undefined term "substituted partner" had the same
meaning as the defined term "Substituted Limited Partner" because the acceptance of a
Transferee in becoming a Substituted Limited Partner or becoming an assignee with the
limited rights of a Limited Partner is solely controlled by the General Partner. ECF No.
879-3 at 16–18. Because those are the only two possible outcomes of a Transferee after
the 2009 Transfer, and because the result would remain the same regardless of the
outcome of such analysis, the court need not decide that issue at this time.

instance, the General Partner — could possibly complete the task — in this instance, admit a Substituted Limited Partner — after a Transfer.

Because the court finds the Wellin children have not sufficiently shown[7] that Keith's actions or inaction led them to believe he approved his removal as a Limited Partner, the affirmative defense of acquiescence does not apply.

Having found that neither affirmative defense of equitable estoppel and acquiescence apply, the court will now turn to interpreting the Friendship Partnership agreement.

### 2. Contract Interpretation

The Friendship Partnership agreement is a limited partnership agreement formed under the Delaware Revised Uniform Limited Partnership Act ("DRULPA"). ECF No. 879–3. DRULPA instructs courts to give "maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements." 6 Del.C. § 17–1101(c). Under Delaware law, "contract interpretation is a question of law appropriately resolved by the Court." IKB Int'l, S.A. v. Wilmington Tr. Co., 2018 WL 2210564, at *6 (D. Del.

_____

[7] The Delaware Supreme Court has not specifically enumerated the burden of proof in an acquiescence affirmative defense. Acquiescence is a type of equitable defense used to estop the plaintiff from bringing its claim. See Klaassen., 106 A.3d at 1042 (describing the defense raised as the equitable defenses of . . . acquiescence"); Lehman Bros. 2014 WL 718430, at *9, n. 54 ("[T]he doctrine of acquiescence has been used in the sense applied here, as a species of estoppel, estoppel by silence."). As such, the burden of proof for acquiescence is likely "clear and convincing evidence." See, e.g., Nevins v. Bryan, 885 A.2d 233, 249 (Del. Ch.2005) ("Regardless of the form of the action, the burden of proof of estoppel rests upon the party asserting it. Furthermore, equitable estoppel must be proven by clear and convincing evidence; '[a]n estoppel may not rest upon an inference that is merely one of several possible inferences.'" (quoting Employers' Liab. Assur. Corp. v. Madric, 183 A.2d 182, 188 (Del.1962))). However, the court need not make that determination because the Wellin children have failed to meet their burden at the lower standard of proof.

May 14, 2018), aff'd, 774 F. App'x 719 (3d Cir. 2019) (quoting O'Brien v. Progressive Northern Insurance. Co., 785 A.2d 281, 286 (Del. 2001) ("Under Delaware law, the interpretation of contractual language . . . is a question of law.")).  "Accordingly, [the court's] analysis here must focus on, and examine, the precise language of the [agreement] that is at issue."  Brinckerhoff v. Enbridge Energy Co., Inc., 159 A.3d 242, 253 (Del. 2017), as revised (Mar. 28, 2017); DV Realty Advisors LLC v. Policemen's Annuity & Ben. Fund of Chicago, 75 A.3d 101, 107 (Del. 2013).

Delaware law requires that the court "construe limited partnership agreements in accordance with their terms in order to give effect to the parties' intent."  Allen v. Encore Energy Partners, L.P., 72 A.3d 93, 104 (Del. 2013); see also Salamone v. Gorman, 106 A.3d 354, 367–68 (Del. 2014) ("When interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement.'" (quoting GMG Capital Investment, LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 779 (Del. 2012))).  According to Delaware law, the court must "give words their plain meaning unless it appears that the parties intended a special meaning."  Allen, 72 A.3d 93 at 104.  "Delaware courts look to dictionaries for assistance in determining the plain meaning of terms that are not contractually defined."  Seaford Golf & Country Club v. E.I. duPont de Nemours & Co., 925 A.2d 1255, 1261 (Del. 2007).  Additionally, "Delaware courts have consistently held that an interpretation that gives effect to each term of an agreement is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive."  O'Brien v. Progressive N. Ins. Co., 785 A.2d 281 at 287.  The court may "consider extrinsic evidence only if the contract is ambiguous."  Norton v. K-Sea Transp. Partners L.P., 67 A.3d 354, 360 (Del. 2013).

However, "[t]here may be more than one dictionary definition, and parties may disagree on the meaning of the definition as applied to their case, but if merely applying a definition in the dictionary suffices to create ambiguity, no term would be unambiguous." Lorillard Tobacco Co. v. American Legacy Foundation, 903 A.2d 728, 740 (Del. 2006). "As [the Delaware Supreme Court] ha[s] stated before, the 'true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.'" Id. (quoting Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992)). "An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract." Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1160 (Del. 2010). "In giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract." Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co., 166 A.3d 912, 913–14 (Del. 2017).

### a. Interpretation of Transferee and the undefined term "person"

In 2007, in purported compliance with the terms of the Friendship Partnership agreement of making a transfer of an Interest, Keith transferred his limited partnership units in the Friendship Partnership to the 2001 Revocable Trust ("2007 Transfer"). ECF No. 879–6 at 2, 5; ECF No. 879–3 at 17–18. In purported compliance with the terms of the Friendship Partnership agreement of accepting a transfer of an Interest, Friendship Management LLC, as the General Partner of the Friendship Partnership, accepted the 2007 Transfer. ECF No. 879–6 at 3–4; ECF No. 879–3 at 17–18. In purported compliance with the terms of the Friendship Partnership agreement of making a transfer of an Interest, the 2001 Revocable Trust transferred the units in the Friendship

Partnership to the 2009 Irrevocable Trust in 2009 ("2009 Transfer"). ECF No. 879–12 at 2, 6–10, 12–18; ECF No. 879–3 at 17–18. In purported compliance with the terms of the Friendship Partnership agreement of accepting a transfer of an Interest, Friendship Management LLC, as the General Partner of the Friendship Partnership, accepted the 2009 Transfer. ECF No. 879–12 at 3–5, 12–18; ECF No. 879–3 at 17–18.

However, the Friendship Partnership agreement gives special meaning to the term "Person" and defines it as "any individual, partnership, limited liability company, corporation, trust or other entity." ECF No. 879–3 at 7–8. Section 9.1(a) of the Friendship Partnership agreement defines a "Transfer" as "the commission of any[ing] . . . sell[ing], assign[ing], pledg[ing] or in any manner dispos[ing] of, or creat[ing], or suffer[ing] the creation of, a security interest in or any encumbrance on all or a portion of its Interest in the [Friendship] Partnership[.]" ECF No. 879–3 at 16. Section 9.1(a) of the Friendship Partnership agreement defines a "Transferor" as "any <u>Person</u> who effects a Transfer[.]" <u>Id</u>. (emphasis added). Section 9.1(a) of the Friendship Partnership agreement defines a "Transferee" as "any <u>person</u> to whom a Transfer is effected[.]" <u>Id</u>. (emphasis added). The Friendship Partnership agreement conspicuously fails to use the defined term "Person" and instead uses the undefined term "person" in enumerating who may be a Transferee, yet, within the same sentence, uses the defined term "Person" in identifying who may be a Transferor. <u>Id</u>.

Neither party makes any argument that the Friendship Partnership agreement is ambiguous, and after examining the Friendship Partnership agreement, the court also finds that it is unambiguous. When performing contract interpretation of an unambiguous agreement it is the duty of this court is to "construe limited partnership

agreements in accordance with their terms in order to give effect to the parties' intent." Allen, 72 A.3d at 104. When doing so the court "must focus on, and examine, the precise language of the [agreement] that is at issue." Brinckerhoff, 159 A.3d 242 at 253. In selecting the precisely defined term "Person" – a term the parties gave special meaning to include both individuals and entities – to give special meaning to who could be a Transferor, the court finds it reasonable to interpret that the parties' intent was to allow both individuals and entities to be Transferors. On the other hand, by choosing to use the undefined term "person" – when the parties use the defined term "Person" within the same sentence – to give special meaning to who could be a Transferee, the court finds it reasonable to interpret that the parties' intent was to allow a group different from the defined term "Person", and thus the undefined term "person" must mean that only individuals can be Transferees.

Furthermore, it is the duty of this court to "read the specific provisions of the contract in light of the entire contract" in order to "giv[e] sensible life to a real-world contract." Chicago Bridge & Iron Co. N.V., 166 A.3d 912 at 913–14. To give further context to the entire contract, the court examined when the Friendship Partnership agreement used the defined term "Person" and when it used the undefined term "person" in the context of potential Transferors and Transferees. ECF 879-3 at 7–8, 13, 16, 19. The Friendship Partnership agreement uses the defined term "Person" when giving special meaning in defining who may be an Additional Limited Partner, an Additional General Partner, a General Partner, a Limited Partner, a Substituted General Partner, and a Substituted Limited Partner. ECF 879-3 at 7–8, 13, 16. Each of these precisely defined terms encompasses potential Transferors. The Friendship Partnership agreement uses the

undefined term "person" when giving special meaning in defining who may be Assignees. ECF 879–3 at 19. Each Assignee, by the precise terms of the Friendship Partnership agreement, will necessarily be a Transferee. In light of the entire agreement, the court finds these precisely defined terms to be further evidence that the court should interpret that the parties' intent was to allow defined term "Person" to be Transferors and to allow the undefined term "person", meaning human individuals, to be Transferees.

At the hearing, counsel for both parties attempted to explain away the use of undefined term "person" in Transferee as a scrivener's error. The court expressed wariness of accepting the argument of scrivener's error at the hearing because the use of the different terms "Person" and "person" are within the same sentence. Viewing the provision that defined Transferor and Transferee in light of the entire contract, as is the court's obligation, the scrivener's error argument crosses the line from suspicious to absurd. It would be unreasonable for the court to find the scrivener happened to err twice when writing the words that apply special meaning to terms that could be Transferees, but the same scrivener drafted perfectly each of the seven times when scribing the words that give special meaning to terms that could be Transferors. Because to find otherwise would yield an absurd result, the court finds the parties' precise word choice in the context of the entire agreement demonstrates their intent to allow only the defined term "Person" to be Transferors and to allow only the undefined term "person", meaning human individuals, to be Transferees.

Moreover, Delaware law tells the court to "look to dictionaries for assistance in determining the plain meaning of terms that are not contractually defined." Seaford Golf & Country Club, 925 A.2d at 1261. Additionally, "Delaware courts have consistently

held that an interpretation that gives effect to each term of an agreement is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive." O'Brien v. Progressive N. Ins. Co., 785 A.2d at 287. The dictionary definition of person gives several potential definitions for the undefined term "person." See Oxford English Dictionary Online (last visited December 10, 2019) (defining "person" as "1[.] a human as an individual[;] 2[.] (formal or disapproving) a human, especially one who is not identified[;] 3[.] person (in compounds) a person working in the area of business mentioned; a person concerned with the thing mentioned; 4. (grammar) any of the three classes of personal pronouns." (emphasis in original); see Merriam–Webster Dictionary Online (last visited December 10, 2019) (defining "person" as "1: H[uman], I[ndividual;] 2: a character or part in or as if in a play[;] 3a: one of the three modes of being in the Trinitarian Godhead as understood by Christians[;] b: the unitary personality of Christ that unites the divine and human natures[;] 4a: bodily appearance b: the body of a human being also : the body and clothing[;] 5: the personality of a human being[;] 6: one (such as a human being, a partnership, or a corporation) that is recognized by law as the subject of rights and duties; 7: reference of a segment of discourse to the speaker, to one spoken to, or to one spoken of as indicated by means of certain pronouns or in many languages by verb inflection[.]"; see Black's Law Dictionary (11th ed. 2019) (defining "person" as "1. A human being. 2. An entity such as a corporation or partnership that is governed by private law.").

As the court explained above, Delaware law states that multiple definitions of a word do not automatically render the word ambiguous. Lorillard Tobacco Co, 903 A.2d 728 at 740 ("There may be more than one dictionary definition, and parties may disagree

on the meaning of the definition as applied to their case, but if merely applying a definition in the dictionary suffices to create ambiguity, no term would be unambiguous.").  In this instance, the multiple definitions of person do not result in ambiguity.  There is unambiguously one definition the court can apply to its interpretation of the undefined term "person" that would both result in the "plain meaning" of the word person being used and not give an "interpretation that would result in a conclusion that some terms are uselessly repetitive" – and that is that the undefined term "person" means "a human individual".

At the hearing, counsel for both parties dismissed the interpretation of the word "person" as "a human individual", and stated they agreed that the parties intended the undefined term "person" to include entities.  However, the parties acceding to their desired interpretation of the undefined term "person" is the not law the court must follow.[8]  Indeed, as the court stated above and "[a]s [the Delaware Supreme Court] ha[s] stated before, the 'true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.'" Lorillard Tobacco Co., 903 A.2d at 740 (quoting Rhone-Poulenc Basic Chemicals Co., 616 A.2d 1192 at 1196 (citing Steigler, 384 A.2d 398 at 401)).  Furthermore, "[w]hen interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement.'" Salamone v. Gorman, 106 A.3d 354, 367–68 (Del. 2014) (quoting GMG Capital Investment, LLC v. Athenian Venture Partners I, L.P.,

---

[8]  Although counsel for both parties at the hearing agreed that an interpretation of the undefined term "person" to be a human individual is "cute", the court is duty bound to examine matters of law, such as this, by following legal precedent – regardless of how attractive either party may find such undefined term.

36 A.3d 776, 779 (Del. 2012)).  As described in detail above, given the precise word choice selected by the parties and the context of that word choice throughout the Friendship Partnership agreement, the court finds that a reasonable person in the position of the parties would have thought that the undefined term "person" would have a different meaning than the defined term "Person", and therefore, a reasonable person would find that the undefined term "person" would have meant "a human individual" and not include the other entities found in the defined term "Person".

Assuming, arguendo, the court found that the plain meaning of the word "person" could reasonably be interpreted to include entities in its definition[9], it would be impossible for the court to do so in this instance and not render the undefined term "person" as "uselessly repetitive" because including entities in the definition of the undefined term "person" would give that term the exact meaning as the defined term "Person".  If the court were to find that the parties meant the same thing when they wrote the words "Person" and "person", the court would be in conflict with the preference of Delaware law by failing to making "an interpretation that gives effect to each term of an agreement" and "would result in a conclusion that some terms are uselessly repetitive."[10]

_____

[9]  The court does not, in fact, find that the plain meaning of the undefined term person could reasonably be interpreted to include entities in its definition.  It is unreasonable to suggest, in every day conversation, someone in a natural, unforced manner would refer to the company sending its cable or gas bill as a person. Nor would someone naturally use the word person to indicate a movie theatre or restaurant visited.  It would be similarly unnatural to say the bank where their money is kept is a person or their grandfather's trust fund is a person.  Such results would be absurd, and, the court cannot have a reasonable interpretation that yields an absurd result.  See Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1160 (Del. 2010) ("An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract.")

[10]  As described in the previous analysis above, the court would also be in conflict with current Delaware law if it concluded the undefined term "person" meant something other

O'Brien v. Progressive N. Ins. Co., 785 A.2d at 287. Because of this precedent and in light of the aforementioned legal precedents stated, the court finds that the undefined word "person" means "a human individual".

Based on the application of Delaware law as described in detail above, the court finds that the undefined term "person" means "a human individual", and therefore, the only group who can be Transferees according to the terms of the Friendship Partnership agreement are human individuals. Because the 2001 Revocable Trust and the 2009 Irrevocable Trust are entities and not persons, neither are eligible to be Transferees. As a result, the court finds that the 2007 Transfer and 2009 Transfer were ineffective as a matter of law. Therefore, the court finds that Keith retained the units purported to be conveyed in the 2007 Transfer and 2009 Transfer and remained a Limited Partner of Friendship Partnership. Therefore, the court grants the Estate's motion for summary judgment as to Keith's status as a Limited Partner and denies the Estate's motion for summary judgment as to the 2009 Irrevocable Trust's status as having an assignee interest.[11]

_____

than a human individual. When the court can follow the Delaware law – as it must – and simultaneously give credence to the Delaware court's preference – as it should – the court will do so, and does so here.

[11] The Estate also argues that summary judgment as to Keith's status as a Limited Partner and as to the 2009 Irrevocable Trust's status as having an assignee interest is warranted because: (1) only an assignee interest was transferred to the 2001 Revocable Trust in the 2007 Transfer, (2) the 2001 Revocable Trust was not admitted as a Substituted Limited Partner in compliance with the Friendship Partnership agreement, and (3) the 2009 Irrevocable Trust was not admitted as a Substituted Limited Partner in compliance with the Friendship Partnership agreement. ECF No. 879 at 2–3. The court does not rule on any of these arguments because they are rendered moot by the court's grant of summary judgment as to Keith's status as a Limited Partner and denial of summary judgment as to the 2009 Irrevocable Trust's status as having an assignee interest because the 2007 Transfer and 2009 Transfer were ineffective as a matter of law.

## B. 2013 Asset Substitution

The Estate argues that the court should grant its motion for partial summary judgment holding the 2013 asset substation is valid and effective as a matter of law because the 2013 asset substitution was executed properly according to Article IX.A of the 2009 Irrevocable Trust which gave Keith the power of asset substitution ("Power of Asset Substitution clause"). ECF No. 881 at 15–32. The Wellin children make the contrapositive argument and ask the court to grant its motion for partial summary judgment holding the 2013 asset substation is invalid and ineffective as a matter of law because the 2013 asset substitution was not executed properly according to the terms of the Power of Asset Substitution clause. ECF No. 888 at 9–29. Both parties do agree, however, that the 2009 Irrevocable Trust, including but not limited to the Power of Asset Substitution clause, is governing by South Dakota law as described in Article III of the 2009 Irrevocable Trust. ECF Nos. 881 at 15; 881–1 at 4, 22; 888 at 9.

"The interpretation of trust language is a question of law." SBS Financial Services, Inc. v. Plouf Family Trust, 821 N.W.2d 842, 845 (S.D. 2012) (quoting In re Florence Y. Wallbaum Revocable Living Trust Agreement, 813 N.W.2d 111, 117 (S.D. 2012)). "When interpreting a trust instrument, 'the court's task is to ensure that the intentions and wishes of the [trustor] are honored.'" Id. In determining the intent of the trustor, South Dakota law requires the court to "look to the language of the trust instrument, and '[i]f the language of the trust instrument makes the intention of the [trustor] clear, it is [the court's] duty to declare and enforce it.'" In re Sunray Holdings Tr., 841 N.W.2d 271, 274 (S.D. 2013) (quoting Luke v. Stevenson, 696 N.W.2d 553, 557 (S.D. 2005)).

The Power of Asset Substitution clause says:

**A.  <u>Power of Asset Substitution</u>**.  [Keith] hereby retain[s] the power, exercisable during my lifetime, at any time and from time to time, without the consent of or approval by the Trustee, to reacquire the trust corpus or a portion thereof by substituting other property of an equivalent value.

ECF No. 881–1 at 22.  The court finds that the plain language of the Power of Asset Substitution clause makes it clear that intention of the trustor was to only allow for assets to be substituted that were part of the "trust corpus."  A trust corpus is defined as property of the trust.  <u>See</u> <u>Matter of Snaza Family Tr.</u>, 909 N.W.2d 719, 725 (S.D. 2018) (referring to "distribute the Trust's property" when reviewing lower court's order to "distribute" the "corpus" of the trust); <u>see also</u> Black's Law Dictionary (11th ed. 2019) (defining "trust corpus" as the body of the trust and the principal of the trust, referring to all funds and other real and personal property transferred to the trust.").  Based on the court having found that the 2009 Transfer was ineffective as a matter of law, the 2009 Irrevocable Trust did not legally own the units of Friendship Partnership that were a part of the 2013 asset substitution, and therefore, those units of Friendship Partnership were not part of the trust corpus.

Because the plain language of the Power of Asset Substitution clause makes it clear that it was the grantor's intent to require an asset substitution only for property owned by the 2009 Irrevocable Trust, and the 2009 Irrevocable Trust did not legally own the units of Friendship Partnership that were a part of the 2013 asset substitution, the court finds the 2013 asset substitution did not comply with the Power of Asset Substitution clause.  Therefore, the court grants the Wellin childrens' motion for partial summary judgment, holds that the 2013 asset substitution is invalid and ineffective as a

matter of law, and denies the Estate's motion for partial summary judgment holding the

2013 asset substitution is valid and effective as a matter of law.[12]

---

[12] The Wellin children also argue a finding that the 2013 asset substitution was ineffective and invalid as a matter of law is warranted because of: (1) the lack of equivalent value of the assets in the 2013 asset substitution, (2) the Power of Asset Substitution clause did not allow forgiveness of debt to be exchanged for assets of equivalent value, (3) the Power of Asset Substitution clause allowed only Keith as an individual to substitute assets and Keith did not own the property identified to be substituted, (4) the 2013 asset substitution did not comply with the terms of the Friendship Partnership agreement, other terms of the 2009 Irrevocable Trust, and the Promissory Note (5) the Exercise of Right of Substitution document did not comply with the court's temporary restraining order and (6) the Wellin children had a legal right to make a valuation as to the equivalency prior to any asset substitution. ECF No. 888 at 2–3. The Wellin children also argue that summary judgment, to the extent those claims are based on the 2013 asset substitution, is warranted because: (1) there are not independent duties sufficient to pursue tort claims that arise from the terms of a contract, (2) bringing an action for unjust enrichment where the relationship is governed by an express contract is impermissible, and (3) the breach of contract claim and constructive trust claim fail as a matter of law because the 2013 asset substitution did not comply with the terms of the Friendship Partnership agreement, other terms of the 2009 Irrevocable Trust, and the Promissory Note. ECF No. 888 at 7–9.

The Estate also argues for finding that the 2013 asset substitution was effective and valid as a matter of law is warranted because: (1) the assets involved in the 2013 asset substitution are valued using the fair market value standard, which makes them equivalent, and (2) the Wellin children had no legal right to make a valuation as to the equivalency prior to any asset substitution. ECF No. 881 at 20, 24.

The court does not rule on any of these arguments because they are rendered moot by the court's grant of summary judgment that the 2013 asset substitution was ineffective and invalid as a matter of law because the 2009 Irrevocable Trust did not legally own the units of Friendship Partnership that were a part of the 2013 asset substitution.

Additionally, the court's finding only applies to the claims to the extent those claim arise from the 2013 asset substitution.

## IV.   CONCLUSION

For the reasons set forth above, the court denies the Estate's motion for partial summary judgment as to the validity of the 2013 asset substitution; grants the Wellin Children's motion for summary judgment as to the invalidity of the 2013 asset substitution, and grants in part and denies in part the Estate's motion for partial summary judgment on the issue of the identity of the Limited Partner(s) of Friendship Partners, LP

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 26, 2019**
**Charleston, South Carolina**